UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RIVERDEEP INC., A LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>SOMC GROUP, INC., a California corporation; LOGETICS, INC., a California corporation; SAN DIEGO CREDIT ASSOCIATION, a California corporation; READY, SET, GROW!, a California corporation; JELLY BEAN ISLANDS, a California corporation; and LEAP AHEAD, a California corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-10816 REK<br><br><br>MEMORANDUM IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY |

Plaintiff Riverdeep, Inc., A Limited Liability Company ("Riverdeep") respectfully

submits this memorandum in support of its application for temporary restraining order

and limited expedited discovery.

## INTRODUCTION

Riverdeep needs a temporary restraining order to prevent defendants SOMC

Group, Inc. ("SOMC"), Logetics, Inc. ("Logetics"), San Diego Credit Association

("SDCA"), READY, SET, GROW! ("Ready"), Jelly Bean Islands ("Jelly Bean"), and Leap

Ahead ("Leap Ahead") (collectively, the "Defendants") from continued unlicensed

copying and distribution of Riverdeep software and also to order Defendants to return or

escrow Riverdeep's proprietary materials including, but not limited to, the gold master

disks from which the Defendants could make additional copies. While SOMC and

Logetics were previously distributors of Riverdeep software, their licenses expired on March 1, 2004 and September 1, 2004, respectively, and their 180-day sell off rights have also long since expired. Nevertheless, as demonstrated in the Affidavits of Irwin B. Schwartz ("Schwartz Aff.") and Kirsten Mellor ("Mellor Aff."), submitted herewith, SOMC and Logetics continue to sell Riverdeep software without any license to do so.[1] Accordingly, Riverdeep respectfully requests that this Court enter a temporary restraining order preventing such distribution and permit Riverdeep very limited expedited discovery upon which it may present its preliminary injunction motion on a more fully developed record.

## BACKGROUND FACTS

Riverdeep is a leading publisher of educational and productivity consumer software. (Mellor Aff. ¶ 2). Riverdeep holds copyrights for all of the software titles at issue in the Agreement and registered copyrights for the majority of the titles. (Mellor Aff. ¶ 3 & Tab 1). Defendants SOMC and Logetics manufacture, market, and distribute software products, including Riverdeep's software. (Mellor Aff. ¶ 4). Thomas Holland, as president of both SOMC and Logetics, signed the license agreements at issue. (Mellor Aff. ¶ 5 & Tabs 2, 3). According to Logetics' website, Logetics owns SOMC, which sells Riverdeep products. (Mellor Aff. ¶ 21 & Tab 5). Ready, Jelly Bean and Leap Ahead are websites, which claim to be affiliated and under the control of Logetics and also sell Riverdeep products. (Mellor Aff. ¶¶ 23-25 & Tabs 7-9).

---

[1] Even though defendant SDCA was never licensed or otherwise authorized to distribute or sell Riverdeep software, after this action was filed, it admitted that it received from SOMC approximately 425,000 copies of software, some of it likely to be Riverdeep titles, and on the same day sold it to Logetics. Upon information and belief, Logetics then resold this black-market software.

## Riverdeep and SOMC/Logetics Enter into the 2002 License Agreement

On March 28, 2002, Broderbund (predecessor to Riverdeep) on the one hand
and SOMC and Logetics on the other hand entered into a license agreement to permit
SOMC and Logetics to manufacture, market and distribute certain Riverdeep software
as "club products" ("2002 Agreement").  (Mellor Aff. ¶¶ 4, 7 & Tab 2 at 1, Exh. A ¶ 1(a)).
In exchange, Logetics and SOMC agreed to pay minimum guaranteed license fees
totaling \$2,300,000.  (Mellor Aff. ¶ 8 & Tab 2, Exh. A ¶ 4(a) and Amend. ¶ 2).

The 2002 Agreement expired on March 1, 2004, at which time Logetics and
SOMC could no longer manufacture Riverdeep software, but had sell off rights for an
additional 180 days (or until August 27, 2004).  (Mellor Aff. ¶ 9 & Tab 2, Exh. B ¶ 6.3).

At the time the 2002 Agreement terminated, Logetics and SOMC owed
Riverdeep approximately \$1.1 million in minimum royalty payments.

## Riverdeep and Logetics Enter into the 2004 License Agreement

On or around March 28, 2004, Riverdeep and Logetics entered into the 2004
Agreement, which effectively extended Logetics' rights with respect to  Riverdeep
software to September 30, 2004 with sell of rights for 180 days (or until March 29,
2005).  (Mellor Aff. ¶¶ 13, 15 & Tab 3, Exh. A ¶ 1(a), Exh. B ¶ 6.3)).  In exchange,
Logetics agreed to pay minimum guaranteed license fees totaling \$375,000. (Mellor Aff.
¶ 14 & Tab 3, Exh. A, ¶ 4(a)).  In addition, the 2004 Agreement required Logetics
immediately upon expiration to return all Riverdeep proprietary information, including
the gold master disks from which additional copies of Riverdeep's products may be
generated.  (Mellor Aff. ¶ 16 & Tab 3, Exh. B ¶ 6.3).

Despite its obligations under the 2004 Agreement: (1) Logetics failed to pay Riverdeep approximately $202,000 in guaranteed minimum royalties; and, upon expiration of the 2004 Agreement, (2) Logetics failed to return Riverdeep's gold master disks. (Mellor Aff. ¶¶ 18-19). Moreover, even after the 180-day sell off period ended, Logetics continues to distribute Riverdeep software through its SOMC, Ready, Jelly Bean and Leap Ahead affiliates in violation of Riverdeep's copyrights. (Mellor Aff. ¶ 20). On March 8, 2005, Riverdeep sent a letter to Logetics demanding (among other things) that Logetics return to Riverdeep any and all Riverdeep gold master disks in Logetics possession. (Mellor Aff. ¶ 17 & Tab 4). Logetics ignored that request. (Mellor Aff. ¶ 19).

## SOMC Assigned Its Assets To SDCA, Which Then Sold Them Back To Logetics

Unbeknownst to Riverdeep, on February 24, 2004 SOMC assigned all of its interest in its assets to SDCA for one dollar. (Schwartz Aff. ¶ 3 & Exh. A).[2]  As Riverdeep learned after commencement of this action, on the very same day SDCA received the assignment from SOMC, SDCA sold SOMC's assets to Logetics for $46,200 and Holland signed on behalf of SOMC and Logetics (Schwartz Aff. ¶ 4 & Exh B) . This transaction included at least 425,000 software titles, many of which, upon information and belief, were Riverdeep software (Schwartz Aff. ¶ 4 & Exh. B, Exh. A ¶ B).[3]

---

[2] While SDCA claims to have sent Riverdeep notice of the assignment by letter dated March 18, 2004, Riverdeep did not receive that letter until July 2004 (4 months later) because the SDCA letter was sent at Holland's direction to Riverdeep's lock box bank account address rather than the proper address for notice set forth in the 2002 Agreement. (Mellor Aff. ¶ 31).

[3] This assignment violated the 2002 Agreement, which prohibits SOMC from assigning any rights absent Riverdeep's prior written consent, which was never sought or obtained. (Mellor Aff. ¶¶ 7, 30 & Tab 2,

**Defendants Are Violating Riverdeep's Copyrights**

Notwithstanding that the 2002 Agreement and 2004 Agreement have expired and all sell of rights have expired, defendants Logetics and SOMC and their affiliates continue to distribute Riverdeep's products on their websites (www.logetics.com; www.somc.com; www.jellybeanislands.com; www.leapahead.com; and www.rsgclub.com (Ready Set Grow!)). In addition, other Logetics websites, including www.familysavingsoutlet.com and www.smart-estore.com, offer Riverdeep products directly for sale (Mellor Aff. ¶¶ 20-26 & Tabs 5-10).[4]

## ARGUMENT

A temporary restraining order should issue where there has been a copyright violation. 17 U.S.C. § 502(a); Storage Tech. Corp. v. Custom Hardware Eng'r & Consulting, Inc., 2004 WL 1497688, at *6 (D. Mass. July 2, 2004). The First Circuit applies a modified injunctive relief standard in copyright cases and Riverdeep effectively need only show likelihood of success on the merits because where that factor is shown: irreparable harm is presumed, the weighing of harms to the respective parties is resolved in favor of the copyright holder and, almost by definition, the public interest is best served by upholding copyright protection. Storage Tech., 2004 WL 1497688, at *5 (citing Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-12 (1st Cir. 1988)). As set forth below, Defendants are in violation of copyright laws and a TRO is therefore warranted.

Exh. B ¶ 10.3).

## I. RIVERDEEP IS LIKELY TO SUCCEED ON ITS COPYRIGHT CLAIM.

To prove a copyright violation, Riverdeep need only demonstrate: (1) ownership of a valid copyright and (2) unauthorized distribution of copyrighted materials by the Defendants. Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62 (1st Cir. 2002) ("[I]f [Defendant] distributed copies of Ortiz-Gonzalez's copyrighted work, the act of distribution is a direct infringement"). As set forth below, there is no dispute as to copyright ownership and Logetics' own websites demonstrate unauthorized distribution.

### A. Logetics and SOMC Are Violating Riverdeep's Copyrights

Here, it is undisputed that Riverdeep owns copyrights for the software titles at issue. It is also undisputed that any rights Logetics and SOMC had to copy and distribute Riverdeep's products arose from the 2002 Agreement and 2004 Agreements, both of which have expired by their own terms, including all sell off rights. Furthermore, there can be no dispute that, upon expiration, the 2002 Agreement and 2004 Agreement require SOMC and Logetics to return all Riverdeep proprietary materials without limitation, including gold master copies of Riverdeep software.

As demonstrated by the pages just printed off the Internet, Defendants continue to distribute Riverdeep's copyrighted software through their websites. (Mellor Aff. ¶¶ 20-26 & Tabs 5-10). SOMC and Logetics continued distribution of Riverdeep's products is an unlicensed, unauthorized, and inescapable copyright violation. Ortiz-Gonzalez, 277 F.3d at 62 (distribution of copyrighted material is copyright infringement). Moreover, despite Riverdeep's demand, SOMC and Logetics have not returned any of

---

[4] To the extent the web pages reflect "Broderbund" or "The Learning Company" as the publisher of any particular software title, Riverdeep acquired the assets, including all intellectual property rights, of

6

Riverdeep's intellectual property as required by the 2002 Agreement and the 2004 Agreement.

According, Riverdeep is likely to prevail on its copyright infringement claim against Defendants as rogue distributors. See Riverdeep, Inc. v. Perrone Importers, Inc., No. C-04-04979 RS, slip op. at 7-8 (N.D. Cal. February 16, 2005) (entering a preliminary injunction against former Riverdeep distributor and requiring escrow of gold master disks) (a copy of the Perrone Order is attached as Exhibit A).

## B.    SDCA Also Violated Riverdeep's Copyrights And May Still Do So

SDCA never had a right to copy, distribute, or sell Riverdeep software.[5] Nevertheless, there is little doubt that SOMC "assigned" Riverdeep titles to SDCA, which in turn sold them to Logetics, which was a copyright violation. Ortiz-Gonzalez, 277 F.3d at 62. While SDCA claims to have retained none of Riverdeep's titles following the sale to Logetics, SDCA has refused to stipulate to injunctive relief , which suggests that SDCA may intend to distribute additional Riverdeep product pending this action and should be enjoined.

## II.    IRREPARABLE INJURY IS PRESUMED

Irreparable injury is presumed upon a finding of likelihood of success on the merits on a copyright claim. Concrete Mach., 843 F.2d at 611-12; Storage Tech, 2004 WL 1497688, at * 5. Indeed, Riverdeep will suffer actual immediate and incalculable injury if Defendants fail to return the gold master disks and are allowed to continue to distribute Riverdeep's copyrighted products without licenses.    To the extent that

---

Broderbund and The Learning Company in 2002. (Mellor Aff. ¶ 3).

7

Defendants continue to represent themselves as authorized Riverdeep distributors,
such representations and distributions cause harm to Riverdeep's market, its brand
name, and its other distributors (Mellor Aff. ¶¶ 32, 33). Indeed, Defendants' unlicensed
distribution may flood the market with Riverdeep's products, thereby also injuring
Riverdeep and its legitimate distributors (Mellor Aff. ¶ 34).

Defendants, on the other hand, will suffer absolutely no harm if this Court
prevents them from distributing Riverdeep's copyrighted products in violation of
Riverdeep's copyrights. Defendants have no legitimate interest in selling software in
violation of Riverdeep's copyrights. Nor may Defendants cry "foul" based on their own
failure to abide by the 2002 Agreement and 2004 Agreement. Accordingly, the balance
of harms tips heavily in Riverdeep's favor. Concrete Mach., 843 F.2d at 611 ("Where
the only hardship that the defendant will suffer is lost profits from an activity which has
been shown likely to be infringing, such an argument in defense 'merits little equitable
consideration'").

## III. A TEMPORARY RESTRAINING ORDER WILL AID THE PUBLIC INTEREST

Courts, as a matter of course, hold that an injunction preventing copyright
infringement is in the public interest. See e.g. Concrete Mach., 843 F.2d at 612;
Storage Tech, 2004 WL 1497688 *5. "[T]he issue of public policy rarely is a genuine
issue if the copyright owner has established a likelihood of success: 'Since Congress
has elected to grant certain exclusive rights to the owner of a copyright, it is virtually
axiomatic that the public interest can only be served by upholding copyright protections

---

[5] SOMC also violated copyright law when it assigned Riverdeep Software to SDCA (in breach of the 2002
Agreement).

8

and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.'" Concrete, 843 F.2d at 612; Storage Tech, 2004 WL 1497688 *5. There can be no dispute that an injunction preventing violation of Riverdeep's copyrights will aid the public interest.

## IV.    EXPEDITED DISCOVERY WILL ASSIST THE COURT TO CONSIDER THE PRELIMINARY INJUNCTION MOTION A FULLY DEVELOPED RECORD

The Federal Rules of Civil Procedure permit the Court to order that discovery commence early. Fed. R. Civ. P. 26(d). Expedited discovery is also appropriate to "enable the court to judge the parties' interests and respective chances for success on the merits." Edudata Corp. v. Scientific Computers, Inc., 599 F. Supp. 1084, 1088 (D. Minn. 1984) (granting expedited discovery), aff'd in part and rev'd in part on other grounds, 746 F.2d 429 (8th Cir. 1984).  As Judge Harrington ruled in Microsystems Software, Inc. v. Scandinavia Online AB, expedited discovery is appropriate in the context of prospective copyright violations where, as here, delay may result in continued irreparable harm. Microsystems Software, Inc. v. Scandinavia Online AB, Civ. A. No. 00-10488-EFH, slip op. (D. Mass. Mar. 17, 2000) (ordering expedited discovery); see also Express One Int'l, Inc. v. U.S. Postal Service, 814 F. Supp. 87, 92 (D.D.C. 1992) (enjoining authorizing or performing any work under the contract and granting expedited discovery); Polo Fashions, Inc. v Everything Goes, Civ. No. 84-11549-K, slip op. at 7-9 (D. Mass. May 18, 1984) (granting expedited discovery and temporary restraining order ex parte "because it is the only method of preserving a state of affairs in which the Court can provide effective final relief").

Here, focused, immediate, expedited discovery is necessary so that Riverdeep

9

can establish Defendants' on-going copyright violations. Riverdeep also needs immediate discovery into Logetics' manufacturing, copying, distribution, and/or sales of all of Riverdeep's software titles after Logetics' license agreements expired to identify the source of the black market goods that Defendants are currently distributing through their websites. Riverdeep's requested discovery is narrowly tailored and only requests that Defendants provide information that is easily accessible to them and the usual time provided by the Rules is unnecessary.[6]

Riverdeep also requests that this Court issue a document preservation order, which would require Defendants to preserve and hold inviolate any documents and communications relating to the assignment, manufacturing, sale, distribution, or copying of Riverdeep's software.[7]

## CONCLUSION

For the foregoing reasons, Riverdeep respectfully requests that the Court enter a temporary restraining order against Defendants enjoining them from copying or distributing Riverdeep's products and requiring return or escrow of Riverdeep's proprietary materials, including Riverdeep's gold master disks. Riverdeep further requests that this Court allow it to take limited discovery and that it enter a preservation order.

___

[6] Riverdeep respectfully attaches to the Proposed Order submitted herewith as Exhibit A and Exhibit B, copies of the requested discovery.
[7] Counsel for Riverdeep has complied with LR D. Mass 7.1(a) by contacting via telephone Defendants' counsel prior to filing this motion. (Schwartz Aff. ¶ 5)

10

Dated:  May 10, 2005

Respectfully submitted,

Irwin B. Schwartz BBO#548763
PETRIE SCHWARTZ LLP
500 Boylston Street, Suite 1860
Boston, Massachusetts 02116
(617) 421-1800

Counsel for Plaintiff
Riverdeep, Inc., LLC

Certificate of Service

I, Irwin B. Schwartz, attorney for Plaintiff, Riverdeep, Inc., LLC, hereby certify that on this 10th day of May 2005, I served a copy of the foregoing document on Defendants' attorney by delivering the same, via Federal Express to James R. Ballard, Esquire, 101 West Broadway, Suite 810, San Diego, CA 92101, Daniel B. Winslow, Esquire, Duane Morris, 470 Atlantic Avenue, Suite 500, Boston, MA 02210 and Mr. Thomas E. Holland, 1945 Palomar Oaks Way, Suite 200, Carlsbad, CA 92009.

Irwin B. Schwartz

1

2

3          **E-Filed**

           February 16, 2005

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                   SAN JOSE DIVISION

11     RIVERDEEP, INC.,                              NO.: C 04 04979 RS

12            Plaintiff,                             **ORDER DENYING MOTION TO
                                                     DISMISS; GRANTING REQUEST
13        v.                                         TO COMPEL ARBITRATION;
                                                     GRANTING MOTION TO ENTER
14     PERRONE IMPORTERS, INC.,                      PRELIMINARY INJUNCTION;
                                                     AND DENYING MOTION FOR
15            Defendants.                            PARTIAL SUMMARY
                                                     JUDGMENT**
16     _____/

17

18                                   I. INTRODUCTION

19          Plaintiff Riverdeep, Inc. ("Riverdeep") moves for entry of a preliminary injunction, as well as entry

20     of partial summary judgment. In response, defendants Perrone Importers, Inc. ("Perrone Puerto Rico") and

21     Perrone Importers Mexico ("Perrone Mexico")[1] (collectively referred to as "Perrone"), filed a motion to

22     dismiss based on lack of personal jurisdiction. In the alternative, Perrone requests that the Court stay this

23     action and compel arbitration pursuant to the parties' agreement. The motions were fully briefed and heard

24     on an expedited schedule by the Court on February 9, 2004. Based on all papers filed to date, as well as

25     on the oral argument of counsel, the Court denies the motion to dismiss; grants the motion for preliminary

26

27     _____

            [1] Perrone Importers Mexico is a wholly owned subsidiary of Perrone Importers, Inc., a company headquartered in

28     Puerto Rico.

United States District Court
For the Northern District of California

1 injunction; denies the motion for partial summary judgment; and, grants the request to compel arbitration,
2 for the reasons set forth below.

3 ## II. BACKGROUND

4 Riverdeep is an educational software publisher incorporated in Delaware, with headquarters in San
5 Francisco, California; Cedar Rapids, Iowa; Boston, Massachusetts; Ireland; and, the United Kingdom.
6 Riverdeep states in its complaint that its principal place of business is located in San Francisco. However,
7 Riverdeep's president, treasurer and directors are all located in either Boston or Ireland. See Exhibits 2 and
8 3 to Declaration of Robert E. Nuddleman ("Nuddleman Declaration"). Prior to the formation of the two
9 contracts at issue in this case, Perrone Puerto Rico had an agreement with Mindscape, Ltd. to market and
10 distribute and later replicate Riverdeep software in Puerto Rico through September 2004. See ¶5,
11 Declaration of Juan Carlos Mattei ("Mattei Decl.").

12 On December 24, 2003, the Perrone entities entered into two license agreements with Riverdeep.
13 See Exhibits 1 and 2 to the Mattei Declaration. One contract was between Riverdeep and Perrone Puerto
14 Rico ("Puerto Rico Contract") and the other was between Riverdeep and Perrone Mexico ("Mexico
15 Contract"). Id. The Puerto Rico Contract gave Perrone Puerto Rico the right to market, manufacture and
16 distribute Spanish versions of Riverdeep software throughout the United States and Puerto Rico, while the
17 Mexico Contract provided Perrone Mexico with the right to market, manufacture and distribute Spanish
18 versions of Riverdeep software throughout Mexico.

19 Under the agreements, Perrone Puerto Rico and Perrone Mexico were obligated to make minimum
20 guaranteed payments pursuant to a Guaranteed Royalty Schedule. Id. The contracts also gave Riverdeep
21 the right to terminate the relationship if Perrone failed to make its minimum guaranteed payments within a
22 ten-day grace period. Id. In addition, upon notice of termination by Riverdeep, the agreements required
23 Perrone to return all Riverdeep materials and stated that Perrone would lose all rights to duplicate and
24 distribute Riverdeep's products. Id.

25 Under the terms of the contracts, the parties agreed that California law would govern all aspects of
26 the relationship. Id. The agreements also provide that all disputes would be submitted to arbitration before

27

28                                        2

1    an arbitrator in San Francisco, California. Id.  In its complaint, Riverdeep states that it waives its right to
2    arbitration. Perrone, however, has not waived its right to arbitration and, in fact, seeks to compel
3    arbitration.

4         Soon after the parties' agreements were formed, Perrone Puerto Rico paid $60,000 and Perrone
5    Mexico paid $10,000 to Riverdeep pursuant to the Guaranteed Royalty Schedule. On August 26, 2004
6    Perrone Puerto Rico paid an additional $20,000. However, on September 28, 2004, Perrone failed to
7    make $110,000 of the requisite $200,000 guaranteed minimum payments and Riverdeep issued a
8    termination warning notice. In response, Perrone complained that Riverdeep had failed to make the
9    necessary sales contacts and had delayed in sending the Gold Master disks. On October 13, 2004,
10   Riverdeep terminated Perrone's contracts in writing and demanded return of Riverdeep's materials.

11        As a result of the parties' disputes, Riverdeep filed the instant action alleging copyright infringement,
12   breach of contract, specific performance of the contract, trademark infringement, and unfair competition.
13   Riverdeep also seeks injunctive relief to ensure that, pending resolution of this case, Perrone will not
14   distribute its products.[2] In response, Perrone filed a motion to dismiss on the basis that the Court lacks
15   personal jurisdiction over Perrone. In the alternative, Perrone asks that the action be stayed and that the
16   parties be compelled to arbitrate. Riverdeep opposes the motion to dismiss and argues that the action
17   should proceed in this district, and, at a minimum, the Court should enter a preliminary injunction in aid of
18   arbitration.  Riverdeep fails to address directly Perrone's request to compel arbitration.

19                              III. STANDARDS

20   A.    Motion to Dismiss

21        In ruling on a motion to dismiss, the court must accept as true all allegations of material fact and
22   must construe those allegations in the light most favorable to the non-moving party. Western Reserve Oil &
23   Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). Any existing ambiguities must be resolved in
24   favor of the pleading. Walling v. Beverly Enterprises, 476 F.2d 393, 396 (9th Cir. 1973).

26   _____
     [2]  On January 23, 2005, at a hearing on Riverdeep's motion for a temporary restraining order, the parties agreed to
27   place the Gold Master disks in the possession of Perrone's counsel, as escrow agent, and stipulated that Perrone would cease
     copying and distributing Riverdeep's software, pending further Court ruling.

28                                   3

United States District Court
For the Northern District of California

1    A complaint or counterclaim is subject to dismissal as a matter of law for: (1) lack of a cognizable

2 legal theory or (2) insufficient facts stated under a cognizable theory. Robertson v. Dean Witter Reynolds,

3 Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). In order to grant a motion to dismiss, it must appear to a

4 certainty that a plaintiff would not be entitled to relief under any set of facts which could be proved. Wool

5 v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

6          B.      Stay of Proceedings

7          Title 9 U.S.C. §3 provides: "In any suit or proceeding brought in any of the courts of the United

8 States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in

9 which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable

10 to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action

11 until such arbitration has been had in accordance with the terms of the agreement, providing the applicant to

12 the stay is not in default in proceeding with such arbitration."

13         C.      Motion for Preliminary Injunction

14         In the Ninth Circuit, in order to obtain a preliminary injunction, the moving party must show either

15 (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the

16 existence of serious questions which address the merits of the case and the balance of hardships tips sharply

17 in its favor, with at least a fair chance of success on the merits. Senate of California v. Mosbacher, 968

18 F.2d 974, 977 (9th Cir. 1992). The Ninth Circuit has stated that "these two formulations represent two

19 points on a sliding scale in which the required degree of irreparable harm increases as the probability of

20 success decreases." Los Angeles Memorial Coliseum Commission v. National Fotball League, 634 F.2d

21 1197, 1200-01 (9th Cir. 1980).

22         In addition, under any formulation of the test, the moving party must show that there exists a

23 significant threat of irreparable harm. American Passage Media Corp. v. Cass Communications, Inc., 750

24 F.2d 1470, 1473 (9th Cir. 1985) (citations omitted). If the moving party fails to make this showing, the

25 court need not decide whether the party is likely to succeed on the merits. Oakland Tribune, Inc. v.

26 Chronicle Pub. Co., 762 F.2d 1374, 1376 (9th Cir. 1985).

27

28                                                          4

1

### D.    Motion for Partial Summary Judgment

2     Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if

3    any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

4    judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and

5    dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

6     The non-moving party "must set forth specific facts showing that there is a genuine issue for trial."

7    Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly supported motion

8    for summary judgment simply by alleging some factual dispute between the parties.  To preclude the entry

9    of summary judgment, the non-moving party must bring forth material facts,  i.e., "facts that might affect the

10    outcome of the suit under the governing law  .  .  .  . Factual disputes that are irrelevant or unnecessary will

11    not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The court must draw

12    all reasonable inferences in favor of the non-moving party, including questions of credibility and of the

13    weight to be accorded particular evidence. Masson v. New Yorker Magazine, Inc., 111 S.Ct. 2419,

14    2434-35 (1991) (citing Anderson, 477 U.S. at 255).

15                              IV.  DISCUSSION

16     The parties do not dispute the existence or enforceability of the arbitration clause set forth in their

17    agreements. Thus, the only issues remaining before the Court are whether to dismiss this action, or, in the

18    alternative, stay the proceedings pending arbitration, and Riverdeep's motion for partial summary judgment.

19

20    ### A.    Perrone's Motion to Dismiss Based on Lack of Personal Jurisdiction

21     Perrone argues that the Court may not exercise personal jurisdiction over it in this case because its

22    contacts with the state of California fail to pass the requisite jurisdictional tests.  This argument ignores,

23    however, the fact that Perrone voluntarily agreed to arbitrate all disputes arising from its agreements with

24    Riverdeep in this forum.  As noted above, both agreements between the parties contain an arbitration

25    clause and a California choice of law provision. See Exhibits 1 and 2 to Mattei Declaration. The arbitration

26    clause provides in relevant part that "any dispute, controversy or claim arising out of or in connection with

27

28                              5

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  this Agreement shall be determined and settled by arbitration in San Francisco, California pursuant to the

2  rules then in effect of the American Arbitration Association." Id. at pp. 10-11. The California choice of law

3  clause provides that "this agreement and its validity, construction and performance shall be governed in all

4  respects by the internal laws of State of California." Id.. Although a choice-of-law provision in a contract,

5  standing alone, would be insufficient to confer jurisdiction in a forum whose law is to apply, a choice of law

6  provision should not be ignored in considering whether the defendant has purposefully invoked the benefits

7  and protections of a state's law. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 481 (1985). Here, more

8  than a choice of law clause, an arbitral forum selection clause, connects the matter to this jurisdiction.

9  In an analogous case, the Ninth Circuit held that a district court had personal jurisdiction over a

10  nonresident customer that purposely availed itself of the privilege of conducting activities in California by

11  agreeing to arbitrate its disputes in that state. Fireman's Fund Ins. Co. v. National Bank of Cooperatives,

12  103 F.3d 888 (9th Cir. 1996). In Fireman's Fund, the parties agreed to submit all disputes related to their

13  agreement to binding arbitration in San Francisco, California. As a result, the court found that the defendant

14  had waived its right to object to personal jurisdiction over it by a California court. Id. at 893. The court

15  relied on the Supreme Court's opinion in Burger King, which found that consent could serve as a basis for

16  establishing personal jurisdiction. 471 U.S. at 472. Thus, by consenting to arbitrate all disputes in

17  California, by agreeing that California law would govern such disputes, and by entering into contracts with a

18  California based corporation, Perrone waived its right to object to personal jurisdiction in this case.

19  B.    Perrone's Request to Stay Proceedings and Compel Arbitration

20  Both parties agree that, if the Court has jurisdiction over Perrone, this action may be stayed

21  pending completion of arbitration. The Federal Arbitration Act specifically provides that a Court with

22  jurisdiction may stay the litigation at a party's request upon referring the case to arbitration. 9 U.S.C. §3.

23  The decision to stay is discretionary with the Court. Id. Since the Court has personal jurisdiction over

24  Perrone, and the parties agree that there is a valid arbitration agreement, the Court grants Perrone's request

25  to stay the proceedings pending completion of the arbitration. Accordingly, the parties are ordered to

26  arbitrate their dispute before AAA in San Francisco, as provided in their agreements.

27

28
                                        6

1

C.    Riverdeep's Motion for Preliminary Injunction

2    The Court may issue a preliminary injunction in aid of a binding arbitration agreement. The Ninth
3 Circuit has held that even where a dispute is properly arbitrable under the Federal Arbitration Act, district
4 courts have jurisdiction to enter an injunction so long as the criteria for such an injunction is otherwise met.
5 PMS Dist. Co. V. Huber & Suhner, A.G., 863 F.2d 639, 641-42 (9th Cir. 1988). A plaintiff seeking
6 preliminary injunctive relief must demonstrate "either a likelihood of success on the merits and the possibility
7 of irreparable injury or that serious questions going to the merits were raised and the balance of hardships
8 tips sharply in its favor." Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 826 (9th Cir.
9 1997).

10    In the Ninth Circuit, to prove a copyright violation, Riverdeep must show: "(1) ownership of a valid
11 copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright
12 Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing 17 U.S.C. 501(a)). Among the
13 owner's exclusive rights under the Copyright Act are the rights to copy and distribute the copyrighted
14 materials. Mai Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 517 (9th Cir. 1993). It is undisputed
15 that Riverdeep owns the copyrights for the software at issue. Perrone retained only the rights to distribute
16 Riverdeep's products until the contract was terminated. Once the contracts were terminated, Perrone lost
17 all rights to copy and distribute the materials. It is reasonably likely, therefore, that Riverdeep will succeed
18 on the merits of its copyright claim.

19    In the Ninth Circuit, "in a copyright infringement claim, a showing of a reasonable likelihood of
20 success on the merits raises a presumption of irreparable harm." Micro Star v. Formgen Inc., 154 F. 3d
21 1107, 1009 (9th Cir. 1998); Cadence, 125 F.3d at 826. Thus, since Riverdeep has established a likelihood
22 of success on the merits of its copyright violation claim, it also satisfies the burden of proving the possibility
23 of irreparable injury. Therefore, the Court grants Riverdeep's request for a preliminary injunction against
24 Perrone to prevent Perrone from copying and distributing Riverdeep software. The Gold Master disks
25 shall remain in the possession of Perrone's counsel, as escrow agent, pending the outcome of the

26
27
28

7

1  arbitration. Perrone may not copy and/or distribute Riverdeep's software pending final determination of this
2  action by the arbitrator.

3      D.      Riverdeep's Motion for Partial Summary Judgment

4      While the parties' agreement to arbitrate their disputes, as well as the Court's order compelling
5  arbitration, arguably make it unnecessary to address Riverdeep's motion for partial summary judgment, the
6  Court has considered the motion and finds that disputed issues of material fact exist. In particular, Perrone
7  raises issues concerning Riverdeep's contractual obligations to provide it with master disks and sales
8  support which may have, temporarily, excused full payment by Perrone until such obligations were met. As
9  a result, the motion for partial summary judgment must be denied at this stage of the litigation.

10                                    V. CONCLUSION

11     For the reasons set forth herein, the Court denies Perrone's motion to dismiss, but grants its
12  requests to stay this action and to compel arbitration. In addition, Riverdeep's motion for entry of an
13  injunction pending the outcome of the arbitration is granted and Perrone is enjoined from copying and/or
14  distributing Riverdeep's software. Furthermore, the Court denies Riverdeep's motion for partial summary
15  judgment. A case management conference shall be held in this case on June 22, 2005 at 2:30 p.m. The
16  parties shall file a joint case management conference statement by June 15, 2005.

17

18  Dated: February 16, 2005                            /s/ Richard Seeborg
                                                        RICHARD SEEBORG
19                                                      United States Magistrate Judge

20

21

22

23

24

25

26

27

28                                          8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15    Copies of this order have been electronically provided to:

16    John V. Komar    jkomar@petrieschwartz.com

17    Robert Edward Nuddleman    robert@griegolaw.com

18    Irwin Bennet Schwartz    ischwartz@petrieschwartz.com

19    Petrie Schwartz
      2033 Gateway Place
20    Suite 500
      San Jose, CA 95110
21
      Counsel are responsible for distributing copies of this documents to co-counsel who have not registered for
22    e-filing under the Court's CM/ECF program.

23
      **Dated: 2/16/05**                                **Richard W. Wieking, Clerk**
24
25
                                                         **By:___DM_____**
26                                                          **Chambers**

27
28                                            9

United States District Court
For the Northern District of California