UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIVERDEEP INC., A LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>SOMC GROUP, INC., a California corporation; LOGETICS, INC., a California corporation; SAN DIEGO CREDIT ASSOCIATION, a California corporation; READY, SET, GROW!, a California corporation; JELLY BEAN ISLANDS, a California corporation; and LEAP AHEAD, a California corporation,<br><br>Defendants. | Civil Action No. 05-10816 REK<br><br>AFFIDAVIT OF IRWIN B. SCHWARTZ IN SUPPORT OF EX PARTE APPLICATION |

Irwin B. Schwartz hereby declares as follows:

1.  I am an attorney duly admitted in the Commonwealth of Massachusetts and this Court and a member of the law firm Petrie Schwartz LLP. My firm is counsel to plaintiff Riverdeep, Inc., LLC ("Riverdeep").

2.  On April 29, 2005, counsel for San Diego Credit Association ("SDCA") sent me certain documents relating to the purported assignment for the benefit of creditors by defendant SOMC Group, Inc.'s ("SOMC") and SDCA's subsequent sale of certain SOMC's assets to Logetics, Inc. ("Logetics").

3.  According to the documents I received from SDCA's counsel, on February 24, 2004, SOMC assigned all of its interest in its assets to SDCA for one dollar, which

assignment was signed by Mr. Holland as SOMC's president. Attached as Exhibit A is the General Assignment by which SOMC assigned all of its assets for the benefit of its creditors for the sum of $1.

4. According to the documents that SDCA provided to my office, on the same day that SDCA received SOMC's assets, SDCA sold certain of those assets to Logetics, which included at least 425,000 units of software for $46,200, in which transaction Mr. Holland signed on behalf of Logetics. Attached as Exhibit B is an Asset Purchase Agreement between SDCA and Logetics whereby SDCA sold Logetics certain SOMC assets for $46,200 including approximately 425,000 CD-Rom units and associated marketing and packaging materials.

5. On May 4, 2005, I conferred with counsel for Logetics about Riverdeep filing a motion for expedited discovery. On May 4, 2005, my associate Sarah Wallace, left a phone message about an expedited discovery motion with James Ballard, California counsel for Logetics. Mr. Ballard responded to her phone message with an email.

SWORN AND SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 10th DAY OF MAY, 2005.

Irwin B. Schwartz

# GENERAL ASSIGNMENT

THIS ASSIGNMENT, made this ___24th___ day of ___February___, 20_04_

BY ___Software of the Month Club, Inc. / SOMC Group, Inc.___

of (address) ___1935 Camino Vida Roble___

in the City of ___Carlsbad , 92008-6513___, County of ___San Diego___

State of California, part ____ of the first part, hereinafter referred to as assignor, to SAN DIEGO CREDIT ASSOCIATION, a California corporation, of San Diego, California, party of the second part, hereinafter referred to as assignee.

WITNESSETH: That said assignor, for and in consideration of the covenants and agreements to be performed by the party of the second part, as hereinafter contained, and of the sum of One Dollar ($1.00) to assignor in hand paid by said assignee, receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, assign, convey and transfer unto said assignee, its successors and assigns, in trust, for the benefit of assignor's creditors generally, all of the property of the assignor of every kind and nature and wheresoever situated, both real and personal, and any interest or equity therein not exempt from execution, including, but not limited to, all that certain stock of merchandise, store furniture and fixtures, book accounts, books, bills receivable, cash on hand, cash in bank, deposits, patents, copyrights, trademarks and trade names, insurance policies, choses in action that are legally assignable, together with the proceeds of any existing non-assignable choses in action that may hereafter be recovered or received by the assignor.

This assignment specifically includes and covers all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from the assignor by the U.S. Treasury Department, and the assignor agrees to sign and execute power of attorney or all other documents as required to enable said assignee to file and prosecute, compromise and/or settle, all such claims before the Internal Revenue Service, U.S. Treasury Department.

Leases and leasehold interests in real estate, contracts or agreements between assignor and any Labor Union, or Trade Associations, are exempted from and not included in this assignment.

This assignment does not include any alcoholic beverages, but the assignor hereby appoints assignee as his agent for the sole purpose of filing an application for a permit and the selling of the alcoholic beverages in the said place of business (said assignee being vested tieh absolute discretion in regard thereto and assuming no liability by reason thereof), and assignor hereby assigns to assignee all of the proceeds of such sale for the benefit of his creditors generally in accordance with the terms of this assignment. This assignment includes all licenses for the sale of alcoholic beverages.

The assignor authorizes the forwarding of his or its mail by the U.S. Postal Department as directed by the Assignee.

Said assignee is to receive the said property, conduct the said business, should it deem it proper, and is hereby authorized at any time after the signing hereof by the assignor to sell and dispose of the said property upon such time and terms as it may see fit, and is to pay to creditors of the first party pro rata, according to the several indebtedness due to them from the said assignor, the net proceeds arising from the conducting of said business and sale and disposal of said property, after deducting all moneys which said assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is etitled to priority of payment, and all expenses, including a reasonable fee to assignee and its attorney and to attorney for assignor.

If any dividends to creditors shall remain unclaimed for a period of two years after issuance of the final dividend checks, then the same shall become the property of the assignee and used to supplement its fees for services rendered in administering this assignment. Any interest that may be earned on funds administered under this assignment shall belong to and are hereby assigned to the assignee as additional fees for its services hereunder.

Said assignee is also authorized and empowered to appoint such agents, field representatives and/or attorneys and/or accountants as it may deem necessary, and such agents and/or field representatives shall have full power and authority to open bank accounts in the name of the assignee or its nominees or agents and to deposit assigned assets or the proceeds thereof in such bank accounts and to draw checks thereon and with the further power and authority to do such other acts and to execute such papers and documents in connection with this assignment as said assignee may consider necessary or advisable.

IN WITNESS WHEREOF the said parties hereunto set their hands the day and year first above written.

ASSIGNOR'S TAX I.D. NUMBERS:  
Internal Revenue Service

\# _____

\# _____

State Board of Equalization

Software of the Month Club  
SOMC Group, Inc.

_____  
Tom Holland, President

_____, Secretary

ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is made and effective as of February 24, 2004 by and among San Diego Wholesale Credit Association, a California corporation ("SDWCA"), solely in its capacity as assignee for the benefit of creditors of SOMC Group Inc., a California corporation ("SOMC"), and Logetics, Inc., a California corporation ("Buyer"), with respect to the following facts:

A.  SOMC owned and operated a business which provided name-brand software.

B.  On February 24, 2004, SOMC made a general assignment of its assets to SDWCA, as assignee for the benefit of creditors (the "Assignment").

C.  Buyer desires to acquire certain assets of SOMC on the terms and conditions set forth herein.

IN CONSIDERATION OF the premises and mutual covenants contained in this Agreement, and for good and valuable consideration, the parties agree as follows:

1.  **Purchase and Sale of Assets**. On the Closing Date (as hereinafter defined), SDWCA will transfer to Buyer, and Buyer will purchase from SDWCA, the assets of SOMC (to the extent assigned to SDWCA pursuant to the Assignment) that are set forth on Exhibit "A" attached hereto (collectively referred to herein as the "Assets"). Notwithstanding the foregoing, the Assets shall not include the excluded assets set forth in Exhibit "B" attached hereto (the "Excluded Assets"). To the extent the Assets include books and records (whether in electronic, hard copy or any other form), Buyer shall retain copies of all such books and records or the originals thereof as may be reasonably necessary to wind up the affairs of SOMC or relating thereto; and Buyer agrees to provide reasonable access to SOMC and SDWCA to such books and records as may be necessary to wind-up the affairs of SOMC or relating thereto. Without limiting the foregoing, SDWCA and/or SOMC may also retain copies of all such books and records as may be reasonably necessary for such winding up activities. Buyer hereby grants to each of SOMC and SDWCA a perpetual, non-exclusive, royalty free license to use the "SOMC," "Software of the Month Club™," "Jellybean Islands™," Ready Set Grow™" and "TechLine Help™" names and related names and the Assets in connection with winding up the affairs of SOMC and the Assignment.

2.  **Purchase Price**. The purchase price of the Assets shall be Forty-Six Thousand Two Hundred Dollars ($46,200.00), payable by Buyer at the Closing as follows:

    2.1  **Cash Consideration**. Buyer shall pay SDWCA the sum of Forty-Six Thousand Two Hundred Dollars ($46,200.00) at the Closing by cashier's check or by wire transfer.

    2.2  **Sales Tax Payable by Buyer**. Buyer shall pay the sales tax due with respect to the transactions contemplated hereby. At the Closing, Buyer shall deliver to SDWCA the sum of the sales tax payable by it under this Agreement, and SDWCA shall make such sales tax payment as required.

    2.3  **Assumption of Liabilities**. Effective as of the Closing, Buyer hereby assumes and agrees (and shall be deemed to have assumed and agreed) to perform all obligations of SOMC (and SDWCA (if any)), whether under license agreements, contracts or otherwise, to destroy any compact disks and/or CD-ROM software or programs (collectively, the "Titles") transferred to Buyer by SDWCA which are no longer authorized for sale or distribution and to provide to the applicable publishers (the "Publishers") Certificates of Destruction or similar documents as required by such Publishers evidencing and/or certifying such

destruction. Except as expressly provided in this Agreement or any document executed in connection herewith, Buyer is not assuming any liabilities of SOMC or SDWCA.

3. **No Representations; Indemnity.**

3.1   BUYER AGREES TO ACQUIRE THE ASSETS FROM SDWCA "AS IS" AND "WHERE IS", AND ACKNOWLEDGES THAT SDWCA MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE ASSETS OR LIABILITIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING TITLE TO OR CONDITION OF THE ASSETS, OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR THE EXISTENCE OR AMOUNT OF ACCOUNTS, LIABILITIES, LIENS, CLAIMS OR ENCUMBRANCES. BUYER FURTHER ACKNOWLEDGES AND REPRESENTS THAT IT HAS REVIEWED AND INSPECTED THE ASSETS, HAS HAD THE OPPORTUNITY TO INSPECT THE BOOKS AND RECORDS OF SOMC AND THE PUBLIC FILING RECORDS AND ENTERS INTO THIS AGREEMENT AFTER INDEPENDENT INVESTIGATION OF THE FACTS AND CIRCUMSTANCES RELATING TO THE ASSETS, THE FINANCIAL CONDITION OF SOMC AND THE TRANSACTION DESCRIBED HEREIN. BUYER FURTHER ACKNOWLEDGES THAT SDWCA DOES NOT HAVE POSSESSION OF THE ASSETS, AND THAT BUYER WILL HAVE SOLE RESPONSIBILITY TO OBTAIN POSSESSION OF THE ASSETS, AT ITS SOLE EXPENSE. BUYER AGREES THAT SDWCA HAS NO OBLIGATION OR LIABILITY WHATSOEVER WITH RESPECT TO ANY SEPARATE AGREEMENTS, INDEMNITIES, REPRESENTATIONS OR WARRANTIES ENTERED INTO BY BUYER AND/OR SOMC.

3.2   Without limiting the provisions of **Section 3.1** or any other provision of this Agreement, Buyer acknowledges that the sale and/or other distribution of the Titles are subject to license agreements which are not being transferred to Buyer by SDWCA, that Buyer shall not be entitled to sell or distribute such Titles without appropriate licenses and that Buyer assumes responsibility for obtaining all required licenses, other agreements and permits as may be required so that Buyer may lawfully sell and/or distribute the Titles. Buyer further acknowledges that the Publishers may from time to time revoke authorization to sell and/or distribute Titles or portions thereof and require the provision of Certificates of Destruction or similar documentation evidencing destruction of such Titles.

3.3   Buyer hereby agrees to indemnify, defend and hold SDWCA and its agents, employees, directors, officers, shareholders, affiliates, attorneys, consultants, independent contractors, successors and assigns (collectively "Indemnitees") harmless from and against any and all liabilities, demands, claims, actions or causes of action, assessments, losses, costs, damages or penalties or expenses, including attorneys' fees, imposed on, accrued against, asserted against, sustained or incurred by Indemnitees, directly or indirectly, resulting from, arising out of or by virtue of: (a) any liability of Buyer arising on or after the Closing Date, whether or not related to the ownership or use of the Assets; (b) breach of any representation, warranty, covenant or agreement of Buyer contained herein or in any agreement executed in connection herewith; and (c) the ownership, sale, disposition or use of the Assets prior to the Closing Date and from and after the Closing Date.

4.   **Conditions to Closing-SDWCA.** SDWCA's obligation to transfer the Assets to Buyer shall be subject to fulfillment of the following conditions on or before the Closing Date:

4.1   **Receipt by SDWCA of Buyer's Deliveries.** SDWCA shall have received the deliveries required under **Sections 6.1, 6.2 and 6.4** of this Agreement.

**4.2** **Matters Satisfactory to SDWCA and Its Counsel.** All matters incident to the transactions contemplated hereby shall be in form and substance satisfactory to SDWCA and its counsel.

**4.3** **No Legal Proceedings.** No action, suit or proceeding shall have been commenced before any court to restrain or prevent the carrying out of the transactions contemplated by this Agreement.

**4.4** **Consents of Secured Creditors; UCC Terminations.** SDWCA shall have obtained the written consent of all secured creditors of SOMC to the sale to Buyer and/or assumptions of obligations of such persons or entities, or SDWCA shall have received UCC Termination Statements releasing the Assets from the UCC Financing Statements filed against SOMC, unless such requirements are waived by SDWCA.

**5.** **Condition to Closing-Buyer.** Buyer's obligations to purchase the Assets and pay the Purchase Price shall be subject to fulfillment of the following conditions on or before the Closing Date:

**5.1** **Receipt by Buyer of SDWCA's Deliveries.** Buyer shall have received at the Closing the deliveries due it under **Section 6.3** of this Agreement.

**5.2** **Matters Satisfactory to Buyer and Its Counsel.** All matters incident to the transactions contemplated hereby shall be in form and substance satisfactory to Buyer and its counsel.

**6.** **Deliveries at Closing.** The parties shall make the following deliveries at Closing:

**6.1** **Cashier's Check - Purchase Price.** Buyer shall deliver to SDWCA a cashier's check or deliver funds via wire transfer to the account of SDWCA in the amount of Forty-Six Thousand Two Hundred Dollars ($46,200.00).

**6.2** **Cashier's Check - Sales Tax.** Buyer shall deliver to SDWCA a cashier's check or deliver funds via wire transfer to the account of SDWCA in the amount of Eight Hundred Fifty-Two Dollars and Fifty Cents ($852.50) representing sales tax on the portion of the purchase price allocable to furniture, fixtures and equipment.

**6.3** **Bill of Sale.** SDWCA shall deliver to Buyer a Bill of Sale in form and substance reasonably satisfactory to Buyer.

**6.4** **Corporate Documents.** As required by SDWCA, Buyer shall deliver to SDWCA a certified copy of its resolution authorizing the purchase of the Assets and an incumbency certificate and such other corporate related documents as SDWCA shall reasonably request.

**7.** **Closing.** The closing (the "Closing") shall occur at 2:00 p.m. on February 24, 2004 at the offices of Duane Morris LLP, 101 W. Broadway, Suite 900, San Diego, California 92101, or at such later time as the parties may mutually agree (the "Closing Date").

**8.** **Miscellaneous.**

**8.1** **Entire Agreement.** This Agreement and the written agreements referred to herein and executed in connection herewith constitute the entire understanding among the parties with respect to the subject matter hereof, and supersede all negotiations, prior discussions or other agreements, oral or written.

**8.2** **Governing Law; Venue.** This Agreement shall be governed by and construed in accordance with the laws of State of California, without reference or regard to the principles of conflict of

laws. Any action arising out of this Agreement may be brought and maintained in the Federal District Court for the Southern District of California or the California state courts located in San Diego County, and the parties hereto consent to the jurisdiction of such courts.

        8.3    **Counterparts**. This Agreement may be executed in counterparts. Duly acknowledged facsimile signatures shall be deemed as originals.

        8.4    **Fees and Costs**. If any action, including any arbitration proceeding, is instituted to enforce the terms or provisions of this Agreement, including an action instituted after the bankruptcy of a party, the prevailing party in such action shall be entitled to collect as part of its recovery all reasonable costs, charges and fees, including but not limited to its expert witness fees and attorneys' fees and costs, incurred in connection with such action.

        8.5    **Amendment**. This Agreement may only be amended or modified by the written agreement of the parties.

        8.6    **Severability**. If any of the provisions of this Agreement are held invalid under any law, such invalidity shall not affect the remainder of the Agreement.

        8.7    **No Assignment**. Neither this Agreement nor any rights or obligations hereunder shall be assigned by any party without the prior written consent of the other parties hereto.

        8.8    **Further Assurances**. Each party agrees to perform any further action and to execute and deliver any further documents reasonably necessary or proper to carry out the intent of this Agreement.

        8.9    **Successors and Assigns**. Subject to **Section 8.7**, this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties.

        8.10    **Headings**. The headings of the various sections of this Agreement are for convenience only and are not intended to explain or modify any of the provisions of this Agreement.

        8.11    **Notices**. All notices to be given by any party to this Agreement to the other party shall be in writing, and shall be given by certified or registered United States mail, return receipt requested, postage prepaid, to the other, sent by telefax or facsimile transmission, or personally delivered, at the addresses set forth below (or at such other address for a party has specified by like notice) and shall be deemed given when received if sent by facsimile transmission or personally delivered, or if mailed as provided herein, on the second day after it is so placed in the mail.

The addresses referred to above are:

Buyer:                  Logetics, Inc.
                          1935 Camino Vida Roble
                          Carlsbad, California 92008
                          Attention: Thomas E. Holland, President
                          Phone:  760-827-7378
                          Fax:     760-827-4202

San Diego Wholesale
Credit Association:   San Diego Wholesale Credit Association
2044 First Avenue, Suite 300
San Diego, California 92101
Attention: Greg Garner, President
Phone: (619) 239-8191
Fax: (619) 239-6301

Any party at any time may give notice of another address in accordance with the provisions of this **Section 8.11**.

**8.12**   **Representations and Warranties**. Each party signing this Agreement represents and warrants that it has the legal authority to enter into this Agreement and agreements executed in connection herewith and bind the entity upon whose behalf it signs. Buyer further represents and warrants that it has a valid seller's re-sale license in California, covering the tangible Assets, Resale License No. 100-342314.

**8.13**   **Survival of Obligations**. All obligations of the parties set forth in this Agreement shall survive the Closing and Closing Date.

**8.14**   **Effect of Course of Dealing**. No course of dealing between the parties in exercising any of their respective rights under this Agreement shall operate as a waiver of any such rights, except where expressly waived in writing.

**8.15**   **Limitation on Liability**. Notwithstanding any other provision herein to the contrary, the liability of SDWCA hereunder, if any, shall be nonrecourse, and SDWCA shall have no liability to Buyer hereunder.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be fully executed as of the day and year first above written.

**SAN DIEGO WHOLESALE CREDIT ASSOCIATION**, a California corporation

By: _____
Greg Garner
Its: President

LOGETICS, INC., a California corporation

By: _____
Thomas E. Holland
Its: President

# EXHIBIT "A"

## ASSETS TO BE INCLUDED

All of SDWCA's right, title and interest as assignee for the benefit of creditors of SOMC Group Inc. in and to the following assets ("Assets"):

A. Furniture, fixtures and equipment (collectively, "FFE") as follows:

   1. Approximately 18 Office Lots -- each Office Lot includes desk, desk chair, visitor chairs, credenza, bookcase, file cabinet, and miscellaneous desk accessories, pictures and/or plants.

   2. Approximately 18 PC Computer Lots -- each PC Computer Lot includes personal PC, keyboard, monitor, mouse and printer.

   3. 1 Corporate Computer lot -- includes approximately 4 - 5 computer servers with databases for customer development, marketing, network, mail, backup, tape drive, racks, router, switch and firewall.

   4. 1 Miscellaneous Lot -- includes miscellaneous work tables, file cabinet, refrigerator, microwave, office supplies, copier, color printer, fax machines, lobby chairs, dry erase board, and small conference table with chairs.

Prior to or contemporaneously with Closing, Buyer and SDWCA shall identify the specific items of FFE included as part of the Assets.

B. Approximately 425,000 CD-ROM units, and associated marketing and packaging materials

C. Software of the Month Club™, Jelly Bean Islands™ and Ready Set Grow™ names; websites, domain name and URL; trademarks, logos, stock photography, artwork and fonts (including the Bright Ideas collection); computer files, databases and related materials related to product design, marketing, production, distribution and customer billing and sales; customer support tools, including TechLine Help™; and telephone number.

D. SOMC customer and membership names and lists

Notwithstanding the foregoing, the Assets shall not include any of the Excluded Assets set forth and described in the Agreement and/or Exhibit "B" thereto.

# EXHIBIT "B"

## ASSETS TO BE EXCLUDED

Notwithstanding the other provisions of the Agreement, the Assets shall not include the following assets owned by SOMC or SDWCA as assignee thereof or in which either of them has or had any interest (the "Excluded Assets"): (a) any asset excluded from transfer under **Section 1** of the Agreement; (b) any assets not set forth on Exhibit "A" to the Agreement; (c) tax attributes, including, but not limited to net operating loss carryovers; (d) tax refunds; (e) any property owned by third parties, whether under a lease or otherwise; (f) workers' compensation refunds; (g) license agreements and/or rights; (h) accounts or accounts receivable; (i) utility or security deposits; (j) cash, deposit accounts, certificates of deposits or other cash equivalents; (k) the corporate minute book; (l) any stock, partnership, membership or other equity interest in any other entity; (m) leases and any property covered thereby; (n) insurance policies; (o) assets which are otherwise not assignable; (p) causes of action or claims (including, but not limited to, any causes of action or claims relating to preferential or fraudulent transfers) that SDWCA would be entitled to bring as an assignee for the benefit of creditors or use as an offset or defense to any claim; (q) any real property interests, including leases of real property; (r) any assets not transferred to SDWCA by SOMC; and (s) personnel and accounting records (in any form, whether in hard copies, electronic files or otherwise).