## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIVERDEEP INC., LLC, <br><br> Plaintiff, <br><br> v. <br><br> SOMC GROUP, INC., a California corporation; LOGETICS, INC., a California corporation; SAN DIEGO WHOLESALE CREDIT ASSOCIATION, a California corporation; READY, SET, GROW!, a California corporation; JELLY BEAN ISLANDS, a California corporation; LEAP AHEAD, a California corporation, and Thomas Holland, <br><br> Defendants. | CIVIL ACTION NO. 05-10816 REK |

## MEMORANDUM IN SUPPORT OF DEFENDANT SAN DIEGO WHOLESALE CREDIT ASSOCIATION'S MOTION TO DISMISS AMENDED COMPLAINT

The defendant, San Diego Wholesale Credit Association ("SDCA")[1], specially appearing and without submitting to the jurisdiction of the Court, moves to dismiss the Amended Complaint on the grounds that: (1) this Court does not have personal jurisdiction over SDCA pursuant to Fed. R. Civ. P. 12(b)(2); (2) venue is improper in this Court pursuant to Fed. R. Civ. P. 12(b)(3); and (3) Riverdeep Inc., LLC ("Riverdeep") fails to state a claim upon which relief may be granted against SDCA pursuant to Fed. R. Civ. P. 12(b)(6), for reasons more fully described in this memorandum.

---

[1] SDCA is misnamed in the complaint and anticipates this error will be corrected by agreement of the parties or upon motion.

## INTRODUCTION

On March 28, 2002, defendant SOMC Group Inc. ("SOMC") and defendant Logetics, Inc ("Logetics") entered into an OEM License Agreement (the "2002 Agreement") with Broderbund, LLC, ("Broderbund"),[2] granting SOMC and Logetics a license to market, manufacture, and sell certain copyrighted software as co-licensees. Under the 2002 Agreement, SOMC and Logetics, defined as a single "OEM," were jointly liable for the royalty obligations and licensing fees obligated under the 2002 Agreement.

On February 24, 2004, with only five days remaining before expiration of the 2002 Agreement, SOMC executed a general assignment for the benefit of creditors (the "Assignment for the Benefit of Creditors") to SDCA, transferring, in trust for the benefit of all of SOMC's creditors, all of SOMC's assets to SDCA. SDCA then executed a Asset Purchase Agreement (the "Asset Purchase Agreement") selling all of SOMC's assets to Logetics for the benefit of SOMC's creditors. Pursuant to its duties as assignee, SDCA sent notice to all SOMC's creditors of the assignment for the benefit of creditors, including Riverdeep.

The 2002 Agreement expired by its own terms on March 1, 2004. On March 28, 2004, Riverdeep, with the full knowledge of the outstanding indebtedness owed jointly by SOMC and Logetics under the 2002 Agreement, and with full knowledge that SOMC had ceased doing business, entered into a second licensing agreement (the "2004 Agreement") solely with Logetics; SOMC was not a party to the 2004 Agreement. The 2004 Agreement extended in time Logetics' rights to manufacture, market, and sell Riverdeep software. The 2004 Agreement expired on September 30, 2004.

---

[2] The 2002 Agreement was subsequently amended on December 30, 2002 to reflect the assignment of rights under the 2002 Agreement from Broderbund to Riverdeep and modify the amount of 2002 fee due.

More than a year after entering into the 2004 Agreement and more than nine months after learning of the Assignment for the Benefit of Creditors, Riverdeep filed a complaint on April 22, 2005. On March 17, 2005 Riverdeep filed an amended complaint (the "Amended Complaint") asserting claims against SDCA based on copyright (Count 2), fraudulent conveyance (Count 4), breach of fiduciary duty (Count 8), and declaratory judgment regarding the effect of an assignment for the benefit of creditors (Count 9).

Riverdeep's allegations, at ¶¶ 76-77 of the Amended Complaint, that SDCA was acting as an assignee for the benefit of creditors, renders Riverdeep's claims against it without merit as a matter of law.

An assignment for the benefit of creditors in California is an accepted alternative to a Chapter 7 bankruptcy proceeding and is a creature of statute and common law. It should not be confused with a "sale" of assets. The assignee takes the assets in trust with the corresponding fiduciary duty to dispose of and disburse proceeds in accordance with creditor priority as provided for in a statutory scheme. *See Credit Managers Association of California v. National Independent Business Alliance*, 162 Cal. App. 3d 1166, 1176 (1984). California Code of Civil Procedure §493.010 defines the general assignment for benefit of creditors' requirements:

> [a]s used in this chapter, "general assignment for the benefit of creditors" means an assignment which satisfies all of the following requirements: (a) the assignment is an assignment of all of the defendant's assets that are transferable and not exempt from enforcement of a money judgment. (b) the assignment is for the benefit of all of the defendants' creditors. (c) the assignment does not itself create a preference of one creditor, costs of creditor or any other creditor or class of creditors, but the assignment may recognize the existence of preferences to which creditors are otherwise entitled.

Essentially, "an assignment operates as a conveyance and not a mere power." 16 Cal. Jur. 3d (Rev.) Part II, *Creditors Rights and Remedies* at §37. Assignments that have for their general

3

purpose the appropriation of the entire estate of an insolvent debtor to the payment of his debts are favored in the law and will be construed so that they may stand rather than fall. 16 Cal. Jur. 3d (Rev.), Part II at §32.

As described below, the transfer of assets to SDCA cannot, as a matter of law, be a fraudulent conveyance. SDCA complied, as a matter of law, with all its duties as the assignee in the Assignment for the Benefit of Creditors and SDCA violated no copyright laws. The Amended Complaint must be dismissed.

## ARGUMENT

## THE COURT LACKS PERSONAL JURISDICTION OVER SDCA

Riverdeep's Amended Complaint fails to allege any grounds for personal jurisdiction over SDCA. "It is the plaintiff's burden to establish that the forum court has jurisdiction over the person of the sued defendant." *Alers-Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir. 1997). "In order to exercise personal jurisdiction over a defendant, the court must find sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statue and the due process clause of the Fourteenth Amendment." *West Marine Products, Inc. v. Dolphinite, Inc.*, 2005 U.S. Dist. LEXIS 7489 *15-16 (1st Cir. March, 2005). "The Massachusetts' long-arm statute, *M.G.L. c.* 223A, § 3 (2000), authorizes jurisdiction over the person to the limits allowed by the federal Constitution."[3] *West Marine Products,* 2005 U.S. Dist. LEXIS 7489 at *15-16, citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) ("'the Supreme Judicial Court of Massachusetts has

---

[3] The Massachusetts' long-arm statute defines "person" to include corporations. *M.G.L c.* 223A, § 1.

interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'"), *quoting 'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 443 (1972). "When the state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns on the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards." *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995). "It is appropriate, therefore, for the court to 'sidestep the statutory inquiry and proceed directly to constitutional analysis....'" *West Marine Products*, 2005 U.S. Dist. LEXIS 7489 at *16, quoting *Daynard*, 290 F.3d at 52.

Riverdeep cannot satisfy the constitutional due process standard, because it has failed to allege that SDCA has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316 (1945). Individuals must have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977). The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472 (1985). Here, Riverdeep has alleged no conduct justifying its claim of personal jurisdiction over SDCA.

As this Court is well aware, *in personam* jurisdiction is of two varieties, general and specific. General jurisdiction exists "when the litigation is not directly founded on the Defendant's forum-based contacts, but the Defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Electrical Radio &*

5

*Machine Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992). It

is not disputed that SDCA has not engaged in any activity in Massachusetts, much less

continuous and systematic activity. It is a California corporation with its place of business in

San Diego. *See* Amended Complaint at ¶ 14. There is no allegation in the Amended Complaint

that gives rise to any claim of general jurisdiction.

Specific jurisdiction may be asserted "where the cause of action arises directly out of, or

relates to, the Defendant's forum-based contacts." *Id.* at 1088-1089. For specific jurisdiction,

this circuit divides the constitutional analysis into three categories: relatedness, purposeful

availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities. Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of conducting activities in the
> forum state, thereby invoking the benefits and protections of that state's laws and
> making the defendant's involuntary presence before the state's courts foreseeable.
> Third, the exercise of jurisdiction must, in light of the Gestalt factors, be
> reasonable.

*Daynard*, 290 F.3d at 52, citing *Foster-Miller Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138,

144 (1st Cir. 1995); see also *Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998). Riverdeep

fails to meet its burden under all three catagories.

## Relatedness

First, Riverdeep has failed to allege that the claims underlying this litigation arose out of,

or related to, the defendants forum-state activities. Riverdeep did not allege that (1) SDCA does

business here; (2) SDCA has any customers here or SDCA provides services to those customers

here; (3) SDCA advertises or solicits customers here; (4) SDCA owns property here; nor (5)

SDCA derives income or revenue from here. *See generally* Amended Complaint. It is

undisputed that SDCA did not engage in any activity in Massachusetts. Riverdeep has failed to

6

allege that SDCA has engaged in any conduct related to the forum state, and, therefore,

Riverdeep has not met its burden of establishing "relatedness."

## Purposeful Availment

Second, Riverdeep has failed to allege that SDCA's in-state contacts represent a

purposeful availment of the privilege of conducting activities in Massachusetts, thereby invoking

the benefits and protections of Massachusett's laws. It is well recognized that "[t]he

cornerstones upon which the concept of purposeful availment rests are voluntariness and

foreseeability." *Sawtelle*, 70 F.3d at 1391 (citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d

201, 207 (1st Cir. 1994). "[I]t is essential in each case that there be some act by which the

defendant purposefully avails itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws." *Hanson v. Deckla*, 357 U.S. 235,

254 (1958).

> This 'purposeful availment' requirement ensures that a defendant will not be haled
> into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'
> contacts, [citations omitted] or of the 'unilateral activity of another party or a third
> person.' Jurisdiction is proper, however, where the contacts proximately result
> from actions by the defendant *himself* that create a 'substantial connection' with
> the forum State.

*Burger King v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (emphasis in original).

Riverdeep's allegation that SDCA is bound by a forum selection clause in the 2002 Agreement,

is wholly insufficient, to constitute "a purposeful availment" by SDCA of "the privilege of

conducting activities within [Massachusetts]." *Id.* It is far from the required "voluntary

association" or "affirmative, intentional act" by SDCA that would make it fair and reasonable to

require it to come into the State to defend the action here. *Hillman v. Palmer*, 1981 U.S. District

LEXIS 11532 at p. 3 (D.Mass.) The Supreme Court has made clear that "such a provision

standing alone would be insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482. In

7

*Burger King*, the Court found that only when the choice-of-law provision was combined with "the 20-year interdependent relationship Rudzewicz established with Burger King's Miami headquarters" had the defendant purposefully availed himself of the forum. *Id.*

Riverdeep has failed to allege that SDCA has had any contact with Massachusetts. The forum selection clause is not controlling. SDCA was not a party to the 2002 Agreement. It merely took the assets of SOMC in trust for the benefit of creditors. This is precisely the type of "random," "fortuitous" and "attenuated" event resulting from the unilateral activity of a third party, that does not provide jurisdiction. *Id.* at 474-475. Riverdeep has not alleged any interdependent relationship with SDCA. A forum selection clause contained in a contract in which SDCA is not a party is precisely a case where the forum selection clause is "standing alone" and should not be the sole basis for jurisdiction.

Riverdeep has not even alleged that the forum selection clause applies to the claims asserted against SDCA in the Amended Complaint since they are not contract claims as compared with Counts 3, 5, and 6, against the other defendants, that arise directly from the contract. Riverdeep has simply failed to allege any facts to connect SDCA to the District of Massachusetts.

## Reasonableness

Finally, Riverdeep has failed to allege that allowing the suit to go forward would be consistent with "fair play and substantial justice." *International Shoe*, 326 U.S. at 320. "The Court has long insisted that concepts of reasonableness must inform a properly performed minimum contacts analysis." *Ticketmaster-New York,* 26 F.3d at 209, citing *e.g.*, *Woodson*, 444 U.S. at 292; *International Shoe*, 326 U.S. at 320. "This means that, even where purposefully generated contacts exist, courts must consider a panoply of other factors which bear upon the

8

fairness of subjecting a nonresident to the authority of a foreign tribunal." *Pleasant St. I*, 960

F.2d at 1088; *accord Donatelli*, 893 F.2d at 464-65. "The Supreme Court has identified five

such factors [the "Gestalt factors"], namely:

> (1) the defendant's burden of appearing, (2) the forum state's interest in
> adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest in obtaining the most effective
> resolution of the controversy, and (5) the common interests of all sovereigns in
> promoting substantive social policies."

*Ticketmaster-New York,* 26 F.3d at 209, citing *Burger King*, 471 U.S. at 477.

This Circuit, in *Ticketmaster*, recently acknowledged the "onerous" burden associated

with forcing a California resident to appear in Massachusetts court. *Ticketmaster-New York,* 26

F.3d at 210. "This burden, and its inevitable concomitant, great inconvenience, are entitled to

substantial weight in calibrating the jurisdictional scales." *Id.* Indeed, the Court has stated that

this element, alone among the gestalt factors, is "always a primary concern." *Id.*, citing

*Woodson*, 444 U.S. at 292. "The gestalt factors are not ends in themselves, but they are,

collectively, a means of assisting courts in achieving substantial justice. In very close cases, they

may tip the constitutional balance." *Ticketmaster-New York,* 26 F.3d at 209, citing *Burger King*,

471 U.S. at 477-78 ("[M]inimum requirements inherent in the concept of 'fair play and

substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has

purposefully engaged in forum activities") (citation omitted) (*See also Asahi Metal Indus. Co. v.

Superior Court*, 480 U.S. 102 (1987).

Here, the allegations of the Amended Complaint illustrate that this is a dispute between

California companies (Amended Complaint at ¶¶ 7-12, 14) and California residents (Amended

Complaint at ¶ 13) involving property in California. It would be a burden to litigate in

Massachusetts. This is particularly apparent in SDCA's case where it was acting as a fiduciary

9

to Riverdeep and all other creditors of SOMC as the assignee in the Assignment for Benefit of
Creditors. The assignment estate has very limited resources to defend an action cross-country.

In addition, this Court's interest in the prosecution of this suit is "milder than usual"
because of the "doubts surrounding whether the defendant's acts can be said to have been
committed in the forum." *Ticketmaster-New York,* 26 F.3d at 211. In this case, the only
jurisdictional hook that Riverdeep can rely on for bringing this action in Massachusetts is a
forum-selection clause in an agreement to which SDCA was not a party, that expired five days
after the assignment, and that has nothing to do with the specific claims asserted against SDCA.
The Commonwealth of Massachusetts shares little interest in resolving a dispute between
California corporations and a California resident, involving a transaction occurring exclusively in
California. *See* Amended Complaint at ¶¶ 7-14. Riverdeep has failed to demonstrate how
jurisdiction in Massachusetts would be fundamentally fair.

## THE SOUTHERN DISTRICT OF CALIFORNIA IS THE APPROPRIATE FORUM FOR THIS ACTION

Riverdeep has failed to meet its burden of establishing proper venue. *See Cordis Corp. v.
Cardiac Pacemakers, Inc.*, 599 F.2d 1085, 1086 (1st Cir. 1979) (placing "the burden of
[establishing factual basis for the chosen venue] on the plaintiff once a defendant has challenged
venue by filing a motion to dismiss"). "In a case with multiple claims, venue must be proper as
to each claim." *Velcro Group Corp. v. Bielarant*, 692 F. Supp. 1443 (D.N.H. 1988). Thus, in
the instant case, Riverdeep must establish venue is appropriate in the District of Massachusetts
for the copyright claim (Count 2), the fraudulent conveyance claim (Count 4), breach of
fiduciary duty claim (Count 8) and the declaratory judgment action (Count 9).

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship

10

may... be brought <u>only</u> in (1) a judicial district where any defendant resides..., (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b) (emphasis added). "Civil actions, suits or proceedings arising under any Act of Congress relating to copyrights... may be instituted in the district in which the defendant or his agent resides or may be found." *See* 28 U.S.C. § 1400 (a).

Here, neither Riverdeep nor any of the defendants reside in Massachusetts. *See* Amended Complaint at ¶¶ 7-14. Moreover, none of the alleged offending events or omissions and no agent of the defendants is alleged to be in Massachusetts. *See generally* Amended Complaint. Accordingly, notwithstanding the inapplicable forum selection clause, this action properly belongs in California and not Massachusetts.

### The Forum Selection Provision is Not Enforceable Against SDCA

"The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration... nor no consideration... but rather the consideration for which Congress provided in [28 U.S.C.] § 1404(a)." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *cf. Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955) (§ 1404(a) accords broad discretion to the district court, and plaintiff's choice of forum is only one relevant factor for its consideration). The forum selection clause in this case, however, is inapplicable to SDCA. SDCA was not a party to the 2002 Agreement[4] (*See generally* Amended

---

[4] A true and correct copy of the Assignment for the Benefit of Creditors and the Asset Purchase Agreement was attached as Exhibit A and B, respectively, to the Affidavit of Irwin Schwartz filed in support of Riverdeep's application for temporary restraining order ("Schwartz Affidavit"). A true and correct copy of the 2002 and 2004 License Agreements was attached at
(Continued...)

Complaint and by the express terms of both the Assignment for the Benefit of Creditors and the

Asset Purchase Agreement), SDCA was never assigned any rights under the 2002 Agreement

(*See generally* Assignment for the Benefit of Creditors), nor did it purport to sell any (*See* Asset

Purchase Agreement ¶ 3.2). SDCA, as the assignee, took title only to the property assigned

which SOMC could have legally transferred or conveyed. *See Peterson v. Ball*, 211 Cal. 461

(1931). Riverdeep itself admits "[u]nder the 2002 Agreement, SOMC may not assign any rights

[under the 2002 Agreement] absent Riverdeep's prior written consent, which was never sought

or obtained for the purported SOMC to SDCA assignment." *See* Amended Complaint at ¶ 36.

Furthermore, Riverdeep alleges that "SDCA has no rights under the 2002 Agreement." *See*

Amended Complaint at ¶ 110. Riverdeep cannot, on the one hand, seek a declaration that SDCA

has no rights under the 2002 Agreement, and on the other hand, assert a forum selection clause

contained in that same agreement, as the only basis for venue.

---

(Continued...)

Tab 2 and 3, respectively, to the Affidavit of Kirsten Mellor in support of Riverdeep's application for temporary restraining order ("Mellor Affidavit"). SDCA requests that the Court take judicial notice of these exhibits. The Court can take judicial notice because these documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201 (Deering 2005). On a motion to dismiss, "a court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996); citing *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (explaining that the main problem of looking to documents outside the complaint -- lack of notice to plaintiff -- is dissipated "'where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint'" (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)); *See also Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991) (noting there are exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014-15 (1st Cir.) (considering allegedly libelous article submitted by defendants with motion to dismiss), *cert. denied*, 488 U.S. 821 (1988).

BOS\131570.1

Moreover, a forum selection clause is not enforceable against defendants who were not

parties to the agreement containing the forum selection clause. *See Corcovado Music Corp. v.

Hollis Music, Inc. et al.*, 981 F.2d 679 (2nd Cir. 1992). In *Corcovado*, the Court drew upon the

following illustration in making their decision not to enforce a forum selection clause upon a

defendant who was not a party to he agreement:

> Buyer 1 buys a house and proceeds to move in. Buyer 2 is already there and says:
> "You can't move in. Seller sold *me* this house a month ago." Buyer 1 replies,
> "Really? We'd better go to court," to which Buyer 2 answers: "Yes, but in *Brazil,*
> because when *I* bought the house from Seller, we put in a forum-selection clause.
> See you in Brazil." In this example, the essence of Buyer 1's claim is: "My deed
> is valid; you're interfering with my right of ownership." Buyer 2 wants to rewrite
> Buyer 1's claim as if it were based on a contract between Buyer 2 and Seller.

*Id.* at 683. Similarly, here, Riverdeep seeks to assert a contract provision which SDCA was not a

party to, SDCA did not assume any obligations under, and by its own terms, expired upon the

Assignment for the Benefit of Creditors. *See* Amended Complaint at ¶ 20.

More instructive is *Cheever v. Academy Chicago Ltd.*, 685 F. Supp. 914 (S.D.N.Y. 1988),

in which the court held that a forum selection clause in a publishing agreement did not apply

because the plaintiff was not "attempting to assert contractual rights arising from that

agreement." *Id.* at 917. "The *Cheever* case illustrates that where a plaintiff sues for copyright

infringement and asserts no rights under a contract with the defendant containing a forum-

selection clause, the forum-selection clause <u>has no effect</u>." *Corcovado Music Corp.*, 981 F.2d at

682 (emphasis added).

Similarly here, Riverdeep has not asserted any contractual claims arising from the 2002

Agreement against SDCA. Paragraph 10.7 of the 2002 Agreement contains the relevant forum

selection clause and provides that the "validity, construction or performance" of the 2002

Agreement will be governed by Massachusetts law. Riverdeep's claims against SDCA do not

13

concern the "validity, construction or performance" of the 2002 Agreement. Moreover,

Riverdeep does not assert any claims against SDCA "in connection with" the 2002 Agreement.

Thus, the forum selection clause does not apply to SDCA and cannot be used as the sole basis for

venue.

Riverdeep cannot meet its burden of establishing proper venue. In this case, the Southern

District of California is the only appropriate venue: (1) all of the defendants reside in San Diego,

California, (*See* Amended Complaint at ¶¶ 7-14); (2) San Diego, California is the location of a

substantial part of the events that give rise to the claim, (*See generally* Amended Complaint); and

(3) all of the assets that are subject of the action are situated in San Diego, California (*See*

Amended Complaint at ¶ 34).

### RIVERDEEP'S CAUSES OF ACTION AGAINST SDCA, AS ASSIGNEE FOR THE BENEFIT OF CREDITORS OF SOMC, FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

"In ruling on a Rule 12(b)(6) motion, a court must 'accept all well-pled averments as

true, and draw all reasonable inferences therefrom in [the plaintiff's] favor.'" *Remco*

*Distributors, Inc. v. Oreck Corp.*, 814 F. Supp. 171, 173 (1st Cir. 1992), *quoting Dartmouth*

*Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989). A court must decide whether the

facts alleged, if true, would entitle the plaintiff to a legal remedy. *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957). Although the standard is liberal, a Court need only accept as true "well-pleaded

factual allegations." *Papasan v. Allain*, 478 U.S. 265, 283 (1986) ("Although... we must take all

the factual allegations in the complaint as true, we are not bound to accept as true a legal

conclusion couched as a factual allegation.") "However, a plaintiff may not rely merely upon

'bald assertions' or 'unsupportable epithets' to establish its claims; a plaintiff must set forth in its

complaint 'factual allegations, either direct or inferential, regarding each material element

14

necessary to sustain recovery under some actionable legal theory.'" *Remco Distributors*, 814 F. Supp. at 173, *quoting Dartmouth Review*, 889 F.2d at 16.

Additionally, a court is "not constrained to accept allegations clearly refuted by that which the court can judicially notice." *Powers v. United States*, 996 F.2d 1121, 1125 (11th Cir. 1993). Therefore, a Rule 12(b)(6) dismissal is proper where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 801 F.2d 696, 699 (9th Cir. 1990). In this case, Riverdeep's Amended Complaint suffers from both of these defects.

## COUNT TWO OF RIVERDEEP'S AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST SDCA FOR COPYRIGHT INFRINGEMENT

Riverdeep's Count Two alleges that "SDCA sold Logetics 425,000 CDs, including Riverdeep software, in violation of Riverdeep's copyrights in an asset sale agreement that reflects SDCA's willful and knowing violation of Riverdeep's copyrights." *See* Amended Complaint at ¶¶ 62-63. Dismissal of Count Two is proper under Rule 12(b)(6) because there is "a lack of any cognizable legal theory" to support Count Two as pleaded as well as "an absence of sufficient facts alleged" to support Count Two. *Balistreri*, 901 F.2d at 699.

Riverdeep alleges that SDCA's involvement in these affairs is related to "at least 425,000 CDs, many of which, upon information and belief, were Riverdeep titles, and the associated marketing and packaging materials." *See* Amended Complaint at ¶ 30. Riverdeep admits that these CDs were manufactured under licenses that expired March 1, 2004 and September 30, 2004. *See* Amended Complaint at ¶ 2. The acts involving SDCA as they relate to the CDs in question occurred February 24, 2004, while the 2002 Agreement was in full force. *See* Amended Complaint at ¶ 28. Thus, Riverdeep admits that the CDs in question were legitimately

15

manufactured under the 2002 Agreement and 2004 Agreement. *See, e.g.*, Amended Complaint at ¶ 1 ("Riverdeep permitted SOMC and Logetics limited rights to manufacture and sell ...").

Riverdeep fails to assert that SOMC was contractually obligated to do anything with its legally manufactured inventory of CDs, e.g. destroy the manufactured CDs. *See* Amended Complaint at ¶27. In addition, Riverdeep fails to assert that SOMC was prohibited from making the Assignment for Benefits of Creditors. *See generally* Amended Complaint. Riverdeep only asserts that upon expiration of the 2002 Agreement on March 1, 2004, "SOMC and Logetics were obligated to return all Riverdeep proprietary information, including the gold master disks, and cease distribution of Riverdeep products within 180 days."[5] *See* Amended Complaint at ¶ 27.

The assignment to SDCA took place five days prior to the expiration of the 2002 Agreement. As pleaded, SDCA took possession of assets, i.e. the material object CDs that included CDs legitimately manufactured under a license between Riverdeep and SOMC and various marketing and packaging materials. *See* Amended Complaint at ¶ 28. "Ownership of a copyright... is distinct from ownership of any material object in which the work is embodied." 17 U.S.C. § 202. "[T]he owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright right owner, to sell or otherwise dispose of that copy or phonorecord." 17 U.S.C. § 109(a). Though the CDs may have embodied Riverdeep's intellectual property in which one or more

---

[5] 17 U.S.C. § 101 defines various terms used in the federal copyright statute; however, the term "distribute" is not among them. *In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 636 (E.D.Pa. 1999) (dealing with musical recordings and phonorecords). Although ¶ 62 of the Amended Complaint concludes that "SDCA never had a right to distribute or sell Riverdeep software," as pleaded, Riverdeep does not allege that SDCA violated Riverdeep's distribution rights under 17 U.S.C. §106(1).

16

copyrights exist, SDCA was within its rights to sell or otherwise dispose these material object CDs to any other it chose as a sale of a material object. In fact, as pleaded, such a "sale" did not necessarily incorporate a "sale" of the software embedded in the CDs, as the "sales" were also alleged to include marketing and packaging materials and CDs which did not contain Riverdeep's software. *See* Amended Complaint at ¶ 30. Therefore, SDCA, as assignee of SOMC, was a legitimate seller of a material object, CDs. Riverdeep has not pleaded a cause of action for copyright infringement and the action should be dismissed, with prejudice, since Riverdeep cannot plead facts sufficient to remedy its deficient Amended Complaint.

Even if Riverdeep overcomes the hurdle of establishing that the "sale" of SOMC's assets by SDCA included a sale of Riverdeep's software embodied within the CDs, SDCA is further protected from any liability for copyright infringement under the "first sale" doctrine.

"Under the first sale doctrine, embodied in § 109(a) of the Copyright Act, 17 U.S.C. § 109(a), a sale of a 'lawfully made' copy terminates the copyright holder's authority to interfere with subsequent sales or distribution of that particular copy." *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 480 (9th Cir. 1994) (emphasis added). "Section 109(a) thus provides a defense to liability under § 106(3) for lawful purchasers of copies of copyrighted materials, so long as the copies were 'lawfully made under this title.'" *Id.* (emphasis added) Accordingly, "[a]fter the first sale of a copyrighted [sic] item 'lawfully made under [the Copyright Laws],' any subsequent purchaser, whether from a domestic or a foreign reseller, is obviously an 'owner' of that item." *Quality King Distributors, Inc. v. L'Anza Research International, Inc.*, 523 U.S. 135, 145 (1998). "Read literally, § 109(a) unambiguously states that such an owner 'is entitled, without the authority of the copyright owner, to sell' that item." *Id.* "The words 'lawfully made under this title' in § 109(a) grant first sale protection only to

17

copies legally made and sold in the United States." *BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991), *cert. denied*, 505 U.S. 1206 (1992).[6]

Riverdeep acknowledges that the CDs in question were manufactured under license. *E.g.*, Amended Complaint at ¶ 1. Thus, the CDs were "lawfully made." If sold at all, the materials containing the software subject to copyright were "sold" in the United States. *E.g.*, Amended Complaint at ¶ 63. Riverdeep does not allege that SDCA made further copies, but only alleges that SDCA further sold just those legitimately manufactured copies it had purchased. *See* Amended Complaint at ¶ 63. Therefore, should the transaction be considered a sale involving software, the first sale doctrine applies to defeat the claim.

As no liability exists under the Copyright Law, 17 U.S.C. §101 *et seq.* as pleaded, Count Two must be dismissed with prejudice. Fed. R. Civ. P. Rule 12(b)(6).

## COUNT FOUR OF RIVERDEEP'S AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST SDCA FOR FRAUDULENT CONVEYANCE

The Uniform Fraudulent Transfer Act is contained at California Civil Code §3439 through 3439.12. Although it is a California statute, the law itself specifically provides that it is to be interpreted "to effectuate its general purpose to make uniform the law . . . among states

---

[6] "An owner of a copy of software has certain rights under the Copyright Act which a mere possessor does not." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 n9 (9th Cir. 1989), citing 17 U.S.C. § 109(a) (right to sell or dispose of owned copy). Riverdeep does not allege that SOMC could not sell the CDs material or its packaging or its marketing materials. Riverdeep only states that "[u]pon information and belief, this assignment included SOMC's rights in the 2002 Agreement and Riverdeep software in SOMC's inventory at that time." (Amended Complaint at ¶ 28). Although it may be true the SDCA could not manufacture these CDs, there is no allegation that SDCA manufactured the CDs or did not come to own the legitimately manufactured CDs. 17 U.S.C. § 109(d) (privilege of selling copy does not "extend to any person who has acquired possession of the copy . . . from the copyright owner, by rental, lease, loan, or otherwise, without acquiring ownership of it").

18

enacting it." *See*, California Civil Code §3439.11.[7] Under the Uniform Fraudulent Transfer Act,

there are essentially two types of fraudulent transfers, one involving actual fraudulent intent, or

mens rea, and the other involving a transfer with no fraudulent intent but which has the effect of

prejudicing creditors. The provision governing actual intent to hinder, delay or defraud is

codified in California Civil Code, §3439.04(a)(1). Constructive fraudulent transfers are

governed by California Civil Code §3439.04(a)(2). Specifically §3439.04 provides that:

> (a)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (1)    With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> (2)    Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>
> (A)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (B)    intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.    Transfers under 3439.04(a)(2) are referred to as "constructively" fraudulent since actual fraud is not involved

---

[7] SDCA asserts that California Civil Code is applicable given that all parties to the litigation resided in California, and the alleged transfers took place in California. *See generally* Amended Complaint at ¶¶ 7-14, 28-29, 34. Moreover, the Asset Purchase Agreement specifically provides that "This Agreement shall be governed by and construed in accordance with the laws of the State of California, without reference or regard to the principles of conflict of laws" See Asset Purchase Agreement, page 3, ¶ 8.2.

A third type of constructively fraudulent transfer is provided for under California Civil

Code §3439.05 which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor whose claim arose before the transfer is made or the
> obligation was incurred if the debtor made the transfer or incurred
> the obligation without receiving a reasonable equivalent value in
> exchange for the transfer or obligation and the debtor was
> insolvent at the time or the debtor became insolvent as a result of
> the transfer or obligation.

### **Riverdeep Fails to State a Claim for Constructive Fraudulent Conveyance**

A critical element necessary to establish a constructive fraudulent conveyance is that the

transfer is made without receiving reasonably equivalent value in exchange for the transfer. Cal.

Civ. Code §3439.04(a)(2).  Riverdeep alleges at ¶ 28 of its Amended Complaint that SOMC

"purported to assign all its interests in its assets to SDCA for one dollar" as evidence that the

transfer was for less than reasonably equivalent value. This allegation evidences nothing more

than an ignorance of the remedy of an assignment for benefit of creditors.

California law specifically recognizes that :

> An assignment for the benefit of creditors is a business liquidation
> device available to an insolvent debtor as an alternative to formal
> bankruptcy proceedings.

*Credit Managers Association of Southern California v. National Independent Business Alliance*,

162 Cal. App. 3d 1166 (1984).  Assignments in California are "governed by common law as

applied by the California decisions." *Id.* at 1170. It has long been held that the assignment of

the entire assets of the debtor made for the benefit of creditors "is supported by consideration

(the indebtedness to the creditors) and vest[s] the title in the assignee as a trustee for all

creditors." *G.W. Brainard v. W.J. Fitzgerald*, 3 Cal. 2d 157, 163 (1935); *Jarvis v. Webber*, 196

Cal. 86 (1925).  Therefore, as admitted in Riverdeep's Amended Complaint, SOMC did receive

reasonably equivalent value in exchange for the transfer to SDCA since SOMC's "transfer" of

20

BOS\131570.1

assets to SDCA was through a general assignment for the benefit of creditors to SDCA, as the assignee. *See* Amended Complaint at ¶¶ 76 and 77. Riverdeep cannot establish an essential element of a constructive fraudulent conveyance because as a matter of law the transfer of assets was for reasonable consideration.

### Riverdeep Fails to State a Claim for Actual Fraudulent Conveyance

It is unclear whether the Amended Complaint seeks to assert an intentional fraudulent conveyance as to SDCA. Assuming that it does, Riverdeep's claim fails as a matter of law. The intent to hinder delay and defraud creditors requires a factual allegation that the assets are transferred-- that is, they are taken out of reach of execution by creditors. Cal. Civ. Code §3439.04(a). The very nature of the assignment for benefit of creditors prevents such a factual assertion.

California law recognizes the value of the assignment for benefit of creditors and in fact specifically recognizes that transfer of assets through an assignment for benefit of creditors is exempt from the general presumption of a fraudulent transfer where the assets are transferred without corresponding transfer of immediate possession. Specifically, California Civil Code §3440 provides:

> (a) Except as otherwise provided in this Chapter, every transfer of personal property made by a person having at the time the possession of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the property, is void as against the transferor's creditors (secured or unsecured) at the time of the transfer and those who become creditors while the transferor remains in possession and the successor in interest of those creditors, and as against buyers from the transferor for value in good faith subsequent to the transfer.

The California legislature, in recognizing the procedure for a general assignment for benefit of creditors, enacted §3440.1, which excepted certain transactions from the general

21

presumption of a fraudulent conveyance where property is transferred but the transferee remains

in possession. This section provides:

> This Chapter does not apply to any of the following:. . . (e) a
> transfer or assignment made for the benefit of creditors generally
> or by any assignee acting under an assignment for the benefit of
> creditors generally, which would otherwise require immediate
> delivery and possession of assigned assets.

Pursuant to the statutory scheme governing fraudulent conveyances and assignment for benefit of

creditors, SDCA's acceptance of the assets through the assignment is not fraudulent under §3440

of the California Civil Code and the transfer of assets was supported by consideration as a matter

of law. *See Brainard*, supra.

Riverdeep also cannot establish the essential element of a cause of action for fraudulent

conveyance, namely, that there were no remaining assets to satisfy the obligations to Riverdeep.

The very nature of the assignment allows for satisfaction of creditors' claims in connection with

the liquidation of the assets transferred. The assignment does not take the assets away from

creditors, it provides for a method of liquidation of the assets to pay creditors who file claims.

Finally, Riverdeep has not alleged, nor can it allege facts to support intent to hinder,

delay or defraud on the part of SDCA since the assets were transferred to SDCA as an assignee

to hold in trust and liquidate for the benefit of all creditors, including Riverdeep.

## Riverdeep Is Estopped From Challenging The Assignment Given It Filed A Proof of Claim With SDCA

Riverdeep acknowledged the Assignment for Benefit of Creditors and filed a Proof of

Claim with SDCA. Therefore, it is estopped from challenging the assignment. The rights of

creditors with regard to the assignment are generally governed by the terms of the assignment.

*Harrington v. Taylor*, 176 Cal. 802 (1917). Most significantly, it is well settled that "a creditor

who files his claim under an assignment, in a manner prescribed by law, thereby waives all

22

objections to the regularity of the assignment and to the title of the assignee of assets." *Lacy v.*

*Gunn*, 144 Cal. 511, 516 (1904). Riverdeep admits at ¶ 37 of its Amended Complaint that it

learned about SOMC's assignment to SDCA in July 2004 and admits it received SDCA's March

18, 2004 creditor bulletin advising creditors of where and when to file claims. Riverdeep has not

alleged that it did not file a claim with SDCA.

As acknowledged in *Lacy*:

> Whatever may be the legal status of creditors who have not availed
> themselves in any manner of the assignment, or the benefits to be
> derived therefrom, the plaintiff, by making proof of his claim,
> delivering it to the assignee, and thereafter, although notified of the
> fact of its allowance, permitting it to stand as a proofed up claim
> against the estate, has, in law, accepted the instrument, and barred
> himself from disputing its validity, or from taking any action
> which will defeat its purpose as a transfer of the property in
> question to the assignee. *Lacy*, 144 Cal. at 516.

The Court went on to state that:

> It is well settled that where one comes in under the assignment
> proceedings in such a way as to entitle himself to a share in the
> dividend arising from the assets in the hands of the assignees, he
> waives all objections to the title of the assignees to such assets.
> *See, Lacy*, at 144 Cal. 516.

Riverdeep has not and cannot establish at least two essential elements of the claim of

fraudulent conveyances as against SDCA, and therefore, the claim should be dismissed.

### Riverdeep Has Not Asserted That It Sustained Any Damages

The lack of any ability for Riverdeep to assert a claim are even more compelling when

the Court focuses on the specific facts of this case as described in Riverdeep's Amended

Complaint which can only lead to one conclusion. Riverdeep has sustained no damages.

Riverdeep acknowledges that SOMC and defendant Logetics were co-licensees under the same

license agreement. *See* Amended Complaint at ¶¶ 2, 5, 18, 52. Riverdeep acknowledges that

23

SOMC and Logetics were jointly and severally liable for the minimum royalty obligations. *See* Amended Complaint at ¶¶ 18, 20-25. Riverdeep acknowledges that the master discs were delivered to Logetics and SOMC, collectively. *See* Amended Complaint at ¶¶ 1, 3. Riverdeep acknowledges that by virtue of the sale of the SOMC assets to Logetics, the very assets that Riverdeep is claiming were put out of its reach, were left with the co-licensee, co-obligor, Logetics. *See* Amended Complaint at ¶ 5.

Further, Riverdeep did not terminate the relationship with SOMC or Logetics when it had the ability to do so. Notwithstanding its knowledge that SOMC had gone out of business, that SOMC and Logetics, jointly as the OEM, owed Riverdeep in excess of $1 million dollars under the expired 2002 Agreement, Riverdeep admits that it continued to do business with Logetics, including entering into a subsequent license agreement, the 2004 Agreement. *See* Amended Complaint at ¶¶ 26, 27, 39. The 2002 Agreement specifically contemplated the possibility of a general assignment for benefit of creditors and provided for a remedy in the event that an assignment was effectuated by the licensee. *See* Amended Complaint at ¶ 2; *see* 2002 Agreement at ¶ 6(c)(2) which provides:

> 6.1 Termination
>
> Either party may terminate this agreement, effective immediately upon written notice, under the following circumstances: . . . (e) if OEM should: . . .(2) make a general assignment for the benefit of creditors . . ..

Riverdeep's remedy upon SOMC's Assignment for Benefit of Creditors was to terminate the 2002 Agreement and file a claim in the assignment case. All of the assets that were available to satisfy Riverdeep's claim remained available for execution by Riverdeep both before and after the Assignment for Benefit of Creditors and subsequent sale to Logetics. The alleged transfer to SDCA and subsequent sale to Logetics failed to result in any changed position for Riverdeep as

24

to assets available to satisfy its claim. Therefore, it suffered no damages as a result of the transactions described in the Amended Complaint as they involved SDCA.

Finally, Riverdeep cannot establish any damages since it filed a claim in the assignment case and positioned itself (subject to SDCA's objections to its claim) to share, along with other legitimate creditors, in the funds received from the sale to Logetics, assuming that the administrative and other priority claims leave any remaining funds for general unsecured creditors such as Riverdeep. Moreover, because the sale was to Logetics, all of the assets transferred through the assignment remained available to execute upon by Riverdeep as the assets were sold to the co-licensee, co-obligor, Logetics. Count Four for fraudulent conveyance as to SDCA should be dismissed as a matter of law for failure to state a claim.

## COUNT EIGHT OF RIVERDEEP'S AMENDED COMPLAINT FOR CLAIM OF BREACH OF FIDUCIARY DUTY AS TO SDCA FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Riverdeep asserts six alleged breaches of SDCA's duty to it as a creditor in the Assignment for Benefit of Creditors. The alleged breaches are internally inconsistent with the allegations in the Amended Complaint and fail to state a claim for breach of duty.

First, Riverdeep alleges that SDCA breached its duty when it "knew or should have known that the assignment for the benefit of creditors was a fraudulent transaction." *See* Amended Complaint at ¶105. As discussed in detail above, the Assignment for Benefit of Creditors is not a fraudulent transaction as a matter of law. Moreover, at the time of the transaction, SDCA owed no duty to Riverdeep. It was not until after the assignment took place that the duty arose. Finally, Riverdeep's assent to the assignment through filing of the claim acts as estoppel from challenging the assignment as a matter of law. *See Lacy v. Gunn*, 144 Cal. 511 (1904).

25

Second, Riverdeep claims that SDCA breached its duty when it engaged in an assignment whereby SOMC transferred to SDCA Riverdeep's software in violation of the 2002 Agreement. However, the assignee takes title solely to the property assigned and of that property takes title only to the property which the debtor could have legally transferred or conveyed. *Peterson v. Ball*, 211 Cal. 461, 470 (1931) ("The assignee takes only such property of the assignor as the latter may legally convey or assign.") The assignee has only the rights in the property which the debtor had. *Moore v. Snyder*, 196 Cal. 380 (1925) ("[The assignee] took only the interest of the assignor in and to the property and can assert no claim to property which the assignor might not.") Whether or not SOMC was in breach of the 2002 Agreement by assigning its rights to SDCA does not allege facts that rise to a breach of fiduciary duty of SDCA. Moreover, the fiduciary duty to the creditors does not arise until after the assignment takes place. SDCA through the assignment takes the assets in trust with the duty to maximize their value and liquidate the assets for the benefit of all creditors, including Riverdeep. Acceptance of the assignment is not a breach of fiduciary duty since SDCA owed no duty prior to the assignment and SDCA was not a party to the 2002 Agreement, a agreement that expired on its own terms five days after the assignment and sale.

Third, Riverdeep asserts that SDCA breached its duty when it sold SOMC's assets, including the 425,000 CDs and associated marketing and packaging materials, for a fraction of their worth. Riverdeep's argument is internally inconsistent with its allegations in the Amended Complaint. Riverdeep appears to be alleging that SDCA should have charged more for the sale of the CDs yet argues at paragraph 62 of its Amended Complaint that SDCA "never had a right

26

to distribute or sell Riverdeep's software."[8] If true, the CDs had only nominal, scrap value as

Riverdeep claims that no one other than SOMC had the right to sell the CDs with the

copyrighted material on the CD. Therefore, its allegation that SDCA breached its duty by not

obtaining a higher price is inconsistent with its allegations that SDCA had no right to sell the

CDs. It also ignores the fact that the sale to Logetics did not include the 2002 Agreement.

The Asset Purchase Agreement between SDCA and Logetics specifically included a

provision that Logetics, the buyer, would be required to negotiate a license agreement with

Riverdeep if it were to sell the software products to third parties and it could not sell the CD

ROMs until it had proper license. Specifically, the Asset Purchase Agreement provides:

> 3.2 Without limiting the provisions of section 3.1 or any other
> provision of this Agreement, Buyer acknowledges that the sale
> and/or other distribution of the Titles are subject to license
> agreements which are not being transferred to Buyer by SDCA,
> that Buyer shall not be entitled to sell or distribute such Titles
> without appropriate licenses and that Buyer assumes responsibility
> for obtaining all required licenses, other agreements and permits as
> may be required so that Buyer may lawfully sell and/or distribute
> the Titles. Buyer further acknowledges that the Publishers may
> from time to time revoke authorization to sell and/or distribute
> Titles or portions thereof and require the provision of Certificates
> of Destruction or similar documentation evidencing destruction of
> such Titles

Additionally, Logetics was specifically obligated at ¶ 2.3 of the Asset Purchase

Agreement to:

> . . .assumes and agrees (and shall be deemed to have assumed and
> agreed) to perform all obligations of SOMC (and SDCA (if any)),
> whether under license agreements, contracts or otherwise, to
> destroy and compact disks and/or CD ROM software or programs
> (collectively the "Titles") transferred to Buyer by SDCA which are
> no longer authorized for sale or distribution and to provide to the

---

[8] As set forth in this Motion, SDCA believes that the Count Two against SDCA fails as a matter
of law.

27

> applicable publishers ( the "Publishers") Certificates of destruction
> or similar documents as required by such Publishers evidencing
> and/or certifying such destruction.

*See* Exhibit B to Schwartz Affidavit, and footnote 4 above. Riverdeep's claim that the assets

should have been sold for more fails as a matter of law based upon its own admissions in the

Amended Complaint that absent a license there was no market for the CDs and related marketing

materials other than salvage value which is exactly the value sold to Logetics with admonition

that Logetics obtain a valid license with Riverdeep. *See* Asset Purchase Agreement. Riverdeep

simply cannot state a claim for breach of fiduciary duty since Riverdeep asserts that absent a

license agreement the CDs have de minimus value other than as scrap, as admitted by Riverdeep.

Fourth, Riverdeep alleges that SDCA breached its duty when it failed to maximize the

SOMC estate by not opening the sale of SOMC's assets to the public. This fails for the same

reasons as stated above. Moreover, the failure to hold a "public" auction is not a breach of

fiduciary duty. An assignee is not required to hold a public auction. In fact, pre-arranged sales

are a well recognized method of liquidating assets in an assignment for benefit of creditors. *See*

American Bankruptcy Institute, *General Assignments for the Benefit of Creditors, A Practical*

*Guide*, Geoffrey L. Berman, Development Specialists, Inc. (a copy of the relevant pages of this

ABI publication are attached at Exhibit A for the Court's convenience). There is no breach of

duty to creditors as a matter of law to make a negotiated sale to a pre-arranged buyer in the

context of liquidation of inventory, fixtures and equipment. Riverdeep has not alleged any facts

that support any allegation that SDCA did not exercise reasonable business judgment in selling

the assets to Logetics. To the contrary, all of Riverdeep's allegations emphasize that the CDs

had no value because they could not be sold without entering into a license with Riverdeep.

Therefore, Riverdeep fails to state a claim for breach of fiduciary duty.

Fifth, Riverdeep alleges that SDCA breached its duty when it violated Riverdeep's

28

copyright by selling Riverdeep's software without a valid license. Once again, Riverdeep's arguments are internally inconsistent. First, the CDs were sold to Logetics, a party with a valid license as admitted by Riverdeep in the Amended Complaint at ¶¶ 1, 18 - 22, and 27. Moreover, SDCA's fiduciary duty to Riverdeep was to maximize the value of the assets. There is no fiduciary duty to comply or not comply with the terms of a license agreement to which it was not a party.[9]  SDCA did not sell the 2002 Agreement and specifically advised the buyer, Logetics, that it could not dispose of the CDs without negotiating a license with Riverdeep. *See* Asset Purchase Agreement at ¶¶ 3.2 and 2.3 quoted, *supra*. Absent a duty, there can be no breach. Riverdeep has not alleged any facts that support any argument that SDCA had a fiduciary duty to comply or not comply with copyright laws in connection with the liquidation of assets.

Finally, Riverdeep asserts that SDCA breached its fiduciary duty by failing to give Riverdeep notice of the Assignment for the Benefit of Creditors in an accurate and timely manner. SDCA acted in compliance with its statutory obligations. Specifically, California Code of Civil Procedure §1802(a) provides

> In any general assignment for benefit of creditors as defined in §493.010, the assignee shall, within thirty days after the assignment has been accepted in writing, give written notice of the assignment to the assignor's creditors, equity holders and other parties and interest as set forth on the list provided by the assignor pursuant to subdivision (c):.....(c) the assignor shall provide to the assignee at the time of the making of the assignment a list of creditors, equity holders, and other parties and interest, signed under penalty of perjury, which shall include the names, addresses, cities, states and zip codes, for each person together with the amount of that person's anticipated claim in the assignment proceedings.

Riverdeep admits that SOMC provided SDCA with an address for Riverdeep and admits

---

[9] Even if such a duty existed to comply with copyright laws, SDCA did just that as described more fully in connection with SDCA's request to dismiss Count Two for failure to state a claim.

29

that the address provided was its lockbox address and therefore a valid address. *See* Amended
Complaint at ¶ 37. It also admits that it did receive notice set forth at ¶ 37 of its Amended
Complaint. Therefore SDCA provided the notice as required by statute at an address
acknowledged by Riverdeep and no breach of fiduciary duty occurred.

In addition to failing to assert any breach of any fiduciary duty, Riverdeep cannot
establish any damages as a result of any of the alleged breaches since all of the assets, as
admitted by Riverdeep, went directly to Logetics, the co-licensee and co-obligor of the debt
owed under the 2002 Agreement. Therefore, none of the assets were taken out of the reach of
Riverdeep for execution in connection with the indebtedness owed by SOMC and Logetics under
the 2002 Agreement and the claim fails as a matter of law and must be dismissed.

## RIVERDEEP FAILS AT COUNT 9 OF ITS AMENDED COMPLAINT TO ASSERT A CLAIM FOR DECLARATORY RELIEF AGAINST SDCA.

In order to assert a claim for declaratory judgment Riverdeep must assert a case in
controversy.[10] *Biogen, Inc. v. Amgen, Inc.*, 913 F. Supp. 35, 37 (D. Mass 1996) ("a federal
court's power to resolve disputes is limited to actual controversies"). Riverdeep simply claims
that the 2002 Agreement prohibits assignment without the express consent of Riverdeep. First,
Riverdeep is incorrect; paragraph 10.3 of the 2002 Agreement allows assignment without
consent "upon the merger of OEM or the sale of OEM's business." Moreover, Riverdeep admits
that the 2002 Agreement expired of its own terms on March 1, 2002, five days after the

---

[10] A case of actual controversy is required under the Declaratory Judgment Act, 28 U.S.C. §
2201(a): "in a case of actual controversy within its jurisdiction, . . . any court of the United
States, upon the filing of an appropriate pleading, may declare the rights and other legal relations
of any interested party seeking such declaration, whether or not further relief is or could be
sought . . . ."

30

Assignment for Benefit of Creditors and so there remains nothing to comply with. Finally,

Riverdeep is aware that the Asset Purchase Agreement between SDCA and Logetics did not

purport to sell or transfer any rights under the 2002 Agreement. *See* Schwartz Affidavit at

Exhibit B. The 2002 Agreement was specifically an excluded asset in connection with that sale.

*Id.* Therefore, there is no case in controversy and the request for declaratory relief fails as a

matter of law.

## RIVERDEEP'S CLAIMS AGAINST SDCA ARE BARRED BY THE DOCTRINE OF LACHES.

Even if the Court rules that Riverdeep has stated a claim and that the mater is properly

before the Court for decision, the Amended Complaint should be barred by the doctrine of

laches.[11] The doctrine of laches is based upon the principle that the moving party is barred from

seeking relief because it has unreasonably delayed in asserting its rights to the prejudice of the

other party. *Stone v. Williams*, 873 F.2d. 620, 623 (2nd. Cir. 1989). When considering whether

the laches defense should be sustained, "the court balance[s] plaintiff's delay against the

prejudice suffered by the defendants by virtue of the delay." *Merchant v. Lymon*, 828 F.Supp.

1048, 1053 (S.D.N.Y. 1993). "The answers to these questions are to be drawn from the equitable

circumstances peculiar to each case." *Stone*, 873 F.2d. at 623-624. "[T]he existence of laches is

a question primarily addressed to the discretion of the trial court, the matter should not be

determined merely by a reference to and a mechanical application of the statute of limitations."

*Gardner v. Panama R. Co.*, 342 U.S. 29, 30-31.

---

[11] Courts have embraced the concept of dismissal on laches grounds in certain circumstances. For example, the Supreme Court of New York has granted motions to dismiss with similar delays noted in the record. *See In the Matter of Richard E. Kaplan v. State of New York*, 202 A.D. 2d 742 (1994).

Riverdeep admits in the Amended Complaint that it was aware of the Assignment for Benefit of Creditors in July 2004. It cannot deny that it filed a claim with SDCA. It also admits that it continued to do business with Logetics, the buyer, even though Logetics owed in excess of $1 million on the expired 2002 Agreement and nonetheless entered into a new license with Logetics. It also admits that it did not terminate the 2004 Agreement after it became aware of the Assignment for Benefit of Creditors.

The 2002 Agreement provided Riverdeep with a remedy against the proper parties and it chose not to exercise it in a timely fashion. *See*, 2002 Agreement §6. Rather, Riverdeep continued in its relationship with Logetics even though Logetics owed it in excess of $1 million under the 2002 Agreement when it entered into the 2004 Agreement. *See* Amended Complaint at ¶ 25. It sat on its rights for nearly a year, filed a claim with SDCA, never asserted any claims against SDCA that it improperly sold assets to Logetics, allowed the 2004 Agreement to expire and waited until the eve of a distribution to creditors in the assignment case to file its Complaint. As a result, Riverdeep's allegations are untimely and operate to unduly prejudice SDCA and the other creditors of SOMC that relied on the assignment and filed claims. The Amended Complaint should be dismissed as untimely.

BOS\131570.1

## III. CONCLUSION

For the reasons stated and based on applicable law, SDCA requests the following relief:

1.    The Amended Complaint be dismissed as to SDCA for lack of personal jurisdiction;

or

2.    The Amended Complaint be dismissed, or alternatively transferred to the United

States District Court for the Southern District of California, for improper venue; or

3.    Count 2 (copyright), Count 4 (fraudulent conveyance), Count 8 (breach of fiduciary

duty), and Count 9 (declaratory judgment) of the Amended Complaint be dismissed for failure to

state a claim upon which relief can be granted; and

4.    Any further relief as the Court deems appropriate, including the award of attorney's

fees and costs.

Respectfully submitted,

SAN DIEGO WHOLESALE CREDIT
ASSOCIATION

By its attorneys,

Daniel B. Winslow (BBO# 541972)
Christopher S. Kroon (BBO# 660286)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02110
(617) 289-9200

## CERTIFICATE OF SERVICE

I, Christopher S. Kroon, hereby certify that on June 3, 2005, I made service of the foregoing document by causing a copy thereof to be delivered, by hand, to the office of:

Irwin B. Schwartz, Esquire
Petrie Schwartz LLP
500 Boylston Street
Suite 1860
Boston, MA 02116

Matthew J. Walko, Esquire
Thomas D. Herman, Esquire
Smith and Duggan LLP
Two Center Plaza
Boston, MA 02108

and by mail, postage prepaid to the office of:

Thomas Holland
President
Software of the Month Club
1935 Camino Vida Roble
Carlsbad, California 92008

Christopher S. Kroon

BOS\131570.1