**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| Riverdeep, Inc., A Limited Liability Company,<br><br>Plaintiff<br><br>v.<br><br>SOMC Group, Inc.; Logetics, Inc.; San Diego Wholesale Credit Association; Ready, Set, Grow!; Jelly Bean Islands; Leap Ahead, and Thomas E. Holland,<br><br>Defendants | : | CIVIL ACTION NO. 05-10816-REK |

**MEMORANDUM OF LOGETICS, INC. IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

Defendant Logetics, Inc. ("Logetics") submits this memorandum of law in support of its motion to dismiss the Amended Complaint of Plaintiff Riverdeep, Inc., LLC ("Riverdeep") or to transfer this action to the more convenient forum of the United States District Court for the Southern District of California. Local Rule 7.1(B)(1).

## I. INTRODUCTION

Riverdeep commenced this action on April 22, 2005 and filed its Amended Complaint on May 17, 2005, making claims against Logetics in Count One for copyright infringement, Count Three for breach of an "OEM License Agreement (Manufacturing Rights)" dated March 28, 2002, as amended ("SOMC License") signed originally by Broderbund LLC, SOMC Group, Inc. ("SOMC") and Logetics, Count Four for fraudulent conveyance, Count Five for breach of an "OEM License Agreement (Manufacturing Rights)" dated March 28, 2004 ("Logetics License") signed by Riverdeep Inc., LLC and partially executed by Logetics, Count Six for specific

performance, and Count Seven for Logetics' alleged fraudulent inducement of Riverdeep to enter into the Logetics License.[1]

This matter arises out of a failed arrangement among three companies for the distribution of computer software: Riverdeep, which owned rights to distribute software titles; SOMC, which specialized in selling software through continuity clubs, and Logetics, which generated sales leads that could be turned in software club memberships, developed partner programs such as the Smart eStore and school and cause-related fundraising and other specialty marketing solutions for educational and productivity software, and later continuity clubs of its own. After SOMC went out of business, Riverdeep and Logetics, by agreement, sought to carry on the arrangement between themselves. The manner in which they did so shows that this dispute does not belong in this forum.

Riverdeep's claim to Massachusetts jurisdiction and venue stems from language in the pre-amendment SOMC License and the Logetics License, both of which consisted of a cover signature page or pages and Exhibit A, Exhibit B and Exhibit C, which were "incorporated by reference." Holland Aff. Ex. 1, 14. The pre-amendment SOMC License and the Logetics License at EXHIBIT B each contained the following clause:

> 10.7 Governing Law. This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the Commonwealth of Massachusetts and all claims and/or lawsuits in connection with this

---

[1] Riverdeep did not attach to its Amended Complaint those documents it claims constitute the SOMC License nor those it contends constitute the Logetics License. In Riverdeep's Affidavit of Kirsten Mellor In Support Of Ex Parte Application dated 10 May 2005 ("Mellor Aff."), Riverdeep's Legal Counsel purports to attach "true and correct" copies of the SOMC License and the Logetics License at exhibits 2 and 3 respectively. The Mellor Affidavit does not include the March 29, 2002 tying agreement, does not include any Schedule A-1 that is mentioned in Amendment No. 1 to the SOMC License dated December 30, 2002 (or a copy reflecting signatures by Riverdeep to Amendment No. 1), and does not include a copy of Amendment No. 2 to the SOMC License dated September 29, 2003. Compare Affidavit of Thomas E. Holland ("Holland Aff.") ¶¶ 6-9, Ex 1.

> Agreement must be brought in a court of competent jurisdiction within Massachusetts.

The SOMC License Amendment No. 1, in paragraph 5, and the SOMC License Amendment No. 2, in paragraph 4, however, contained the following provision about governing law:

> This amendment constitutes the entire agreement of the parties and supersedes any and all prior and contemporaneous oral and/or written agreements concerning the subject matter hereof. Except as specifically modified herein, all terms and provisions of the Agreement remain in full force and effect. **This Amendment shall be governed as a sealed instrument under California law.** Capitalized terms used in this Amendment and not defined herein shall have the same meaning as set forth in the Agreement.

(Emphasis added.)[2] Exhibit C of the Logetics License was never executed. Holland Aff. ¶ 42; Mellor Aff. Ex. 3, pg. 22 (Bates # 000115).

## II. FACTUAL BACKGROUND

On March 30, 2004, John Bartlett, Vice President for OEM Sales for Riverdeep, confirmed in an email and then in a follow up telephone call with Thomas Holland, President of Logetics, that Riverdeep was going to write-down the unpaid $1M from the SOMC License. Holland Aff. ¶ 30, Ex. 9. Bartlett proposed that Logetics enter a "basic license" (the "Logetics License") that "allows you do [sic] sell our product today" and "gets you back in business" while allowing Riverdeep to "book" $500K in revenue and suggested that Logetics and Riverdeep enter into a Consulting Services Agreement as "more the [sic] partnership." Id. This email followed up on a meeting held at Riverdeep's United States headquarters in Novato, California, between Holland and Simon Calver, Chief Operating Officer of Riverdeep, who had traveled from Ireland, and Tony Bordon, Chief Revenue Officer and former President and Chief Operating Officer of

---

[2] Amendment No. 1, ¶ 5 uses the word "supersedes," while Amendment No. 2, ¶ 4 replaces it with "supercedes." Whether Amendment No. 2 to the SOMC License by virtue of the first sentence of paragraph 4 superseded Amendment No. 1 to the SOMC License is not an issue material to this motion as both amendments had the same language that they would be governed under California law. Compare Holland Aff. Ex. 1.

Riverdeep, on March 24, 2004. Holland Aff. ¶ 24. Calver emphasized at the Novato meeting that he was not happy with the SOMC closure, but said there was a "bigger opportunity" with Logetics. Id. Calver (the number two executive at Riverdeep), Bordon (the number three executive at Riverdeep) and Bartlett all knew from conversations with Holland before negotiating the Logetics License that SOMC had gone out of business. Id. Calver said Logetics and Riverdeep would work together and Riverdeep would determine its position regarding SOMC. Id. The March 30, 2004, email and telephone conversation between Bartlett and Holland resolved what that position would be. Id. ¶¶ 30-31. At the March 24th meeting, Calver also had indicated that Tony Bordon would structure the Riverdeep/Logetics relationship. Id. ¶ 26. He said that Riverdeep would create a joint venture with Logetics where Riverdeep would receive revenue recognition to enhance its financials and Logetics would be an expense line item for management services rendered. Id. ¶ 27. Tony Bordon also confirmed at this meeting that Logetics should continue selling Riverdeep products: "Don't stop," he said. Id. ¶ 28.

The previous month, on February 5, 2004, Holland had called Riverdeep's Bartlett to let him know that the SOMC Board of Directors had voted to close down the business and requested that a meeting take place with Riverdeep. Holland Aff. ¶ 15, Ex. 4. Holland had informed Bartlett at a September 3, 2003, meeting in New York City that SOMC was in trouble financially, which had led to Amendment No. 2 to the SOMC License on September 28, 2003. Id. ¶¶ 10-11. Amendment No. 2 extended the term of the agreement to September 30, 2004, and stated it "shall be governed as a sealed instrument under California law." Id. Ex. 1.[3] Since

---

[3] Amendment No. 2 to the SOMC License extended license rights to September 30, 2004—well past the termination date for the SOMC License alleged in Riverdeep's pleadings and motion papers—which notably was the same termination date recited in the Logetics License that superseded it.

Riverdeep was now headquartered in California, Holland understood that the agreement would be governed by California law. Id. ¶ 7.

On January 27, 2004, John Rim, Chief Financial Officer of Riverdeep, had sent a fax letter to Holland as President and CEO of SOMC that SOMC's failure to comply with the payment plan and reporting requirements set forth in Amendment No. 2 to the SOMC License for the fourth quarter of 2003 constituted a material breach that had to be cured in ten days, namely, by February 6, 2004. Id. ¶ 13, Ex. 3. No mention was made of Logetics. Holland immediately called Riverdeep's Bartlett that day and told him that this would be addressed by the SOMC Board of Directors and very well would put SOMC out of business. Id. ¶ 14.

On February 24, 2004, SOMC filed its assignment to benefit creditors with the San Diego Wholesale Credit Association ("SDWCA"). Id. ¶ 17, Ex. 6. The next day on February 25, 2004, Holland called Bartlett and confirmed that SOMC had filed to close the business. Id. ¶ 18. A phone call was scheduled with Tony Bordon, id. ¶ 19, which took place the next day on February 26, 2004, id., and another phone call was to be scheduled with Simon Calver in Ireland, id. ¶ 20. A telephone conference between Holland, Bartlett, Bordon and Calver took place on March 3, 2004, to review the SOMC closure and, among other things, the interests that Logetics was going to pursue, and how it could be successful where SOMC had not been. Id. ¶ 22. Calver requested a Logetics business plan and said they would meet when he came to the United States, which took place in Novato, California on March 24, 2004. Id. ¶¶ 23-24, Ex. 8.

The draft of the Logetics License attached to the March 30, 2004, email from Riverdeep's Vice President for OEM Sales, John Bartlett, was back-dated to be entered into as of March 28, 2004. Id..¶ 32. The Logetics License provided that the attached Exhibit A, Exhibit B, and Exhibit C, were "incorporated herein by reference." Id. Ex. 14. Exhibit C to this Logetics

License stated that it was an exhibit "To OEM Agreement **Dated March 28, 2002**" (emphasis added) as an "Acknowledgement of Delivery," but no products were ever listed on that exhibit as being delivered. Id. Ex. 14. The next day, March 31, 2004, Mr. Bartlett and Mr. Holland exchanged emails in which Bartlett agreed to drop the total license fee recital to $375,000, paid in installments. Id. ¶ 34, Ex. 12. On April 1, 2004, Tony Bordon, Chief Revenue Officer of Riverdeep, emailed Holland that "We are still extremely excited about our partnership and it's [sic] potential success." Id. ¶ 35, Ex. 13.

Although Holland's signature appears on the first page of an April 13, 2004, fax copy of the Logetics License, see Mellor Aff. Ex. 3 pg. 1, the fax line of that document indicates that it is only one of two pages faxed, id. In a letter dated May 4, 2004, Pansy Dea-Dair, OEM Senior Sales Coordinator for Riverdeep, sent two unsigned copies of the twenty-two page Logetics License for Holland's "review and signature" stating: "Upon completion, please return both originals to my attention. When fully executed I shall return one copy for your files." Holland Aff. ¶ 36, Ex. 14. Exhibit C to these originals again failed to list any products in the product acknowledgement section. Id. ¶ 37.

Riverdeep's Bartlett met with Holland on May 13, 2004, and told him that Riverdeep was suffering from financial problems and that Riverdeep was challenged to make payroll and was losing software title licenses because Riverdeep was not paying its bills. Id. ¶ 38. By email of May 18, 2004, Bartlett asked Holland "Did you send out the executable version of the contract back to Pansy?" Id. ¶ 39, Ex. 15. Holland replied the next day, May 19, 2004:

> John,
>
> I did not send back the agreement because of Exhibit C. It is an acknowledgement of delivery of masters for each product as well as the other materials (i.e., artwork).

> With the amount of turnover at Riverdeep and the experience with your CFO, I can not take the risk of saying that I have titles/artwork and then saying we didn't make our payment schedule because we didn't have the titles and artwork to generate revenue.
>
> I hope you are ok with that position. We are sending payment according to schedule.
>
> Please let me know if we should discuss.

Id. ¶ 40, Ex. 16. Bartlett replied that same day stating: "**I don't blame you.**" Id. Ex. 16 (emphasis added). Neither Holland nor anyone else at Logetics ever executed Exhibit C to the Logetics License, id. ¶ 42, which was an explicit contractual condition that had not been satisfied.

In a telephone conversation in August 2004 following upon emails exchanged between August 11 to August 20, Holland told Bartlett that because Riverdeep had not delivered on its promises since many titles provided on the title list could not be distributed by Logetics as Riverdeep could not get approvals from the publishers/developers, Logetics would be willing to pay royalties to Riverdeep on a title sold or "runrate" basis only. Holland Aff. ¶ 43, Ex. 17. Holland learned on September 29, 2004, that Riverdeep's legal department (Kirsten Mellor, Vice President and General Counsel at Riverdeep) and management (William "Bill" Cunningham, Vice President, Consumer Division at Riverdeep) agreed with this payment plan. Id. ¶ 44, Ex. 18. On October 27, 2004, Bartlett confirmed that Riverdeep's Simon Calver and its Finance Department agreed to advance royalty payments based on estimated usage each month. Id. ¶ 45, Ex. 19. In Bartlett's email to Holland on November 9, 2004, Bartlett confirmed the parties' agreement because he admittedly informed Riverdeep's Simon Calver "of the fact that we are working on a runrate basis." Id. ¶ 47, Ex. 21. Nevertheless, when Bartlett informed Holland of Calver's desire for Riverdeep to be paid more money than a royalty rate based upon when a title

was sold, Holland raised the prospect of potential legal action based upon Riverdeep's non-performance. Id. ¶ 48, Ex. 22. Holland in his email to Bartlett of November 9, 2004 stated:

> This agreement was made based on the fact that top selling titles would be available to market through our channels. We have not been granted permission to market titles such as American Greetings, Weight Watchers, Scholastic, Arthur, Dr. Seuss, PBS titles, etc. These titles (based on our history of selling these titles) made up 80% of the revenue.
>
> In addition, we attempted to produce additional revenue to Riverdeep using your titles and titles that we have rights to market to your "DTC" database. This was approved and stalled by Riverdeep for over three months now.
>
> John, if Simon does not want to take responsibility for those actions resulting in Riverdeep's non-performance of our Agreement and agree to work on a runrate basis, we will need to seek Legal advice and look for another software publisher partner.

Id. Ex. 22. Then, on November 12, 2004, Riverdeep once again confirmed the parties' agreement that Logetics need pay on a "runrate," title-sold basis only:

> Tom,
>
> Simon said he will agree with the proposal below. I spoke with Kirsten our attorney this am and she will not be sending out a breach letter. So I will let finance know that we will be receiving an estimated payment early next week and we would do the same for the months going forward. . . .

Id. ¶ 49, Ex. 23. In Bartlett's email of December 13, 2004, he indicates that going forward into the next year, namely, 2005, the parties would resume quarterly royalty payments for the distribution of Riverdeep product. Id. ¶ 50, Ex. 24. As late as mid-February 2005, Bartlett acted as though the Logetics License was still in effect by emailing Terri King, Executive Vice President, Marketing for Logetics, that five important Dr. Seuss titles and two Scooby Doo titles finally had been added to the agreement. King Aff. ¶ 8, Ex. 2.

## III. RIVERDEEP HAS NOT DEMONSTRATED THAT THIS COURT HAS PERSONAL JURISDICTION OVER LOGETICS

Riverdeep fails to demonstrate adequate grounds for personal jurisdiction over Logetics. "It is the plaintiff's burden to establish that the forum court has jurisdiction over the person of the sued defendant." Alers-Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997). "To establish personal jurisdiction, [the plaintiff] must show that the Massachusetts long-arm statute grants jurisdiction and, if it does, that the exercise of jurisdiction under the statute is consistent with the constitution." Daynard v. Ness, Motley, Loadholdt, Richardson & Poole, 290 F.3d 42, 52 (1st Cir. 2002); Mass. Gen. Laws c. 223A, § 3; U.S. Const. Amend. XIV.

Three tests are available in the First Circuit to analyze whether jurisdiction lies. First is the prima facie test, in which the district court is not a factfinder, but a data collector. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). The lack of differential fact finding under the prima facie test, however, "offers little assistance in closer, harder-to-call cases, particularly those that feature conflicting versions of the facts," and thus would not be appropriate in Logetics' case if the Court were to have doubts about the merits of its dismissal motion. See id. The second option, the "preponderance-of-the-evidence" standard, "necessitates a full-blown evidentiary hearing" before trial. Id. at 146. This approach, however, is cumbersome, more costly in judicial resources and necessarily attorney fees, and because of the potential for preclusive findings may tend to deprive individuals of jury trial rights. See id.; Fed. R. Civ. P. 38; U.S. Const. Amend. VII. In this case, where the assertion of jurisdiction is bound up with the claim on the merits, the most appropriate course may be to hold an evidentiary hearing and use the "intermediate" test, also called the "likelihood standard." 46 F.3d at 146-47.

> [This test requires] factfinding rather than merely making a ruling of law regarding sufficiency of the evidence to present a fact question. Like the first and unlike the second method, however, the third method avoids potentially troubling

> issues of "issue preclusion" or "law of the case" (at least when the court denies the motion) because a determination by such an intermediate standard … does not purport to be a finding by the same standard on the same issue as will be decided at trial.

Id. at 146 (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 678 (1st Cir. 1992)). Under this standard, the court engages in "some differential factfinding, limited to probable outcomes as opposed to definitive findings of fact, thereby skirting potential preclusionary problems while at the same time enhancing the courts' ability to weed out unfounded claims of jurisdiction." Id.

Riverdeep at first alleges that at the time "the parties" entered into the SOMC License it had its United States corporate headquarters in Massachusetts. Am. Compl. ¶ 7. The Amended Complaint clarifies, however, that Riverdeep was not a party to the SOMC License at that time, but that a different company Broderbund LLC was. See Am. Compl. ¶ 1.[4] That it was located in Massachusetts when another company made a contract with a California corporation is not a relevant Massachusetts contact for jurisdictional purposes.

Riverdeep's sole other reference to personal jurisdiction and venue in the Amended Complaint is limited to the following:

> Venue is proper in this District because Logetics and SOMC entered into the Agreements signed by [defendant Thomas E.] Holland that stipulate to the application of Massachusetts law and the jurisdiction of Massachusetts courts and Riverdeep was headquartered in Massachusetts at the time the parties entered into the SOMC License. SDCA accepted assignment of the SOMC License and of Riverdeep software subject to that agreement's Massachusetts forum selection clause.

Am. Compl. ¶ 17. Riverdeep's reliance on the forum selection clause in the pre-amendment SOMC License, however, is not effective. This forum selection clause was mooted by the two

---

[4] The Annual Report on file with the Secretary of The Commonwealth of Massachusetts for the year 2000 lists a principal place of business in Massachusetts for "Riverdeep, Inc.," not the plaintiff "Riverdeep Inc., A Limited Liability Company."

subsequent amendments that supersede it and state: "This Amendment shall be governed as a sealed instrument under California law." Amendments Nos. 1 and 2 to the SOMC License, prepared by Riverdeep, clearly state that they were to be governed under California law. Moreover, it was Logetics' understanding at the time that these Amendments were executed that California law would apply. Holland Aff. ¶ 7. Since California abolished the distinction between sealed and unsealed instruments over 125 years ago, Cal. Civ. Code § 1629, the only possible purpose of the clause would be to invoke California law and supersede the prior inconsistent choice of law and forum.

A similar choice of forum clause that "supersede[d] any inconsistent provisions" in prior agreements was held in an analogous case to have supplanted an inconsistent forum selection clause. See Klinghoffer v. Mama Fu's Noodle House, Inc., No. 3-04-CV-1695-L, 2004 U.S. Dist. LEXIS 22984 *3-4, * 8 (N.D. Tex. Nov. 12, 2004) (despite that claims arose out of first agreement, and not supplemental agreement, court held that forum selection clause in the supplemental agreement trumped prior clause).

Any argument that Logetics consented to jurisdiction in Massachusetts by virtue of the Logetics License is equally unavailing. The key subpart of the Logetics License, Exhibit C, the "Acknowledgment of Delivery" of certain titles by Logetics from Riverdeep, was never executed because Riverdeep continually resisted providing the titles it had agreed to produce. In addition, Riverdeep lost any right to enforce clauses in this documents because time and again it failed deliver software titles, artwork and program approvals that it had promised and lost license rights to other prominent software titles on which the calculation of license fees had been predicated. Because Riverdeep did not fulfill a key condition to the Logetics License its choice of forum clause cannot be enforced. See Cal. Civ. Code § 1439 ("[b]efore any party to an obligation can

require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party . . . [unless excused under § 1440]"). A party complaining of a breach of contract is not entitled to recover unless he has fulfilled his obligations. E.g., Wiz Tech. Inc. v. Coopers & Lybrand LLP, 106 Cal. App. 4th 1, 12, 130 Cal. Rptr. 2d 263, 271 (2d Dist. 2003) (well settled that breach of "important condition" may excuse party from performance); Superior Motels, Inc. v. Rinn Motor Hotels, Inc., 195 Cal. App. 3d 1032, 1051-52 241 Cal. Rptr. 487, 495-96 (1st Dist. 1987) (discussing material breach factors). Riverdeep's breach of the contract, by failing to deliver the appropriate titles and making performance by Logetics impossible, excused Logetics' performance under the contract and renders any forum selection clause unenforceable.

Riverdeep has failed to allege any other contacts between Logetics and this forum in its Amended Complaint. No allegation is made as to what contacts that Logetics had with Massachusetts, be they continuous, systematic or otherwise, at the time of suit, or at some other time, or that such contacts satisfy Massachusetts' long-arm statute. Thus it has not established that this court has general or specific jurisdiction over Logetics. U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) ("it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution").

## IV. VENUE IS NOT PROPER IN MASSACHUSETTS

A motion to dismiss based on improper venue under Fed. R. Civ. P. 12(b)(3) places the burden on the plaintiff to demonstrate that it has brought the action in a permissible forum. Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979). A venue challenge

invokes the same procedures as those used under Rule 12(b)(2). Cashman Equip. Corp. v. Kimmins Constr. Corp., No. 03-10463, 2004 U.S. Dist. LEXIS 44 (D. Mass. Jan. 5, 2004) (citing Salisbury Cove Assoc. v. Indcon Design, 211 F. Supp. 2d 184, 187-88 (D. Me. 1995)); see discussion supra Section III for those procedures. Significantly, in a case with multiple claims, "plaintiff has the burden of establishing that venue is proper as to each claim." Bearse v. Main St. Inv., 170 F. Supp. 2d 107, 116 (D. Mass. 2001) (Collings, M.J.) (citing VDI Tech. v. Price, 781 F.Supp. 85, 92 (D.N.H. 1991)). Riverdeep cannot establish that venue is proper for its copyright or fraud claims.

In "federal question" litigation, venue is proper only in the district in which all defendants reside or the district in which the claim arose. 28 U.S.C. 1391(a), (b). See 15 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3804 at 30 (West 1986 & Supp. 2004). For copyright actions, see 17 U.S.C. § 101 et seq., Am. Compl. ¶¶ 51-60, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Here there is no diversity of citizenship between the parties, all parties being citizens of California, so Riverdeep must comply with 28 U.S.C. § 1391(b)(1) or (b)(2), but Massachusetts is neither " (1) a judicial district where any defendant resides …" nor is it "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." None of the alleged unlawful conduct is alleged to have occurred here and none of the defendants reside in Massachusetts; rather all reside in the greater San Diego, California area, Am. Compl. ¶¶ 7-14, part of the Southern District of California. Venue for alleged claims of copyright infringement, fraudulent inducement and deceit committed by a California corporation, in California and harming a business located at the time of harm in California may not be laid in a

jurisdiction over 3,000 miles distant, whether these claims are considered on their own footing or as part of some breach of contract controversy. See Bearse, 170 F. Supp. 2d at 116. Dismissal is warranted for improper venue.[5]

## V. RIVERDEEP'S FRAUD CLAIMS SHOULD BE DISMISSED

Riverdeep's Amended Complaint alleges two counts based on fraud, each of which must be stated with particularity. Fed. R. Civ. P. 9(b); Zahn v. Yucaipa Capital Fund, 218 B.R. 656, 673 (D.R.I. 1998) (Rule 9(b) applies to fraudulent transfer claim). The particularity requirement prevents a claimant like Riverdeep from searching for a valid claim after a civil action has been commenced. Doyle v. Hasbro, 103 F.3d 186, 194 (1st Cir. 1996). Pleadings alleging fraud based on information and belief do not satisfy the Rule 9(b) requirement, see Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985), and should be disregarded. Even when the facts constituting fraud are particularly within the adverse party's knowledge, Rule 9(b) requires the pleader to identify the available information on which the allegation of fraud is founded. See id. Neither Count Four of Amended Complaint, the fraudulent conveyance claim, nor Count Seven, the fraud claim, is pleaded with sufficient particularity as to Logetics. Both should be dismissed.

### A. Riverdeep Fails To State A Claim For Fraudulent Conveyance

A fraudulent conveyance[6] is a transfer by a debtor of an interest in property to a third person, undertaken with intent to prevent a creditor of the debtor from reaching that interest to

---

[5] Riverdeep has not met its burden of demonstrating that SDWCA is subject to personal jurisdiction so if a court determines that venue is not proper for one or more of multiple defendants, and dismissal is not appropriate, it can "transfer the entire case to another district that is proper for all defendants." See Loeb v. Bank of Am., 254 F.Supp.2d 581, 588 & n.14 (E.D. Pa. 2003) (entire case transferred rather than severing two of three defendants for whom venue was not proper); see also Sunbelt Corp. v. Nobel, Denton & Assoc., Inc., 5 F.3d 28, 33-34 (3d Cir. 1993) (discussing when severing is disfavored option).

[6] A federal court sitting in Massachusetts will apply Massachusetts choice-of-law rules. E.g., Tidemark Bank for Sav. F.S.B. v. Morris, 57 F.3d 1061, 1061-62 (1st Cir. 1995). Under the

satisfy its claim. Yaesu Elec. Corp. v. Tamura, 33 Cal Rptr. 2d 283, 286 (Cal. Ct. App. 1994); Cal. Civ. Code §§ 3439 to 3439.12 (Uniform Fraudulent Transfer Act); cf. Mass. Gen. Laws c. 109A, §§ 1 to 12. Riverdeep alleges that SOMC transferred assets to SDWCA at a time that it owed Riverdeep money, as part of an assignment for the benefit of creditors. See Am. Compl. ¶¶ 74, 76. It alleges that SDWCA then transferred some of the assets to Logetics. See Am. Compl. ¶ 76. Riverdeep has not alleged that Logetics was the debtor that transferred an interest in property. As alleged, Logetics was a subsequent transferee. Although a transferee can, under certain circumstances, be liable to the creditor, see, e.g., In re Cohen, 199 B.R. 709, 717-20 (9th Cir. 1996) (analyzing whether transferees were liable), Riverdeep has not alleged any such circumstances, and has certainly not alleged them with particularity as required by Rule 9(b).

In the alternative, the allegations leveled against Logetics do not establish that it caused a constructively fraudulent transfer that had the effect of prejudicing creditors, or that it caused a transfer of assets involving actual fraudulent intent. Cf. Cal. Civ. Code §§ 3439.04(a)(1) and (2), § 3439.05; accord In re Cohen, 199 B.R. 709 at 716 (listing two types of fraudulent transfers). Riverdeep fails to state a claim for constructive fraudulent conveyance because under California law governing assignments for the benefit of creditors, SDWCA is deemed as a matter of law to have conveyed reasonably equivalent value in exchange for SOMC's assets because SDWCA agreed to a fiduciary duty to marshal all assets for the benefit of all creditors. See G.W. Brainard v. W.J. Fitzgerald, 3 Cal. 2d 157, 163, 44 P.2d 336 (1935) (consideration for assignment for

---

Massachusetts "flexible interest-based approach," Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 30 (1st Cir. 1997), the "various choice influencing considerations" reviewed are those set out in "the Restatement (Second) of Conflict of Laws, (1971) [hereinafter Restatement (Second) of Conflicts], and those suggested by various commentators." Cosme v. Whitin Mach. Works Inc., 417 Mass. 643, 645 (1994). Under the Restatement (Second) of Conflicts, § 148 dealing with fraud claims such as pleaded here the local law of California determines the rights and liabilities of the parties.

benefit of creditors is indebtedness to all the creditors). Because the conveyance is not voidable under § 3439.04(a) against SDWCA, it is not voidable against Logetics as a subsequent transferee. Cal. Civ. Code § 3439.08(a).

Riverdeep fails to state a claim for actual fraudulent conveyance against Logetics because (1) an assignment for the benefit of creditors is excepted by statute from the general presumption of a fraudulent conveyance where property is transferred but the transferee remains in possession, Cal. Civ. Code § 3440.1; and, (2) because the assignment for the benefit of creditors provides for a method of liquidation of the assets to pay creditors, including Riverdeep; and, Riverdeep cannot establish the essential element that a "transfer" defrauded it since the general assignment was made in trust for it and other creditors and diminished no assets available for judicial execution. See Cal. Civ. Code § 3439.06(a)(2); Pioneer Liquidating Corp. v San Diego Trust & Sav. Bnk. (In re Consol. Pioneer Mortgage Entities), 211 B.R. 704, 711 (S.D. Cal. 1997) (essence in fraudulent transfer is diminution of estate available to creditors thus transfer cannot be fraudulent when it did not deplete estate at all), aff'd, 166 F.3d 342, 1999 U.S. App. LEXIS 517 (9th Cir. 1999). Logetics as a subsequent transferee cannot be liable. Cal. Civ. Code § 3439.08(a). (See also SDWCA Mem. in Support of Mot. to Dismiss pp. 18-24.)

**B. Generalized Claims Of Fraud Against Logetics Based Upon Omissions Fail To State A Claim**

Count Seven of the Amended Complaint alleges that Logetics fraudulently induced Riverdeep to enter into the Logetics License because Logetics "failed to disclose" to Riverdeep during negotiations that SOMC had assigned assets for the benefit of creditors. See Am. Compl. ¶ 93.[7] There is no allegation that Logetics actively concealed the information from Riverdeep, or

---

[7] Fraudulent inducement is prohibited by California Civil Code § 1709, which provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury

that it made any affirmative misrepresentation about the assignment.[8] In failure-to-disclose cases, Rule 9(b) requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading. Fujisawa Pharm. Co. v. Kapoor, 814 F. Supp. 720, 727 (N.D. Ill. 1993). See also 2 Coquillette et al., Moore's Federal Practice § 9.03[1][b] (Matthew Bender 3d ed. 2004). While Riverdeep complains that Logetics should have told it that SOMC had made an assignment for the benefit of creditors, Riverdeep has not alleged that Logetics was under any special fiduciary or other confidential relationship which would give rise to a duty to disclose SOMC's assignment, see Lingsch v. Savage, 29 Cal. Rptr. 201, 204 (Cal. Ct. App. 1963) (while deceit may be negative as well as affirmative, it is necessary to establish that defendant had a legal duty to disclose, which duty may arise from fiduciary or other confidential relationship), or that Logetics conveyed any other information that would have misled Riverdeep about SOMC's assets. It merely alleges that "Logetics . . . had a duty to provide Riverdeep with material facts within their knowledge," Am. Compl. ¶ 92, but offers no particulars as to what about the SOMC License established a special fiduciary or confidential relationship. Cf. SOMC License, Exhibit B § 10.4 (parties are independent contractors). It has not alleged when or where the omitted

---

or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709. Deceit is defined to include a failure to disclose, as opposed to affirmative misrepresentation, only in limited circumstances: (1) the suppression of a fact by one who is bound to disclose it, or (2) the suppression of a fact by one who gives information of other facts which are likely to mislead for want of communication of that fact. Cal. Civ. Code § 1710.

[8] The Amended Complaint alleges "upon information and belief" that Holland as president of SOMC purposefully provided SDWCA with Riverdeep's "lock box bank account address" with the intent that Riverdeep would not receive notice of the assignment. Am. Compl. ¶ 37. If one were to rewrite the complaint and read this as an allegation that *Logetics* actively concealed SOMC's assignment to SDWCA, Count Seven still fails to satisfy the particularity requirement. See Hayduk, 775 F.2d at 444 (fraud pleadings may not be based on information and belief).

facts should have appeared, or the way in which the omitted facts made any representations that were made misleading. See Fujisawa, 814 F. Supp. at 727. Dismissal, therefore, is proper.

**C. The Remedy for Fraudulent Inducement Is Rescission**

Riverdeep's fraudulent inducement claim also is improper because although Riverdeep claims it would not have entered into the Logetics License had it known about the general assignment for benefit of creditors, Am. Compl. ¶ 100, it also seeks to enforce the Logetics License by breach of contract in Count Five and by specific performance in Count Six, Am. Compl. ¶¶ 81-90, 116(E). 116(F), and continues to rely on contractual language to justify haling Logetics into court in Massachusetts. This it may not do. The remedy for fraudulent inducement on grounds of misrepresentation is the equitable remedy of rescission. See Garcia v. California Truck Co., 183 Cal. 767, 771, 192 P. 708, 710 (1920) (contract voidable; only remedy is rescission).[9] The primary purpose of an action for rescission is to place the plaintiff in status quo. Consequently, the plaintiff, as a condition precedent to equitable relief, must offer to return any consideration received by him under the transaction sought to be rescinded. Farnsworth, supra, at § 4.15, at 271. Here, Riverdeep has not alleged with particularity an offer to return consideration received, thus Count Seven fails to state a claim. In addition, Riverdeep attempts to affirm the contract by seeking to enforce it and by relying on its forum selection clause. Allowance of inconsistent claims at the pleading stage, Fed. R. Civ. P. 8(e)(2), cannot survive a jurisdictional and venue challenge where the inconsistency refutes the very basis for jurisdiction

[9] See also 1 B.E. Witkin, Summary of California Law § 403 (Witkin Legal Inst. 9th ed. 1987); E. Allan Farnsworth, Contracts § 4.15, at 269 (2d ed. 1990) ("Misrepresentation in the inducement makes the resulting contract voidable at the instance of the recipient. The recipient may *disaffirm* the contract and assert the misrepresentation . . . by bringing an action based on *avoidance* (or "rescission") of the contract. One cannot avoid, however, if one has already *affirmed* (or "ratified") the contract . . . . Affirmance may be express or by conduct inconsistent with disaffirmance . . . ." ).

and venue. Cf. Gerlinger v. Amazon.com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (plaintiff who relied upon contract for standing could not also bring unjust enrichment claim, which does not lie where valid express contract exists). If Count Seven states a claim, it still should be dismissed if Riverdeep insists on asserting contractual rights as a basis for forum ties.

## VI. CALIFORNIA PROVIDES A MORE CONVENIENT FORUM

Title 28 of the United States Code § 1404(a) empowers the district court with "broad discretion" "for the convenience of the parties and witnesses, in the interest of justice" to transfer "any civil action to any other district court or division where it might have been brought." Stewart Org, Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988). While a contract choice of forum clause often is enforceable, § 1404(a) "calls on the District Court to weigh in the balance a number of case-specific factors" where the presence of a forum-selection clause will be a significant, but not the only one. _487 U.S. at 29 (district court must consider "factors other than those that bear solely on the parties' private ordering of their affairs;" it also must weigh public interest factors "under the heading of 'the interest of justice'"). A "forum selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration nor no consideration, but rather the consideration for which Congress provided in § 1404(a)." Id. at 31.

Here, whatever interest the parties may have had in agreeing to a boilerplate and buried term in the SOMC License when Broderbund LLC drafted the language in 2002, had dissipated by the time Amendment No. 1 and then Amendment No. 2 had been executed nine months, and then eighteen months later when Riverdeep was then based in California. Although Riverdeep alleges it had its United States headquarters in Massachusetts at one time, its principal place of business was in California at the time these amendments were executed. Together, the

defendants have identified twenty-five witnesses who reside in California, six who live in a state other than Massachusetts or California, and seven whose location is as of yet unknown. Objectively viewed, the private and public interest factors that this Court must consider including the relative ease of access to sources of proof, the cost of obtaining attendance of willing witnesses, the possibility of inspecting premises, the interest of having individuals of the community where events transpired sit in judgment of the controversy, and numerous other practical problems that make trial of a case easy, expeditious and inexpensive all point towards a transfer to the Southern District of California in the interests of justice. See Royal Bed & Spring Co., Inc. v. Famossul Industria E Comercio De Moveis LTDA, 906 F.2d 45, 52 (1st Cir. 1990) (discussing these factors). In the event that the court determines that venue is proper, Logetics alternatively requests that this Court transfer this action under 28 U.S.C. § 1404(a). See 15 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d, § 3827 at 263-66 and nn. 8-14 (West 1986 & Supp. 2004).[10]

## VII. CONCLUSION

For the reasons set forth in Logetics' motion, the affidavits it submits in support, and those set forth above, Logetics requests that its Motion To Dismiss or Transfer be allowed.

Respectfully submitted,

*/s/ Matthew J. Walko*

Matthew J. Walko, BBO No. 562172
SMITH & DUGGAN LLP
Two Center Plaza, Suite 620
Boston, Massachusetts 02108-1906
(617) 228-4400

---

[10] See also Capital Bank Int'l Ltd. v. Citigroup, Inc., 276 F.Supp.2d 72 (D.D.C. 2003) (court may transfer a case to another district under Section 1406(a) even when the court lacks personal jurisdiction over the defendants); but see Bearse v. Main St. Inv., 170 F. Supp. 2d 107 (D. Mass. 2001) (Collings, M.J.) (transfer of suit when personal jurisdiction is lacking may only be accomplished under 28 U.S.C. § 1406, meaning venue must be improper in transfer or district).

CERTIFICATE OF SERVICE

The undersigned certifies service of the foregoing on June 17, 2005 in accordance with Federal Rule of Civil Procedure 5(b)(2) and United States District Court for the District of Massachusetts Electronic Case Filing Administrative Procedure § E(2) as to all parties, having appeared in this action through counsel admitted to practice before this Court, identified by the Clerk as receiving Notice of Electronic Filing, and as to the following by first class mail, postage prepaid:

Evan Slavitt, Esq.
Bodoff & Slavitt LLP
225 Friend Street
Boston, MA 02114-1812

*Counsel for Defendant Thomas E. Holland*

*/s/ Matthew J. Walko*
Matthew J. Walko
BBO. No. 562172