## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Riverdeep, Inc., A Limited Liability Company,     :

       Plaintiff                        :

       v.                           :     CIVIL ACTION NO. 05-10816-REK

SOMC Group, Inc.; Logetics, Inc.;          :
San Diego Wholesale Credit Association;   :
Ready, Set, Grow; Jelly Bean Islands; Leap  :
Ahead, and Thomas E. Holland         :

       Defendants                 :

---

### AFFADAVIT OF THOMAS E. HOLLAND

I, Thomas E. Holland, being over twenty-one years of age and competent to testify to the following based upon my personal knowledge state as follows:

1. I am President and Chief Executive Officer of the defendant Logetics, Inc. ("Logetics"), and have been since it was incorporated in the State of California on February 9, 2000.

2. I submit this affidavit in support of the Motion of Logetics, Inc. To Dismiss Or Transfer. This affidavit is not intended to be a statement of all facts of which I know that may be relevant to the parties' claims or defenses, but to explain truthfully for the Court significant facts that should assist it in considering Logetics' motion.

3. As President and Chief Executive Officer of Logetics, I am intimately familiar with all aspects of Logetics' business, including its relationship, course of dealing, and history with Riverdeep, Inc. ("Riverdeep"), and Riverdeep's corporate predecessor, Broderbund LLC. For purposes of this Affidavit, the term "Riverdeep" includes both Riverdeep and Broderbund LLC, where the context requires.

4. At all times relevant to this dispute, I was in contact with a number of Riverdeep personnel, including but not limited to the following: John Bartlett, Vice President for OEM Sales; Simon Calver, Chief Operating Officer; Tony Bordon, Chief Revenue Officer and former President and Chief Operating Officer; John Rim, Chief Financial Officer; and Pansy Dea-Dair, OEM Senior Sales Coordinator.

5. Attached as exhibits to this Affidavit are true and correct copies of e-mail correspondence between me and various Riverdeep personnel, some of which are "chains" of initial e-mail correspondence and resulting responses. Due to computer formatting issues, some of the printouts of these emails may run to several pages. In addition, where e-mail correspondence attaches a document, a duplicate copy of the e-mail may be provided in a format that shows an icon representing the attachment.

6. Logetics was party to an OEM LICENSE AGREEMENT with Riverdeep dated as of March 28, 2002 along with SOMC Group, Inc. ("SOMC") (the "SOMC License"). The next day, the parties executed a "tying" agreement, in that Broderbund agreed to provide a support program for SOMC to meet its financial goals. The SOMC License was amended several times. Amendment No. 1 was dated December 30, 2002. Amendment No. 2 to the SOMC License was dated September 29, 2003.

7. I understood that language in the Amendments stating "[t]his Amendment shall be governed as a sealed instrument under California law," meant that California's laws and courts would resolve any disputes, as all parties were then based in California.

8. Riverdeep did not provide Schedule A-1 to Amendment No. 1 at the time it was signed and the parties never agreed what it should contain.

9. A true and correct copy of the SOMC License, as received from Riverdeep, as amended together with the "tying" agreement, is attached as Ex. 1.

10. I had informed John Bartlett, Vice President for OEM Sales for Riverdeep, at a September 3, 2003, meeting in New York City that SOMC was in trouble financially. I asked him at that time whether Riverdeep would be interested in acquiring SOMC.

11. Our discussion on September 3, 2003 led to Amendment No. 2 to the SOMC License on September 28, 2003.

12. I contacted other organizations in the late fall and early winter of 2003 to attempt to secure a purchaser for SOMC. I was unsuccessful in obtaining a purchaser. True and correct copies of solicitation letters I sent to prospective purchasers, and their responses, are attached as Ex. 2.

13. On January 27, 2004, John Rim, Chief Financial Officer of Riverdeep, had sent a fax letter to me as President and CEO of SOMC that SOMC's failure to comply with the payment plan and reporting requirements set forth in Amendment No. 2 to the SOMC License for the fourth quarter of 2003 constituted a material breach that had to be cured in ten days. A true and correct copy of this letter is attached as Ex. 3.

14. I immediately called Riverdeep's Bartlett that day and told him that this would be addressed by the SOMC Board of Directors and very well would put SOMC out of business.

15. On February 5, 2004, I called Riverdeep's Bartlett to let him know that the SOMC Board of Directors had met and voted to close down the business. I then requested that a meeting take place with Riverdeep. A true and correct copy of the February 5, 2004 Minutes of the SOMC Board of Directors Meeting is attached as Ex. 4.

16. I also followed up with Bartlett via e-mail on February 11, 2004, requesting a telephone conference to discuss the ongoing relationship with Riverdeep in light of the SOMC issue. A true and correct copy of this e-mail is attached as Ex. 5.

17. On February 24, 2004, SOMC filed its assignment to benefit creditors with the San Diego Wholesale Credit Association. A true and correct copy of this assignment is attached as Ex. 6.

18. The next day, February 25, 2004, I called Bartlett and confirmed that SOMC had filed to close the business.

19. On February 26, 2004, I spoke via telephone with Tony Bordon, Riverdeep's Chief Revenue Officer and former President and Chief Operating Officer, and Bartlett to discuss the assignment.

20. Another phone call was to be scheduled with Simon Calver, Riverdeep's Chief Operating Officer, who was based in Ireland, to discuss the assignment.

21. When I notified Calver, Bordon, and Bartlett of SOMC's closure, I used "discussion points" that I typed up myself either the day of or the day after the Assignment for Benefit of Creditors was issued. A true and correct copy of the "Software Publisher Discussion Points" I prepared is attached as Ex. 7.

22. I participated in a telephone conference with Bartlett, Bordon and Calver on March 3, 2004, to review SOMC's closure and, among other things, the interests that Logetics was going to pursue, and how it could be successful where SOMC had not been.

23. Calver requested a Logetics business plan and said they would meet with me when he came to the United States. I sent him the Logetics Summary Business Plan he requested

4

via e-mail on March 8, 2004.   A true and correct copy of the Logetics business plan with the transmittal e-mail is attached as Ex. 8.

24. I met with Calver and Bordon in Novato, California on March 24, 2004, at Riverdeep's United States headquarters.   Calver emphasized at the Novato meeting that he was not happy with the closure of SOMC, but said there was a "bigger opportunity" with Logetics.

25. At this meeting, Calver said Logetics and Riverdeep would work together and Riverdeep would determine its position regarding SOMC.

26. At this meeting, Calver also had indicated that Tony Bordon would structure the Riverdeep-Logetics relationship.

27. Calver said that Riverdeep would create a joint venture with Logetics where Riverdeep would receive revenue recognition to enhance its financials and Logetics would be an expense line item for management services rendered.

28. Tony Bordon also confirmed at the March 24th meeting that Logetics should continue selling Riverdeep products: "Don't stop," he said.

29. Calver (the number two executive at Riverdeep), Bordon (the number three executive at Riverdeep) and Bartlett all knew from conversations with me before negotiating the Logetics License that SOMC had gone out of business.

30. A March 30, 2004 email I received from, and telephone conversation I had with, Bartlett that followed up on the March 24th meeting with Bordon and Calver in Novato resolved what Riverdeep's position would be with respect to Logetics and the closure of SOMC. Bartlett confirmed that Riverdeep was going to write-down the unpaid $1M from the SOMC License. A true and correct copy of that e-mail is attached as Ex. 9, and true and

correct copies of the attachments to that e-mail are attached as Ex. 10 and Ex. 11 respectively.

31. Bartlett proposed that Logetics enter a license to help offset Riverdeep's SOMC write-off, and to enter into a joint venture agreement -- the "Consulting Agreement." Because the joint venture agreement was still being refined, Riverdeep wanted to provide two separate agreements at this time in order to recognize some licensing revenue. The licensing agreement would then be addressed and integrated into the joint venture agreement.

32. The draft of the Logetics License attached to the March 30, 2004, email from Riverdeep's Vice President for OEM Sales, John Bartlett, was back-dated to be entered into as of March 28, 2004.

33. Accommodation of Riverdeep's periodic need to "book" revenue had been part of an established course of dealing that had prompted, as a favor, the execution of Amendment No. 1 to the SOMC License to allow Riverdeep to book by 2002 year's end an additional $800,000 in paper revenue even though delivery of most, including the most significant, of the titles on the "missing" Schedule A-1 that could have supported such an increase never materialized.

34. On March 31, 2004, Bartlett and I exchanged emails in which Bartlett agreed to drop the total license fee recital to $375,000, paid in installments. A true and correct copy of these emails is attached as Ex. 12.

35. On April 1, 2004, Tony Bordon, Chief Revenue Officer of Riverdeep, emailed me that "We are still extremely excited about our partnership and it's [sic] potential success." A true and correct copy of this e-mail is attached as Ex. 13.

36. In a letter dated May 4, 2004, Pansy Dea-Dair, OEM Senior Sales Coordinator for Riverdeep, sent two unsigned copies of the twenty-two page Logetics License for my "review and signature" stating: "Upon completion, please return both originals to my attention. When fully executed I shall return one copy for your files." A true and correct copy of Ms. Dea-Dair's cover letter with enclosed unsigned Logetics License is attached as Ex. 14.

37. Exhibit C to these original unsigned Logetics Licenses failed to list any products in the product acknowledgement section.

38. Riverdeep's Bartlett met with me on May 13, 2004, and told me that Riverdeep was suffering from financial problems, that Riverdeep was challenged to make payroll, and that it was losing software title licenses because Riverdeep was not paying its bills.

39. By email of May 18, 2004, Bartlett asked me "Did you send out the executable version of the contract back to Pansy?" A true and correct copy of this e-mail is attached as Ex. 15.

40. I replied to Bartlett the next day, May 19, 2004, informing him why I did not execute the contract because of product delivery problems on Riverdeep's part. A true and correct copy of this e-mail is attached as Ex. 16.

41. Bartlett replied that same day stating: "I don't blame you." A true and correct copy of this e-mail is attached as Ex. 16.

42. Neither I nor anyone else at Logetics ever executed Exhibit C to the Logetics License.

43. In a telephone conversation in August 2004 following upon emails exchanged between August 11 to August 20, I told Bartlett that because Riverdeep had not delivered on its promises since many titles provided on the title list could not be distributed by Logetics as Riverdeep could not get approvals from the publishers/developers, Logetics would be

7

willing to pay royalties to Riverdeep on a title sold or "runrate" basis only. True and correct copies of these emails are attached as Ex. 17.

44. I learned on September 29, 2004, that Riverdeep's legal department (Kirsten Mellor, Vice President and General Counsel at Riverdeep) and management (William "Bill" Cunningham, Vice President, Consumer Division at Riverdeep) agreed with this payment plan. A true and correct copy of this e-mail from Bartlett containing this information is attached as Ex. 18.

45. On October 27, 2004, Bartlett confirmed that Riverdeep's Simon Calver and its Finance Department agreed to advance royalty payments based on estimated usage each month. A true and correct copy of this e-mail is attached as Ex. 19.

46. Later that same day, in response to my question regarding why Riverdeep was not responding to Logetics' queries regarding the sales campaign to the Riverdeep consumer database, Bartlett notified me via e-mail that it was "on hold" because Riverdeep's e-mail marketing vendor had stopped work until Riverdeep's account became current. A true and correct copy of this e-mail is attached as Ex. 20.

47. In Bartlett's email to me on November 9, 2004, Bartlett confirmed the parties' agreement to advance royalty payments based on estimated usage each month because he admittedly informed Riverdeep's Simon Calver "of the fact that we are working on a runrate basis." A true and correct copy of this e-mail is attached as Ex. 21.

48. Nevertheless, when Bartlett informed me of Calver's desire for Riverdeep to be paid more money than a royalty rate based upon when a title is sold, I raised the prospect of potential legal action based upon Riverdeep's non-performance in my e-mail

correspondence to Bartlett dated November 9, 2004. A true and correct copy of this e-mail is attached as Ex. 22.

49. Then, on November 12, 2004, Riverdeep once again confirmed the parties' agreement that Logetics need pay on a "runrate," title-sold basis only. A true and correct copy of Riverdeep's e-mail confirmation is attached as Ex. 23.

50. In Bartlett's email to me of December 13, 2004, he indicates that going forward into the next year, namely, 2005, the parties would resume quarterly royalty payments for the distribution of Riverdeep product. A true and correct copy of this e-mail is attached as Ex. 24.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct this sixteenth day of June, 2005.

Thomas E. Holland

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 1

March 29, 2002

Mr. Tom Holland
President & CEO
SOMC Group, Inc.
1935 Camino Vida Roble
Carlsbad, CA 92008

Re:    Use of Broderbund LLC ("Broderbund") customer information by SOMC Group, Inc. and Logetics, Inc. (collectively, "SOMC")

Dear Mr. Holland

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1. Broderbund will provide, upon SOMC's request, a complete list of Broderbund customer email, telephone and direct mail information at a preferred customer rental rate to be determined by Broderbund in its sole discretion, for the sole purpose of allowing SOMC to offer SOMC/Logetics Club Products to Broderbund's customers. With respect to the email information, such information shall be limited to customers on Broderbund's third party "opt-in" list. In addition, Broderbund will conduct quarterly email campaigns on behalf of SOMC and SOMC shall be responsible for all third party transactional costs associated with such emails and shall pay Broderbund for such email campaigns at then current rate. SOMC shall comply at all times with Broderbund's applicable list rental and privacy policies. All offering materials will be subject to the approval of Broderbund. Under no circumstances may SOMC use this list be used for any other purpose except as described in this Letter Agreement. Upon completion of the offering, SOMC will destroy the customer list provided by Broderbund.

2. All defined terms contained in this Letter Agreement shall have the meaning attributed to them in the License Agreement.

3. This Letter Agreement shall expire on March 1, 2004..

Sincerely,

Broderbund LLC

By:    _JL Battt_

Title:    _VP OEM SALES_

ACCEPTED AND AGREED:

SOMC Group, Inc.

By:    _Shane Alff_

Title:    _President & CEO_

Dated: March 27, 2002

# OEM LICENSE AGREEMENT
## (Manufacturing Rights)

This OEM License Agreement (this "**Agreement**") is entered into as of March 28, 2002 (the "**Effective Date**") by and between Broderbund LLC, a Minnesota company ("**Broderbund**") and the companies identified below (collectively, "**OEM**").

WHEREAS, Broderbund publishes, markets and distributes the one or more computer software products listed on Exhibit A (the "Products"); and

WHEREAS, OEM desires to obtain a license to manufacture, market and distribute the Products to its customers subject to the restrictions identified on Exhibit A.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Broderbund and OEM do hereby agree to the terms and conditions set forth herein and in the attached Exhibit A, Exhibit B and Exhibit C, the provisions of which are incorporated herein by this reference.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed under seal as of the Effective Date.

| Broderbund LLC | SOMC Group, Inc. ("SOMC") |
|---|---|
| By: _____ | By: _____ |
| John Bartlett | Thomas E. Holland |
| Vice President, OEM Sales | President |

**LEGAL OK**

| Initial: | Date: |
|---|---|
| DL | 3/18/9 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | |
|---|---|
| Broderbund LLC<br>500 Redwood Blvd.<br>Novato, CA 94947<br>Attn: Chief Financial Officer<br>Tel: (415) 382-4400<br>Fax: (415) 382-4411<br><br>With a copy to:<br><br>Broderbund LLC<br>500 Redwood Blvd.<br>Novato, CA 94947<br>Attn: General Counsel<br>Tel: (415) 382-4400<br>Fax: (415) 382-4411 | SOMC Group, Inc.<br>1935 Camino Vida Roble<br>Carlsbad, CA 92008<br>Tel: (760) 827-7378<br>Fax: (760) 827-4202<br><br>Logetics, Inc. ("Logetics")<br><br>By: _Elgar S Hell_____<br><br>　　　Thomas E. Holland,<br>　　　President<br><br>Logetics, Inc.<br>1935 Camino Vida Roble<br>Carlsbad, CA 92008<br>Tel: (760) 942-7000<br>Fax: (760) _____ |

**(Agreement continues on following page)**

//
//
//

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

EXHIBIT A

## THE PRODUCTS

1.    Products

    (a)    SOMC/LOGETICS CLUB PRODUCTS.  Products that may be distributed as part of the SOMC and/or Logetics branded club described in Section 2(b) below ("SOMC/Logetics Club Products").

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|
| Amazon Trail 3rd Ed: Rainforest Adventures | AMA3744AE | $0.65 |
| Bob Vila's Home Design | BVH3844AE | $0.85 |
| Carmen Sandiego Junior Detective | 51406 | $0.65 |
| Carmen Sandiego Math Detective | 25701 | $0.65 |
| Carmen Sandiego Word Detective | 45820 | $0.65 |
| Carmen Sandiego's Great Chase Through Time, CD1 | CST3744AE | $0.85 |
| Carmen Sandiego's ThinkQuick Challenge | CSQ3744AE | $0.85 |
| Children's Bible Stories | CBS3544AE | $0.65 |
| Compton's 3D World Atlas | CWA844AE-CD1 | $0.65 |
| Compton's Home Library Battles of the World | BTF3744AE | $0.65 |
| Compton's Interactive Bible – NIV | 113069 | $0.65 |
| Daniel in the Lion's Den | 48501 | $0.85 |
| Explorers of the New World | EXP2544AE | $0.65 |
| French to Go | PFR3844AE | $0.85 |
| Just Grandma and Me | 48462 | $0.85 |
| Kid Pix Studio Deluxe | 28537 | $0.85 |
| Knowledge Munchers Deluxe | KMC2744AE-D&D | $0.85 |
| Leap Ahead! 1st Grade | | $0.85 |
| Leap Ahead! 2nd Grade | | $0.85 |
| Leap Ahead! 3rd Grade | | $0.85 |
| Leap Ahead! Kindergarten | | $0.85 |
| Leap Ahead! Math 6-9 | | $0.85 |
| Leap Ahead! Phonics | | $0.85 |
| Leap Ahead! Preschool | | $0.85 |
| Leap Ahead! Reading 6-11 | | $0.85 |
| Learn to Speak English 8.0 | LTSE3544DE | $0.85 |
| Learn to Speak English from Spanish (Hablemos Ingles) 7.0 | LTSH6544CE | $0.85 |
| Learn to Speak French 8.0 | LSF3744DE | $0.85 |
| Learn to Speak German 8.0 | LTSG3544DE | $0.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Learn to Speak Spanish 8.0 | LTSS3544DE | $0.85 |
| Math Workshop Deluxe | 50122 | $0.65 |
| Mosby's Medical Encyclopedia | MDE2344BE-D&D | $0.85 |
| Oregon Trail III | OTA3744AE | $0.65 |
| Oregon Trail II | OTT3744AE | $0.65 |
| Orly's Draw-A-Story | 53605 | $0.85 |
| Passport to 31 Languages | THL3744AE | $0.85 |
| Reader Rabbit's Math Ages 4-6 | 378475 | $0.65 |
| Reader Rabbit's Math Ages 6-9 | 378476 | $0.65 |
| Reader Rabbit's Math Journey | MJF2744AE-D&D | $0.65 |
| Reader Rabbit's Personalized Math 1st & 2nd Grade | 378476 | $0.65 |
| Reader Rabbit's Playtime for Baby | BRR3744AE | $0.65 |
| Reader Rabbit's Reading 1 | RRA2744BE-D&D | $0.65 |
| Reader Rabbit's Reading Ages 4-6 | 378474 | $0.65 |
| Reader Rabbit's Reading Ages 6-9 | 378473 | $0.65 |
| Reader Rabbit's Thinking Adventures 4-6 | RTG3744AE | $0.65 |
| Reader Rabbit's 1st Grade | RRF3744BE | $0.85 |
| Reader Rabbit's 2nd Grade | RSG3744BE | $0.85 |
| Reader Rabbit's Kindergarten | RRK3744BE | $0.65 |
| Reader Rabbit's Preschool | RRP3744BE | $0.65 |
| Road Adventures USA | TRA3744AE | $0.65 |
| Spanish to Go | 381327 | $0.85 |
| Spelling Master | SMP3744AE | $0.65 |
| Super Solvers Mission Think | MEM3744AE | $0.85 |
| Super Solvers Reading 9-12 | SSR3744AE | $0.85 |
| Where in the USA is Carmen Sandiego | CSU3744AE | $0.85 |
| Where in the World is Carmen Sandiego | CSD3744AE | $0.85 |
| Where in Time is Carmen Sandiego | 44303 | $0.85 |
| Zondervan NIV Bible Deluxe | ZNB2844AE | $0.85 |
| Family Tree Maker 9 (OEM) | tbd | $0.75 |
| 3D Home Interiors #381158-CD (one CD only) | 381158-CD | $0.75 |
| Calendar Creator 8.0 | 381035 | $0.75 |
| Click Art 10K | CLT3844AE | $0.75 |
| Kid Pix Deluxe 3 | 378180 | $0.75 |
| Printmaster Silver 11 | 379863 | $0.75 |
| Print Shop Essentials 12 | 380869 | $1.00 |
| Print Shop Photo Workshop | 180875 | $1.00 |
| Print Shop CD Label Creator | 381244 | $1.00 |
| Labels Unlimited | LUN3844AE | $0.75 |
| Compton's Interactive Cookbook | CKS3544AE | $0.75 |
| Broderbund Business Lawyer SE 2002 | 281365 | $0.75 |
| Broderbund Family Lawyer 2002 | 380979 | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

- 4 -

| | | |
|---|---|---|
| Black & Decker Home Repairs | BDH3844AE | $0.75 |
| Leonardo, The Inventor 2.0 | LNT3544AE | $0.75 |
| Resume Pro 3.0 | RES2844AE | $0.75 |
| Williams and Sonoma Guide To Good Cooking | 379505 | $0.75 |
| NTI CD Maker Essentials | 285172 | $0.75 |
| LTS: ENGLISH V8.1 | 381415 | $0.75 |
| LTS:GERMAN V8.1 | 381417 | $0.75 |
| LTS:SPANISH V8.1 | 381418 | $0.75 |
| LTS:FRENCH V8.1 | 381416 | $0.75 |
| Logical Journey of the Zoombinis | 278469 | $0.75 |
| Treasure Cove | TSC3544AE | $0.75 |
| Treasure Galaxy | TSG3544AE | $0.75 |
| Treasure Mathstorm | TMS3544BE | $ 0.75 |
| Treasure Mountain | PTS3744AE | $0.75 |
| Trivia Munchers | TVM2744AE-D&D | $0.75 |
| Troggle Trouble Math | PTT3544AE | $0.75 |
| Oregon Trail IV | OTF3744AE | $0.75 |
| Printmaster Homework Helper | 385015 | $0.75 |
| Printmaster Party & Crafts Creator | 385014 | $0.75 |
| Printshop Business Card Creator | 385013 | $0.75 |
| Printshop Newsletter, Brochures & More | 385012 | $0.75 |
| 3d Home Design Kit | 381543 | $0.75 |
| Clickart Celebrations & Holidays II | 381107 | $0.75 |
| Groliers Encyclopedia | TBD | $0.75 |
| Body Works 6 | BWK3844CE | $0.75 |
| Quick Study Spanish | QSS3844AE | $0.75 |
| Quick Study French | QSF3844AE | $0.75 |
| ClueFinders 3rd Grade Adventures | 379539 | $0.85 |
| ClueFinders 4th Grade Adventures | 379536 | $0.85 |
| ClueFinders 5th Grade Adventures | 379535 | $0.85 |
| Compton's Learning Mathematics | MTC3844AE | $.065 |
| Compton's Learning Programming Made Easy | PME6844AE | $0.65 |
| Compton's Learning Real Science | PGS3844AE | $0.65 |
| Encyclopædia Britannica Ready Reference 2002 | TBD | $1.00 |
| Little Bear Preschool Thinking Adventures | 379655 | $0.75 |
| Little Bear Toddler Discovery Adventures | 379737 | $0.75 |
| Mavis Beacon Teaches Typing 12 Standard | 380858 | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Mavis Beacon Teaches Typing 9.0 | MBT2844AE | $0.65 |
| Mavis Beacon Teaches Typing 9.0 Mac | 112915 | $0.65 |
| Practice Makes Perfect French | PMPF3544AE | $0.75 |
| Practice Makes Perfect Spanish | PMPS3544AE | $0.75 |
| Reader Rabbit Toddler | RRT3744CE | $0.65 |
| Schoolhouse Rock 1st & 2nd Grade Essentials | SGE3744AE | $0.85 |
| Schoolhouse Rock 3rd & 4th Grade Essentials | SGD3744AE | $0.85 |
| Schoolhouse Rock Grammar Rock | SGR3744ae | $0.85 |
| Schoolhouse Rock Math Rock | 21010-D&D | $0.85 |
| Schoolhouse Rock Thinking Games | BBT3844AE | $0.85 |
| Schoolhouse Rock Thinking Games Deluxe | SRT3744BE | $0.85 |
| The Art Lesson | HCD772 | $0.85 |
| Ultimate Children's Encylcopedia | ZCE3544AE | $0.85 |
| Ultimate Writing & Creativity Center | UWC54EE-CD | $0.85 |
| Theme Weavers: Animals | | $0.75 |
| Thinkin Things All Around Fripple Town | | $0.75 |
| Thinkin Things Collection 1 | | $0.75 |
| Thinkin Things Galactic Brain Benders | | $0.75 |
| Stanley's Sticker Stories | | $0.75 |
| Let's Go Read! 1: An Island Adventure | | $0.75 |
| Mighty Math Carnival Countdown | | $0.75 |
| Mighty Math Astro Algebra | | $0.75 |
| Talking Walls | | $0.75 |
| Millies Math House | | $0.75 |
| Baileys Book House | | $0.75 |
| Sammy's Science House | | $0.75 |
| Mighty Math Zoo | | $0.75 |

Products that may be distributed as "lead generators" to acquire potential customers for the SOMC/Logetics Club branded club described in Section 2(b) below but do not require membership by the potential customer.

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|
| Amazon Trail 3rd Ed: Rainforest Adventures | AMA3744AE | $0.65 |
| Bob Vila's Home Design | BVH3844AE | $0.85 |
| Carmen Sandiego Junior Detective | 51406 | $0.65 |
| Carmen Sandiego's Great Chase Through Time, CD1 | CST3744AE | $0.85 |
| Children's Bible Stories | CBS3544AE | $0.65 |
| Compton's Home Library Battles of the World | BTF3744AE | $0.65 |
| Daniel in the Lion's Den | 48501 | $0.85 |
| Explorers of the New World | EXP2544AE | $0.65 |
| Just Grandma and Me | 48462 | $0.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Kid Pix Studio Deluxe | 28537 | $0.85 |
| Knowledge Munchers Deluxe | KMC2744AE-D&D | $0.85 |
| Leap Ahead! 1st Grade | | $0.85 |
| Leap Ahead! 2nd Grade | | $0.85 |
| Leap Ahead! 3rd Grade | | $0.85 |
| Leap Ahead! Kindergarten | | $0.85 |
| Leap Ahead! Math 6-9 | | $0.85 |
| Leap Ahead! Phonics | | $0.85 |
| Leap Ahead! Preschool | | $0.85 |
| Leap Ahead! Reading 6-11 | | $0.85 |
| Mosby's Medical Encyclopedia | MDE2344BE-D&D | $0.85 |
| Orly's Draw-A-Story | 53605 | $0.85 |
| Passport to 31 Languages | THL3744AE | $0.85 |
| Reader Rabbit's Math Ages 4-6 | 378475 | $0.65 |
| Reader Rabbit's Math Ages 6-9 | 378476 | $0.65 |
| Reader Rabbit's Playtime for Baby | BRR3744AE | $0.65 |
| Spanish to Go | 381327 | $0.85 |
| Spelling Master | SMP3744AE | $0.65 |
| Super Solvers Mission Think | MEM3744AE | $0.85 |
| Super Solvers Reading 9-12 | SSR3744AE | $0.85 |
| Zondervan NIV Bible Deluxe | ZNB2844AE | $0.85 |
| 3D Home Interiors #381158-CD (one CD only) | 381158-CD | $0.75 |
| Click Art 10K | CLT3844AE | $0.75 |
| Kid Pix Deluxe 3 | 378180 | $0.75 |
| Printmaster Silver 11 | 379863 | $0.75 |
| Print Shop CD Label Creator | 381244 | $1.00 |
| Labels Unlimited | LUN3844AE | $0.75 |
| Compton's Interactive Cookbook | CKS3544AE | $0.75 |
| Black & Decker Home Repairs | BDH3844AE | $0.75 |
| Leonardo, The Inventor 2.0 | LNT3544AE | $0.75 |
| Resume Pro 3.0 | RES2844AE | $0.75 |
| Williams and Sonoma Guide To Good Cooking | 379505 | $0.75 |
| Encyclopedia Britanica Ready Reference 2002 | TBD | $1.20 |
| Treasure Cove | TSC3544AE | $0.75 |
| Treasure Galaxy | TSG3544AE | $0.75 |
| Treasure Mathstorm | TMS3544BE | $0.75 |
| Treasure Mountain | PTS3744AE | $0.75 |
| Trivia Munchers | TVM2744AE-D&D | $0.75 |
| Troggle Trouble Math | PTT3544AE | $0.75 |
| Printmaster Party & Crafts Creator | 385014 | $0.75 |
| Printshop Newsletter, Brochures & More | 385012 | $0.75 |
| 3D Home Design Kit | 381543 | $0.75 |
| Carmen Sandiego Math Detective | 25701 | $0.65 |
| Carmen Sandiego Word Detective | 45820 | $0.65 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Little Bear Preschool Thinking Adventures | 379655 | $0.75 |
| Little Bear Toddler Discovery Adventures | 379737 | $0.75 |
| Oregon Trail II | OTT3744AE | $0.65 |
| Practice Makes Perfect French | PMPF3544AE | $0.75 |
| Practice Makes Perfect Spanish | PMPS3544AE | $0.75 |
| Reader Rabbit Toddler | RRT3744CE | $0.65 |
| Reader Rabbit Reading Ages 4-6 | 378474 | $0.65 |
| Schoolhouse Rock Grammar Rock | SGR3744ae | $0.85 |
| Schoolhouse Rock Math Rock | 21010-D&D | $0.85 |
| Schoolhouse Rock Thinking Games | BBT3844AE | $0.85 |
| Ultimate Children's Encylcopedia | ZCE3544AE | $0.85 |
| Ultimate Writing & Creativity Center | UWC54EE-CD | $0.85 |
| Where in the USA in Carmen Sandiego | CSU3744AE | $0.85 |
| Reader Rabbit Toddler | RRT3744CE | $0.65 |
| Reader Rabbit Preschool | RRP3477BE | $0.65 |
| SchoolHouse Rock Thinking Games | BBT3844AE | $0.85 |
| SchoolHouse Rock Grammar Rock | SGR3744AE | $0.85 |
| SchoolHouse Rock Math Rock | 21010-D&D | $0.85 |
| Theme Weavers: Animals | | $0.75 |
| Thinkin Things All Around Fripple Town | | $0.75 |
| Thinkin Things Collection 1 | | $0.75 |
| Thinkin Things Galactic Brain Benders | | $0.75 |
| Stanley's Sticker Stories | | $0.75 |
| Let's Go Read! 1: An Island Adventure | | $0.75 |
| Mighty Math Carnival Countdown | | $0.75 |
| Mighty Math Astro Algebra | | $0.75 |
| Talking Walls | | $0.75 |

(b)    BRODERBUND/TLC CLUB PRODUCTS.  Products that may be distributed through the Broderbund/TLC co-branded club described in Section 2(b) below ("Broderbund/TLC Club Products")


Same as 1(a) above

Products that may be distributed as "lead generators" to acquire potential customers for the Broderbund/TLC co-branded club described in Section 2(b) below but do not require membership by the potential customer.

Same 1(b) above


2.    **Authorized Channels** are defined as:

(a)    Authorized Product and Bundle Configurations.  OEM may only distribute the Products in the following designated manner (please check appropriate boxes):

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

☐ Hardware bundle. The Products will always be bundled with a computer-related hardware product of OEM with a suggested retail price of $50 or more, as part of a single contemporaneous sale.

☐ Aftermarket hardware sale. The Products may only be sold to a registered customer that has recently purchased, within ninety (90) days, one of OEM's hardware products with a suggested retail price of $250 or more.

☐ Soft bundle.

☐ Magazine cover mount.

☐ Packaging restrictions:  Products may only be sold in:
　　☐ Paper wrap
　　☐ Jewel case
　　☐ Mini box/DVD packaging (not to exceed 5"x7"x1.5")

☒ Other:  The Products shall only be distributed by OEM either as (1) a lead generator as a single unit or bundled with other software products, or (2) as part of a club as a SOMC/Logetics or TLC/Broderbund branded club offering.

(b)    Authorized Channels.  In addition to the foregoing restrictions, OEM may only distribute the Products in the following channels (please check appropriate boxes):

☐ Gift Shops

☐ Drug Store

☐ Direct to Consumer (catalog sales only)

☐ Direct to Consumer (outbound emails only)

☐ Direct to Consumer (outbound telemarketing only)

☐ Department Store (including, for example: Macy's, Bloomingdale's, etc.)

☐ Mid-Tier Store (including, for example: JCPenny, Sears, Montgomery Ward's, etc.)

☐ Superstore (including, for example: CompUSA, Best Buy, Circuit City, Fry's, etc.)

☐ Office Outlet (including, for example: Staples, Office Depot, Office Max, etc.)

☐ Specialty Mall (including, for example: Electronics Boutique, Babbages, Musicland, etc.)

☐ Toy (including, for example: Toys r' Us, Kaybee, etc.)

☐ Mass Market (including, for example: Target, Wal-mart, KMart, etc.)

☐ Supermarket

☐ Book Club

☐ Warehouse Club (including, for example: BJ's, Costco, Sam's, etc.)

☐ E-commerce Sales (orders taken from website, www._____.com.  No such right exists if the foregoing blank is not filled.)

☒ Other:  OEM may distribute the SOMC/Logetics Club Products to end user customers as part of its SOMC/Logetics or TLC/Broderbund branded club membership only in which SOMC/Logetics club members pay the established membership fee (to be approved by Broderbund, not to be unreasonably withheld) and, in exchange, receive one title per month until they decide to unsubscribe (or two titles per month if the club members pay the established membership fee to be approved by Broderbund, not to be unreasonably withheld).

SOMC and/or Logetics may distribute to end user customers the SOMC/Logetics Club Products and TLC/Broderbund branded Club Products identified in Section 1(b) as part of

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

outbound telemarketing, FSI ("Free Standing Inserts"), emails and direct mails in which the Products are offered on a promotional basis such as for free to customers (customer pays shipping and handling), discounted price (with no charge for shipping and handling), discounted price plus customer pays shipping and handling, or any combination thereof, as a means of generating potential SOMC/Logetics Club customers. SOMC and/or Logetics will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to the SOMC/Logetics Club or TLC/Broderbund Club for approval prior to its use. Broderbund may withhold approval of any materials, not to be unreasonably withheld.

      (c)   <u>Agreements with Third Parties</u>. Subject to Broderbund's prior written consent, to be granted at its sole discretion, SOMC and Logetics may each enter into agreements with third parties to create private label software clubs similar to the SOMC/Logetics Club under which third parties would distribute the SOMC/Logetics Club Products and/or the Broderbund/TLC Club Products. SOMC and/or Logetics will ensure that any third party that distributes the SOMC/Logetics or Broderbund/TLC Products will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to Broderbund for approval prior to its use, not to be unreasonably withheld.. SOMC and Logetics shall remaining solely liable for any failure of the third party to provide such materials for review prior to use.

3.    <u>Licensed Media</u>:  CD-ROM only.

4.    <u>License Fees, Reports and Payment</u>:

      (a)   <u>Guaranteed License Fee.</u>  Notwithstanding any other provisions in this Agreement, OEM shall pay to Broderbund the following non-refundable, irrevocable, non-transferable license fees, totaling **U.S. \$\$1,500,000 dollars** which shall be paid on the following dates:

| | |
|---|---|
| June 30, 2002 | $300,000 |
| September 30, 2002 | $300,000 |
| December 30, 2002 | $300,000 |
| March 30, 2003 | $600,000 |
| | |
| | |
| Total: | $1,500,000 |

      (b)   <u>Per Unit License Fees.</u>  The per unit license fees identified in the above Section 1, and the Club Royalty identified in Section 4(c) below, as well any royalties earned and due to Broderbund, after March 31, 2002, under the Software License and Reproduction Agreement dated May 5, 1998 between SOMC Group, Inc. and Broderbund LLC, shall be applied against the applicable Guaranteed License Fee with respect to each unit of Product manufactured by OEM during the quarter ending on such date. If there is no Guaranteed License Fee, or once the Guaranteed License Fee has been earned down and recouped by OEM, then OEM shall pay directly to Broderbund the Per Unit License Fees listed in the above Section 1 for every unit it manufactures and any Club Royalty earned by Broderbund.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

(c)    <u>Royalty on Broderbund/TLC Club</u>.  OEM will pay Broderbund a royalty of fifty percent (50%) of the Net Receipts derived from sales through the Broderbund/TLC Branded Club ("Club Royalty").

(d)    <u>Quarterly Reconciliation</u>.  To the extent that the cumulative Per Unit License Fees with respect to the number of units of Products manufactured by OEM during a particular quarter and the Club Royalties earned exceed the applicable Guaranteed License Fee for such quarter, OEM shall reconcile and pay to Broderbund the difference (if any) within thirty days of each quarter end.

(e)    <u>Payment of Per Unit License Fees and Club Royalties</u>.  Per Unit License Fees and Club Royalties shall be paid directly to Broderbund within 30 days of the end of the quarter in which each Product is Net Units Sold.  "Net Units Sold" shall mean the number of units distributed by OEM less units returned by OEM's customer, units used as samples to prospective clients (not to exceed 200 units total) and units for employee training purposes (not to exceed 200 units total).  Each Product shall be accounted for separately in OEMs reports to Broderbund.

(f)    <u>Reports</u>.  Each month OEM shall provide Broderbund with a reasonably detailed report showing sales, the number of copies of each Product manufactured by OEM and the calculation of the Per Unit License Fees and Club Royalties for the preceding month.

5.    <u>Territory</u>:  North America.

6.    <u>Production Unit Delivery</u>:  OEM shall provide Broderbund with two (2) copies of the finished manufactured product as soon as such product is available.

7.    <u>Support</u>:  Broderbund will provide technical support for the Products to its end-users at the same level that Broderbund currently provides to its customers that have purchased the Products in the retail channel. OEM will provide customer support for the SOMC/Logetics Club Products and TLC/Broderbund branded Club offerings. OEM will provide Broderbund with a contact to forward all customer service inquiries received by Broderbund.  OEM will make best efforts to resolve all customer support issues within forty-eight (48) hours of receipt from Broderbund.

8.    <u>Expenses</u>:  OEM will bear all costs and expenses of manufacturing, marketing and distributing the Products.

9.    <u>Acknowledgement of Delivery</u>:  On the Effective Date, OEM shall execute a copy of the Acknowledgement of Delivery of all deliverables in the form attached hereto as <u>Exhibit C</u>.

10.    <u>Term of the Agreement</u>:  This Agreement shall expire on March 1, 2004 (the **"Expiration Date"**).

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

11.    Broderbund also agrees to provide ad relating solely to the SOMC/Logetics or Broderbund/TLC Club, placement, size and location to be determined in Broderbund's sole discretion, at www.broderbund.com that directs the user to a designated SOMC url which promotes the SOMC/Logetics Club or Broderbund/TLC Club.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

**EXHIBIT B**
**TERMS AND CONDITIONS**

1.    DEFINITIONS.

1.1    **"Authorized Channels"** shall mean the specific authorized product and bundle configurations and the specific authorized channels identified in Section 2 of Exhibit A.

1.2    **"Confidential Information"** shall mean that information that is identified in Section 9.1 of this Exhibit B.

1.3    **"Cost of Goods"** shall mean all direct costs and expenses associated with the manufacture and delivery of the Products, including, without limitation, CD-ROMs, external and internal packaging, documentation, inserts, assembly, warehousing and manufacturing and licensing fees due to third parties relating to the Broderbund/TLC Club. This shall not include any allocation for employees, overhead or other indirect costs associate with the manufacture and delivery of the Products.

1.4    **"Expiration Date"** shall mean that specific date that is identified in Section 10 of Exhibit A.

1.5    **"Guaranteed License Fees"** shall mean the license fees payable to Broderbund in Section 4(a) of Exhibit A.

1.6    **"Licensed Media"** shall mean the specific licensed media identified in Section 3 of Exhibit A.

1.7    **"Net Receipts"** shall mean the gross revenues actually received by OEM less actual out of pocket costs directly related to the gross revenues from Cost of Goods, the Per Unit License Fees paid to Broderbund under this Agreement, licensing fees paid to third parties related to the Broderbund/TLC Club, sales taxes collected and refunds, actual direct third party marketing expenses directly relating to the Broderbund/TLC Branded Clubs, and all fees paid to Broderbund under the Letter Agreement dated March 29, 2002 between the parties and administrative costs directly related to the Broderbund/TLC Club (such administrative costs can include commercially reasonable allocations of salaries and overhead, in the aggregate such administrative costs shall not to exceed 28% of gross revenues).

1.8    **"Per Unit License Fees"** shall mean the individual Product license fees of the respective Products identified in Section 1 of Exhibit A.

1.9    **"Product"** or **"Products"** shall mean those specific computer software products of TLC identified in Section 1 of Exhibit A. Where the term "SOMC Club Products" or "Broderbund Club Products" is used, the term shall have the specific meaning attributed in Exhibit A. All other use of the term Product shall include "SOMC Club Products" or "Broderbund Club Products."

1.10    **"Term"** shall mean that period of time that is identified in Section 5 of this Exhibit B.

1.11    **"Territory"** shall mean the specific geographic areas described in Section 5 of Exhibit A.

2.    GRANT OF LICENSE, RESTRICTIONS, DOCUMENTATION AND SUPPORT.

2.1    Rights Granted to OEM.

(a)    Subject to this Agreement, Broderbund grants to OEM a non-transferable and non-exclusive license to manufacture, market and distribute the Products in the Licensed Media throughout the Territory for the Term of this Agreement, in the Authorized Channels.

(b)    OEM UNDERSTANDS AND AGREES THAT UNDER NO CIRCUMSTANCES WILL OEM DISTRIBUTE ANY PRODUCT OUTSIDE THE AUTHORIZED CHANNELS. SUCH AN ACT ON THE PART OF OEM SHALL

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

- 13 -

CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT.

2.2    End-User License Agreement. OEM will not distribute any Product unless the Product is accompanied by Broderbund's standard form of end-user license agreement (as provided by Broderbund) as the same may be revised from time to time upon notice to OEM.

3.    COPYRIGHT AND TRADEMARK NOTICES AND TITLE.

3.1    Copyrights and Trademark. Broderbund hereby grants to OEM a non-exclusive, non-transferable right to use the names of the Products listed on Exhibit A when used in connection with the name **"Broderbund,"** and **"The Learning Company,"** on copies of the Products licensed to OEM pursuant to and for the Term of this Agreement. Any sale of a Product or documentation (or any portion thereof) shall include the copyright, trademark and other proprietary rights notices as are currently contained on each such Product (or documentation) or may be specified from time to time by Broderbund. OEM will not challenge any intellectual property rights claimed by Broderbund in such trademarks.

3.2    Title to Products. Title to the Products shall not pass from Broderbund to OEM or its end-users, and the Products and all master copies thereof shall at all times remain the sole and exclusive property of Broderbund.

4.    LICENSE FEES.

OEM shall pay Broderbund the license fee(s) set forth on Exhibit A of this Agreement according to the terms set forth on Exhibit A.

5.    TERM OF AGREEMENT.

Unless otherwise terminated earlier in accordance with the terms of this Agreement, the term of this Agreement shall continue from the Effective Date until the Expiration Date (the **"Term"**). This Agreement may thereafter only be renewed for successive one-year periods upon the written amendment to this Agreement.

6.    TERMINATION AND BREACH.

6.1    Termination. Either party may terminate this Agreement, effective immediately upon written notice, under the following circumstances:

(a)    Except as provided for in Section 6.2, below, if either party materially breaches any provision of this Agreement and such breach has not been cured within thirty (30) days after the other party has given written notice of such breach, the non-breaching party may terminate this Agreement.

(b)    If, at any time, the Guaranteed License Fees or any other amounts due under this Agreement are not paid when due, at Broderbund's option, it may at any time during the Term of this Agreement upon not less than ten (10) days' prior written notice and failure to cure. Should the Agreement terminate pursuant to this provision, all Guaranteed License Fees shall be accelerated and due immediately.

(c)    If OEM should: (1) admit in writing its inability to pay its debts generally as they become due; (2) make a general assignment for the benefit of creditors; (3) institute proceedings to be adjudicated a voluntary bankrupt or consent to the filing of a petition of bankruptcy against it; (4) be adjudicated by a court of competent jurisdiction as being bankrupt or insolvent; (5) seek reorganization under any bankruptcy act, or consent to the filing of a petition seeking such reorganization; or (6) have a decree entered against it by a court of competent jurisdiction appointing a receiver, liquidator, trustee or assignee in bankruptcy or insolvency covering all or substantially all of such party's property or providing for the liquidation of such party's property or business affairs, and fail to cause the same to be removed within sixty (60) days, Broderbund may terminate this Agreement.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

6.2    Termination for Violation of Authorized Channels. In the event that OEM or its customers (including resellers) violate Section 2 of Exhibit A, or otherwise make any improper use, transfer, duplication or disclosure of any of the Product(s), this Agreement and all of OEM's rights hereunder shall terminate immediately.

6.3    Effect of Termination. Upon the expiration or termination of this Agreement, the license granted hereunder shall terminate, and OEM shall immediately discontinue the manufacture of any Products; provided however, OEM shall have the right to sell off any remaining inventory in existence for a period of one hundred eighty (180) days, unless the Agreement has been terminated under Section 6.1 or Section 6.2, above. In the final thirty days of the Term, OEM shall not manufacture Product in excess of the average number of units of Product manufactured during the Term. All proprietary and confidential information shall be promptly returned to Broderbund. Termination or expiration of this Agreement shall not relieve OEM of any of its payment obligations.

6.4    Survival of Certain Conditions. Notwithstanding anything to the contrary contained in this Agreement, Sections 2.1(b), 2.2-2.5, 3.2, 4, 6.4, 7, 9 and 10 shall in all cases survive any expiration or termination of this Agreement.

6.5    Injunctive Relief. OEM understands and agrees that Broderbund will suffer irreparable harm in the event that OEM fails to comply with the any of its obligations under Section 2.1(b) above, and that monetary damages in such event would be substantial and inadequate to compensate Broderbund. Consequently, in such event Broderbund will be entitled, in addition to such monetary relief as may be recoverable by law, to such temporary, preliminary and/or permanent injunctive relief as may be necessary to restrain any continuing or further breach by OEM, without showing or proving any actual damages sustained by Broderbund.

7.    REPRESENTATIONS, WARRANTIES AND INDEMNIFICATION.

7.1    Broderbund's Representations and Warranties. Broderbund represents and warrants to OEM the following:

(a)    Broderbund either owns all right, title and interest in the Products or possesses the necessary rights to grant OEM the rights and license granted hereunder.

(b)    Broderbund has the full power and authority to enter into this Agreement and to fulfill its obligations hereunder.

(c)    The Products do not infringe upon any intellectual property rights or other proprietary rights of any third party.

7.2    OEM's Representations and Warranties: OEM represents and warrants to Broderbund the following:

(a)    OEM possesses full power and authority to enter into this Agreement and to fulfill its obligations hereunder; and

(b)    OEM's performance of the terms of this Agreement and of OEM's obligations hereunder shall not breach any separate agreement by which OEM is bound.

7.3    Broderbund Indemnities. Broderbund agrees to indemnify, hold harmless and defend OEM from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement.

7.4    OEM Indemnities. OEM agrees to indemnify, hold harmless and defend Broderbund from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

7.5    Broderbund Indemnification Option. In the case of any infringement claim, at Broderbund's option, Broderbund may at its expense: (i) procure a license from any claimants with respect to the challenged Product (or component thereof) that will enable Broderbund to continue marketing and using the Product, (ii) modify the challenged Product so as to make it non-infringing, or (iii) take appropriate action or seek available legal remedies to enable the continued manufacturing, use and distribution of the challenged Product.

7.6    THE WARRANTY STATED HEREIN IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND SUCH WARRANTY CONSTITUTES THE ONLY WARRANTY MADE BY BRODERBUND WITH RESPECT TO THIS AGREEMENT OR THE PRODUCTS, ARTICLES, MATERIALS, REPLACEMENT PARTS OR SERVICES TO BE SUPPLIED HEREBY. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR LOST PROFITS, LOSS OF DATA OR ANY COLLATERAL, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND. BRODERBUND'S AGGREGATE LIABILITY TO OEM UNDER THIS SECTION 7 IS LIMITED TO THE AMOUNT THAT OEM ACTUALLY PAYS TO BRODERBUND UNDER THIS AGREEMENT.

7.7    Claims. With respect to any claims falling within the scope of the foregoing indemnifications: (a) each party agrees to notify the other promptly of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating; (b) Broderbund shall have the right to assume, at its expense, the defense of a claim or suit made or filed against OEM; and (c) if Broderbund does not represent OEM in any claim or suit, Broderbund shall pay OEM's legal costs and expenses in defense of such a claim. OEM shall not settle such claim or suit without the prior written approval of Broderbund, which approval will not be unreasonably withheld or delayed.

8.    BOOKKEEPING OBLIGATIONS AND INSPECTION RIGHTS.

OEM shall maintain true and complete books of account containing an accurate record of all data necessary for the proper computation of payments hereunder, and Broderbund shall have the right, by a certified public accountant appointed by it, to examine such books at all reasonable times (but not more than twice in each calendar year) for the purpose of verifying the accuracy of the reports and computation rendered by OEM. Upon reasonable advance notice, such examination shall be made during normal business hours at the principal place of business of OEM. If such examination reveals that reports furnished by OEM were inaccurate by more than ten percent (10%) and that amounts in excess of those paid to Broderbund are due, the cost of such examination shall be borne by OEM and OEM shall pay the amount of any discrepancy to Broderbund, plus interest at the rate of eighteen percent (18%) per year or part thereof on any deficiencies.

9.    CONFIDENTIAL INFORMATION.

9.1    Confidential Information. Each party (the "receiving party") shall keep in strictest confidence the terms of this Agreement and all material and information, in whatever form provided, identified by the other party (the "disclosing party") to be confidential or proprietary in nature relating to the disclosing party's trade secrets (including pricing policies, business strategies, software designs and specifications), as well as any materials and information which from the circumstances in which they are made available to the receiving party in good faith and good conscience ought to be treated as confidential or proprietary ("**Confidential Information**").

9.2    Exceptions. Information shall not be considered to be Confidential Information if it (i) is already or otherwise becomes publicly known through no act of the receiving party,

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

(ii) is lawfully received from third parties subject to no restriction of confidentiality, (iii) can be shown by the receiving party to have been independently developed by it, (iv) is disclosed by the disclosing party to third parties without restriction on subsequent disclosure, or (v) is required to be disclosed in the context of an administrative or judicial proceeding, except that in such case the receiving party agrees to provide the disclosing party with prompt notice of such requirement in order to allow the disclosing party to seek an appropriate protective order.

9.3    Term of Confidentiality.  Each party's obligations under this Section 9 shall survive the termination or expiration of this Agreement for a period of two (2) years.

10.    MISCELLANEOUS PROVISIONS.

10.1    Entire Agreement.  This Agreement, including all Exhibits, contains the entire understanding of the parties hereto relating to the Products, supersedes any prior written or oral agreement or understandings between the parties with respect to the Products, and cannot be changed or terminated orally. This Agreement may be amended only by a writing signed by the parties hereto.

10.2    Enforceability.  The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement.

10.3    Assignment.  Neither this Agreement nor the rights or obligations hereunder may be assigned by OEM without the prior written consent of Broderbund, which consent shall not be unreasonably withheld; provided however, that OEM may assign this Agreement upon the merger of OEM or the sale of OEM's business, all without the consent of Broderbund, if OEM gives notice to Broderbund of such assignment.  In the event of such an assignment, this Agreement shall be binding upon such successors and assignees.

In the event that Broderbund sells substantially all of the assets of any of its business units by sale, merger, or otherwise, then, Broderbund may elect to assign the duties and obligations arising under this Agreement with respect to such transferred business or assets to the purchaser of such business or assets to the extent such sale relates to the Products.  In such event, Broderbund may elect to require OEM to enter into a substantially identical agreement to this Agreement for the transferred Products.

10.4    Independent Contractors.  OEM and Broderbund shall perform their duties pursuant to this Agreement as independent contractors.  Nothing in this Agreement shall be construed to create a joint venture, partnership or other joint relationship between OEM and Broderbund.  Neither party shall have the ability to incur any obligation on behalf of the other party.

10.5    Successors.  Subject to Section 10.3 above, all rights and obligations arising out of this Agreement shall inure to the benefit of, and be binding on and enforceable by the parties and their respective successors and permitted assigns.

10.6    Currency.  All dollar amounts herein are expressed in United States funds.

10.7    Governing Law.  This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the Commonwealth of Massachusetts and all claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction within Massachusetts.

10.8    Notices.  All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made if hand delivered, mailed first class mail, postage prepaid, sent by prepaid telegram (or telex or other facsimile transmission) or sent by express overnight courier service to the address listed above or to such other address as any such party may have

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

designated by like notice forwarded to the other party hereto.

10.9    _Loss of Rights_.  In the event that Broderbund's rights to any Products expire or are terminated at any time, any rights granted to OEM under this Agreement with respect to such Products shall be terminated as of such date and Broderbund shall not be liable to OEM for any loss or liability in connection with said termination of rights.

10.10    _Press Releases_.  OEM shall not make any public announcement or issue any press release relating to this Agreement or the services to be provided in connection therewith without the prior written consent of Broderbund.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

**EXHIBIT C**
**To OEM Agreement Dated March 28, 2002.**
**Acknowledgement of Delivery**

OEM:  SOMC GROUP, INC. and LOGETICS, INC.

Agreement/Amendment Effective Date:

Agreement/Amendment Number:

OEM hereby acknowledges having received, on or before the Effective Date,  (1) a reproducible master
copy for each Product listed below and, (2) all other materials Broderbund is obligated to deliver under
the above-referenced Agreement/Amendment.

Product(s):

| | | |
|---|---|---|
| Amazon Trail 3rd Ed: Rainforest Adventures | AMA3744AE | $0.65 |
| Bob Vila's Home Design | BVH3844AE | $0.85 |
| Carmen Sandiego Junior Detective | 51406 | $0.65 |
| Carmen Sandiego Math Detective | 25701 | $0.65 |
| Carmen Sandiego Word Detective | 45820 | $0.65 |
| Carmen Sandiego's Great Chase Through Time, CD1 | CST3744AE | $0.85 |
| Carmen Sandiego's ThinkQuick Challenge | CSQ3744AE | $0.85 |
| Children's Bible Stories | CBS3544AE | $0.65 |
| Compton's 3D World Atlas | CWA844AE-CD1 | $0.65 |
| Compton's Home Library Battles of the World | BTF3744AE | $0.65 |
| Compton's Interactive Bible – NIV | 113069 | $0.65 |
| Daniel in the Lion's Den | 48501 | $0.85 |
| Explorers of the New World | EXP2544AE | $0.65 |
| French to Go | PFR3844AE | $0.85 |
| Just Grandma and Me | 48462 | $0.85 |
| Kid Pix Studio Deluxe | 28537 | $0.85 |
| Knowledge Munchers Deluxe | KMC2744AE-D&D | $0.85 |
| Leap Ahead! 1st Grade | | $0.85 |
| Leap Ahead! 2nd Grade | | $0.85 |
| Leap Ahead! 3rd Grade | | $0.85 |
| Leap Ahead! Kindergarten | | $0.85 |
| Leap Ahead! Math 6-9 | | $0.85 |
| Leap Ahead! Phonics | | $0.85 |
| Leap Ahead! Preschool | | $0.85 |
| Leap Ahead! Reading 6-11 | | $0.85 |
| Learn to Speak English 8.0 | LTSE3544DE | $0.85 |
| Learn to Speak English from Spanish (Hablemos Ingles) 7.0 | LTSH6544CE | $0.85 |
| Learn to Speak French 8.0 | LSF3744DE | $0.85 |
| Learn to Speak German 8.0 | LTSG3544DE | $0.85 |
| Learn to Speak Spanish 8.0 | LTSS3544DE | $0.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by
Broderbund.  It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Math Workshop Deluxe | 50122 | $0.65 |
| Mosby's Medical Encyclopedia | MDE2344BE-D&D | $0.85 |
| Oregon Trail III | OTA3744AE | $0.65 |
| Oregon Trail II | OTT3744AE | $0.65 |
| Orly's Draw-A-Story | 53605 | $0.85 |
| Passport to 31 Languages | THL3744AE | $0.85 |
| Reader Rabbit's Math Ages 4-6 | 378475 | $0.65 |
| Reader Rabbit's Math Ages 6-9 | 378476 | $0.65 |
| Reader Rabbit's Math Journey | MJF2744AE-D&D | $0.65 |
| Reader Rabbit's Personalized Math 1st & 2nd Grade | 378476 | $0.65 |
| Reader Rabbit's Playtime for Baby | BRR3744AE | $0.65 |
| Reader Rabbit's Reading 1 | RRA2744BE-D&D | $0.65 |
| Reader Rabbit's Reading Ages 4-6 | 378474 | $0.65 |
| Reader Rabbit's Reading Ages 6-9 | 378473 | $0.65 |
| Reader Rabbit's Thinking Adventures 4-6 | RTG3744AE | $0.65 |
| Reader Rabbit's 1st Grade | RRF3744BE | $0.85 |
| Reader Rabbit's 2nd Grade | RSG3744BE | $0.85 |
| Reader Rabbit's Kindergarten | RRK3744BE | $0.65 |
| Reader Rabbit's Preschool | RRP3744BE | $0.65 |
| Road Adventures USA | TRA3744AE | $0.65 |
| Spanish to Go | 381327 | $0.85 |
| Spelling Master | SMP3744AE | $0.65 |
| Super Solvers Mission Think | MEM3744AE | $0.85 |
| Super Solvers Reading 9-12 | SSR3744AE | $0.85 |
| Where in the USA is Carmen Sandiego | CSU3744AE | $0.85 |
| Where in the World is Carmen Sandiego | CSD3744AE | $0.85 |
| Where in Time is Carmen Sandiego | 44303 | $0.85 |
| Zondervan NIV Bible Deluxe | ZNB2844AE | $0.85 |
| Family Tree Maker 9  (OEM) | tbd | $0.75 |
| 3D Home Interiors #381158-CD (one CD only) | 381158-CD | $0.75 |
| Calendar Creator 8.0 | 381035 | $0.75 |
| Click Art 10K | CLT3844AE | $0.75 |
| Kid Pix Deluxe 3 | 378180 | $0.75 |
| Printmaster Silver 11 | 379863 | $0.75 |
| Print Shop Essentials 12 | 380869 | $1.00 |
| Print Shop Photo Workshop | 180875 | $1.00 |
| Print Shop CD Label Creator | 381244 | $1.00 |
| Labels Unlimited | LUN3844AE | $0.75 |
| Compton's Interactive Cookbook | CKS3544AE | $0.75 |
| Broderbund Business Lawyer SE 2002 | 281365 | $0.75 |
| Broderbund Family Lawyer  2002 | 380979 | $0.75 |
| Black & Decker Home Repairs | BDH3844AE | $0.75 |
| Leonardo, The Inventor 2.0 | LNT3544AE | $0.75 |
| Resume Pro 3.0 | RES2844AE | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Williams and Sonoma Guide To Good Cooking | 379505 | $0.75 |
| NTI CD Maker Essentials | 285172 | $0.75 |
| LTS: ENGLISH V8.1 | 381415 | $0.75 |
| LTS:GERMAN V8.1 | 381417 | $0.75 |
| LTS:SPANISH V8.1 | 381418 | $0.75 |
| LTS:FRENCH V8.1 | 381416 | $0.75 |
| Logical Journey of the Zoombinis | 278469 | $0.75 |
| Treasure Cove | TSC3544AE | $0.75 |
| Treasure Galaxy | TSG3544AE | $0.75 |
| Treasure Mathstorm | TMS3544BE | $ 0.75 |
| Treasure Mountain | PTS3744AE | $0.75 |
| Trivia Munchers | TVM2744AE-D&D | $0.75 |
| Troggle Trouble Math | PTT3544AE | $0.75 |
| Oregon Trail IV | OTF3744AE | $0.75 |
| Printmaster Homework Helper | 385015 | $0.75 |
| Printmaster Party & Crafts Creator | 385014 | $0.75 |
| Printshop Business Card Creator | 385013 | $0.75 |
| Printshop Newsletter, Brochures & More | 385012 | $0.75 |
| 3d Home Design Kit | 381543 | $0.75 |
| Clickart Celebrations & Holidays II | 381107 | $0.75 |
| Groliers Encyclopedia | TBD | $0.75 |
| Body Works 6 | BWK3844CE | $0.75 |
| Quick Study Spanish | QSS3844AE | $0.75 |
| Quick Study French | QSF3844AE | $0.75 |
| ClueFinders 3rd Grade Adventures | 379539 | $0.85 |
| ClueFinders 4th Grade Adventures | 379536 | $0.85 |
| ClueFinders 5th Grade Adventures | 379535 | $0.85 |
| Compton's Learning Mathematics | MTC3844AE | $.065 |
| Compton's Learning Programming Made Easy | PME6844AE | $0.65 |
| Compton's Learning Real Science | PGS3844AE | $0.65 |
| Encyclopædia Britannica Ready Reference 2002 | TBD | $1.00 |
| Little Bear Preschool Thinking Adventures | 379655 | $0.75 |
| Little Bear Toddler Discovery Adventures | 379737 | $0.75 |
| Mavis Beacon Teaches Typing 12 Standard | 380858 | $0.75 |
| Mavis Beacon Teaches Typing 9.0 | MBT2844AE | $0.65 |
| Mavis Beacon Teaches Typing 9.0 Mac | 112915 | $0.65 |
| Practice Makes Perfect French | PMPF3544AE | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Practice Makes Perfect Spanish | PMPS3544AE | $0.75 |
| Reader Rabbit Toddler | RRT3744CE | $0.65 |
| Schoolhouse Rock 1st & 2nd Grade Essentials | SGE3744AE | $0.85 |
| Schoolhouse Rock 3rd & 4th Grade Essentials | SGD3744AE | $0.85 |
| Schoolhouse Rock Grammar Rock | SGR3744ae | $0.85 |
| Schoolhouse Rock Math Rock | 21010-D&D | $0.85 |
| Schoolhouse Rock Thinking Games | BBT3844AE | $0.85 |
| Schoolhouse Rock Thinking Games Deluxe | SRT3744BE | $0.85 |
| The Art Lesson | HCD772 | $0.85 |
| Ultimate Children's Encyclopedia | ZCE3544AE | $0.85 |
| Ultimate Writing & Creativity Center | UWC54EE-CD | $0.85 |
| Theme Weavers: Animals | | $0.75 |
| Thinkin Things All Around Fripple Town | | $0.75 |
| Thinkin Things Collection 1 | | $0.75 |
| Thinkin Things Galactic Brain Benders | | $0.75 |
| Stanley's Sticker Stories | | $0.75 |
| Let's Go Read! 1: An Island Adventure | | $0.75 |
| Mighty Math Carnival Countdown | | $0.75 |
| Mighty Math Astro Algebra | | $0.75 |
| Talking Walls | | $0.75 |
| Millies Math House | | $0.75 |
| Baileys Book House | | $0.75 |
| Sammy's Science House | | $0.75 |
| Mighty Math Zoo | | $0.75 |

SOMC GROUP, INC. (OEM)

By: _____

Title: _President & CEO_

Date: _MARCH 29, 2002_

LOGETICS, INC. (OEM)

By: _____

Title: _President & CEO_

Date: _MARCH 29, 2002_

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

This is a draft only and this Agreement shall not be performed until this document is sig

# AMENDMENT NO. 1 TO
# OEM LICENSE AGREEMENT

This Amendment No. 1 (this "**Amendment**") shall serve to amend as of December 30, 2002, that certain OEM License Agreement dated March 28, 2002 by and between Broderbund LLC ("**Broderbund**"), and SOMC Group, INC ("**OEM**"), (the "**Agreement**").

The parties hereby agree as follows:

1.      The program(s) listed on Schedule A-1 attached hereto are hereby added to Sections 1 (a) and 1 (b) <u>Schedule A</u> of the Agreement and shall be subject to all of the terms and conditions set forth in the Agreement and each such program shall be deemed to be a "**Product**" for the purposes of the Agreement.

2.      <u>Guaranteed License Fee.</u>  Notwithstanding any other provisions in the Agreement, OEM shall pay to Broderbund the following additional, non-refundable, irrevocable, non-transferable license fees, totaling **U.S. $800,0000 dollars** (collectively, the "**Guaranteed License Fees**", and, individually, each a "**Guaranteed License Fee**").  Any payments made shall be applied against the guarantee license fee.  Payments will be made by April 30, July 15, October 15 and December 30.  Such amounts will be not be less than $200,000 and in no event will the cumulative amount paid by December 30, 2003 be less than the total Guaranteed License Fees under this Agreement.

3.      <u>Per Unit License Fees.</u>  Distributor shall pay the Per Unit License Fees for the Products sold, but no event less than the Guaranteed License Fees described above, under this Amendment as described.

4.      <u>Assignment.</u>  By way of this Amendment, Broderbund LLC hereby assigns to Riverdeep, Inc., all of its rights and obligations under the Agreement, and SOMC Group, Inc. consents to and Riverdeep, Inc. hereby accepts such an assignment.

5.      This Amendment constitutes the entire agreement of the parties and supersedes any and all prior and contemporaneous oral and/or written agreements concerning the subject matter hereof.  Except as specifically modified herein, all terms and provisions of the Agreement remain in full force and effect.  This Amendment shall be governed as a sealed instrument under California law.  Capitalized terms used in this Amendment and not defined herein shall have the same meaning as set forth in the Agreement.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed under seal as of the date first set forth above.

BRODERBUND LLC

By: _____
Name:  *Douglas Reilly*
Title:  *Asst. General Counsel*

RIVERDEEP, INC.

By: _____
Name:  *Robert B. Chehy*
Title:  *Controller*

SOMC GROUP, INC.

By: _____
      Name:
      Title:

LOGETICS, INC.

By: _____
      Name:
      Title:

*DP/PG*  *12/30/02*

Riverdeep Business Person:
Account Code:

1

C:\WINDOWS\Temporary Internet Files\OLKD144\SOMC 2002 Agreement AMN 1 final.DOC

### AMENDMENT NO. 1 TO
### OEM LICENSE AGREEMENT

This Amendment No. 1 (this "**Amendment**") shall serve to amend as of December 30, 2002, that certain OEM License Agreement dated March 28, 2002 by and between Broderbund LLC ("**Broderbund**"), and SOMC Group, INC ("**OEM**"), (the "**Agreement**").

The parties hereby agree as follows:

1.      The program(s) listed on Schedule A-1 attached hereto are hereby added to Sections 1 (a) and 1 (b) <u>Schedule A</u> of the Agreement and shall be subject to all of the terms and conditions set forth in the Agreement and each such program shall be deemed to be a "**Product**" for the purposes of the Agreement.

2.

<u>Guaranteed License Fee.</u>  Notwithstanding any other provisions in the Agreement, OEM shall pay to Broderbund the following additional, non-refundable, irrevocable, non-transferable license fees, totaling **U.S. $800,0000 dollars** (collectively, the "**Guaranteed License Fees**", and, individually, each a "**Guaranteed License Fee**"). Any payments made shall be applied against the guarantee license fee. Payments will be made by April 30, July 15, October 15, and December 30. Such amounts will be not be less than $200,000 and in no event will the cumulative amount paid by December 30, 2003 be less than the total Guaranteed License Fees under this Agreement. .

3.      <u>Per Unit License Fees.</u>  Distributor shall pay the Per Unit License Fees for the Products sold, but no event less than the Guaranteed License Fees described above, under this Amendment as described.

4.      <u>Assignment.</u>  By way of this Amendment, Broderbund LLC hereby assigns to Riverdeep, Inc., all of its rights and obligations under the Agreement, and SOMC Group, Inc. consents to and Riverdeep, Inc. hereby accepts such an assignment.

5.      This Amendment constitutes the entire agreement of the parties and supersedes any and all prior and contemporaneous oral and/or written agreements concerning the subject matter hereof. Except as specifically modified herein, all terms and provisions of the Agreement remain in full force and effect. This Amendment shall be governed as a sealed instrument under California law. Capitalized terms used in this Amendment and not defined herein shall have the same meaning as set forth in the Agreement.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed under seal as of the date first set forth above.

BRODERBUND LLC                               SOMC GROUP, INC.

By:_____                   By:_____
   Name:                                        Name: _Thomas E. Holland_
   Title:                                        Title: _President & CEO_

RIVERDEEP, INC.                              LOGETICS, INC.

By:_____                   By:_____
   Name:                                        Name: _Thomas E. Holland_
   Title:                                        Title: _President & CEO_

1

*This is a draft only and an agreement shall not be formed until this document is signed by both parties.*

Title:                                                    Title:

## Schedule A-1

| Title | SKU | Per Unit License Fee |
|---|---|---|
| AG CreataCard Spiritual Expressions 7 | 385376 | $ 1.00 |
| AG Crafts! 7 | 385375 | $ 1.00 |
| AG Scrapbooks & More! 7 | 385377 | $ 1.00 |
| Click Art 400K | 385489 | $ 0.85 |
| Business Lawyer Essentials 2003 | 285453 | $ 0.85 |
| Family Lawyer Essentials 2003 | 285454 | $ 0.85 |
| Movie Shop 6.5 Select | 285535 | $ 1.00 |
| The Print Shop Home Office Labels Select | 285528 | $ 0.85 |
| ATOMIC CLOCK 6 VAL | 385480 | $ 0.50 |
| PC COPY CENTER 2 VAL | 385481 | $ 0.50 |
| SCREEN SHOT 4 DLX VAL | 385482 | $ 0.50 |
| Pop & Slurp (Hexacto) | 381923 | $ 0.50 |
| Emperor's Mahjong | 381922 | $ 0.50 |
| Lemonade Tycoon | 381921 | $ 0.50 |
| Paddington - The World Mystery Tour | 381917 | $ 0.50 |
| Intellivision Greatest Hits Box | 381919 | $ 0.50 |
| 101 XP Games | 381842 | $ 0.50 |
| AG CreataCard 6 Select | 285289 | $ 0.85 |
| AG CAC 7 Select | 285293 | $ 1.00 |
| AG CreataCard Spirtual Expression 6 | 380940 | $ 0.85 |
| Calendar Creator 9.0 Select | 285371 | $ 0.85 |
| Click Art 2 FONTS | 385341 | $ 0.85 |
| ClickArt 250,000 | 381106 | $ 0.85 |
| Click Art Celebrations & Holidays 2 | 381107 | $ 0.85 |
| Click Art Presentation Graphics | 385342 | $ 0.85 |
| PrintMaster SELECT 12 | 285008 | $ 0.85 |
| The Print Shop 15 Select | 285179 | $ 1.00 |
| The Print Shop Business Card Creator | 385013 | $ 1.00 |

2

Riverdeep Business Person:
Account Code:
C:\Documents and Settings\TomH.logetics\Local Settings\Temporary Internet Files\OLK1FD\Riverdeep-SOMC 2002 Agreement AMN 1 final.DOC

*This is a draft only and an agreement shall not be formed until this document is signed by both parties.*

| | | | |
|---|---|---|---|
| The Print Shop Brochures, Newsletters & More | 385012 | $ | 1.00 |
| The Print Shop Letterhead, Envelopes & More | 385011 | $ | 1.00 |
| 3D Home Architect Deluxe 5.0 | 381541 | $ | 1.00 |
| 3D Home Interiors V2.0 | 381158-CD | $ | 1.00 |
| 3D Home Landscape Designer SE | 285433 | $ | 1.00 |
| Broderbund 3D World Atlas | 282064 | $ | 0.85 |
| GROLIER MMEDIA ENCYC MM 2003 | 946545 | $ | 1.00 |
| MAVIS 15 STD | 381500 | $ | 1.00 |
| Bob Villa's Home Design | BVH3844AE | $ | 0.50 |
| MEDIASHOP  OEM | 285384 | $ | 0.75 |
| SUPER DUPER MUSIC LOOPER | 300214 | $ | 1.00 |
| Broderbund Email Watchdog | 381483 | $ | 0.85 |
| Caillou Party Fun & Games | 381342 | $ | 0.85 |
| Caillou's Magic Playhouse | 381343 | $ | 0.85 |
| Caillou Four Seasons of Fun | 381722 | $ | 0.85 |
| ClueFinders 4th Grade Adventures - *Puzzle of the Pyramid* | 381578 | $ | 0.85 |
| ClueFinders 5th Grade Adventures - *Secret of the Living Volcano* | 381577 | $ | 0.85 |
| ClueFinders 6th Grade Adventures - *Empire of the Plant People* | 381576 | $ | 0.85 |
| ClueFinders Math Adventures - *Mystery of the Himalayas* | 381575 | $ | 0.85 |
| ClueFinders: The Incredible Toy Store Adventure! | 381573 | $ | 0.85 |
| Jay Jay Earns His Wings | 381552 | $ | 0.85 |
| Jay Jay: Sky Heroes To The Rescue | 381551 | $ | 0.85 |
| Zoboomafoo Animal Alphabet | 381344 | $ | 0.85 |
| Zoboomafoo Creature Quest | 381553 | $ | 0.85 |
| Reader Rabbit 1st Grade 2002 Version 1.11 | 381489 | $ | 0.85 |
| Reader Rabbit 2nd Grade 2002 Version 1.11 | 381490 | $ | 0.85 |
| Reader Rabbit Kindergarten 2002 Version 1.12 | 381492 | $ | 0.85 |
| Reader Rabbit Preschool 2002 Version 1.12 | 381493 | $ | 0.85 |
| Reader Rabbit Toddler 2002 Version 3.0 | 381491 | $ | 0.85 |
| StarFlyers Alien Space Chase | 380853 | $ | 0.85 |
| StarFlyers Royal Jewel Rescue | 381547 | $ | 0.85 |
| Adventures of Stuart Little | 381676 | $ | 0.85 |
| ZOOMBINIS LOGICAL JRNY V2.0 | 380933 | $ | 0.85 |
| ZOOMBINIS MTN RESCUE V1.0 | 380860 | $ | 0.85 |
| Zoombinis Island Odyssey | 381664 | $ | 0.85 |

Riverdeep Business Person:
Account Code:
C:\Documents and Settings\TomH.logetics\Local Settings\Temporary Internet Files\OLK1FD\Riverdeep-SOMC 2002 Agreement AMN 1 final.DOC

*This is a draft only and an agreement shall not be formed until this document is signed by both parties.*

| | | | |
|---|---|---|---|
| Beginner's Bible - Classic Bible Stories | 381827 | $ | 0.50 |
| Where In The World Is Carmen Sandiego? 2002 | 380862 | $ | 0.50 |
| CF: 6TH GRADE (RELAUNCHED 7/9/01) | 379538 | $ | 0.85 |
| CF: INCREDIBLE TOY STORE ADV | 380841 | $ | 0.85 |
| The Princeton Review: Inside The SAT/ACT 2003 Deluxe | 381498 | $ | 1.00 |
| Thinkin' Science | 104-1067 | $ | 0.50 |
| Thinkin' Science Zap! | 104-0721 | $ | 0.50 |
| Millie & Bailey Kindergarten | 101-0717 381517 | $ | 0.50 |
| Millie & Bailey Preschool | 101-0716 | $ | 0.50 |
| Sammy's Science House | 104-1178 | $ | 0.50 |
| Theme Weavers: Nature | 104-0743 | $ | 0.50 |
| Travel the World with Timmy!  Deluxe | 104-0727 | $ | 0.50 |
| Trudy's Time & Place House | 104-1083 | $ | 0.50 |
| Strategy Challenges Collection 1:  Around the World | 104-1069 381518 | $ | 0.50 |
| Mighty Math Calculating Crew | 104-1074 | $ | 0.50 |
| Mighty Math Number Heroes | 104-1076 | $ | 0.50 |
| Mind Twister Math | 104-0745 | $ | 0.50 |
| Let's Go Read! 2:  An Ocean Adventure | 104-0725 | $ | 0.50 |
| Stories & More:  Animal Friends | 104-0740 | $ | 0.50 |
| Travel the World with Timmy!  Deluxe | 104-0727 | $ | 0.50 |
| Talking Walls:  The Stories Continues | 104-0739 | $ | 0.50 |
| Imagination Express Series:  Castle | 104-1607 | $ | 0.50 |
| Imagination Express Series:  Neighborhood | 104-1605 | $ | 0.50 |
| Imagination Express Series:  Time Trip, USA | 104-1634 | $ | 0.50 |

Riverdeep Business Person:
Account Code:
C:\Documents and Settings\TomH.logetics\Local Settings\Temporary Internet Files\OLK1FD\Riverdeep-SOMC 2002 Agreement AMN 1 final.DOC

## AMENDMENT NO. 2 TO OEM LICENSE AGREEMENT

This Amendment No. 2 (this "Amendment") shall serve to amend as of September 29, 2003 that certain OEM License Agreement dated March 28, 2002 by and between Riverdeep, Inc. ("Riverdeep"), SOMC Group Inc. and Logetics, Inc. ("OEM"), (the "Agreement").

The parties hereby agree as follows:

1. <u>Term of agreement</u>. The parties mutually agree to extend the term of the agreement to September 30, 2004.

2. The following Products are deleted from Exhibit A and may no longer be distributed by SOMC under this Agreement:

    Zondervan NIV Bible Deluxe
    Print Shop Photo Workshop
    NTI CD Maker Essentials
    Talking Walls

3. <u>Quarterly Payments and Guaranteed License Fee</u>. Progress payments will be made on January 15, April 15, July 15, and October 15 based on Net Units Sold and Per Unit License Fees for the preceding quarter. Any payments made shall be applied against the Guaranteed License Fee. The balance due at September 30, 2003 shall be paid in accordance with the following schedule:

    • $20,000 upon execution of this Amendment,

    • $30,000 payable October 15, 2003,

    • $50,000 payable November 15, 2003,

    • $50,000 payable December 15, 2003,

    • $50,000 payable January 15, 2004,

    • $50,000 payable February 15, 2004,

    • Balance payable March 15, 2004.

4. This Amendment constitutes the entire agreement of the parties and supercedes any and all prior and contemporaneous oral and/or written agreements concerning the subject matter hereof. Except as specifically modified herein, all terms and provisions of the Agreement remain in full force and effect. This Amendment shall be governed as a sealed instrument under California law. Capitalized terms

used in this Amendment and not defined herein shall have the same meaning as set forth in the Agreement.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed under seal as of the date first set forth above.

RIVERDEEP, INC.

By: _____

    Name:  JOHN BARRETT

    Title:  VP OEM SALES

SOMC GROUP INC.

By: _____

    Name:  Thomas E. Holland

    Title:  President & CEO

LOGETICS, INC.

By: _____

    Name:  Thomas E. Holland

    Title:  President & CEO

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 2



**PERSONAL AND CONFIDENTIAL**

December 9, 2003

Mr. Greg Joray
Executive Publisher
Children's Better Health Institute
1100 Waterway Blvd.
Indianapolis, IN 46202

Dear Mr. Joray:

SOMC Group Inc. is seeking a synergistic buyer with complimentary capabilities. We feel this acquisition opportunity may either complement your existing business activities or, perhaps, provide you with an excellent opportunity for growth.

SOMC Group Inc. is a Marketing and Family Software Company based in Southern California. We provide family-oriented products and have a database of approximately 1.4 million customers. We are a licensed distributor for other companies' products and provide award-winning software programs to include bilingual and multilingual children's software. The programs are Windows and Mac compatible.

We have expertise in software continuity clubs, mass email marketing, E-commerce, direct-mail marketing and have an 18-year history.

If you would like more information on our Company, please feel free to call me at 760-827-7378.

Sincerely,

SOMC Group, Inc.

Thomas E. Holland
President & CEO



# Children's Better Health Institute

1100 WATERWAY BLVD., P.O. BOX 567, INDIANAPOLIS, INDIANA 46206 ▪ (317) 634-1100





Thomas E. Holland
President & CEO
SOMC Group Inc.
1935 Camino Vida Roble
Carlsbad, CA  92008

Dear Mr. Holland:

Thank you for your letter of December 9th regarding the acquisition
opportunity for SOMC Group.

At this time, our organization is not in the position to consider your
offer.

We wish you the best of luck in securing a buyer for  SOMC.



Sincerely

Greg Joray
Executive Publisher
The Children's Better Health Institute





PERSONAL AND CONFIDENTIAL

December 8, 2003

Mr. Lon C. Mandel
President/CEO
The SpeciaLISTS
1200 Harbor Blvd.
9th Floor
Weehawken, NJ 07087

Dear Mr. Mandel:

SOMC Group Inc. is seeking a synergistic buyer with complimentary capabilities. We feel this acquisition opportunity may either complement your existing business activities or, perhaps, provide you with an excellent opportunity for growth.

SOMC Group Inc. is a Marketing and Family Software Company based in Southern California. We provide family-oriented products and have a database of approximately 1.4 million customers. We are a licensed distributor for other companies' products and provide award-winning software programs to include bilingual and multilingual children's software. The programs are Windows and Mac compatible.

We have expertise in software continuity clubs, mass email marketing, E-commerce, direct-mail marketing and have an 18-year history.

If you would like more information on our Company, please feel free to call me at 760-827-7378.

Sincerely,

SOMC Group, Inc.

Thomas E. Holland
President & CEO

1935 Camino Vida Roble, Carlsbad, CA 92008

Telephone 760.827.7300    Facsimile 760.827.7310



December 12, 2003

Mr. Thomas E. Holland
President & CEO
SOMC Group Inc.
1935 Camino Vida Roble
Carlsbad, CA 92008

Dear Mr. Holland:

Thank you for considering our organization as a possible acquirer of SOMC.
However, we do not see how your company would be a good fit for us and
therefore, we would like to respectfully decline your kind offer.

Sincerely,

Lon Mandel
CEO

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 3

January 27, 2004

Mr. Thomas E. Holland
President and CEO
SOMC Group Inc.
1935 Camino Vida Roble
Carlsbad, CA 92008


Dear Mr. Holland:

We very much appreciate your business and the relationship you have with Riverdeep. In our current review of your account, however, we see that you are significantly past due on significant obligations.

As of September 30, 2003, SOMC was past due $919,722.12 on royalty guarantee payments under the OEM License Agreement dated March 28, 2002, as amended. By Amendment 2 to the Agreement, the parties agreed to a payment plan for those sums. Fundamental to that agreement, however, was that SOMC would continue to make quarterly payments of Net Units Sold and Per Unit License Fees each quarter. The report and payment for Q4 2003 was due January 15, 2004, but has not been provided.

SOMC's failure to provide this report and to make the applicable payment constitutes a material breach of the Agreement which Riverdeep must insist be cured immediately. SOMC should provide the report and payment within ten (10) days of this notice. If SOMC fails to do so, the Agreement shall terminate without further notice, all manufacturing and sales shall immediately cease, and all remaining payments ($719,722.12 plus any royalties or per unit fees earned in excess thereof) shall become immediately due and payable. Please see Section 6.1(b) of the Agreement.

Separately, and on the assumption that SOMC timely cures the above-referenced breach, Riverdeep would like to offer the opportunity to restructure the payment plan. Currently, $50,000 is due February 15, with the balance (currently $659,722.12) due March 15, 2004.

Riverdeep proposes, instead:
    $400,000 payable January 30, 2004
    $100,000 payable April 15, 2004
    $100,000 payable May 15, 2004
    $100,000 payable June 15, 2004
    Balance of Guaranteed License Fee (plus any royalties or per unit fees earned in excess) payable July 15, 2004.

I look forward to having your confirmation that the breach will be cured and to further discussing the payment program at your earliest opportunity.

Sincerely Yours,

John Rim
CFO
Riverdeep Inc.
500 Redwood Blvd.
Novato, CA 94947
jrim@riverdeep.net
(415) 763-4823
Fax (415) 382-2605

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 4

**SOMC GROUP INC.**
**1935 CAMINO VIDA ROBLE**
**CARLSBAD, CA 92008**

MINUTES
BOARD OF DIRECTORS MEETING
FEBRUARY 5, 2004

A waiver to the 48-hour notice for a Board of Directors meeting was agreed upon by a quorum of the Directors. The Board of Directors of SOMC Group Inc. met in the conference room of the corporate offices of the company at 10:15 AM. Present at the meeting were the following members of the Board of Directors: Donna Pollock, Thomas E. Holland, and Michael Pollock. Bruce Berman and Stephen Pollock were present via telephone. Present also as guests were Kenneth Weiss and Suzanne Fruehan. With all five directors present, the Board of Directors had the necessary quorum with which to act regarding any resolutions or decisions.

A. Thomas Holland, President and CEO of SOMC Group Inc., gave an update on events since the last Board meeting, including declining revenue, calls from creditors, and the company's inability to comply with new Caller ID laws.

B. The following Board Resolutions were passed by unanimous vote of the Board:

1. Thomas Holland will proceed with the "closing down" of business and positioning SOMC Group Inc. for an Assignment to Benefit Creditors by March 12, 2004, or soon thereafter

2. Call Center Operations will be closed by February 12, 2004, or soon thereafter.

3. The 401(k) plan will be terminated.

4. Suzanne Fruehan was appointed as the Representative to assist Assignee.

5. A new bank account will be opened.

C. The next meeting of the Board of Directors will be held in approximately four to five weeks, on a date to be determined.

There being no further business, the Board of Directors of SOMC Group Inc. adjourned the meeting at approximately 10:35 AM.

This fairly represents the Minutes of the February 5, 2004, Board of Directors meeting for SOMC Group Inc.

By: _____
Thomas E. Holland, Director

By: _____
Donna Pollock, Secretary

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 5

**Holland, Tom**

| | |
|---|---|
| **From:** | Holland, Tom |
| **Sent:** | Wednesday, February 11, 2004 11:20 AM |
| **To:** | 'John Bartlett' |
| **Subject:** | Follow-Up To Our Phone Conversation |

John,

I wanted to follow-up to our phone conversation last week.  It is my understanding that you are going to meet with Tony Bordon and schedule a time for Tony, you and me to discuss the relationship.  I would be available to either travel to Novato or Boston for the meeting.

Regarding the John Rim letter, how do you want us to respond?  We did not produce royalty reports based on the fact that we have not finalized the royalty structure for titles.  You and Terri have been working on the title list and royalty structure and then at our meeting in Novato a few weeks ago, we discussed a different approach.

Our companies have had a good relationship over the past 5 years, what is our next steps in getting this resolved as strategic business partners?

Thanks,
Tom

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 6

# GENERAL ASSIGNMENT

**THIS ASSIGNMENT,** made this _____24th_____ day of _____February_____ 20 04

BY _Software of the Month Club, Inc. / SOMC Group, Inc._

of (address) _1935 Camino Vida Roble_

in the City of _Carlsbad , 92008-6513_, County of _San Diego_

State of California, part _____ of the first part, hereinafter referred to as assignor, to SAN DIEGO CREDIT ASSOCIATION, a California corporation, of San Diego, California, party of the second part, hereinafter referred to as assignee.

WITNESSETH: That said assignor, for and in consideration of the covenants and agreements to be performed by the party of the second part, as hereinafter contained, and of the sum of One Dollar ($1.00) to assignor in hand paid by said assignee, receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, assign, convey and transfer unto said assignee, its successors and assigns, in trust, for the benefit of assignor's creditors generally, all of the property of the assignor of every kind and nature and wheresoever situated, both real and personal, and any interest or equity therein not exempt from execution, including, but not limited to, all that certain stock of merchandise, store furniture and fixtures, book accounts, books, bills receivable, cash on hand, cash in bank, deposits, patents, copyrights, trademarks and trade names, insurance policies, choses in action that are legally assignable, together with the proceeds of any existing non-assignable choses in action that may hereafter be recovered or received by the assignor.

This assignment specifically includes and covers all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from the assignor by the U.S. Treasury Department, and the assignor agrees to sign and execute power of attorney or all other documents as required to enable said assignee to file and prosecute, compromise and/or settle, all such claims before the Internal Revenue Service, U.S. Treasury Department.

Leases and leasehold interests in real estate, contracts or agreements between assignor and any Labor Union, or Trade Associations, are exempted from and not included in this assignment.

This assignment does not include any alcoholic beverages, but the assignor hereby appoints assignee as his agent for the sole purpose of filing an application for a permit and the selling of the alcoholic beverages in the said place of business (said assignee being vested tieh absolute discretion in regard thereto and assuming no liability by reason thereof), and assignor hereby assigns to assignee all of the proceeds of such sale for the benefit of his creditors generally in accordance with the terms of this assignment. This assignment includes all licenses for the sale of alcoholic beverages.

The assignor authorizes the forwarding of his or its mail by the U.S. Postal Department as directed by the Assignee.

Said assignee is to receive the said property, conduct the said business, should it deem it proper, and is hereby authorized at any time after the signing hereof by the assignor to sell and dispose of the said property upon such time and terms as it may see fit, and is to pay to creditors of the first party pro rata, according to the several indebtedness due to them from the said assignor, the net proceeds arising from the conducting of said business and sale and disposal of said property, after deducting all moneys which said assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment, and all expenses, including a reasonable fee to assignee and its attorney and to attorney for assignor.

If any dividends to creditors shall remain unclaimed for a period of two years after issuance of the final dividend checks, then the same shall become the property of the assignee and used to supplement its fees for services rendered in administering this assignment. Any interest that may be earned on funds administered under this assignment shall belong to and are hereby assigned to the assignee as additional fees for its services hereunder.

Said assignee is also authorized and empowered to appoint such agents, field representatives and/or attorneys and/or accountants as it may deem necessary, and such agents and/or field representatives shall have full power and authority to open bank accounts in the name of the assignee or its nominees or agents and to deposit assigned assets or the proceeds thereof in such bank accounts and to draw checks thereon and with the further power and authority to do such other acts and to execute such papers and documents in connection with this assignment as assignee may consider necessary or advisable.

IN WITNESS WHEREOF the said parties hereunto set their hands the day and year first above written.

**ASSIGNOR'S TAX I.D. NUMBERS:**
Internal Revenue Service

\# _____

\# _____

State Board of Equalization

Software of the Month Club
SOMC Group, Inc.

_Tom Holland, President_

_Loriss H. Pollock, Secretary_

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 7

Software Publisher Discussion Points

- SOMC has filed with the State of California to close the business.
- State and Federal legislation along with negative publicity had a devastating impact on the telemarketing operations of the company.

- Logetics was selected in early 2003 by SOMC to be its' vendor for developing direct mail and internet channels for promoting the clubs.

- Logetics realizes that the direct mail and internet channels for promoting software clubs have both opportunity and potential. Therefore Logetics would like to establish a relationship with you.

### Revenue Generating Programs:

1. Continuity Clubs
2. Lead Generation
3. Partner Programs (eStore)
4. School Fundraising

### Financial Structure of Logetics vs. SOMC:

1. Rent – SOMC (app. $45K/Month), Logetics (app. $5K/Month)
2. Wages – SOMC (app. $6Million/Year), Logetics (app. $1Million/Year)
3. Telephone – SOMC (app. $600K/year), Logetics (app. $1K/year)

Clubs - not SOMC, just customers
  - RSG/JBI = both

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 8

**Tom Holland**

| | |
|---|---|
| **From:** | Holland, Tom |
| **Sent:** | Monday, March 08, 2004 4:11 PM |
| **To:** | 'JBartlett@riverdeep.net' |
| **Subject:** | Logetics FY2004 Business Plan With Financial Projections |

John,

Attached is the Logetics Summary Business Plan we discussed last week.

**This is a CONFIDENTIAL DOCUMENT.  Please note that I am providing sensitive information to you that is critical to our business operation**.

Please review and share only with Simon and Tony.  Please feel free to call me should you have any questions or comments.  My new direct phone number is 760-448-2905.

I look forward to speaking with you soon.

Regards,
Tom

6/15/2005

**From:** "Holland, Tom" <IMCEAEX-
_O=LOGETICS_OU=FIRST+20ADMINISTRATIVE+20GROUP_CN=RECIPIENTS_CN=TOMH@logetics.com>
**Date:** March 8, 2004 7:10:32 PM EST
**To:** <JBartlett@riverdeep.net>
**Subject: Logetics FY2004 Business Plan With Financial Projections**

John,

Attached is
the Logetics
Summary
Business Plan
we discussed
last week.

**This is a
CONFIDENTIAL
DOCUMENT.
Please note
that I am
providing
sensitive
information
to you that is
critical to our
business
operation.**

Please review
and share only
with Simon
and Tony.
Please feel
free to call me
should you
have any
questions or
comments.
My new direct
phone number
is 760-448-
2905.

I look forward
to speaking
with you soon.

Regards,
Tom



Logetics Corporate Over... (209 KB)

Confidential Document
Do Not Share or Distribute



EXECUTIVE SUMMARY AND BUSINESS PLAN
PREPARED FOR RIVERDEEP

March 5, 2004

For more information, contact

Thomas E. Holland
Logetics, Inc.
1945 Palomar Oaks Way
Carlsbad, California 92009

Telephone  760.448.2900
Facsimile  760.448.2941

Confidential Document
Do Not Share or Distribute



## <u>Table of Contents</u>

<u>Page</u>

OVERVIEW OF LOGETICS, INC.        1
    Executive Summary


BUSINESS PLAN        2
    Sales and Marketing Strategies
    Business-to-Business
    Consumer Direct
    Product Strategies


EXECUTIVE MANAGEMENT        5


FINANCIAL OVERVIEW        6

Confidential Document

Do Not Share or Distribute

## LOGETICS OVERVIEW

### EXECUTIVE SUMMARY

Founded in 2000, Logetics positioned the Company to become a leading provider of specialty marketing solutions for Clients seeking to acquire new customers, retain existing customers and maximize the lifetime value of each account. The Company has been built upon a set of sophisticated marketing "turn-key tools" that are contracted to our Clients, providing them a package of consumer oriented services. The Company specializes in helping Clients with their business-to-consumer ("b to c") activities in order for them to successfully gain a loyal following of consumers at a lower Customer Acquisition Cost (the "CAC").

The mission of Logetics is continually to add value for our Clients and their customers in a way that creates synergy with our Client's overall strategic goals and, especially, to improve and enhance their Internet presence. The key goal of Logetics is to create for our Clients a greater value from their customers. Logetics' sales are generated primarily through our direct business development efforts, as well as through our network of affiliated marketing partner companies.

Our products and services enable companies to generate revenue, create customer loyalty, and strengthen brand awareness with their consumers. Utilizing the services of Logetics, our Client companies are able to offer popular name brand family software and/or other incentive packages through their existing communication channels for these promotions. When integrated into the Client's specialty marketing methods these programs should increase customer loyalty and brand value.

In 2004, Logetics is expanding its mission to be a sales oriented company that emphasizes direct to consumer marketing ("b to c") through a network of affiliates and wholesale distribution through product syndication.

Logetics is dedicated to bringing products and services to children and families that will enhance their lives and provide outstanding and fun learning experiences and entertainment. Product forms offered by Logetics include: software, music, videos, books, workbooks, learning aids, games, puzzles, toys, etc. A wide range of interests and age/skill levels are covered within these product forms. The Company offers products at a range of prices and through different offer structures (e.g., one-shot, continuity, set, etc.) and payment plans (bill-me, credit card, installments, etc.).

Logetics does not develop original materials, but selects and combines the best brand-name product components developed by others, into quality product concepts that have outstanding market appeal.



1

Confidential Document

Do Not Share or Distribute

*BUSINESS PLAN*

## SALES AND MARKETING STRATEGIES

Logetics is focused on the following revenue generating strategies that provide the Company with immediate and mid-term sales opportunities. These strategies allow Logetics to gain momentum, validate our value proposition to the market, and achieve market penetration.

### *Business to Business Solutions*

#### a. Smart-eStore

The basic business strategy of Logetics is as follows: Logetics builds a Smart-eStore for our Client, offering products that closely match the demographic of our Client. Periodically thereafter, the product mix is refreshed with new software titles and/or other products. It is not necessary for Logetics to go to the extra expense of "private-labeling" of services because the Company is able to quickly embed the Smart-eStore inside the "skin" of the Client's website, thereby strongly reinforcing our Client's brand with their targeted customer audience.

Some Demonstration Smart-eStore Websites:
www.smart-estore.com/comcast
www.smart-estore.com/mypoints
www.smart-estore.com/hrblock
www.smart-estore.com/parents

#### b. Premium Plus

This division sells software CDs to the Clients of Logetics, who in turn distribute them to their customers as premium promotions. Replication of the software titles can be customized with unique silk screening on both the CD and the packaging so as to co-brand the product.

Below are examples of Clients who have used software CDs as a premium:
Pizza Hut
Payless Shoes
Parents Magazine
Howard Johnson Hotels



2

Confidential Document
Do Not Share or Distribute

### c. Fundraising

Logetics continues to be active in promoting products in the following fundraising areas:

(1) School Fundraising – Providing products to the top school fundraising companies in the United States. Logetics currently provides products to 3 of the top 5 companies, including Reader's Digest QSP (they raise approximately $2 BILLION annually).

(2) Cause Related Fundraising – Logetics provides products to the leading fundraising company that represents organizations such as Special Olympics, MADD (Mother's Against Drunk Drivers), and more.

## *Consumer Direct Marketing*

### a. Continuity Clubs

Logetics is profitably expanding its business by developing a series of software clubs for children. Enrollments are offered through a "bill-me" software continuity program marketed primarily through direct mail, as well as acquisitions through use of the Internet and Telemarketing.

The products and services offered under the Logetics *Learning* brand help children develop the skills required to prepare successfully for school, as well as to master the skills and knowledge necessary to excel in their grade level. With the Logetics *Learning* approach, children benefit from fun-filled experiences that encourage learning, engage their interest, inspire creativity, increase knowledge, build confidence and help them reach their full potential. Logetics' *Learning* offers the best name brand products, selected by experts, and Logetics is committed to providing outstanding service and excellent values to parents.

Logetics diversifies and expands the club selections to include products ranging from children's Educational/Entertainment to family Lifestyle/Productivity.

### b. Lead Generation/Direct Marketing:

Logetics offers products to qualified potential Continuity Club members using the following methods:
> Mail Co-ops
> FSI's
> Internet
> Package Inserts
> Post Transaction Offers
> Telemarketing



Confidential Document
Do Not Share or Distribute

### Remarketing Programs

Logetics conducts secondary marketing campaigns with consumers who have already purchased. A major opportunity exists with the secondary marketing of other product promotions to consumers who have previously purchased product(s).

## PRODUCT STRATEGIES

Logetics currently maintains key strategic relationships in four product categories:

### a. Software

Logetics has developed strong relationships with leading software publishers, which allows Logetics to license software titles and to distribute those titles in alternative channels.

### b. DVDs

Logetics has licensed over 15,000 educational and "family friendly" DVDs. In addition, Logetics has licensed the name Kidflix and is introducing to the marketplace a DVD Rental Club.

Kidflix is dedicated to providing children and their families with wholesome entertainment and educational content. Through its unique rental/distribution plan and its enormous library of DVDs and software, children and their parents can enjoy today's most popular movies, classic movies, documentaries, music, name brand software and more. Kidflix only distributes materials that are suitable for families (such as G and PG rated films) so parents never have to worry. In addition to providing hours of enjoyment, Kidflix membership can help develop a wide variety of skills, improve thinking and reasoning ability, encourage creativity, and build knowledge. Kidflix is committed to providing the best products, outstanding service and excellent values to families.

### c. Electronic Learning Books

Through a licensing arrangement, Logetics is able to distribute a library of over 1,200 electronic book titles from the hottest children's licensors in the industry.

### d. Books in Print

Through its relationship with a leading book publisher (over 30 years of publishing experience, and including licenses from Disney, Sesame Workshop, Mattel, Nickelodeon, Warner Bros., and Fisher-Price), Logetics is able to provide an array of children's books, cookbooks, and books of general interest. This publisher is the leading producer of children's books and has relationships with more than 50 of the top children's licensors.



Confidential Document

Do Not Share or Distribute

## EXECUTIVE MANAGEMENT OVERVIEW

### THOMAS E. HOLLAND

**Thomas E. Holland – President and Chief Executive Officer**

As Chief Executive, Mr. Holland is directly involved in managing the direction of the company. He co-founded the company in 2000 to develop a new generation of consumer incentives using the Internet. With over 33 years background in sales and marketing in information and technology driven companies, Mr. Holland has been a pioneer of information technology for target marketing applications and brings a wealth of experience to Logetics, Inc. and its customers in the areas of sales, reseller relationships, and customer service operations. As part of a Management Services Agreement, Mr. Holland also served as President of SOMC Group Inc., one of the largest monthly membership publishers and distributors of software and shareware in the United States, serving primarily the mass residential consumer. His expertise is now being harnessed to develop a new set of marketing technologies with commercial software incentives as a central hub to eBusiness Commerce.

Before founding Logetics Inc., Mr. Holland was co-founder and Executive Vice President of Targus Information Corporation. Targus developed and patented a unique Spatial Key technology that became the keystone in the integration of Intelligent Call Processing Telecommunications Technology, Database Management, and Geographical Information Systems. Targus' clients were primarily in the telecommunications, cable, telemarketing, delivery, and dealer locator services businesses.

As a former Senior Vice President of Equifax Marketing Decision Systems and National Decision Systems (NDS), Mr. Holland successfully developed a national sales force and integrated three Equifax sales divisions.

Mr. Holland is credited with the development and implementation of the marketing programs that launched Infomark, the first CD-ROM based marketing information workstation in the U.S.

Prior to joining NDS, Mr. Holland was Director of International Operations for Information Handling Services, an international integrator of information technology. His global experience includes conducting seminars in the People's Republic of China and working with foreign governments to develop database products available worldwide.

Mr. Holland attended Eastern Kentucky University / California Coast University and holds a Bachelor of Science degree in Business Management and also holds a Technical Certification in Meteorology.



5

Confidential Document

Do Not Share or Distribute

## FINANCIAL OVERVIEW

### LOGETICS, INC.
### INCOME STATEMENT

PROJECTED BUDGET FOR FY 2004

|  | Total | % of revenue |
|---|---|---|
| **Revenues** | | |
| Smart-Estore (Affiliates) | 1,250,000 | 16% |
| Premium Plus | 15,000 | 0% |
| Fundraising | 190,000 | 2% |
| Continuity clubs | 841,291 | 11% |
| Direct marketing | 5,500,000 | 71% |
| *Total revenues* | 7,796,291 | *100%* |
| Cost of Goods | 2,087,442 | 27% |
| Selling and general | 4,278,319 | 55% |
| Administrative | 660,500 | 8% |
| **EBITDA** | 770,029 | **10%** |
| **Other** | | |
| Interest | 3,500 | |
| Depreciation | 4,000 | |
| *Total other* | 7,500 | 0% |
| **Net income before taxes** | 762,529 | **10%** |

Confidential Document
Do Not Share or Distribute

## PROJECTED BUDGET BY PROFIT CENTER - FY 2004

| | Affiliates | Premium Plus | Fundraising | Continuity Clubs | Direct Marketing | G&A | Total |
|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | |
| Smart-Estore (Affiliates) | 1,250,000 | | | | | | 1,250,000 |
| Premium Plus | | 15,000 | | | | | 15,000 |
| Fundraising | | | 190,000 | | | | 190,000 |
| Continuity clubs | | | | 841,291 | | | 841,291 |
| Direct marketing | | | | | 5,500,000 | | 5,500,000 |
| *Total revenues* | *1,250,000* | *15,000* | *190,000* | *841,291* | *5,500,000* | *0* | *7,796,291* |
| Cost of Goods | 275,000 | 3,300 | 68,400 | 126,742 | 1,614,000 | 0 | 2,087,442 |
| Selling and general | 562,500 | 450 | 71,060 | 163,701 | 2,983,608 | 497,000 | 4,278,319 |
| Administrative | 137,500 | 0 | 0 | 2,000 | 0 | 521,000 | 660,500 |
| **EBITDA** | 275,000 | 11,250 | 50,540 | 548,848 | 902,392 | (1,018,000) | 770,030 |
| **Other** | | | | | | | |
| Interest | 0 | 0 | 0 | 0 | 0 | 3,500 | 3,500 |
| Depreciation | 0 | 0 | 0 | 0 | 0 | 4,000 | 4,000 |
| *Total other* | 0 | 0 | 0 | 0 | 0 | 7,500 | 7,500 |
| **Net income before taxes** | 275,000 | 11,250 | 50,540 | 548,848 | 902,392 | (1,025,500) | 762,530 |

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 9

**Tom Holland**

| | |
|---|---|
| **From:** | John Bartlett [JBartlett@riverdeep.net] |
| **Sent:** | Tuesday, March 30, 2004 9:07 AM |
| **To:** | Holland, Tom |
| **Subject:** | Contracts |

Tom,

Here are the two agreements.  The first is the basic license that allows you do sell our product today.  We are looking to book $500K as we are going to write-down the $1M from SOMC this quarter.  The second agreement which is more the partnership will probably combine the two when it is finally done but the license gets you back in business and lets us book some revenue.

Call me when you get a chance.

John

**From:** "John Bartlett" <JBartlett@riverdeep.net>
**Date:** March 30, 2004 12:07:03 PM EST
**To:** "Holland, Tom" <tomh@logetics.com>
**Subject: Contracts**


Tom,

Here are the
two
agreements.
The first is
the basic
license that
allows you do
sell our
product
today.  We
are looking to
book $500K
as we are
going to write-
down the
$1M from
SOMC this
quarter.  The
second
agreement
which is more
the

will probably
combine the
two when it is
finally done
but the
license gets
you back in
business and
lets us book
some
revenue.

Call me when
you get a
chance.

John

  

Consulting Agreement f... (68.5 KB)   Logetics License Agreem... (104 KB)

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 10

# OEM LICENSE AGREEMENT
(Manufacturing Rights)

This OEM License Agreement (this "**Agreement**") is entered into as of March 28, 2004 (the "**Effective Date**") by and between Riverdeep Inc. LLC, a Delaware limited liability company ("**Riverdeep**") and the companies identified below (collectively, "**OEM**").

WHEREAS, Riverdeep publishes, markets and distributes the one or more computer software products listed on <u>Exhibit A</u> (the "Products"); and

WHEREAS, OEM desires to obtain a license to manufacture, market and distribute the Products to its customers subject to the restrictions identified on <u>Exhibit A</u>.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Riverdeep and OEM do hereby agree to the terms and conditions set forth herein and in the attached <u>Exhibit A</u>, <u>Exhibit B</u> and <u>Exhibit C</u>, the provisions of which are incorporated herein by this reference.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed under seal as of the Effective Date.

| Riverdeep LLC | Logetics, Inc. ("Logetics") |
|---|---|
| By:_____<br>  John Bartlett<br>  Vice President, OEM Sales<br><br>Riverdeep LLC<br>500 Redwood Blvd.<br>Novato, CA 94947<br>Attn:  Chief Financial Officer<br>Tel:  (415) 382-4400<br>Fax:  (415) 382-4411<br><br>With a copy to:<br><br>Riverdeep LLC<br>500 Redwood Blvd.<br>Novato, CA 94947<br>Attn:  General Counsel<br>Tel:  (415) 382-4400<br>Fax:  (415) 382-4411 | By:_____<br>  Thomas E. Holland,<br>  President<br><br>Logetics, Inc.<br>1935 Camino Vida Roble<br>Carlsbad, CA  92008<br>Tel:  (760) 942-7000<br>Fax:  (760) _____ |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

**EXHIBIT A**

THE PRODUCTS

1.    Products

(a)    SOMC/LOGETICS CLUB PRODUCTS.  Products that may be distributed as part of the SOMC and/or Logetics branded club described in Section 2(b) below ("SOMC/Logetics Club Products").

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|

PRODUCT LIST IS TBD

Products that may be distributed as "lead generators" to acquire potential customers for the SOMC/Logetics Club branded club described in Section 2(b) below but do not require membership by the potential customer.

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|

PRODUCT LIST IS TBD

(b)    RIVERDEEP/TLC CLUB PRODUCTS.  Products that may be distributed through the Riverdeep/TLC co-branded club described in Section 2(b) below ("Riverdeep/TLC Club Products").

Same as 1(a) above

Products that may be distributed as "lead generators" to acquire potential customers for the Riverdeep/TLC co-branded club described in Section 2(b) below but do not require membership by the potential customer.

Same 1(b) above

2.    **Authorized Channels** are defined as:

(a)    Authorized Product and Bundle Configurations.  OEM may only distribute the Products in the following designated manner (please check appropriate boxes):

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

☐ Hardware bundle. The Products will always be bundled with a computer-related hardware product of OEM with a suggested retail price of $50 or more, as part of a single contemporaneous sale.

☐ Aftermarket hardware sale. The Products may only be sold to a registered customer that has recently purchased, within ninety (90) days, one of OEM's hardware products with a suggested retail price of $250 or more.

☐ Soft bundle.

☐ Magazine cover mount.

☐ Packaging restrictions: Products may only be sold in:
   ☐ Paper wrap
   ☐ Jewel case
   ☐ Mini box/DVD packaging (not to exceed 5"x7"x1.5")

☒ Other: The Products (as restricted above) shall only be distributed by OEM either as (1) a lead generator as a single unit or bundled with other software products, or (2) as part of a club as a SOMC/Logetics or TLC/Riverdeep branded club offering.

(b)    Authorized Channels. In addition to the foregoing restrictions, OEM may only distribute the Products in the following channels (please check appropriate boxes):

☐ Gift Shops

☐ Drug Store

☐ Direct to Consumer (catalog sales only)

☐ Direct to Consumer (outbound emails only)

☐ Direct to Consumer (outbound telemarketing only)

☐ Department Store (including, for example: Macy's, Bloomingdale's, etc.)

☐ Mid-Tier Store (including, for example: JCPenny, Sears, Montgomery Ward's, etc.)

☐ Superstore (including, for example: CompUSA, Best Buy, Circuit City, Fry's, etc.)

☐ Office Outlet (including, for example: Staples, Office Depot, Office Max, etc.)

☐ Specialty Mall (including, for example: Electronics Boutique, Babbages, Musicland, etc.)

☐ Toy (including, for example: Toys r' Us, Kaybee, etc.)

☐ Mass Market (including, for example: Target, Wal-mart, KMart, etc.)

☐ Supermarket

☐ Book Club

☐ Warehouse Club (including, for example: BJ's, Costco, Sam's, etc.)

☐ E-commerce Sales (orders taken from website, www._____.com. No such right exists if the foregoing blank is not filled.)

☒ Other: OEM may distribute the SOMC/Logetics Club Products to end user customers as part of its SOMC/Logetics ▮▮▮▮▮▮▮▮ branded club membership only in which SOMC/Logetics club members pay the established membership fee (to be approved by Riverdeep, not to be unreasonably withheld) and, in exchange, receive one title per month until they decide to unsubscribe (or two titles per month if the club members pay the established membership fee to be approved by Riverdeep, not to be unreasonably withheld).

SOMC and/or Logetics may distribute to end user customers the SOMC/Logetics Club Products ▮▮▮▮▮▮▮ branded Club Products identified in Section 1(b) as part of

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

outbound telemarketing, FSI ("Free Standing Inserts"), emails and direct mails in which the Products are offered on a promotional basis such as for free to customers (customer pays shipping and handling), discounted price (with no charge for shipping and handling), discounted price plus customer pays shipping and handling, or any combination thereof, as a means of generating potential SOMC/Logetics Club customers. SOMC and/or Logetics will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to the SOMC/Logetics Club ▮▮▮▮▮▮▮▮▮▮ for approval prior to its use. Riverdeep may withhold approval of any materials, not to be unreasonably withheld.

     (c)   <u>Agreements with Third Parties</u>. Subject to Riverdeep's prior written consent, to be granted at its sole discretion, OEM may each enter into agreements with third parties to create private label software clubs similar to the SOMC/Logetics club under which third parties would distribute the SOMC/Logetics Club Products ▮▮▮▮▮▮▮▮▮. SOMC and/or Logetics will ensure that any third party that distributes the SOMC/Logetics ▮▮▮▮▮▮▮▮▮▮ will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to Riverdeep for approval prior to its use, not to be unreasonably withheld. SOMC and Logetics shall remaining solely liable for any failure of the third party to provide such materials for review prior to use.

DO WE WANT/NEED THIS?

3.    <u>Licensed Media</u>:  CD-ROM only.

4.    <u>License Fees, Reports and Payment</u>:

     (a)   <u>Guaranteed License Fee.</u>  Notwithstanding any other provisions in this Agreement, OEM shall pay to Riverdeep the following non-refundable, irrevocable, non-transferable license fees, totaling **U.S. $500,000 dollars** which shall be paid on the following dates:

| Upon execution | $50,000 |
|---|---|
| May 15, 2004 | $100,000 |
| June 15, 2004 | $100,000 |
| July 15, 2004 | $100,000 |
| August 15, 2004 | $100,000 |
| September 15, 2004 | $50,000 |
|  |  |
| Total: | $500,000 |

     (b)   <u>Per Unit License Fees.</u>  The per unit license fees identified in the above Section 1, and the Club Royalty identified in Section 4(c) below shall be applied against the applicable Guaranteed License Fee with respect to each unit of Product manufactured by OEM during the quarter ending on such date. If there is no Guaranteed License Fee, or once the Guaranteed License Fee has been earned down and recouped by OEM, then OEM shall pay directly to

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

Riverdeep the Per Unit License Fees listed in the above Section 1 for every unit it manufactures and any Club Royalty earned by Riverdeep.

(c)    Royalty on Riverdeep/TLC Club.  OEM will pay Riverdeep a royalty of fifty percent (50%) of the Net Receipts derived from sales through the Riverdeep/TLC Branded Club ("Club Royalty").

(d)    Quarterly Reconciliation.  To the extent that the cumulative Per Unit License Fees with respect to the number of units of Products manufactured by OEM during a particular quarter and the Club Royalties earned exceed the applicable Guaranteed License Fee for such quarter, OEM shall reconcile and pay to Riverdeep the difference (if any) within thirty days of each quarter end.

(e)    Payment of Per Unit License Fees and Club Royalties.  Per Unit License Fees and Club Royalties shall be paid directly to Riverdeep within 30 days of the end of the quarter in which each Product is Net Units Sold. "Net Units Sold" shall mean the number of units distributed by OEM less units returned by OEM's customer, units used as samples to prospective clients (not to exceed 200 units total) and units for employee training purposes (not to exceed 200 units total). Each Product shall be accounted for separately in OEMs reports to Riverdeep.

(f)    Reports.  Each month OEM shall provide Riverdeep with a reasonably detailed report showing sales, the number of copies of each Product manufactured by OEM and the calculation of the Per Unit License Fees and Club Royalties for the preceding month.

5.    Territory:  North America.

6.    Production Unit Delivery:  OEM shall provide Riverdeep with two (2) copies of the finished manufactured product as soon as such product is available.

7.    Support:  Riverdeep will provide technical support for the Products to its end-users at the same level that Riverdeep currently provides to its customers that have purchased the Products in the retail channel. OEM will provide customer support for the SOMC/Logetics Club Products and TLC/Riverdeep branded Club offerings. OEM will provide Riverdeep with a contact to forward all customer service inquiries received by Riverdeep. OEM will make best efforts to resolve all customer support issues within forty-eight (48) hours of receipt from Riverdeep.

8.    Expenses:  OEM will bear all costs and expenses of manufacturing, marketing and distributing the Products.

9.    Acknowledgement of Delivery:  On the Effective Date, OEM shall execute a copy of the Acknowledgement of Delivery of all deliverables in the form attached hereto as Exhibit C.

10.    Term of the Agreement:  This Agreement shall expire on September 30, 2004 (the "**Expiration Date**").

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

**EXHIBIT B**
**TERMS AND CONDITIONS**

1.    DEFINITIONS.

    1.1    "**Authorized Channels**" shall mean the specific authorized product and bundle configurations and the specific authorized channels identified in Section 2 of Exhibit A.

    1.2    "**Confidential Information**" shall mean that information that is identified in Section 9.1 of this Exhibit B.

    1.3    "**Cost of Goods**" shall mean all direct costs and expenses associated with the manufacture and delivery of the Products, including, without limitation, CD-ROMs, external and internal packaging, documentation, inserts, assembly, warehousing and manufacturing and licensing fees due to third parties relating to the ███████████████. This shall not include any allocation for employees, overhead or other indirect costs associate with the manufacture and delivery of the Products.

    1.4    "**Expiration Date**" shall mean that specific date that is identified in Section 10 of Exhibit A.

    1.5    "**Guaranteed License Fees**" shall mean the license fees payable to Riverdeep in Section 4(a) of Exhibit A.

    1.6    "**Licensed Media**" shall mean the specific licensed media identified in Section 3 of Exhibit A.

    1.7    "**Net Receipts**" shall mean the gross revenues actually received by OEM less actual out of pocket costs directly related to the gross revenues from Cost of Goods, the Per Unit License Fees paid to Riverdeep under this Agreement, licensing fees paid to third parties related to the Riverdeep/TLC Club, sales taxes collected and refunds, actual direct third party marketing expenses directly relating to the ███████████████ (such administrative costs can include commercially reasonable allocations of salaries and overhead, in the aggregate such administrative costs shall not to exceed 28% of gross revenues).

    1.8    "**Per Unit License Fees**" shall mean the individual Product license fees of the respective Products identified in Section 1 of Exhibit A.

    1.9    "**Product**" or "**Products**" shall mean those specific computer software products of TLC identified in Section 1 of Exhibit A. Where the term "SOMC Club Products" or "Riverdeep Club Products" is used, the term shall have the specific meaning attributed in Exhibit A. All other use of the term Product shall include "SOMC Club Products" or ██████████████

    1.10    "**Term**" shall mean that period of time that is identified in Section 5 of this Exhibit B.

    1.11    "**Territory**" shall mean the specific geographic areas described in Section 5 of Exhibit A.

2.    GRANT OF LICENSE, RESTRICTIONS, DOCUMENTATION AND SUPPORT.

    2.1    Rights Granted to OEM.

        (a)    Subject to this Agreement, Riverdeep grants to OEM a non-transferable and non-exclusive license to manufacture, market and distribute the Products in the Licensed Media throughout the Territory for the Term of this Agreement, in the Authorized Channels.

        (b)    OEM UNDERSTANDS AND AGREES THAT UNDER NO CIRCUMSTANCES WILL OEM DISTRIBUTE ANY PRODUCT OUTSIDE THE AUTHORIZED CHANNELS. SUCH AN ACT ON THE PART OF OEM SHALL CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

2.2    End-User License Agreement. OEM will not distribute any Product unless the Product is accompanied by Riverdeep's standard form of end-user license agreement (as provided by Riverdeep) as the same may be revised from time to time upon notice to OEM.

3.    COPYRIGHT AND TRADEMARK NOTICES AND TITLE.

3.1    Copyrights and Trademark. Riverdeep hereby grants to OEM a non-exclusive, non-transferable right to use the names of the Products listed on Exhibit A when used in connection with the name **"Broderbund,"** and **"The Learning Company,"** on copies of the Products licensed to OEM pursuant to and for the Term of this Agreement. Any sale of a Product or documentation (or any portion thereof) shall include the copyright, trademark and other proprietary rights notices as are currently contained on each such Product (or documentation) or may be specified from time to time by Riverdeep. OEM will not challenge any intellectual property rights claimed by Riverdeep in such trademarks.

3.2    Title to Products. Title to the Products shall not pass from Riverdeep to OEM or its end-users, and the Products and all master copies thereof shall at all times remain the sole and exclusive property of Riverdeep.

4.    LICENSE FEES.

OEM shall pay Riverdeep the license fee(s) set forth on Exhibit A of this Agreement according to the terms set forth on Exhibit A.

5.    TERM OF AGREEMENT.

Unless otherwise terminated earlier in accordance with the terms of this Agreement, the term of this Agreement shall continue from the Effective Date until the Expiration Date (the **"Term"**). This Agreement may thereafter only be renewed for successive one-year periods upon the written amendment to this Agreement.

6.    TERMINATION AND BREACH.

6.1    Termination. Either party may terminate this Agreement, effective immediately upon written notice, under the following circumstances:

(a)    Except as provided for in Section 6.2, below, if either party materially breaches any provision of this Agreement and such breach has not been cured within thirty (30) days after the other party has given written notice of such breach, the non-breaching party may terminate this Agreement.

(b)    If, at any time, the Guaranteed License Fees or any other amounts due under this Agreement are not paid when due, at Riverdeep's option, it may at any time during the Term of this Agreement upon not less than ten (10) days' prior written notice and failure to cure. Should the Agreement terminate pursuant to this provision, all Guaranteed License Fees shall be accelerated and due immediately.

(c)    If OEM should: (1) admit in writing its inability to pay its debts generally as they become due; (2) make a general assignment for the benefit of creditors; (3) institute proceedings to be adjudicated a voluntary bankrupt or consent to the filing of a petition of bankruptcy against it; (4) be adjudicated by a court of competent jurisdiction as being bankrupt or insolvent; (5) seek reorganization under any bankruptcy act, or consent to the filing of a petition seeking such reorganization; or (6) have a decree entered against it by a court of competent jurisdiction appointing a receiver, liquidator, trustee or assignee in bankruptcy or insolvency covering all or substantially all of such party's property or providing for the liquidation of such party's property or business affairs, and fail to cause the same to be removed within sixty (60) days, Riverdeep may terminate this Agreement.

6.2    Termination for Violation of Authorized Channels. In the event that OEM or its customers (including resellers) violate Section 2 of Exhibit A, or otherwise make any

improper use, transfer, duplication or disclosure of any of the Product(s), this Agreement and all of OEM's rights hereunder shall terminate immediately.

6.3    Effect of Termination.  Upon the expiration or termination of this Agreement, the license granted hereunder shall terminate, and OEM shall immediately discontinue the manufacture of any Products; provided however, OEM shall have the right to sell off any remaining inventory in existence for a period of thirty (30) days, unless the Agreement has been terminated under Section 6.1 or Section 6.2, above.  In the final thirty days of the Term, OEM shall not manufacture Product in excess of the average number of units of Product manufactured during the Term.  All proprietary and confidential information shall be promptly returned to Riverdeep.  Termination or expiration of this Agreement shall not relieve OEM of any of its payment obligations.

6.4    Survival of Certain Conditions.  Notwithstanding anything to the contrary contained in this Agreement, Sections 2.1(b), 2.2-2.5, 3.2, 4, 6.4, 7, 9 and 10 shall in all cases survive any expiration or termination of this Agreement.

6.5    Injunctive Relief.  OEM understands and agrees that Riverdeep will suffer irreparable harm in the event that OEM fails to comply with the any of its obligations under Section 2.1(b) above, and that monetary damages in such event would be substantial and inadequate to compensate Riverdeep.  Consequently, in such event Riverdeep will be entitled, in addition to such monetary relief as may be recoverable by law, to such temporary, preliminary and/or permanent injunctive relief as may be necessary to restrain any continuing or further breach by OEM, without showing or proving any actual damages sustained by Riverdeep.

7.    REPRESENTATIONS, WARRANTIES AND INDEMNIFICATION.

7.1    Riverdeep's Representations and Warranties.  Riverdeep represents and warrants to OEM the following:

(a)    Riverdeep either owns all right, title and interest in the Products or possesses the necessary rights to grant OEM the rights and license granted hereunder.

(b)    Riverdeep has the full power and authority to enter into this Agreement and to fulfill its obligations hereunder.

(c)    The Products do not infringe upon any intellectual property rights or other proprietary rights of any third party.

7.2    OEM's Representations and Warranties:  OEM represents and warrants to Riverdeep the following:

(a)    OEM possesses full power and authority to enter into this Agreement and to fulfill its obligations hereunder; and

(b)    OEM's performance of the terms of this Agreement and of OEM's obligations hereunder shall not breach any separate agreement by which OEM is bound.

7.3    Riverdeep Indemnities.  Riverdeep agrees to indemnify, hold harmless and defend OEM from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement.

7.4    OEM Indemnities.  OEM agrees to indemnify, hold harmless and defend Riverdeep from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement.

7.5    Riverdeep Indemnification Option.  In the case of any infringement claim,

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

at Riverdeep's option, Riverdeep may at its expense: (i) procure a license from any claimants with respect to the challenged Product (or component thereof) that will enable Riverdeep to continue marketing and using the Product, (ii) modify the challenged Product so as to make it non-infringing, or (iii) take appropriate action or seek available legal remedies to enable the continued manufacturing, use and distribution of the challenged Product.

7.6    THE WARRANTY STATED HEREIN IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND SUCH WARRANTY CONSTITUTES THE ONLY WARRANTY MADE BY RIVERDEEP WITH RESPECT TO THIS AGREEMENT OR THE PRODUCTS, ARTICLES, MATERIALS, REPLACEMENT PARTS OR SERVICES TO BE SUPPLIED HEREBY. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR LOST PROFITS, LOSS OF DATA OR ANY COLLATERAL, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND. RIVERDEEP'S AGGREGATE LIABILITY TO OEM UNDER THIS SECTION 7 IS LIMITED TO THE AMOUNT THAT OEM ACTUALLY PAYS TO RIVERDEEP UNDER THIS AGREEMENT.

7.7    Claims. With respect to any claims falling within the scope of the foregoing indemnifications: (a) each party agrees to notify the other promptly of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating; (b) Riverdeep shall have the right to assume, at its expense, the defense of a claim or suit made or filed against OEM; and (c) if Riverdeep does not represent OEM in any claim or suit, Riverdeep shall pay OEM's legal costs and expenses in defense of such a claim. OEM shall not settle such claim or suit without the prior written approval of Riverdeep, which approval will not be unreasonably withheld or delayed.

8.    BOOKKEEPING OBLIGATIONS AND INSPECTION RIGHTS.

OEM shall maintain true and complete books of account containing an accurate record of all data necessary for the proper computation of payments hereunder, and Riverdeep shall have the right, by a certified public accountant appointed by it, to examine such books at all reasonable times (but not more than twice in each calendar year) for the purpose of verifying the accuracy of the reports and computation rendered by OEM. Upon reasonable advance notice, such examination shall be made during normal business hours at the principal place of business of OEM. If such examination reveals that reports furnished by OEM were inaccurate by more than ten percent (10%) and that amounts in excess of those paid to Riverdeep are due, the cost of such examination shall be borne by OEM and OEM shall pay the amount of any discrepancy to Riverdeep, plus interest at the rate of eighteen percent (18%) per year or part thereof on any deficiencies.

9.    CONFIDENTIAL INFORMATION.

9.1    Confidential Information. Each party (the "receiving party") shall keep in strictest confidence the terms of this Agreement and all material and information, in whatever form provided, identified by the other party (the "disclosing party") to be confidential or proprietary in nature relating to the disclosing party's trade secrets (including pricing policies, business strategies, software designs and specifications), as well as any materials and information which from the circumstances in which they are made available to the receiving party in good faith and good conscience ought to be treated as confidential or proprietary ("**Confidential Information**").

9.2    Exceptions. Information shall not be considered to be Confidential Information if it (i) is already or otherwise becomes publicly known through no act of the receiving party, (ii) is lawfully received from third parties subject to no restriction of confidentiality, (iii) can be shown by the receiving party to have been independently developed by it, (iv) is

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

disclosed by the disclosing party to third parties without restriction on subsequent disclosure, or (v) is required to be disclosed in the context of an administrative or judicial proceeding, except that in such case the receiving party agrees to provide the disclosing party with prompt notice of such requirement in order to allow the disclosing party to seek an appropriate protective order.

9.3    Term of Confidentiality. Each party's obligations under this Section 9 shall survive the termination or expiration of this Agreement for a period of two (2) years.

10.    MISCELLANEOUS PROVISIONS.

10.1    Entire Agreement. This Agreement, including all Exhibits, contains the entire understanding of the parties hereto relating to the Products, supersedes any prior written or oral agreement or understandings between the parties with respect to the Products, and cannot be changed or terminated orally. This Agreement may be amended only by a writing signed by the parties hereto.

10.2    Enforceability. The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement.

10.3    Assignment. Neither this Agreement nor the rights or obligations hereunder may be assigned by OEM without the prior written consent of Riverdeep, which consent shall not be unreasonably withheld; provided however, that OEM may assign this Agreement upon the merger of OEM or the sale of OEM's business, all without the consent of Riverdeep, if OEM gives notice to Riverdeep of such assignment. In the event of such an assignment, this Agreement shall be binding upon such successors and assignees.

In the event that Riverdeep sells substantially all of the assets of any of its business units by sale, merger, or otherwise, then, Riverdeep may elect to assign the duties and obligations arising under this Agreement

with respect to such transferred business or assets to the purchaser of such business or assets to the extent such sale relates to the Products. In such event, Riverdeep may elect to require OEM to enter into a substantially identical agreement to this Agreement for the transferred Products.

10.4    Independent Contractors. OEM and Riverdeep shall perform their duties pursuant to this Agreement as independent contractors. Nothing in this Agreement shall be construed to create a joint venture, partnership or other joint relationship between OEM and Riverdeep. Neither party shall have the ability to incur any obligation on behalf of the other party.

10.5    Successors. Subject to Section 10.3 above, all rights and obligations arising out of this Agreement shall inure to the benefit of, and be binding on and enforceable by the parties and their respective successors and permitted assigns.

10.6    Currency. All dollar amounts herein are expressed in United States funds.

10.7    Governing Law. This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the Commonwealth of Massachusetts and all claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction within Massachusetts.

10.8    Notices. All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made if hand delivered, mailed first class mail, postage prepaid, sent by prepaid telegram (or telex or other facsimile transmission) or sent by express overnight courier service to the address listed above or to such other address as any such party may have designated by like notice forwarded to the other party hereto.

10.9    Loss of Rights. In the event that Riverdeep's rights to any Products expire or are terminated at any time, any rights granted to

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

OEM under this Agreement with respect to such Products shall be terminated as of such date and Riverdeep shall not be liable to OEM for any loss or liability in connection with said termination of rights.

      10.10   Press Releases.  OEM shall not make any public announcement or issue any press release relating to this Agreement or the services to be provided in connection therewith without the prior written consent of Riverdeep.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

**EXHIBIT C**
**To OEM Agreement Dated March 28, 2002.**
**Acknowledgement of Delivery**

OEM:  SOMC GROUP, INC. and LOGETICS, INC.

Agreement/Amendment Effective Date:

Agreement/Amendment Number:

OEM hereby acknowledges having received, on or before the Effective Date, (1) a reproducible master copy for each Product listed below and, (2) all other materials Riverdeep is obligated to deliver under the above-referenced Agreement/Amendment.

     Product(s):

TO BE DETERMINED

LOGETICS, INC. (OEM)


By: _____

Title: _____

Date: _____

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 11

# CONSULTING SERVICES AGREEMENT

This Consulting Services Agreement ("Agreement") is entered into on March 31, 2003 (the "Effective Date" of this Agreement) by and between Logetics, Inc., a _____ corporation ("Consultant"), with offices at 1935 Camino Vida Roble, Carlsbad, CA 92008 and Riverdeep Inc., LLC a Delaware limited liability company with offices at 500 Redwood Blvd., Novato, CA 94947 ("Riverdeep").

WHEREAS, Riverdeep desires to have Consultant provide various consulting services including software club generation and management, lead generation and optimization of Riverdeep's direct marketing as provided herein;

WHEREAS, Consultant desires to provide such consulting services as outlined in this Agreement;

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Consultant and Riverdeep hereto agree as follows:

1.    Services and Fees: The Description of Work, which is contained in the attached Exhibit A, describes the services that Consultant will perform, the items Consultant will deliver (the "Work") and the fees which Riverdeep will pay in return. Consultant is an independent contractor, not an employee of Riverdeep. No employment relationship is created by this Contract.

2.    Term: _____, unless terminated earlier.

3.    Intentionally Omitted.

4.    Reports: Consultant will report to Riverdeep on the status of the Work at least once a month, and as otherwise reasonably requested by Riverdeep.

5.    Termination:

   (a)    If Riverdeep terminates for convenience, it will pay Consultant pursuant to Exhibit A.

   (b)    Riverdeep may terminate this Contract immediately by giving written notice thereof, if Consultant or any of its employees or agents breaches the confidentiality provisions or the indemnity provisions of this Contract. In the event of termination pursuant to this Section 5(b), Riverdeep will not owe any amounts hereunder.

   (c)    Consultant may terminate this Agreement upon thirty (30) days written notice. In the event of such termination Riverdeep will pay Consultant pursuant to Exhibit A.

6.    Relationship of Parties:

   (a)    Consultant, as used in this Contract, means the person or entity that signs this Contract and all its employees and agents.

   (b)    Consultant shall retain independent professional status throughout this Contract and shall use its own discretion in performing the tasks assigned.

   (c)    Consultant is not an employee and is ineligible for all Riverdeep employee benefits. Consultant is responsible for paying all required state and federal taxes. In particular:

   •    Riverdeep will not withhold FICA (Social Security) from Consultant's payments;
   •    Riverdeep will not make state or federal unemployment insurance contributions on

1

behalf of Consultant;

- Riverdeep will not withhold state or federal income tax from payment to Consultant, except Riverdeep may deduct U.S. federal income tax with respect to a Consultant that is classified as a nonresident alien individual for U.S. income tax purposes.;
- Riverdeep will not make disability insurance contributions on behalf of Consultant;
- Riverdeep will not obtain worker's compensation insurance on behalf of Consultant.
- All payments hereunder as listed on the Purchase Order will be inclusive of all charges and taxes, for which Consultant will be solely responsible.

     (d)     Consultant will report as income to the appropriate government agencies all fees received pursuant to this Contract and will pay all applicable taxes.

     (e)     Consultant shall initially determine the method, details and means of performing the services hereunder. Consultant shall, however, where applicable, proceed in accordance with reasonable direction or suggestions made by Riverdeep. Consultant shall remain responsible for performing all tasks contemplated by this Contract.

     (f)     Consultant may, at Consultant's own expense, employ such assistants or subcontractors as Consultant deems necessary to perform the services required of Consultant by this Contract, provided that such assistants or subcontractors agree to comply with all provisions of this Contract. Said assistants or subcontractors shall be under the direct control of Consultant. Consultant assumes full and sole responsibility for the payment of all compensation and expenses of these assistants and subcontractors and for all applicable state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable withholdings.

     (g)     Consultant agrees to provide workers' compensation insurance, when so required by law, for Consultant's employees and agents and agrees to hold harmless and indemnify Riverdeep for any and all claims arising out of any injury, disability or death of any of Consultant's employees or agents.

     (h)     Consultant shall perform the services required by this Contract at any place or location and at such time as Consultant and Riverdeep determine by mutual reasonable agreement. In no event shall Consultant's use of Riverdeep facilities or equipment be understood or construed by either party to indicate an employer/employee relationship.

     (i)     Consultant represents and warrants that all Work and other deliverables delivered by Consultant do not infringe upon any third party rights, including those of trademark, trade dress, trade secret, copyright, publicity or patent.

7.    <u>Indemnification</u>:  Consultant agrees to be responsible for its own actions, and those of its assistants and subcontractors.  Consultant agrees to indemnify, hold harmless and, upon Riverdeep 's request, defend Riverdeep and its affiliates and their directors, officers, employees and agents from and against all claims, losses, costs, fees, liabilities, damages, or injuries of any type, including reasonable attorneys' fees, in connection with, in whole or in part:

- Any negligent act, omission, or willful misconduct of Consultant, its assistants or subcontractors.

- Any failure to comply with federal, state or local law by Consultant, its assistants or subcontractors.

- Any act or failure of Consultant or Consultant's assistants, employees, subcontractors, including but not limited to all claims relating to the injury or death of any person or damage to any property and all claims relating to the originality or ownership of the work performed hereunder by Consultant or its assistants.

- Any infringement by the Work of any intellectual property, including copyright, trademark, or patent, of any third party.

- Any breach of any warranty or covenant contained herein.

- Any determination that Consultant is anything other than an independent contractor.

2

(b) Riverdeep agrees to be responsible for its own actions. Riverdeep agrees to indemnify and hold harmless Consultant from and against all claims, losses, costs, fees, liabilities, or damages, including reasonable attorneys' fees, in connection with or arising out of an infringement by Riverdeep's product (to the extent not contributed by Consultant) of any copyright, trademark or patent of a third party. Riverdeep shall have the right to assume, as its expense, the defense of a claim or suit made or filed against Consultant. Consultant shall not settle such claim or suit without the prior written approval of Riverdeep, which approval will not be unreasonably withheld or delayed.

(c) Riverdeep shall not be obligated to defend or be liable for costs and/or damages under this Section 7 if the alleged infringement arises out of or is in any manner attributable to any modification of Riverdeep's product by Consultant.

(d) If any intellectual property claim which Riverdeep is obligated to defend has occurred, or in Riverdeep's opinion is likely to occur, Consultant agrees to permit Riverdeep, at Riverdeep's option and expense, either to procure for Consultant the right to continue using the product or to replace or modify the product so that it becomes non-infringing.

(e) With respect to any claims falling within the scope of the foregoing indemnifications each party agrees to notify the other promptly of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating.

8.    Confidentiality:

(a) Consultant agrees not to disclose any Riverdeep Confidential Information and to take all reasonable precautions to prevent its unauthorized dissemination, both during and after the Contract. Without limiting the scope of this duty, Consultant agrees to limit its internal distribution of Riverdeep Confidential Information to its employees and agents who have a need to know, and to take steps to ensure that the dissemination is so limited. Consultant agrees not to use any Riverdeep Confidential Information for its own benefit or for the benefit of anyone other than Riverdeep. Without limiting the scope of this duty, Consultant agrees not to design or manufacture any products that incorporate any Riverdeep Confidential Information, without the express direction of Riverdeep.

(b) Riverdeep Confidential Information means information relating to the research, development, products, methods of manufacture, trade secrets, business plans, customers, finances, and other data related to the business or affairs of Riverdeep. Riverdeep Confidential Information does not include any information (i) which Consultant knew before Riverdeep disclosed it to Consultant; (ii) which has become publicly known through no wrongful act of Consultant; or (iii) which Consultant developed independently, as evidenced by appropriate documentation.

(c) All Riverdeep Confidential Information remains the property of Riverdeep and no license or other rights in the Confidential Information is granted hereby. All information is provided "AS IS" and without any warranty, express, implied, or otherwise, regarding its accuracy or performance. Further, upon Riverdeep's written request, Consultant agrees to return to Riverdeep, all Riverdeep Confidential Information, including but not limited to all documentation, proofs, notes, plans, drawings, and copies thereof.

9.    Riverdeep's Right to Exploit the Work; Consultant's Release and Waiver. Consultant's work shall be considered work made for hire for Riverdeep as such term is defined in section 101 of the Copyright Act of 1976, to the extent Consultant, in performing this Contract, produces new work product, including without limitation notes, reports, documentation, drawings, derivatives of pre-existing copyrighted works of Consultant, customer lists, inventions, creations, works, devices, masks, models, work-in-progress, and deliverables ("Work Product"), and all such Work Product shall be the property of Riverdeep . Accordingly, Riverdeep shall be the proprietor of the Work Product and of all rights therein throughout the world including, without limitation, the copyright and all rights under copyright therein, and the specific right of reproduction provided in California Civil Code section 982. Consultant hereby further grants to Riverdeep in perpetuity, all right, title and interest to exploit in its discretion, any or all of the results and proceeds of the Work and any and all elements thereof, in any and all media and manners throughout the universe, whether now known or hereafter devised. Riverdeep shall be the sole owner of any

3

customer information acquired by Riverdeep relating from, directly or indirectly, the Work performed by Consultant.

10.    No Conflict: Consultant represents and warrants that its performance of this Contract will not conflict with any other contract to which Consultant is bound, and while working on this Contract, Consultant will not engage in any such consulting services or enter into any agreement that would materially interfere with the commitment of time and energy required by Consultant to timely complete Consultant's obligations under this Contract.

11.    Miscellaneous:

(a)    Assignment. Consultant may not assign or delegate its rights or obligations under this Contract without Riverdeep 's written consent.

(b)    Equitable Relief. Any breach of the confidentiality provisions of this Contract by Consultant will result in irreparable harm to Riverdeep. Consultant therefore agrees that Riverdeep shall have the right to seek an injunction or other equitable relief to enforce this Contract and any of its provisions, without prejudice to any other rights and remedies that Riverdeep may have.

(c) Governing Law; Severability. California law shall govern this Contract. If any provision of this Contract is found by a court of competent jurisdiction to be unenforceable for any reason, the remainder of this Contract shall continue in full force and effect.

(d) Arbitration. The parties agree to submit any dispute arising out of or in connection with this Contract to binding arbitration in San Francisco, California before the American Arbitration Association pursuant to the provisions of this Section 11(d), and, to the extent not inconsistent with this Section 11 (d), the rules of the American Arbitration Association. The parties agree that such arbitration will be in lieu of either party's rights to assert any claim, demand or suit in any court action, provided that either party may elect, as an alternative to arbitration, a court action in Marin, California, but only with respect to a breach by the other party of such party's proprietary rights, including, without limitation, any trade secrets, copyrights or trademarks. Any arbitration shall be final and binding and the arbitrator's order will be enforceable in any court of competent jurisdiction.

(e) Survival of Terms. The provisions of paragraphs 6, 7, 8, 9, and 11 hereof shall survive termination of this Contract.

(f) Complete Understanding; Modification. This Contract along with each Exhibit executed by the parties referencing this Contract constitutes the full and complete understanding and agreement of the parties relating to the subject matter hereof and supersede all prior understandings and agreements relating to such subject matter. Any waiver, modification, or amendment of any provision of this Contract shall be effective only if in writing and signed by both parties. The provisions of this Contract shall prevail over any conflicting provisions in a purchase order, invoice, acceptance notice or other document.

(g) Signature. This Contract may be executed in several counterparts, each of which will be deemed to be an original, and each of which alone and all of which together, shall constitute one and the same instrument, but in making proof of this Contract it shall not be necessary to produce or account for each copy of any counterpart other than the counterpart signed by the party against whom this Contract is to be enforced. This Contract may be transmitted by facsimile, and it is the intent of the parties for the facsimile (or a photocopy thereof) of any autograph printed by a receiving facsimile machine to be an original signature and for the facsimile (or a photocopy thereof) and any complete photocopy of the Contract to be deemed an original counterpart.

(h) Limitation of Liability. Neither party shall under any circumstances be liable for any consequential, indirect, special, incidental or exemplary damages, including without limitation, any loss of revenues, profits, or business or other economic loss arising out of or in connection with the services provided hereunder, except as provided for elsewhere in this Agreement.

(i) Unforeseen Circumstances. No delay or failure by the parties hereto in the performance of any obligation of this Agreement shall be deemed a breach of this Agreement nor shall it create any liability, if the same shall arise by reason of any cause beyond the reasonable control of the affected party, including, but not limited to,

labor disputes, strikes, wars, riots, insurrection, civil commotion, accident, shortage of materials or equipment, government regulations, fire, flood, storm, or any other acts of God, including defects and/or breakdowns of equipment and programming errors not within the reasonable control of the affected party, provided that the party so affected shall use its best efforts to avoid or remove such cause of nonperformance and shall continue performance hereunder as soon as practicable. In the event such cause occurs and exceeds thirty (30) calendar days, the party not so affected may cancel this Agreement upon written notice and without further liability.

(j)  Insurance. Consultant shall maintain a policy of general liability insurance with the usual minimums provided in the industry of which it is a member.

(k) Intentionally omitted.

(l) Notices.  All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made (a) when received, if hand delivered, sent by facsimile transmission (the receipt of which is confirmed) or sent by express overnight courier service, or (b) two (2) business days after deposit in the mail if mailed by first class mail, postage prepaid.

RIVERDEEP INC., LLC                                              CONSULTANT

By: _____                             By: _____
            signature                                                      signature
Name: _____                            Name: _____
            print name                                                     print name
Title: _____                           Title: _____

Executed: _____                           Executed: _____
Notice to:
Chief Revenue Officer
Riverdeep, Inc.
500 Redwood Blvd.
Novato, CA 94947

With a copy to:
Legal Counsel
500 Redwood Blvd.
Novato, CA 94947

5

<u>Exhibit A</u>

In consultation with Riverdeep and in a manner and to the extent reasonably requested by Riverdeep, Consultant will provide the following services:

1. Consultant will develop and manage software club marketing opportunities ("Software Clubs"). Duties will include developing the club focus, marketing materials, collateral, etc. Consultant will manage all customer solicitations, process and fulfill customer orders, including the manufacture, replication and distribution of products purchased by customers.
2. [Optimizing Riverdeep assets. I need more detail on this.]
3. Consultant will also introduce Riverdeep to new potential product offerings (for example, education oriented DVD products) for distribution by Riverdeep ("Product Offerings")

In consideration for the provision of these services, Riverdeep shall pay a fee of _____ per quarter.

In addition, Riverdeep will provide Consultant with service fee of ___% of Net Receipts from Consultant Services. [the software clubs and product offerings fit nicely into a percentage fee. Should the percentage be the same? Depending on what is involved in number 2 it may warrant a different method or percentage.] Net Receipts shall be defined as the gross monies received by Riverdeep directly from the Consultant services less the following (a) taxes, duties, freight, shipping, handling, cost of goods, bad debt, marketing distribution funds, cooperative advertising, rebates, royalties paid to third parties and other similar costs incurred by Riverdeep not directly attributable to the purchase price of the Products but charged to its customers, and (b) the following credits to the extent Riverdeep reimburses these amounts: credits for discounts (including price protection), replacements, returns, refunds, consumer marketing rebates and the like.

In the event that Consultant's services directly generate revenue during any quarter in excess of $ _____, Riverdeep will pay Consultant a bonus of $_____ [or Consultant's fee shall be increased ___% for that quarter][This can be tiered if you want to give bigger bonuses for larger revenue targets].

In the event that this Agreement is terminated pursuant to Sections 5(a) and 5(c), Consultant shall be entitled to continue to receive the fees specified herein for one (1) quarter after the termination of this Agreement. After such time, Riverdeep shall have no obligation to pay Consultant any fees for revenue generated by Consultant's services under this Agreement.

Payments will be made sixty days following the end of each calendar quarter.

<u>Right of First Refusal</u>. Consultant hereby grants to Riverdeep a right of first refusal to buy all of the assets of Consultant. Consultant shall not engage in any discussions relating to the sale of its assets without first notifying Riverdeep that such discussions will take place. Riverdeep shall have thirty (30) days from such notice to make an offer to Consultant to purchase the assets of Consultant. During such time, Consultant may not discuss the sale of the assets of Consultant or the offer made by Riverdeep with any third party. If the parties cannot agree to the terms of an agreement to purchase the assets of Consultant by Riverdeep within the thirty day period provided above then Consultant shall be free to engage in discussions to sell its assets freely without further obligation to Riverdeep.

RIVERDEEP INC.                                          CONSULTANT

By: _____          By: _____
              signature                                               signature
Name: _____          Name: _____
              print name                                              print name
Title: _____          Title: _____

6

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 12

## Tom Holland

**From:** John Bartlett [JBartlett@riverdeep.net]
**Sent:** Wednesday, March 31, 2004 4:18 PM
**To:** Holland, Tom
**Subject:** RE: SOMC

Tom,

I will add the Scholastic titles.  What else is missing?  In need to more even load the payments.  I will come up with something t o send to you tomorrow.

John

---

**From:** Holland, Tom [mailto:tomh@logetics.com]
**Sent:** Wednesday, March 31, 2004 7:06 PM
**To:** John Bartlett
**Subject:** RE: SOMC

John,

1. There are several titles missing that we currently distribute as well as all of the Scholastic titles.
2. References to SOMC should be eliminated from the agreement.
3. The scheduled royalty payments would be as follows:

May 30, 2004 - $18,750
Jun 30, 2004 - $18,750
Jul 30, 2004 - $18,750

Aug 30, 2004 - $43,750
Sept 30, 2004 - $43,750
Oct 30, 2004 - $43,750

Nov 30, 2004 - $62, 500
Dec 30, 2004 - $125,000

Our business model shows the distribution to be 15% in Q2, 35% in Q3 and 50% in Q4

Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Wednesday, March 31, 2004 1:34 PM
**To:** Holland, Tom
**Subject:** FW: SOMC

Tom,

I took off the upfront payment but I need scheduled royalty payments in order for it to be recognizable.  If it is ok can you fax it to me at 617-778-7601.  I will send out executable copies.  Tony is not in Novato till tomorrow.  I should be able to figure out his schedule then and next steps on the joint venture.

John

6/15/2005

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 13

## Tom Holland

**From:** Holland, Tom
**Sent:** Thursday, April 01, 2004 3:22 PM
**To:** 'Tony Bordon'
**Subject:** RE: Follow-up To Our Meeting

Tony,

I look forward to speaking with you next week.

Tom

---

**From:** Tony Bordon [mailto:tbordon@riverdeep.net]
**Sent:** Thursday, April 01, 2004 12:36 PM
**To:** Holland, Tom
**Subject:** RE: Follow-up To Our Meeting

Tom,

Sorry for the lack of communication. We're in the process of closing our quarter and it's been a bit hectic. I will be away for the beginning part of next week as there is our school sales meeting for the first few days of next week. I'd like to explore getting together toward the later part of next week if necessary. We are still extremely excited about our partnership and it's potential success. I will call you first thing Monday to discuss further details.

Thanks for your patience Tom.

Regards,
Tony

---

**From:** Holland, Tom [mailto:tomh@logetics.com]
**Sent:** Tuesday, March 30, 2004 8:26 PM
**To:** Tony Bordon
**Subject:** RE: Follow-up To Our Meeting

Tony,

I know that you have a busy week ahead.  Would it be possible to consider Friday or Monday as potential meeting days with your group?  Mike Konikow is visiting from the East Coast and is available this week and would be willing to stay over should we schedule a meeting for Monday.

Please advise.

Thanks,
Tom

---

**From:** Tony Bordon [mailto:tbordon@riverdeep.net]
**Sent:** Thu 3/25/2004 8:47 PM
**To:** Holland, Tom
**Subject:** RE: Follow-up To Our Meeting

Thanks Tom. I enjoyed our meeting as well. I look forward to our next talk.

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 14



# Riverdeep

500 Redwood Boulevard
Novato, CA 94947
415-382-4400
www.riverdeep.net

May 4, 2004

Thomas E. Holland
Logetics, Inc.
1945 Palomar Oaks Way
Carlsbad, CA  92009


RE:  <u>OEM License Agreement</u>


Dear Thomas,

Enclosed please find two original copies of the <u>OEM License Agreement</u> for your review and signature. Upon completion, please return both originals to my attention. When fully executed I shall return one copy for your files.

If I can be further assistance or should you have questions, please do not hesitate to call.  Thank you.


Regards,

Pansy Dea-Dair
OEM Senior Sales Coordinator

## OEM LICENSE AGREEMENT
### (Manufacturing Rights)

This OEM License Agreement (this "**Agreement**") is entered into as of March 28, 2004 (the "**Effective Date**") by and between Riverdeep Inc. LLC, a Delaware limited liability company ("**Riverdeep**") and the company identified below ("**OEM**").

WHEREAS, Riverdeep publishes, markets and distributes the one or more computer software products listed on <u>Exhibit A</u> (the "Products"); and

WHEREAS, OEM desires to obtain a license to manufacture, market and distribute the Products to its customers subject to the restrictions identified on <u>Exhibit A</u>.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Riverdeep and OEM do hereby agree to the terms and conditions set forth herein and in the attached <u>Exhibit A</u>, <u>Exhibit B</u> and <u>Exhibit C</u>, the provisions of which are incorporated herein by this reference.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed under seal as of the Effective Date.

| Riverdeep LLC | Logetics, Inc. ("Logetics") |
|---|---|
| By:_____ | By:_____ |
| Tony Bordon | Thomas E. Holland |
| Chief Revenue Officer | President |
| | |
| Riverdeep LLC | Logetics, Inc. |
| 500 Redwood Blvd. | 1945 Palomar Oaks Way |
| Novato, CA 94947 | Tel: (760) 448-2900 |
| Attn: Chief Financial Officer | Fax: (760) 448-2941 |
| Tel: (415) 382-4400 | |
| Fax: (415) 382-4411 | |
| | |
| With a copy to: | |
| | |
| Riverdeep LLC | |
| 500 Redwood Blvd. | |
| Novato, CA 94947 | |
| Attn: General Counsel | |
| Tel: (415) 382-4400 | |
| Fax: (415) 382-4411 | |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

EXHIBIT A

THE PRODUCTS

1.    Products

(a)    LOGETICS CLUB PRODUCTS.  Products that may be distributed as part of the Logetics branded club described in Section 2(b) below ("Logetics Club Products").

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|
| 3D Home Architect 5 SE | 382067 | $.85 |
| 3D Home Design Kit - 2 CD | | $.85 |
| 3D Home Interiors #381158-CD (one CD only) | 381158-CD | $0.75 |
| 3D Home Landscape Designer SE 4.0 | | $0.85 |
| 3D Landscape 5 | 382068 | $.85 |
| A Guide to Vitamins, Minerals & Supplements | 556120 | $.85 |
| AfricaTrail | PAF3744AE | $.85 |
| Amazon Trail 3rd Ed: Rainforest Adventures | AMA3744AE | $0.65 |
| Arthur Math Games | 381029 | $.85 |
| Arthur Reading Games | 381028 | $.85 |
| Arthur's Thinking Games | 381027 | $.85 |
| Arthur First Grade | 380903 | $1.00 |
| Arthur Second Grade | 380904 | $1.00 |
| Arthur Kindergarten | 380902 | $1.00 |
| Arthur  Preschool | 380901 | $1.00 |
| Arthur Adventure with DW | 379273 | $.85 |
| Arthur's Birthday | 378759 | $.85 |
| Arthur's Camping Adventure | 380324 | $.85 |
| Arthur's Computer Adventure | 379274 | $.85 |
| Arthurs Pet Panic | 382420 | $1.00 |
| Arthur Reading Race | 51291SD | $.85 |
| Arthurs Sand Castle Caper | 382422 | $1.00 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

- 2 -

| | | |
|---|---|---|
| Arthurs Teacher Trouble | 378691 | $.85 |
| Arthurs Wilderness Games | 381788 | $1.00 |
| Baileys Book House | | $0.75 |
| Black & Decker Home Repairs | BDH3844AE | $0.75 |
| Bob Vila's Home Design | BVH3844AE | $0.85 |
| Body Works 6 | BWK3844CE | $0.75 |
| Calendar Creator 10 Standard | 382382 | $.85 |
| Calendar Creator 9 Standard | 385346 | $.85 |
| Carmen Sandiego Junior Detective | 51406 | $0.65 |
| Carmen Sandiego Math Detective | 25701 | $0.65 |
| Carmen Sandiego Word Detective | 45820 | $0.65 |
| Carmen Sandiego's Great Chase Through Time, CD1 | CST3744AE | $0.85 |
| Carmen Sandiego's ThinkQuick Challenge | CSQ3744AE | $0.85 |
| Children's Bible Stories | CBS3544AE | $0.65 |
| Click Art 10K | CLT3844AE | $0.75 |
| Click Art 2 FONTS | 385341 | $.85 |
| Click Art 50K | 382309 | $.85 |
| Click Art Fonts 3 Deluxe | 382249 | $.85 |
| Click Art Presentation Graphics | 385342 | $.85 |
| Clickart Celebrations & Holidays II | 381107 | $0.75 |
| Clifford Learning Activities | 334397 | $.85 |
| Clifford Musical Memory Games | 344342 | $.85 |
| Clifford Phonics | 356508 | $.85 |
| Clifford Reading | | $.85 |
| Clifford Thinking Adventures | | $.85 |
| ClueFinders Personalized Math 9-12 | 378472 | $.85 |
| ClueFinders 3rd Grade Adventures | 379539 | $0.85 |
| ClueFinders 4th Grade Adventures | 379536 | $0.85 |
| ClueFinders 5th Grade Adventures | 379535 | $0.85 |
| ClueFinders 6th Grade Adventures | 381576 | $.85 |
| ClueFinders Incredible Toy Store Adventure | 381573 | $.85 |
| ClueFinders Math Adventures 9-12 | 381575 | $.85 |
| Cluefinders Personalized Reading 9-12 | 378171 | $.85 |
| Compton's 3D World Atlas | CWA844AE-CD1 | $0.65 |
| Compton's Home Library Battles of the World | BTF3744AE | $0.65 |
| Compton's Learning Mathematics | MTC3844AE | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Compton's Interactive Cookbook | CKS3544AE | $0.75 |
| Daniel in the Lion's Den | | $.85 |
| Family Lawyer 2004 | | $.85 |
| Family Lawyer Wills & Estates | 385445 | $.85 |
| French to Go | PFR3844AE | $0.85 |
| Groliers Encyclopedia | TBD | $0.75 |
| I SPY Fantasy | 356519 | $.85 |
| I SPY Junior | | $.85 |
| I SPY Puppet Playhouse | | $.85 |
| I SPY School Days | | $.85 |
| I SPY Spooky Mansion | | $.85 |
| I SPY Treasure Hunt | 334394 | $.85 |
| Identity Theft Protector SE V1.01 | 282691 | $.85 |
| Imagination Express Destination Oceans | 104-1085 | $.85 |
| Imagination Express Destination Pyramids | 104-1606 | $.85 |
| Imagination Express Destination Rainforest | 104-1608 | $.85 |
| Imagination Express Destination Time Trip USA | 104-1634 | $.85 |
| Just Grandma and Me | 48462 | $0.85 |
| Kasparov Chessmate | 382318 | $.85 |
| Kid Pix Deluxe 3 | 378180 | $0.75 |
| Kid Pix Studio Deluxe | 28537 | $0.85 |
| Knowledge Munchers Deluxe | KMC2744AE-D&D | $0.85 |
| Leap Ahead! 1st Grade | | $0.85 |
| Leap Ahead! 2nd Grade | | $0.85 |
| Leap Ahead! 3rd Grade | | $0.85 |
| Leap Ahead! Kindergarten | | $0.85 |
| Leap Ahead! Math 6-9 | | $0.85 |
| Leap Ahead! Phonics | | $0.85 |
| Leap Ahead! Preschool | | $0.85 |
| Leap Ahead! Reading 6-11 | | $0.85 |
| Learn to Speak English 8.0 | LTSE3544DE | $0.85 |
| Learn to Speak English from Spanish (Hablemos Ingles) 7.0 | LTSH6544CE | $0.85 |
| Learn to Speak French 8.0 | LSF3744DE | $0.85 |
| Learn to Speak German 8.0 | LTSG3544DE | $0.85 |
| Learn to Speak Spanish 8.0 | LTSS3544DE | $0.85 |
| Lemonade Tycoon (Hexacto) | 381921 | $.85 |
| Let's Go Read: An Island Adventure | | $.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Little Bear Kindergarten Thinking Adventures | | $.85 |
| Little Bear Preschool Thinking Adventures | 379655 | $0.75 |
| Little Bear Rainy Day Activities | | $.85 |
| Little Bear Toddler Discovery Adventures | 379737 | $0.75 |
| Little Bill Thinks Big | 356515 | $.85 |
| Living Books Harry and the Haunted House | FBL1077F | $.85 |
| Living Books Little Monster | FBL1056A | $.85 |
| Living Books Stellaluna | 50201 | $.85 |
| Living Books Tortoise and the Hare | 49106 | $.85 |
| Logical Journey of the Zoombinis | 278469 | $0.75 |
| LTS: ENGLISH V8.1 | 381415 | $0.75 |
| LTS:FRENCH V8.1 | 381416 | $0.75 |
| LTS:GERMAN V8.1 | 381417 | $0.75 |
| LTS:SPANISH V8.1 | 381418 | $0.75 |
| Math Workshop Deluxe | 50122 | $0.65 |
| Mavis Beacon Teaches Typing 12 Standard | 380858 | $0.75 |
| Mavis Beacon Teaches Typing 15 Standard | 381500 | $.85 |
| Mavis Beacon Teaches Typing 9.0 | MBT2844AE | $0.65 |
| Mavis Beacon Teaches Typing 9.0 Mac | 112915 | $0.65 |
| MEDIASHOP  OEM | 285384 | $.85 |
| Mighty Math Astro Algebra | | $0.75 |
| Mighty Math Carnival Countdown | | $0.75 |
| Millies Math House | | $0.75 |
| Mind Power Math: High School | 381667 | $.85 |
| Mind Power Math: Middle School | 381668 | $.85 |
| Mind Power Science Grades 7-12 | 381803 | $.85 |
| Mind Twister Math | 104-0745 | $.85 |
| Mosby's Medical Encyclopedia | MDE2344BE-D&D | $0.85 |
| MOVIESHOP Select | 285323 | $.85 |
| Ocean Aquarium | 383209 | $.85 |
| Oregon Trail II | OTT3744AE | $0.65 |
| Oregon Trail III | OTA3744AE | $0.65 |
| Oregon Trail IV | OTF3744AE | $0.75 |
| Oregon Trail V | 380859 | $.85 |
| Orly's Draw-A-Story | 53605 | $0.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Paddington The World Mystery Tour | 381917 | $.85 |
| Passport to 31 Languages | THL3744AE | $0.85 |
| Practice Makes Perfect French | PMPF3544AE | $0.75 |
| Practice Makes Perfect Spanish | PMPS3544AE | $0.75 |
| Princeton Review: Sat/Act 2003 | | $.85 |
| Print Shop 20 Essentials | 382221 | $.85 |
| Print Shop Brochures, Newsletters & More | 385012 | $0.75 |
| Print Shop Business Card Creator | 385013 | $0.75 |
| Print Shop CD Label Creator | 381244 | $1.00 |
| Print Shop Deluxe For Broadband 15 | | $.85 |
| Print Shop Essentials 12 | 380869 | $1.00 |
| Print Shop Newsletters Brochures | | $.85 |
| PrintMaster 15 Express | 785306 | $.85 |
| PrintMaster 15 Silver | 385499 | $.85 |
| PrintMaster Greeting Cards Deluxe (4 CD) | 385505 | $.85 |
| Printmaster Homework Helper | 385015 | $0.75 |
| Printmaster Party & Crafts Creator | 385014 | $0.75 |
| Printmaster Select 15 | | $.85 |
| Printmaster Silver 11 | 379863 | $0.75 |
| Reader Rabbit  Preschool 2002 V1.12 | 381493 | $.85 |
| Reader Rabbit Dreamship Tales (Parents Premium) | | $.85 |
| Reader Rabbit I Can Read with Phonics | 380267 | $.85 |
| Reader Rabbit Let's Start Learning! | LST3544AE | $.85 |
| Reader Rabbit Personalized 1st Grade | RRF3744BE | $.85 |
| Reader Rabbit Personalized 2nd Grade | RSG3744AE | $.85 |
| Reader Rabbit Personalized Preschool | RRP3744BE | $.85 |
| Reader Rabbit Presents Math Grades 1-3 | | $.85 |
| Reader Rabbit Toddler | RRT3744CE | $0.65 |
| Reader Rabbit Toddler 2002 V2 (2 CD version) | 381491 | $.85 |
| Reader Rabbit's 1st Grade | RRF3744BE | $0.85 |
| Reader Rabbit's 2nd Grade | RSG3744BE | $0.85 |
| Reader Rabbit's Kindergarten | RRK3744BE | $0.65 |
| Reader Rabbit's Kindergarten (2 CD version) | 379541 | $.85 |
| Reader Rabbit's Math Ages 4-6 | 378475 | $0.65 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Reader Rabbit's Math Ages 6-9 | 378476 | $0.65 |
| Reader Rabbit's Math Journey (Gr. 1-3) | MJF2744AE-D&D | $0.65 |
| Reader Rabbit's Personalized Math 1st & 2nd Grade | 378476 | $0.65 |
| Reader Rabbit's Playtime for Baby | BRR3744AE | $0.65 |
| Reader Rabbit's Preschool | RRP3744BE | $0.65 |
| Reader Rabbit's Reading 1 | RRA2744BE-D&D | $0.65 |
| Reader Rabbit's Reading Ages 4-6 | 378474 | $0.65 |
| Reader Rabbit's Reading Ages 6-9 | 378473 | $0.65 |
| Reader Rabbit's Thinking Adventures 4-6 | RTG3744AE | $0.65 |
| Reader Rabbit's Learn to Read with Phonics Preschool Kindergarten | 381516 | $0.85 |
| Resume Pro 3.0 | RES2844AE | $0.75 |
| Road Adventures USA | TRA3744AE | $0.65 |
| Sammy's Science House | | $0.75 |
| Schoolhouse Rock 1st & 2nd Grade Essentials | SGE3744AE | $0.85 |
| Schoolhouse Rock 3rd & 4th Grade Essentials | SGD3744AE | $0.85 |
| Schoolhouse Rock Grammar Rock | SGR3744AE | $0.85 |
| Schoolhouse Rock Math Rock | 21010-D&D | $0.85 |
| Schoolhouse Rock Thinking Games | BBT3844AE | $0.85 |
| Schoolhouse Rock Thinking Games Deluxe | SRT3744BE | $0.85 |
| Spanish to Go | 381327 | $0.85 |
| Spelling Master | SMP3744AE | $0.65 |
| Stanley's Sticker Stories | | $0.75 |
| Starflyers Alien Space Chase | 380853 | $.85 |
| Starflyers Royal Jewel Rescue V1 | 381547 | $.85 |
| Storybook Weaver Deluxe | SBW374AE | $.85 |
| Super Solver Spellbound | SBO3544AE | $.85 |
| Super Solvers Gizmos & Gadjets | GAG3544AE | $.85 |
| Super Solvers Midnight Rescue | MNR3544AE | $.85 |
| Super Solvers Mission Think | MEM3744AE | $0.85 |
| Super Solvers Operation Neptune | ONT3544AE | $.85 |
| Super Solvers Outnumbered | ONB3544AE | $.85 |
| Super Solvers Reading 9-12 | SSR3744AE | $0.85 |
| The Art Lesson | HCD772 | $0.85 |
| The Bible: A Multimedia Experience | HYB3344AE | $.85 |
| Theme Weavers: Animals | | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Thinkin Things All Around Fripple Town | | $0.75 |
| Thinkin Things Collection 1 | | $0.75 |
| Thinkin Things Galactic Brain Benders | | $0.75 |
| Treasure Cove | TSC3544AE | $0.75 |
| Treasure Galaxy | TSG3544AE | $0.75 |
| Treasure Mathstorm | TMS3544BE | $0.75 |
| Treasure Mountain | PTS3744AE | $0.75 |
| Trivia Munchers | TVM2744AE-D&D | $0.75 |
| Troggle Trouble Math | PTT3544AE | $0.75 |
| Ultimate Children's Encylcopedia | ZCE3544AE | $0.85 |
| Ultimate Writing & Creativity Center | UWC54EE-CD | $0.85 |
| Where in the USA is Carmen Sandiego | CSU3744AE | $0.85 |
| Where in the World is Carmen Sandiego | CSD3744AE | $0.85 |
| Where in Time is Carmen Sandiego | 44303 | $0.85 |
| Will Writer 2004 V3 | 282675 | $.85 |
| Williams and Sonoma Guide To Good Cooking | 379505 | $0.75 |
| Yukon Trail | HCD663 | $.85 |
| Zoombinis Island Odyssey | 381664 | $.85 |
| ZOOMBINIS MTN RESCUE V1.0 | 380860 | $.85 |

Products that may be distributed as "lead generators" to acquire potential customers for the Logetics Club branded club described in Section 2(b) below but do not require membership by the potential customer.  No Reader Rabbit branded titles below may be used as lead generators in free standing insert ("FSI") offers.

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|
| 3D Home Interiors #381158-CD (one CD only) | 381158-CD | $0.75 |
| 3D Home Landscape Designer SE 4.0 | | $.85 |
| A Guide to Vitamins, Minerals & Supplements | 556120 | $.85 |
| AfricaTrail | PAF3744AE | $.85 |
| Amazon Trail 3rd Ed: Rainforest Adventures | AMA3744AE | $0.65 |
| Black & Decker Home Repairs | BDH3844AE | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Bob Vila's Home Design | BVH3844AE | $0.85 |
| Body Works 6 | BWK3844CE | $0.75 |
| Carmen Sandiego Junior Detective | 51406 | $0.65 |
| Carmen Sandiego Math Detective | 25701 | $0.65 |
| Carmen Sandiego Word Detective | 45820 | $0.65 |
| Carmen Sandiego's Great Chase Through Time, CD1 | CST3744AE | $0.85 |
| Children's Bible Stories | CBS3544AE | $0.65 |
| Click Art 10K | CLT3844AE | $0.75 |
| Click Art 2 FONTS | 385341 | $.85 |
| Click Art Fonts 3 Deluxe | 382249 | $.85 |
| Click Art Presentation Graphics | 385342 | $.85 |
| Clickart Celebrations & Holidays II | 381107 | $0.75 |
| Clifford Reading | | $0.85 |
| Clifford Thinking Adventures | | $0.85 |
| Clue Finders Personalized Math 9-12 | 378472 | $.85 |
| ClueFinders Incredible Toy Store Adventure | 381573 | $.85 |
| ClueFinders Math Adventures 9-12 | 381575 | $.85 |
| Cluefinders Personalized Reading 9-12 | 378171 | $.85 |
| Compton's Home Library Battles of the World | BTF3744AE | $0.65 |
| Compton's Interactive Cookbook | CKS3544AE | $0.75 |
| I SPY Junior | | $.85 |
| I SPY School Days | | $.85 |
| I SPY Spooky Mansion | | $.85 |
| Identity Theft Protector SE V1.01 | 282691 | $.85 |
| Imagination Express Destination Oceans | 104-1085 | $.85 |
| Imagination Express Destination Pyramids | 104-1606 | $.85 |
| Imagination Express Destination Rainforest | 104-1608 | $.85 |
| Imagination Express Destination Time Trip USA | 104-1634 | $.85 |
| Just Grandma and Me | 48462 | $0.85 |
| Kid Pix Studio Deluxe | 28537 | $0.85 |
| Knowledge Munchers Deluxe | KMC2744AE-D&D | $0.85 |
| Labels Unlimited | LUN3844AE | $0.75 |
| Leap Ahead! 1st Grade | | $0.85 |
| Leap Ahead! 2nd Grade | | $0.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Leap Ahead! 3rd Grade | | $0.85 |
| Leap Ahead! Kindergarten | | $0.85 |
| Leap Ahead! Math 6-9 | | $0.85 |
| Leap Ahead! Phonics | | $0.85 |
| Leap Ahead! Preschool | | $0.85 |
| Leap Ahead! Reading 6-11 | | $0.85 |
| Lemonade Tycoon (Hexacto) | 381921 | $.85 |
| Let's Go Read: An Island Adventure | | $.85 |
| Little Bear Kindergarten Thinking Adventures | | $.85 |
| Little Bear Preschool Thinking Adventures | 379655 | $0.75 |
| Little Bear Rainy Day Activities | | $.85 |
| Little Bear Toddler Discovery Adventures | 379737 | $0.75 |
| Living Books Harry and the Haunted House | FBL1077F | $.85 |
| Living Books Little Monster | FBL1056A | $.85 |
| Living Books Stellaluna | 50201 | $.85 |
| Living Books Tortoise and the Hare | 49106 | $.85 |
| Logical Journey of the Zoombinis | 278469 | $0.75 |
| MEDIASHOP OEM | 285384 | $.85 |
| Mighty Math Astro Algebra | | $0.75 |
| Mighty Math Carnival Countdown | | $0.75 |
| Mind Power Math: High School | 381667 | $.85 |
| Mind Power Math: Middle School | 381668 | $.85 |
| Mind Power Science Grades 7-12 | 381803 | $.85 |
| Mosby's Medical Encyclopedia | MDE2344BE-D&D | $0.85 |
| MOVIESHOP Select | 285323 | $.85 |
| Oregon Trail II | OTT3744AE | $0.65 |
| Orly's Draw-A-Story | 53605 | $0.85 |
| Passport to 31 Languages | THL3744AE | $0.85 |
| Practice Makes Perfect French | PMPF3544AE | $0.75 |
| Practice Makes Perfect Spanish | PMPS3544AE | $0.75 |
| Print Shop Brochures, Newsletters & More | 385012 | $0.75 |
| PrintMaster Greeting Cards Deluxe (4 CD) | 385505 | $.85 |
| Printmaster Homework Helper | 385015 | $0.75 |
| Printmaster Party & Crafts Creator | 385014 | $0.75 |
| Printmaster Silver 11 | 379863 | $0.75 |
| Reader Rabbit I Can Read with | 380267 | $.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| Phonics | | |
|---|---|---|
| Reader Rabbit Let's Start Learning! | LST3544AE | $.85 |
| Reader Rabbit Presents Math Grades 1-3 | | $.85 |
| Reader Rabbit Toddler | RRT3744CE | $.85 |
| Reader Rabbit's Math Ages 4-6 | 378475 | $0.65 |
| Reader Rabbit's Math Ages 6-9 | 378476 | $0.65 |
| Reader Rabbit's Math Journey (Gr. 1-3) | MJF2744AE-D&D | $0.65 |
| Reader Rabbit Personalized Math 1st & 2nd Grade | 378476 | $.65 |
| Reader Rabbit Playtime for Baby | BRR3744AE | $.65 |
| Reader Rabbit Preschool | RRP3744BE | $.85 |
| Reader Rabbits Reading 1 | RRA2744BE-D&D | $.65 |
| Reader Rabbit Reading Ages 4-6 | 378474 | $.65 |
| Reader Rabbit Reading Ages 6-9 | 378473 | $.65 |
| Reader Rabbit Thinking Adventures 406 | RTG3744AE | $.65 |
| Resume Pro 3.0 | RES2844AE | $0.75 |
| Road Adventures USA | TRA3744AE | $0.65 |
| Schoolhouse Rock 1st & 2nd Grade Essentials | SGE3744AE | $0.85 |
| Schoolhouse Rock 3rd & 4th Grade Essentials | SGD3744AE | $0.85 |
| Schoolhouse Rock Grammar Rock | SGR3744AE | $0.85 |
| Schoolhouse Rock Math Rock | 21010-D&D | $0.85 |
| Schoolhouse Rock Thinking Games | BBT3844AE | $0.85 |
| Schoolhouse Rock Thinking Games Deluxe | SRT3744BE | $0.85 |
| Spanish to Go | 381327 | $0.85 |
| Spelling Master | SMP3744AE | $0.65 |
| Stanley's Sticker Stories | | $0.75 |
| Storybook Weaver Deluxe | SBW374AE | $.85 |
| Super Solver Spellbound | SBO3544AE | $.85 |
| Super Solvers Gizmos & Gadjets | GAG3544AE | $.85 |
| Super Solvers Midnight Rescue | MNR3544AE | $.85 |
| Super Solvers Mission Think | MEM3744AE | $0.85 |
| Super Solvers Operation Neptune | ONT3544AE | $.85 |
| Super Solvers Outnumbered | ONB3544AE | $.85 |
| Super Solvers Reading 9-12 | SSR3744AE | $0.85 |
| The Art Lesson | HCD772 | $0.85 |
| Theme Weavers: Animals | | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Thinkin Things All Around Fripple Town | | $0.75 |
| Thinkin Things Collection 1 | | $0.75 |
| Thinkin Things Galactic Brain Benders | | $0.75 |
| Treasure Cove | TSC3544AE | $0.75 |
| Treasure Galaxy | TSG3544AE | $0.75 |
| Treasure Mathstorm | TMS3544BE | $0.75 |
| Treasure Mountain | PTS3744AE | $0.75 |
| Trivia Munchers | TVM2744AE-D&D | $0.75 |
| Troggle Trouble Math | PTT3544AE | $0.75 |
| Ultimate Children's Encylcopedia | ZCE3544AE | $0.85 |
| Ultimate Writing & Creativity Center | UWC54EE-CD | $0.85 |
| Where in Time is Carmen Sandiego | 44303 | $0.85 |
| Will Writer 2004 V3 | 282675 | $.85 |
| Williams and Sonoma Guide To Good Cooking | 379505 | $0.75 |
| Yukon Trail | HCD663 | $.85 |
| Zoombinis Island Odyssey | 381664 | $.85 |
| ZOOMBINIS MTN RESCUE V1.0 | 380860 | $.85 |

(b)    RIVERDEEP/TLC CLUB PRODUCTS.  Products that may be distributed through the Riverdeep/TLC co-branded club described in Section 2(b) below ("Riverdeep/TLC Club Products")


Same as 1(a) above

Products that may be distributed as "lead generators" to acquire potential customers for the Riverdeep/TLC co-branded club described in Section 2(b) below but do not require membership by the potential customer.

Same 1(b) above

2.    **Authorized Channels** are defined as:

(a)    Authorized Product and Bundle Configurations.  OEM may only distribute the Products in the following designated manner (please check appropriate boxes):

☐ Hardware bundle.  The Products will always be bundled with a computer-related hardware product of OEM with a suggested retail price of $50 or more, as part of a single contemporaneous sale.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

- 12 -

☐ Aftermarket hardware sale.  The Products may only be sold to a registered customer that has recently purchased, within ninety (90) days, one of OEM's hardware products with a suggested retail price of $250 or more.

☐ Soft bundle.

☐ Magazine cover mount.

☐ Packaging restrictions:  Products may only be sold in:

    ☐ Paper wrap

    ☐ Jewel case

    ☐ Mini box/DVD packaging (not to exceed 5"x7"x1.5")

☒ Other:  The Products (as restricted above) shall only be distributed by OEM either as (1) a lead generator as a single unit or bundled with other software products, or (2) as part of a club as a Logetics or TLC/Riverdeep branded club offering.

    (b)    <u>Authorized Channels</u>.  In addition to the foregoing restrictions, OEM may only distribute the Products in the following channels (<u>please check appropriate boxes</u>):

☐ Gift Shops

☐ Drug Store

☐ Direct to Consumer (catalog sales only)

☐ Direct to Consumer (outbound emails only)

☐ Direct to Consumer (outbound telemarketing only)

☐ Department Store (including, for example: Macy's, Bloomingdale's, etc.)

☐ Mid-Tier Store (including, for example: JCPenny, Sears, Montgomery Ward's, etc.)

☐ Superstore (including, for example: CompUSA, Best Buy, Circuit City, Fry's, etc.)

☐ Office Outlet (including, for example: Staples, Office Depot, Office Max, etc.)

☐ Specialty Mall (including, for example: Electronics Boutique, Babbages, Musicland, etc.)

☐ Toy (including, for example: Toys r' Us, Kaybee, etc.)

☐ Mass Market (including, for example: Target, Wal-mart, KMart, etc.)

☐ Supermarket

☐ Book Club

☐ Warehouse Club (including, for example: BJ's, Costco, Sam's, etc.)

☐ E-commerce Sales (orders taken from website, www._____.com.  No such right exists if the foregoing blank is not filled.)

☒ Other:  OEM may distribute the Logetics Club Products to end user customers as part of its Logetics or TLC/Riverdeep branded club membership only in which Logetics club members pay the established membership fee (to be approved by Riverdeep, not to be unreasonably withheld) and, in exchange, receive one title per month until they decide to unsubscribe (or two titles per month if the club members pay the established membership fee to be approved by Riverdeep, not to be unreasonably withheld).

Logetics may distribute to end user customers the Logetics Club Products and TLC/Riverdeep branded Club Products identified in Section 1(b) as part of outbound telemarketing, FSI ("Free Standing Inserts"), emails and direct mails in which the Products are offered on a promotional basis such as for free to customers (customer pays shipping and handling), discounted price (with no charge for shipping and handling), discounted price plus customer pays shipping and handling, or any combination thereof, as a means of generating

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

- 13 -

potential Logetics Club customers. Logetics will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to the Logetics Club or TLC/Riverdeep Club for approval prior to its use. Riverdeep may withhold approval of any materials, not to be unreasonably withheld.

(c)    Agreements with Third Parties. Subject to Riverdeep's prior written consent, to be granted at its sole discretion, OEM may each enter into agreements with third parties to create private label software clubs similar to the Logetics club under which third parties would distribute the Logetics Club Products and/or the Riverdeep/TLC Club Products. Logetics will ensure that any third party that distributes the Logetics or Riverdeep/TLC Products will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to Riverdeep for approval prior to its use, not to be unreasonably withheld. Logetics shall remaining solely liable for any failure of the third party to provide such materials for review prior to use.

3.    Licensed Media: CD-ROM only.

4.    License Fees, Reports and Payment:

(a)    Guaranteed License Fee. Notwithstanding any other provisions in this Agreement, OEM shall pay to Riverdeep the following non-refundable, irrevocable, non-transferable license fees, totaling **U.S. $375,000 dollars** which shall be paid on the following dates:

| | |
|---|---|
| May 15, 2004 | $18,750 |
| June 15, 2004 | $18,750 |
| July 15, 2004 | $18,750 |
| August 15, 2004 | $43,750 |
| September 15, 2004 | $43,750 |
| October 15, 2004 | $43,750 |
| November 15, 2004 | $62,500 |
| December 15, 2004 | $125,000 |
| Total: | $375,000 |

(b)    Per Unit License Fees. The per unit license fees identified in the above Section 1, and the Club Royalty identified in Section 4(c) below shall be applied against the applicable Guaranteed License Fee with respect to each unit of Product manufactured by OEM during the quarter ending on such date. If there is no Guaranteed License Fee, or once the Guaranteed License Fee has been earned down and recouped by OEM, then OEM shall pay directly to Riverdeep the Per Unit License Fees listed in the above Section 1 for every unit it manufactures and any Club Royalty earned by Riverdeep.

(c)    Royalty on Riverdeep/TLC Club. OEM will pay Riverdeep a royalty of fifty percent (50%) of the Net Receipts derived from sales through the Riverdeep/TLC Branded Club ("Club Royalty").

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

(d)     Quarterly Reconciliation.  To the extent that the cumulative Per Unit License Fees with respect to the number of units of Products manufactured by OEM during a particular quarter and the Club Royalties earned exceed the applicable Guaranteed License Fee for such quarter, OEM shall reconcile and pay to Riverdeep the difference (if any) within thirty days of each quarter end.

(e)     Payment of Per Unit License Fees and Club Royalties.  Per Unit License Fees and Club Royalties shall be paid directly to Riverdeep within 30 days of the end of the quarter in which each Product is Net Units Sold.  "Net Units Sold" shall mean the number of units distributed by OEM less units returned by OEM's customer, units used as samples to prospective clients (not to exceed 200 units total) and units for employee training purposes (not to exceed 200 units total).  Each Product shall be accounted for separately in OEMs reports to Riverdeep.

(f)     Reports.  Each month OEM shall provide Riverdeep with a reasonably detailed report showing sales, the number of copies of each Product manufactured by OEM and the calculation of the Per Unit License Fees and Club Royalties for the preceding month.

5.     Territory:  North America.

6.     Production Unit Delivery:  OEM shall provide Riverdeep with two (2) copies of the finished manufactured product as soon as such product is available.

7.     Support:  Riverdeep will provide technical support for the Products to its end-users at the same level that Riverdeep currently provides to its customers that have purchased the Products in the retail channel. OEM will provide customer support for the Logetics Club Products and TLC/Riverdeep branded Club offerings.  OEM will provide Riverdeep with a contact to forward all customer service inquiries received by Riverdeep.  OEM will make best efforts to resolve all customer support issues within forty-eight (48) hours of receipt from Riverdeep.

8.     Expenses:  OEM will bear all costs and expenses of manufacturing, marketing and distributing the Products.

9.     Acknowledgement of Delivery:  On the Effective Date, OEM shall execute a copy of the Acknowledgement of Delivery of all deliverables in the form attached hereto as Exhibit C.

10.     Term of the Agreement:  This Agreement shall expire on September 30, 2004 (the "**Expiration Date**").

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

**EXHIBIT B**
**TERMS AND CONDITIONS**

1. <u>DEFINITIONS.</u>

    1.1    **"Authorized Channels"** shall mean the specific authorized product and bundle configurations and the specific authorized channels identified in Section 2 of <u>Exhibit A</u>.

    1.2    **"Confidential Information"** shall mean that information that is identified in Section 9.1 of this <u>Exhibit B</u>.

    1.3    **"Cost of Goods"** shall mean all direct costs and expenses associated with the manufacture and delivery of the Products, including, without limitation, CD-ROMs, external and internal packaging, documentation, inserts, assembly, warehousing and manufacturing and licensing fees due to third parties relating to the Riverdeep/TLC Club. This shall not include any allocation for employees, overhead or other indirect costs associate with the manufacture and delivery of the Products.

    1.4    **"Expiration Date"** shall mean that specific date that is identified in Section 10 of <u>Exhibit A</u>.

    1.5    **"Guaranteed License Fees"** shall mean the license fees payable to Riverdeep in Section 4(a) of <u>Exhibit A</u>.

    1.6    **"Licensed Media"** shall mean the specific licensed media identified in Section 3 of <u>Exhibit A</u>.

    1.7    **"Net Receipts"** shall mean the gross revenues actually received by OEM less actual out of pocket costs directly related to the gross revenues from Cost of Goods, the Per Unit License Fees paid to Riverdeep under this Agreement, licensing fees paid to third parties related to the Riverdeep/TLC Club, sales taxes collected and refunds, actual direct third party marketing expenses directly relating to the Riverdeep/TLC Branded Clubs (such administrative costs can include commercially reasonable allocations of salaries and overhead, in the aggregate such administrative costs shall not to exceed 28% of gross revenues).

    1.8    **"Per Unit License Fees"** shall mean the individual Product license fees of the respective Products identified in Section 1 of <u>Exhibit A</u>.

    1.9    **"Product"** or **"Products"** shall mean those specific computer software products of TLC identified in Section 1 of <u>Exhibit A</u>. Where the term "Logetics Club Products" or "Riverdeep Club Products" is used, the term shall have the specific meaning attributed in Exhibit A. All other use of the term Product shall include "Logetics Club Products" or "Riverdeep Club Products."

    1.10    **"Term"** shall mean that period of time that is identified in Section 5 of this <u>Exhibit B</u>.

    1.11    **"Territory"** shall mean the specific geographic areas described in Section 5 of <u>Exhibit A</u>.

2. <u>GRANT OF LICENSE, RESTRICTIONS, DOCUMENTATION AND SUPPORT.</u>

    2.1    <u>Rights Granted to OEM</u>.

    (a)    Subject to this Agreement, Riverdeep grants to OEM a non-transferable and non-exclusive license to manufacture, market and distribute the Products in the Licensed Media throughout the Territory for the Term of this Agreement, in the Authorized Channels.

    (b)    OEM UNDERSTANDS AND AGREES THAT UNDER NO CIRCUMSTANCES WILL OEM DISTRIBUTE ANY PRODUCT OUTSIDE THE AUTHORIZED CHANNELS. SUCH AN ACT ON THE PART OF OEM SHALL CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

- 16 -

2.2     End-User License Agreement.
OEM will not distribute any Product unless the
Product is accompanied by Riverdeep's standard
form of end-user license agreement (as provided
by Riverdeep) as the same may be revised from
time to time upon notice to OEM.

3.     COPYRIGHT AND TRADEMARK
NOTICES AND TITLE.

3.1     Copyrights and Trademark.
Riverdeep hereby grants to OEM a non-
exclusive, non-transferable right to use the
names of the Products listed on Exhibit A when
used in connection with the name
**"Broderbund,"** and **"The Learning
Company,"** on copies of the Products licensed
to OEM pursuant to and for the Term of this
Agreement.  Any sale of a Product or
documentation (or any portion thereof) shall
include the copyright, trademark and other
proprietary rights notices as are currently
contained on each such Product (or
documentation) or may be specified from time to
time by Riverdeep.  OEM will not challenge any
intellectual property rights claimed by Riverdeep
in such trademarks.

3.2     Title to Products.  Title to
the Products shall not pass from Riverdeep
to OEM or its end-users, and the Products
and all master copies thereof shall at all
times remain the sole and exclusive
property of Riverdeep.

4.     LICENSE FEES.

OEM shall pay Riverdeep the license
fee(s) set forth on Exhibit A of this Agreement
according to the terms set forth on Exhibit A.

5.     TERM OF AGREEMENT.

Unless otherwise terminated earlier in
accordance with the terms of this Agreement, the
term of this Agreement shall continue from the
Effective Date until the Expiration Date (the
**"Term"**).  This Agreement may thereafter only be
renewed for successive one-year periods upon the
written amendment to this Agreement.

6.     TERMINATION AND BREACH.

6.1     Termination.  Either party may
terminate this Agreement, effective immediately
upon written notice, under the following
circumstances:

(a)     Except as provided for in
Section 6.2, below, if either party materially
breaches any provision of this Agreement and
such breach has not been cured within thirty (30)
days after the other party has given written notice
of such breach, the non-breaching party may
terminate this Agreement.

(b)     If, at any time, the
Guaranteed License Fees or any other amounts
due under this Agreement are not paid when
due, at Riverdeep's option, it may at any time
during the Term of this Agreement upon not less
than ten (10) days' prior written notice and
failure to cure.  Should the Agreement terminate
pursuant to this provision, all Guaranteed
License Fees shall be accelerated and due
immediately.

(c)     If OEM should: (1)
admit in writing its inability to pay its debts
generally as they become due; (2) make a
general assignment for the benefit of creditors;
(3) institute proceedings to be adjudicated a
voluntary bankrupt or consent to the filing of a
petition of bankruptcy against it; (4) be
adjudicated by a court of competent jurisdiction
as being bankrupt or insolvent; (5) seek
reorganization under any bankruptcy act, or
consent to the filing of a petition seeking such
reorganization; or (6) have a decree entered
against it by a court of competent jurisdiction
appointing a receiver, liquidator, trustee or
assignee in bankruptcy or insolvency covering
all or substantially all of such party's property or
providing for the liquidation of such party's
property or business affairs, and fail to cause the
same to be removed within sixty (60) days,
Riverdeep may terminate this Agreement.

6.2     Termination for Violation of
Authorized Channels.  In the event that OEM or
its customers (including resellers) violate
Section 2 of Exhibit A, or otherwise make any

*This document does not constitute an offer or any form of an agreement until it is approved and signed by
Broderbund.  It is submitted to OEM for discussion purposes only.*

improper use, transfer, duplication or disclosure of any of the Product(s), this Agreement and all of OEM's rights hereunder shall terminate immediately.

6.3    Effect of Termination. Upon the expiration or termination of this Agreement, the license granted hereunder shall terminate, and OEM shall immediately discontinue the manufacture of any Products; provided however, OEM shall have the right to sell off any remaining inventory in existence for a period of thirty (30) days, unless the Agreement has been terminated under Section 6.1 or Section 6.2, above. In the final thirty days of the Term, OEM shall not manufacture Product in excess of the average number of units of Product manufactured during the Term. All proprietary and confidential information shall be promptly returned to Riverdeep. Termination or expiration of this Agreement shall not relieve OEM of any of its payment obligations.

6.4    Survival of Certain Conditions. Notwithstanding anything to the contrary contained in this Agreement, Sections 2.1(b), 2.2-2.5, 3.2, 4, 6.4, 7, 9 and 10 shall in all cases survive any expiration or termination of this Agreement.

6.5    Injunctive Relief. OEM understands and agrees that Riverdeep will suffer irreparable harm in the event that OEM fails to comply with the any of its obligations under Section 2.1(b) above, and that monetary damages in such event would be substantial and inadequate to compensate Riverdeep. Consequently, in such event Riverdeep will be entitled, in addition to such monetary relief as may be recoverable by law, to such temporary, preliminary and/or permanent injunctive relief as may be necessary to restrain any continuing or further breach by OEM, without showing or proving any actual damages sustained by Riverdeep.

7.    REPRESENTATIONS, WARRANTIES AND INDEMNIFICATION.

7.1    Riverdeep's Representations and Warranties. Riverdeep represents and warrants to OEM the following:

(a)    Riverdeep either owns all right, title and interest in the Products or possesses the necessary rights to grant OEM the rights and license granted hereunder.

(b)    Riverdeep has the full power and authority to enter into this Agreement and to fulfill its obligations hereunder.

(c)    The Products do not infringe upon any intellectual property rights or other proprietary rights of any third party.

7.2    OEM's Representations and Warranties: OEM represents and warrants to Riverdeep the following:

(a)    OEM possesses full power and authority to enter into this Agreement and to fulfill its obligations hereunder; and

(b)    OEM's performance of the terms of this Agreement and of OEM's obligations hereunder shall not breach any separate agreement by which OEM is bound.

7.3    Riverdeep Indemnities. Riverdeep agrees to indemnify, hold harmless and defend OEM from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement.

7.4    OEM Indemnities. OEM agrees to indemnify, hold harmless and defend Riverdeep from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement.

7.5    Riverdeep Indemnification Option. In the case of any infringement claim, at Riverdeep's option, Riverdeep may at its

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

expense: (i) procure a license from any claimants with respect to the challenged Product (or component thereof) that will enable Riverdeep to continue marketing and using the Product, (ii) modify the challenged Product so as to make it non-infringing, or (iii) take appropriate action or seek available legal remedies to enable the continued manufacturing, use and distribution of the challenged Product.

7.6    THE WARRANTY STATED HEREIN IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND SUCH WARRANTY CONSTITUTES THE ONLY WARRANTY MADE BY RIVERDEEP WITH RESPECT TO THIS AGREEMENT OR THE PRODUCTS, ARTICLES, MATERIALS, REPLACEMENT PARTS OR SERVICES TO BE SUPPLIED HEREBY. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR LOST PROFITS, LOSS OF DATA OR ANY COLLATERAL, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND. RIVERDEEP'S AGGREGATE LIABILITY TO OEM UNDER THIS SECTION 7 IS LIMITED TO THE AMOUNT THAT OEM ACTUALLY PAYS TO RIVERDEEP UNDER THIS AGREEMENT.

7.7    Claims. With respect to any claims falling within the scope of the foregoing indemnifications: (a) each party agrees to notify the other promptly of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating; (b) Riverdeep shall have the right to assume, at its expense, the defense of a claim or suit made or filed against OEM; and (c) if Riverdeep does not represent OEM in any claim or suit, Riverdeep shall pay OEM's legal costs and expenses in defense of such a claim. OEM shall not settle such claim or suit without the prior written approval of Riverdeep, which approval will not be unreasonably withheld or delayed.

8.    BOOKKEEPING OBLIGATIONS AND INSPECTION RIGHTS.

OEM shall maintain true and complete books of account containing an accurate record of all data necessary for the proper computation of payments hereunder, and Riverdeep shall have the right, by a certified public accountant appointed by it, to examine such books at all reasonable times (but not more than twice in each calendar year) for the purpose of verifying the accuracy of the reports and computation rendered by OEM. Upon reasonable advance notice, such examination shall be made during normal business hours at the principal place of business of OEM. If such examination reveals that reports furnished by OEM were inaccurate by more than ten percent (10%) and that amounts in excess of those paid to Riverdeep are due, the cost of such examination shall be borne by OEM and OEM shall pay the amount of any discrepancy to Riverdeep, plus interest at the rate of eighteen percent (18%) per year or part thereof on any deficiencies.

9.    CONFIDENTIAL INFORMATION.

9.1    Confidential Information. Each party (the "receiving party") shall keep in strictest confidence the terms of this Agreement and all material and information, in whatever form provided, identified by the other party (the "disclosing party") to be confidential or proprietary in nature relating to the disclosing party's trade secrets (including pricing policies, business strategies, software designs and specifications), as well as any materials and information which from the circumstances in which they are made available to the receiving party in good faith and good conscience ought to be treated as confidential or proprietary ("**Confidential Information**").

9.2    Exceptions. Information shall not be considered to be Confidential Information if it (i) is already or otherwise becomes publicly known through no act of the receiving party, (ii) is lawfully received from third parties subject to no restriction of confidentiality, (iii) can be shown by the receiving party to have been independently developed by it, (iv) is disclosed by the disclosing party to third parties

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

without restriction on subsequent disclosure, or (v) is required to be disclosed in the context of an administrative or judicial proceeding, except that in such case the receiving party agrees to provide the disclosing party with prompt notice of such requirement in order to allow the disclosing party to seek an appropriate protective order.

9.3    Term of Confidentiality. Each party's obligations under this Section 9 shall survive the termination or expiration of this Agreement for a period of two (2) years.

10.    MISCELLANEOUS PROVISIONS.

10.1    Entire Agreement. This Agreement, including all Exhibits, contains the entire understanding of the parties hereto relating to the Products, supersedes any prior written or oral agreement or understandings between the parties with respect to the Products, and cannot be changed or terminated orally. This Agreement may be amended only by a writing signed by the parties hereto.

10.2    Enforceability. The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement.

10.3    Assignment. Neither this Agreement nor the rights or obligations hereunder may be assigned by OEM without the prior written consent of Riverdeep, which consent shall not be unreasonably withheld; provided however, that OEM may assign this Agreement upon the merger of OEM or the sale of OEM's business, all without the consent of Riverdeep, if OEM gives notice to Riverdeep of such assignment. In the event of such an assignment, this Agreement shall be binding upon such successors and assignees.

In the event that Riverdeep sells substantially all of the assets of any of its business units by sale, merger, or otherwise, then, Riverdeep may elect to assign the duties and obligations arising under this Agreement with respect to such transferred business or

assets to the purchaser of such business or assets to the extent such sale relates to the Products. In such event, Riverdeep may elect to require OEM to enter into a substantially identical agreement to this Agreement for the transferred Products.

10.4    Independent Contractors. OEM and Riverdeep shall perform their duties pursuant to this Agreement as independent contractors. Nothing in this Agreement shall be construed to create a joint venture, partnership or other joint relationship between OEM and Riverdeep. Neither party shall have the ability to incur any obligation on behalf of the other party.

10.5    Successors. Subject to Section 10.3 above, all rights and obligations arising out of this Agreement shall inure to the benefit of, and be binding on and enforceable by the parties and their respective successors and permitted assigns.

10.6    Currency. All dollar amounts herein are expressed in United States funds.

10.7    Governing Law. This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the Commonwealth of Massachusetts and all claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction within Massachusetts.

10.8    Notices. All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made if hand delivered, mailed first class mail, postage prepaid, sent by prepaid telegram (or telex or other facsimile transmission) or sent by express overnight courier service to the address listed above or to such other address as any such party may have designated by like notice forwarded to the other party hereto.

10.9    Loss of Rights. In the event that Riverdeep's rights to any Products expire or are terminated at any time, any rights granted to OEM under this Agreement with respect to such

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

Products shall be terminated as of such date and Riverdeep shall not be liable to OEM for any loss or liability in connection with said termination of rights.

10.10 <u>Press Releases</u>.  OEM shall not make any public announcement or issue any press release relating to this Agreement or the services to be provided in connection therewith without the prior written consent of Riverdeep.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

- 21 -

**EXHIBIT C**
**To OEM Agreement Dated March 28, 2002.**
**Acknowledgement of Delivery**

OEM:  LOGETICS, INC.

Agreement/Amendment Effective Date:

Agreement/Amendment Number:

OEM hereby acknowledges having received, on or before the Effective Date, (1) a reproducible master copy for each Product listed below and, (2) all other materials Riverdeep is obligated to deliver under the above-referenced Agreement/Amendment.

     Product(s):


LOGETICS, INC. (OEM)


By: _____

Title: _____

Date: _____

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund.  It is submitted to OEM for discussion purposes only.*

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 15

## Tom Holland

| | |
|---|---|
| **From:** | John Bartlett [JBartlett@riverdeep.net] |
| **Sent:** | Wednesday, May 19, 2004 1:11 PM |
| **To:** | Holland, Tom |
| **Subject:** | RE: deliverables |

I don't blame you.  We should have all deliverables by the end of week.  Did you confirm anything yet with Columbia House.  I looks like I will be in Novato Wed – Friday next week.  I am  finally having an Oem strategy session with Simon and Tony.

John

---

**From:** tomh@logetics.com [mailto:tomh@logetics.com]
**Sent:** Wednesday, May 19, 2004 12:36 PM
**To:** JBartlett@riverdeep.net
**Subject:** RE: deliverables

John,

I did not send back the agreement because of Exhibit C.  It is an acknowledgement of delivery of masters for each product as well as the other materials (i.e., artwork).

With the amount of turnover at Riverdeep and the experience with your CFO, I can not take the risk of saying that I have titles/artwork and then saying we didn't make our payment schedule because we didn't have the titles and artwork to generate revenue.

I hope you are ok with that position.  We are sending payment according to schedule.

Please let me know if we should discuss.

Thanks,
Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Tuesday, May 18, 2004 10:58 AM
**To:** Holland, Tom
**Subject:** RE: deliverables

Tom,

Did you send out the executable version of the contract back to Pansy?

John

---

**From:** tomh@logetics.com [mailto:tomh@logetics.com]
**Sent:** Tuesday, May 18, 2004 12:54 PM
**To:** JBartlett@riverdeep.net
**Subject:** RE: deliverables

John,

Thanks for coordinating the delivery of the items.

6/15/2005

Payment is scheduled for this week.

Are you in New York next week (Mon or Tues)?  I'm trying to schedule Columbia House.

Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Tuesday, May 18, 2004 9:49 AM
**To:** Holland, Tom
**Subject:** deliverables

Tom,

Pansy is on target to deliver all items this week.  Its around 120 products.  Also I just want to make sure the first payment is on schedule to be paid this week.

John

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 16

**Tom Holland**

| | |
|---|---|
| **From:** | John Bartlett [JBartlett@riverdeep.net] |
| **Sent:** | Wednesday, May 19, 2004 1:11 PM |
| **To:** | Holland, Tom |
| **Subject:** | RE: deliverables |

I don't blame you.  We should have all deliverables by the end of week.  Did you confirm anything yet with Columbia House.  I looks like I will be in Novato Wed – Friday next week.  I am  finally having an Oem strategy session with Simon and Tony.

John

---

**From:** tomh@logetics.com [mailto:tomh@logetics.com]
**Sent:** Wednesday, May 19, 2004 12:36 PM
**To:** JBartlett@riverdeep.net
**Subject:** RE: deliverables

John,

I did not send back the agreement because of Exhibit C.  It is an acknowledgement of delivery of masters for each product as well as the other materials (i.e., artwork).

With the amount of turnover at Riverdeep and the experience with your CFO, I can not take the risk of saying that I have titles/artwork and then saying we didn't make our payment schedule because we didn't have the titles and artwork to generate revenue.

I hope you are ok with that position.  We are sending payment according to schedule.

Please let me know if we should discuss.

Thanks,
Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Tuesday, May 18, 2004 10:58 AM
**To:** Holland, Tom
**Subject:** RE: deliverables

Tom,

Did you send out the executable version of the contract back to Pansy?

John

---

**From:** tomh@logetics.com [mailto:tomh@logetics.com]
**Sent:** Tuesday, May 18, 2004 12:54 PM
**To:** JBartlett@riverdeep.net
**Subject:** RE: deliverables

John,

Thanks for coordinating the delivery of the items.

6/15/2005

Payment is scheduled for this week.

Are you in New York next week (Mon or Tues)?  I'm trying to schedule Columbia House.

Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Tuesday, May 18, 2004 9:49 AM
**To:** Holland, Tom
**Subject:** deliverables

Tom,

Pansy is on target to deliver all items this week.  Its around 120 products.  Also I just want to make sure the first payment is on schedule to be paid this week.

John

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 17

## Tom Holland

**From:** Holland, Tom
**Sent:** Friday, August 20, 2004 9:24 AM
**To:** 'John Bartlett'
**Subject:** RE: Revenue Opportunity

John,

I just faxed the Q2 report.

I will also send the usage report for July.

Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Friday, August 20, 2004 8:01 AM
**To:** Holland, Tom
**Subject:** RE: Revenue Opportunity

Tom,

I will call you later today.  Can you refax the statement to 617-491-5855.  This is my new fax number.

Thanks,

John

---

**From:** tomh@logetics.com [mailto:tomh@logetics.com]
**Sent:** Thursday, August 19, 2004 1:43 PM
**To:** JBartlett@riverdeep.net
**Subject:** RE: Revenue Opportunity

John,

Hope you are having productive meeting during your travels.

Terri is putting together the title list and will forward to you.  I'm hoping this will be an avenue to bring in revenue to our respective companies.

Regarding the Q2 royalty statement, I faxed a copy to you on July 22 (fax 617-778-7601) and our Accounting Dept. sent a copy to the address where we send royalty payments.

I did tell your Finance contact (Taj?) that we needed to discuss payment with you.  Can you please give me a call when you get a chance to discuss this?

Thanks,
Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Monday, August 16, 2004 11:45 PM
**To:** John Bartlett; Holland, Tom
**Subject:** RE: Revenue Opportunity

Tom,

We discussed this today and everyone is on board.  I just need to give a list of products.  I am traveling this week - any chance Terri could come up with a list.  I told everyone we want to roll this out within a couple of weeks.

I also need to followup on your 8/15 payment.  Finance said there was an issue on this payment.  They also asked me to follow-up on the q2 royalty statement.

Thanks,


John

-----Original Message-----
From: John Bartlett
To: tomh@logetics.com
Sent: 8/11/2004 1:52 PM
Subject: RE: Revenue Opportunity

Tom,


This sounds interesting.  I will give you a call tomorrow to talk and catch up.


John


_____

From: tomh@logetics.com [mailto:tomh@logetics.com]
Sent: Wednesday, August 11, 2004 12:37 PM
To: JBartlett@riverdeep.net
Subject: Revenue Opportunity


John,


Hope you enjoyed your time off.  I'm assuming you are still "digging out" this week.

6/15/2005

Since, it does not appear that we are going to develop a software continuity club(s) for Riverdeep, another area that should provide immediate income is utilizing the Riverdeep opt-in email database. We could develop a generic (not Riverdeep branded) software eStore ($6.95 per title & FREE S&H) with products and offer to the database. Logetics would pay Riverdeep a $2.00 bounty for each title sold. In addition, we would not include titles that Riverdeep does not want marketed at the $6.95 price range.

I'd like to see how we can work together to get additional revenues for our respective companies.

Should we discuss?

Thanks,

Tom

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 18

**Tom Holland**

**From:**    John Bartlett [JBartlett@riverdeep.net]
**Sent:**    Wednesday, September 29, 2004 10:31 AM
**To:**       Tom Holland
**Subject:** check

Tom,

Would it be possible to send the check today for the September reconciliation that we spoke about yesterday.  I think you said the amount was going to be between $18K and $23K.  So if you could send a check for $20k today we could count it for our Q3 cash number which is what they are really trying to do.

I told Kirsten and Bill about this idea and they thought this makes sense.  Then next week our conversation can be about mapping out a payment forecast for Q2.  Then you will be completely current with your sell thru and any ability or desire to pay won't be an issue.

Thanks,

John

617-876-9806

Here is our new payment info:


For reference, the lockbox address is listed below.  Since this is a street address, payments can be sent here via overnight delivery.

> Fleet Bank
> Attn:  3rd Mailroom CTEH 44703X
> Riverdeep32706 Wholesale Lockbox
> 99 Founders Plaza
> East Hartford, CT  06108

To expedite the receipt of payments we have two overnight delivery services available for our customer's use:

> Airborne:  118825801
> Fedex: 2629-3108-0

6/15/2005

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 19

**Tom Holland**

| | |
|---|---|
| **From:** | Tom Holland |
| **Sent:** | Wednesday, October 27, 2004 1:53 PM |
| **To:** | 'John Bartlett' |
| **Subject:** | RE: Cash and royalty |

John,

I am comfortable with your request.

I will ask our Accounting Dept. to get actual numbers (through last Friday) and projections for this week. I should know by tomorrow.

The amount we sent last month ($20,000) was an estimate, the actual is app. $24,000. The check amount will be the Oct. estimate plus the $4,000. Does this make things messy for your accounting?

1.  We get no response from the Consumer Direct group regarding the email and in addition, we have discovered that they have entered into an agreement with Mentura. It seems very strange that since my meeting with Tony and Cindy that Broderbund has approached MyPoints and now Mentura. Can you help me understand what is going on? I was not happy with Broderbund when we were circumvented and Broderbund negotiated directly with Kestral.

Best wishes to Damian and hopefully the weather will cooperate for his wedding day tomorrow.

I plan to be on the East Coast at the end of November.

Safe travels and enjoy the wedding.

Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Wednesday, October 27, 2004 8:57 AM
**To:** Tom Holland
**Subject:** Cash and royalty

Hi Tom,

I would like to do what we did for September regarding the next payment. Can you estimate what you did for October and send a check next week. This is the process I worked out with Simon and Finance when I was out in SF last week and they seem comfortable with it. Can this work for you?

I am traveling back to SF for Damian's wedding tomorrow so I won't be back in the office until next Monday. I also will be in NY next week just in case you happen to be in that area.

Thanks,

John

6/15/2005

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 20

| | |
|---|---|
| **From:** | John Bartlett [JBartlett@riverdeep.net] |
| **Sent:** | Wednesday, October 27, 2004 5:18 PM |
| **To:** | Tom Holland |
| **Subject:** | RE: Cash and royalty |

Tom,

This will work fine. Accounting is also ok with this.

The email caimpaign is on hold because we are having payment issues with our vendor. I was told today that we expect to get current with them in the next week or so. They have stopped all of our email marketing until this is fixed. I cant believe we let it get to that point but not surprised.

I talked to Mike stanton in DTC about Mentura. I was told that the deal he is doing is a "traffic Deal". Riverdeep will be putting an icon on our website and get paid for any new rental customers they acquire. I was told it did not include any content licensing. Is this what you heard? anything DTC is doing should only be traffic related not content licensing as this is my camp.

Maybe we can connect when you are in NY at the end of Nov. I will call you when I return next week.

John
-----Original Message-----
From: Tom Holland
To: John Bartlett
Sent: 10/27/2004 1:52 PM
Subject: RE: Cash and royalty

John,


I am comfortable with your request.


I will ask our Accounting Dept. to get actual numbers (through last Friday) and projections for this week. I should know by tomorrow.


The amount we sent last month ($20,000) was an estimate, the actual is app. $24,000. The check amount will be the Oct. estimate plus the $4,000. Does this make things messy for your accounting?


1.    We get no response from the Consumer Direct group regarding the email and in addition, we have discovered that they have entered into an agreement with Mentura. It seems very strange that since my meeting with Tony and Cindy that Broderbund has approached MyPoints and now Mentura. Can you help me understand what is going on? I was not happy with Broderbund when we were circumvented and Broderbund negotiated directly with Kestral.


Best wishes to Damian and hopefully the weather will cooperate for his wedding day tomorrow.

I plan to be on the East Coast at the end of November.


Safe travels and enjoy the wedding.


Tom

_____

From: John Bartlett [mailto:JBartlett@riverdeep.net]
Sent: Wednesday, October 27, 2004 8:57 AM
To: Tom Holland
Subject: Cash and royalty


Hi Tom,


I would like to do what we did for September regarding the next payment.
Can you estimate what you did for October and send a check next week.
This is the process I worked out with Simon and Finance when I was out in SF last week and
they seem comfortable with it. Can this work for you?


I am traveling back to SF for Damian's wedding tomorrow so I won't be back in the office
until next Monday.  I also will be in NY next week just in case you happen to be in that
area.


Thanks,


John


2

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 21

**Tom Holland**

| | |
|---|---|
| **From:** | John Bartlett [JBartlett@riverdeep.net] |
| **Sent:** | Tuesday, November 09, 2004 10:10 AM |
| **To:** | Tom Holland |
| **Subject:** | cash |

Hi Tom,

Simon is back from Dublin today and is banging his cash drum. We went through our cash call this am and when it came to Loegtics I went over the fact that we are working on a runrate basis but expect a pickup fort the last two months. The bottom line is he wants me to collect more money. Here is what he has told me to communicate. I will call you after you had a chance to look this over.

Thanks,

John

O payment of $42K by 11/19
O payment of $70k by 11/30
O balance at end of December

6/15/2005

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 22

**Tom Holland**

| | |
|---|---|
| **From:** | Tom Holland |
| **Sent:** | Tuesday, November 09, 2004 10:27 AM |
| **To:** | 'John Bartlett' |
| **Subject:** | RE: cash |

John,

I look forward to talking with you but feel at this point that I need to involve Legal after we speak.  I feel that Simon has now forced us to challenge Riverdeep's non- performance in this relationship.

This agreement was made based on the fact that top selling titles would be available to market through our channels.  We have not been granted permission to market titles such as American Greetings, Weight Watchers, Scholastic, Arthur, Dr. Seuss, PBS titles, etc.  These titles (based on our history of selling these titles) made up 80% of the revenue.

In addition, we attempted to produce additional revenue to Riverdeep using your titles and titles that we have rights to market to your "DTC" database.  This was approved and stalled by Riverdeep for over three months now.

John, if Simon does not want to take responsibility for those actions resulting in Riverdeep's non-performance of our Agreement and agree to work on a runrate basis, we will need to seek Legal advice and look for another software publisher partner.

Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Tuesday, November 09, 2004 10:10 AM
**To:** Tom Holland
**Subject:** cash

Hi Tom,

Simon is back from Dublin today and is banging his cash drum.  We went through our cash call this am and when it came to Loegtics I went over the fact that we are working on a runrate basis but expect a pickup fort the last two months.  The bottom line is he wants me to collect more money.  Here is what he has told me to communicate.  I will call you after you had a chance to look this over.

Thanks,

John

O payment of $42K by 11/19
O payment of $70k by 11/30
O balance at end of December

6/15/2005

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 23

**Tom Holland**

| | |
|---|---|
| **From:** | John Bartlett [JBartlett@riverdeep.net] |
| **Sent:** | Friday, November 12, 2004 10:21 AM |
| **To:** | Tom Holland |
| **Subject:** | RE: cash |

Tom,

Simon said he will agree with the proposal below. I spoke with Kirsten our attorney this am and she will not be sending out a breach letter. So I will let finance know that we will be receiving an estimated payment early next week and we would do the same for the months going forward.

You can send the check to the lockbox address you used last time.

Thanks,

John

---

**From:** Tom Holland [mailto:TomH@logetics.com]
**Sent:** Thursday, November 11, 2004 1:14 PM
**To:** John Bartlett
**Subject:** FW: cash

John,

I've thought about our conversation last evening and based on my understanding of Riverdeep's financial difficulties, Logetics would propose the following:

Logetics would continue to work as we agreed in Sept and Oct in estimating our actual royalty usage however, to assist in Riverdeep's cash flow issues, we would make an estimated payment for November's royalties on Nov. 15 (middle of month vs. end of month as we have done for Sept. and Oct.). With this payment, we would also be able to reconcile the month of October. We would also extend this concept until we agree on putting another solution in place.

We are not in a financial position to provide advance payments to Riverdeep for royalties not earned, especially in light of the fact that Riverdeep has not performed by delivering content from Publishers as promised.

Please let me know if this is an acceptable avenue to pursue before investing dollars in outside Legal fees. I hope that you will agree that a business solution is the better choice in resolving an issue.

Thanks,
Tom

---

**From:** Tom Holland
**Sent:** Tuesday, November 09, 2004 10:27 AM
**To:** 'John Bartlett'
**Subject:** RE: cash

John,

I look forward to talking with you but feel at this point that I need to involve Legal after we speak. I feel that Simon has now forced us to challenge Riverdeep's non- performance in this relationship.

6/15/2005

This agreement was made based on the fact that top selling titles would be available to market through our channels. We have not been granted permission to market titles such as American Greetings, Weight Watchers, Scholastic, Arthur, Dr. Seuss, PBS titles, etc. These titles (based on our history of selling these titles) made up 80% of the revenue.

In addition, we attempted to produce additional revenue to Riverdeep using your titles and titles that we have rights to market to your "DTC" database. This was approved and stalled by Riverdeep for over three months now.

John, if Simon does not want to take responsibility for those actions resulting in Riverdeep's non-performance of our Agreement and agree to work on a runrate basis, we will need to seek Legal advice and look for another software publisher partner.

Tom

---

**From:** John Bartlett [mailto:JBartlett@riverdeep.net]
**Sent:** Tuesday, November 09, 2004 10:10 AM
**To:** Tom Holland
**Subject:** cash

Hi Tom,

Simon is back from Dublin today and is banging his cash drum. We went through our cash call this am and when it came to Loegtics I went over the fact that we are working on a runrate basis but expect a pickup fort the last two months. The bottom line is he wahts me to collect more money. Here is what he has told me to communicate. I will call you after you had a chance to look this over.

Thanks,

John

O payment of $42K by 11/19
O payment of $70k by 11/30
O balance at end of December

Riverdeep, A Limited Liability Company v. SOMC Group, Inc., et al.
U. S. District Court, D. Mass., Civil Action No. 05-10816-REK

# Holland Affidavit
# Exhibit 24

**Tom Holland**

| | |
|---|---|
| **From:** | John Bartlett [JBartlett@riverdeep.net] |
| **Sent:** | Monday, December 13, 2004 9:32 AM |
| **To:** | Tom Holland |
| **Subject:** | payment this month |

Hi Tom,

Thanks for having the royalty statements sent into my finance group. We have a new royalty manager that is piecing together a lot of missed reports from all of our licensors and he appreciated the quick turnaround. Also I wanted to check in with what you thought the payment would be for this month and when we would receive it. I think it worked well last month and would like to do this again for December.

I am hopeful to get back on track to a once a quarter check next quarter.

John