UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIVERDEEP INC., A LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>SOMC GROUP, INC., a California corporation; LOGETICS, INC., a California corporation; SAN DIEGO WHOLSEALE CREDIT ASSOCIATION d/b/a SAN DIEGO CREDIT ASSOCIATION, a California corporation; READY, SET, GROW!, a California corporation; JELLY BEAN ISLANDS, a California corporation; and LEAP AHEAD, a California corporation, THOMAS E. HOLLAND,<br><br>Defendants. | Civil Action No. 05-10816 REK<br><br><br>**OPPOSITION TO SAN DIEGO WHOLE CREDIT ASSOCIATION'S MOTION TO DISMISS** |

## INTRODUCTION

As alleged in the Amended Complaint ("Amd. Cmplt.") with particularity, defendant San

Diego Wholesale Credit Association ("SDWCA") was the conduit for a transaction that violated

express contractual protections and copyrights of plaintiff Riverdeep, Inc. ("Riverdeep") and was

designed to defraud Riverdeep and other creditors of defendant SOMC Group, Inc. ("SOMC").

In short, all on the same day SOMC assigned all of its assets to SDWCA, including Riverdeep

software licenses and 425,000 CDs containing copyrighted computer software, and then

SDWCA sold those same assets for a fraction of their worth to defendant Logetics, Inc., an

SOMC affiliate.  SDWCA does not dispute that it was in the middle of this transaction, which

violated Riverdeep's software license agreement with SOMC, nor that the software license

agreement contains a venue selection clause giving this Court jurisdiction over the very disputes asserted in the Amended Complaint against SDWCA.

Nevertheless, SDWCA moves to dismiss (or transfer venue) as to the claims against it without disputing that the Court has jurisdiction to hear identical claims against its contractual partners SOMC and Logetics. Evidently, SDWCA believes that there should be two almost identical Federal court actions: (1) before this Court involving Riverdeep against Logetics, SOMC, and Holland; and (2) before the Southern District of California on the same allegations involving Riverdeep against SDWCA as to which SDWCA will surely implead SOMC as assignor and Logetics as indemnitor. Nonsense. As alleged in the Amended Complaint, SDWCA was the willing assignee of the license agreement at issue, which expressly adopts Massachusetts for venue, and there is no basis to split the contractual and copyright claims to be decided herein. Moreover, the balance of SDWCA's motion to dismiss is based on far-fetched theories that require the Court to ignore well-pled allegations, accept SDWCA's version of the facts and make new law.[1]

## BACKGROUND

Riverdeep and SOMC entered into an OEM License Agreement ("2002 Agreement") on March 28, 2002. Amd. Cmplt. ¶ 1. In the 2002 Agreement, Riverdeep permitted SOMC limited rights to manufacture and distribute many of Riverdeep's popular educational software titles as club products. Id. ¶¶ 1, 18. The 2002 Agreement included a mandatory forum selection clause providing that all "claims and/or lawsuits in connection with this Agreement must be brought in

---

[1]    SDWCA repeatedly argues facts in support of its motion to dismiss that either contradict the Amended Complaint's allegations or introduce facts outside those allegations. For the Court's reference Riverdeep attaches hereto as Addendum A a side-by-side table of SDWCA's improperly argued facts and what is actually alleged in the Amended Complaint on the same subjects.

a court of competent jurisdiction in Massachusetts." <u>Id.</u> ¶ 17; Schwartz Aff. ¶ 4, Tab 1, Exh. B, ¶ 10.7.[2]

The 2002 Agreement expired on March 1, 2004. Amd. Cmplt. ¶ 3. On February 24, 2004, in an attempt to avoid its obligations to Riverdeep, SOMC assigned all of its assets, including Riverdeep software and the 2002 Agreement, to SDWCA for one dollar. <u>Id.</u> ¶¶ 5, 28-32. On the very same day, SDWCA sold those same assets back to SOMC's affiliate, Logetics, for a fraction of their worth. <u>Id.</u> Tom Holland, president of both SOMC and Logetics, signed the assignment on behalf of SOMC and signed the purchase and sale documents on behalf Logetics. <u>Id.</u> ¶¶ 28-29, 32. SOMC owed Riverdeep in excess of $1.1 million at the time of the assignment. <u>Id.</u> ¶ 3.

Not only did SDWCA sell the SOMC assets for a fraction of their worth, but it did so without reasonably marketing, advertising, or otherwise exposing SOMC's assets to the market. Amd. Cmplt. ¶ 33. Further, SDWCA sent notice of the assignment to the wrong address and Riverdeep did not learn about the assignment until July 2004. <u>Id.</u> ¶ 37.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER SDWCA

The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant. <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 51 (1st Cir. 2002) (allegations accepted "as true (whether or not disputed) and constru[ed] them in the light most congenial to [Daynard's] jurisdictional claim"). A court deciding a Rule 12(b)(2)

---

[2]      Riverdeep agrees with SDWCA that this Court may consider documents referenced in the Amended Complaint. <u>Shaw v. Digital Equip. Corp.</u>, 82 F.3d 1194, 1220 (1st Cir. 1996). Submitted herewith is a transmittal affidavit of Irwin B. Schwartz ("Schwartz Aff.") by which Riverdeep respectfully provides the Court with true and correct copies of relevant excerpts from the documents referenced in the Amended Complaint.

motion to dismiss for lack of personal jurisdiction should take the allegations as true, even if disputed, and construe the alleged facts in the light most favorable to the plaintiff's jurisdictional claim. Id. Allegations establishing that the parties agreed in advance to consent to personal jurisdiction of a given court through a forum selection clause are sufficient to meet plaintiff's burden in this regard. See Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 314-15 (1964) ("it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court"); Home Prods. Int'l – N. America, Inc. v. Peoplesoft USA, Inc., 201 F.R.D. 42, 46 (D. Mass. 2001) (a forum selection clause is "an affirmative conferral of personal jurisdiction by consent."). In short, courts enforce mandatory forum selection clauses unless "enforcement would be unreasonable and unjust, or the clause is invalid for such reasons as fraud or overreaching." Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 388-389 (1st Cir. 2001) (upholding dismissal based on forum selection clause).[3] As set forth below, Riverdeep alleged that SDWCA is a party to the Massachusetts forum selection clause as SOMC's assignee and this Court should enforce that term.

A.    **SDWCA's Consent Is Imputed By Its Acceptance Of The License Agreement**

Where a contract is assigned, the assignee assumes the obligations under the contract. Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 8 (1st Cir. 2002) (assignee assumes obligations under contract to support prima facie showing of jurisdiction); Chatham Pharm., Inc. v. Angier Chem. Co., 196 N.E.2d 852, 854 (Mass. 1964) (where contract is assigned there is no separation between burdens and benefits). Accordingly, courts routinely reject assignees' attempts to avoid jurisdiction in the face of forum selection clauses that grant personal

---

[3]    Moreover, it is settled law that a valid forum selection clause satisfies due process. Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) (forum selection clause may waive right to object to

jurisdiction. <u>Curran Co. v. Imedco GmbH</u>, 1992 WL 370237, at *3 (N.D.Ill. Dec. 3, 1992)

(assignee accepted jurisdiction under agreement's forum selection clause); <u>Nat'l Union Fire Ins.</u>

<u>Co. of Pittsburg v. Nettle</u>, 1989 WL 39673, at *4 (S.D.N.Y. Apr. 17, 1989) (forum selection

clause in note binding on assignee); <u>Weiner King Sys., Inc. v. Brooks</u>, 628 F. Supp. 843, 848-49

(W.D.N.C. 1986) (assignee can rely on contract of assignor to establish North Carolina

jurisdiction).[4]

    Here, the 2002 Agreement was a license that governed the use of, sale, and distribution of

Riverdeep's software. Amd. Cmplt. ¶¶ 18-21. Riverdeep alleged that SOMC assigned its

interests in all of its assets, including the 2002 Agreement, to SDWCA for one dollar. Amd.

Cmplt. ¶ 28. The 2002 Agreement provides that it will be governed by the laws of

Massachusetts and mandates that "all claims and/or lawsuits in connection with this Agreement

<u>must</u> be brought in a court of competent jurisdiction within Massachusetts." Schwartz Aff. ¶ 4,

Tab 1, Exh. B, ¶ 10.7 (emphasis added); <u>see also Silva</u>, 239 F.3d at 389 ("The word 'must'

expresses the parties' intention to make the courts of [the forum state] the exclusive forum for

disputes arising under the contract.").

    SDWCA cites <u>Peterson v. Ball</u>, 211 Cal. 461 (1931) to quibble with whether SDWCA

can as a matter of law be the assignee of the 2002 Agreement. Memorandum in Support of

Defendant SDWCA's Motion to Dismiss Amended Complaint ("Memo") at 12. But SDWCA

does not dispute that it was assigned all of SOMC's assets (Memo at 2) and the <u>Peterson</u> court

---

venice citing <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 473 n.14 (1985)).
[4]    Conversely, courts will enforce forum selection clauses against assignees that file in jurisdictions other than
what is provided in those clauses. <u>GMAC Commercial Credit, L.L.C. v. Dillard Dept. Store</u>, 198 F.R.D. 402, 407
(S.D.N.Y 2001) (entering dismissal where assignee stands in shoes of assignor and takes contract subject to
liabilities, including forum selection clauses); <u>Graham Tech. Solutions, Inc. v. Thinking Pictures Inc.</u>, 949 F. Supp.
1427, 1433-34 (N.D. Cal. 1997) (transferring venue where assignee subject to forum selection clause between
assignor and alleged copyright infringer).

held only that a statutory penalty is not assignable by a corporation and, thus, was not included in the assignment for the benefit of the creditors. Peterson, 211 Cal. at 480. Peterson did not discuss any contractual requirement that a party obtain consent prior to assignment and, contrary to SDWCA's argument, breach of "a contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, gives the obligor a right to damages for breach of the terms of the forbidding assignment, but does not render the assignment ineffective." RESTATEMENT (SECOND) OF CONTRACTS, § 322 (1981) (cited with approval in Davidowitz v. Delta Dental Plan of Calif., Inc., 946 F.2d 1476, 1478 (9th Cir. 1991)).

Here, nothing in the 2002 Agreement explicitly provides that unilateral assignment by SOMC invalidates the assignment, but rather the 2002 Agreement gives Riverdeep the option to terminate the contract in the event of an assignment for the benefit of the creditors. Schwartz Aff. ¶ 1, Tab 1, Exh., B, ¶ 6.1(c). Nor is there anything in the General Assignment document that precludes the assignment of the 2002 License Agreement. To the contrary, it includes "all of the property of the assignor of every kind and nature" and excludes only choses in action that are not legally assignable. Schwartz Aff. ¶ 5, Tab 2.[5] Accordingly, this Court has jurisdiction to hear any claim against SDWCA in connection with the 2002 Agreement. Graham, 949 F. Supp. at 1433-34. Further, the valid forum selection clause satisfies SDWCA's due process rights. Dominium, 248 F.3d at 726.[6]

---

[5]     The 2002 Agreement is not a "chose in action", which is "a right to recover money or other personal property by a judicial proceeding." Baum v. Duckor, Spradling, & Metzger, 72 Cal. App. 4th, 54, 64 (1999) (citing CAL. CIVIL CODE § 953).

[6]     Nor can SDWCA rely upon Corcovado Music Corp. v. Hollis Music, Inc. et. al., 981 F.2d 679 (2nd Cir. 1992) to escape the forum selection clause just because SDWCA did not sign the 2002 License Agreement. (Memo at 13-14). Corcovado is of limited value because that case did not discuss the scope of the forum selection clause language. John Wyeth & Bro. Ltd. v. Cigna Int'l Corp., 119 F.3d 1070, 1076 (3rd Cir. 1997) (distinguishing Corcovado because it contains no analysis of venue selection clause with language comparable to "arising . . . in relation to"). Indeed, the 2002 Agreement mandates that "all claims and/or lawsuits in connection with this

**B.    The Copyright Claim Against SDWCA Arises From The 2002 Agreement**

Courts hold "uniformly . . . that regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action[.]" In re N. Parent, 221 B.R. 609, 623 (Bankr. D. Mass. 1998) (Boroff, J.) (granting motion to transfer to N.D. Ill. because, even where debtor does not seek to "enforce" agreement, debtor's claims arise directly from contractual relationship and are therefore subject to forum selection clause); Lambert v. Kysar, 983 F.2d 1110, 1121 (1st Cir. 1993) (contract related claims covered by forum selection clause).

Nevertheless, SDWCA relies on Cheever v. Academy Chicago Ltd., 685 F. Supp. 914 (S.D.N.Y. 1988) for the proposition Riverdeep's copyright claims are not made in connection with the 2002 Agreement and thus the forum selection clause is inapplicable. (Memo at 13-14). In Cheever, however, the question was whether a forum selection clause prevented plaintiff from bringing claims unrelated to the contract containing the forum selection clause in a jurisdiction other than what was designated in the forum selection clause.[7] 685 F. Supp. at 917. That analysis is inapposite to here where Riverdeep's claims against SDWCA assert that the 2002 Agreement is the source of SDWCA's obligations and of Riverdeep's copyrights, which are the basis of this action. Amd. Cmplt. ¶¶ 53-54, 62-63.

The reasoning in Direct Mail Prod. Serv. Ltd. v. MBNA Corp., 2000 WL 1277597 (S.D.N.Y. 2000) is compelling for this case. There, defendants moved to dismiss on lack of jurisdiction based on a forum selection clause requiring disputes to be brought in England. 2000

---

Agreement" must be brought in Massachusetts. Graham, 949 F. Supp. at 1433-34 (where assignee is violating copyrights that are subject of contract, assignee is bound by forum selection clause in contract).

[7]    Cheever acknowledges that tort claims arising out of, or because of, the publishing agreement are controlled by the forum selection clause. 685 F. Supp. at 917 n.2.

7

WL 1277597 at *2. Judge Stein granted the motion to dismiss, holding that both parties were bound by the contract (even though only one party was a signatory) and the forum selection clause encompassed the copyright claim. Id. at *5-6. The court reasoned that the action should be brought in England especially since the plaintiff referred to the agreement repeatedly as the predicate to its claims and the agreement was essentially a license agreement, so the claims sounded in contract as much as copyright thereby making the forum selection clause effective. Id. at *6 n.2.

Like the Direct Mail case, Riverdeep's claim against SDWCA concerns enforcement of the 2002 Agreement and arises directly "in connection" with the rights enumerated under the 2002 Agreement, the analysis of the copyright infringement claim will necessarily require reference to the rights and duties defined in the 2002 Agreement. Amd. Cmplt. ¶¶ 18-34. As such, SDWCA cannot avoid this Court's jurisdiction by arguing that the forum selection clause does not apply because the copyright and pendent jurisdiction claims are not "in connection with" the 2002 Agreement.[8]

## II.    NONE OF THE CLAIMS AGAINST SDWCA SHOULD BE DISMISSED

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must assume the truth of all of Riverdeep's well-pleaded facts and indulge all reasonable inferences therefrom. Rossiter v. Potter, 357 F.3d 26, 27 (1st Cir. 1994) (reversing district court's dismissal). As such, this Court may dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (reversing district court's dismissal). As set forth below,

SDWCA has failed to meet its burden to dismiss any of the Amended Complaint's claims.

###    A.    Riverdeep Properly Alleged A Copyright Claim

In order to state a copyright infringement claim, a plaintiff need only allege: (1) ownership of a valid copyright; and (2) that SDWCA distributed or sold the copyrighted materials without authorization. Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62 (1st Cir. 2002) ("[I]f [Defendant] distributed copies of Ortiz-Gonzalez's copyrighted work, the act of distribution is a direct infringement"). Riverdeep alleged that: (1) it holds valid copyrights to the software in question; and (2) SDWCA sold SOMC's assets that included Riverdeep software to Logetics without authorization. Amd. Cmplt. ¶¶ 5, 16, 28-29.

###    1.    SDWCA Cannot Avoid Liability By Claiming Sale
###    Of The CDs But Not The Software Contained Thereon

SDWCA argues that when it sold Logetics the Riverdeep software acquired from SOMC, SDWCA was selling the CDs, but not the Riverdeep intellectual property contained therein and thus did not violate Riverdeep's copyrights. (Memo at 15-17). Nonsense. First, Riverdeep directly alleged in Amended Complaint ¶¶ 5, 28, and 29 that SDWCA sold CDs including Riverdeep's software and for the purposes of deciding this motion, the Court should accept this allegation as true. Rossiter, 357 F.3d at 27. Moreover, SDWCA cites absolutely no authority in support of its argument that a party can avoid copyright infringement by claiming it was selling the medium, but not the message.[9] As a result, this Court should reject SDWCA's argument

---

[8]    As SDWCA admits, the 2002 Agreement was effective at the time of the General Assignment and the clause expressly survives expiration. Schwartz Aff. ¶ 4, Tab 1, Exh. B, ¶¶ 6.4, 10.7.

[9]    In other words, SDWCA contends that it could sell copyrighted books with impunity by claiming that it agreed to sell only the paper in the book, but not the copyrighted words contained therein, or it could sell copyrighted videotapes for the tape, but not the movies contained therein. If the Court accepts this argument, it will eviscerate the copyright statute by permitting the copyright pirate and its customer to avoid liability just by agreeing among themselves that they were selling the medium and not the message.

(which is based on facts in direct contradiction to Riverdeep's allegations) that the copyright claim should be dismissed because SDWCA sold Logetics the raw CDs and not the Riverdeep information contained therein.

### 2.    The First Sale Doctrine Does Not Apply

Nor can SDWCA obtain cover from the first sale doctrine (Memo at 17-18), which provides that, "where the owner of a copyrighted work transfers ownership of a copy of that work the person to whom the copy is transferred is entitled to dispose of it by sale or any other means." MapInfo Corp. v. Spatial Re-engineering Consultants, 2004 WL 26350, *3 (N.D.N.Y) (rejecting motion to dismiss based on first sale doctrine where distribution was made pursuant to license). The doctrine only applies to subsequent sales if the original transfer was authorized. Microsoft Corp. v. Harmony Computers & Elecs., Inc., 846 F. Supp. 208, 212 (E.D.N.Y. 1994) (defendant has burden of demonstrating permission to sell copyrighted material flows from copyright holder). Moreover, the first sale doctrine does not apply to license agreements because "entering a license agreement is not a 'sale' for purposes of the first sale doctrine." MapInfo, 2004 WL 26350, *3; Microsoft, 846 F. Supp. at 214.

Here, according to the Amended Complaint, SOMC's right to distribute Riverdeep software was pursuant to a license agreement and thus there was no "first sale." Amd. Cmplt. ¶ 1. Moreover, Riverdeep alleged that SOMC was prohibited from assigning Riverdeep license rights to anyone, including SDWCA. Id. ¶¶ 5 ("SOMC was specifically prohibited from assigning Riverdeep license rights to anyone "), 36 ("SOMC may not assign any rights absent Riverdeep's prior written consent, which was never sought or obtained for the purported SOMC to SDWCA assignment"). Assuming Riverdeep's allegations are true, "the Court cannot

conclude that [SOMC's] acts were authorized so as to trigger the first sale doctrine." Too, Inc. v. Kohl's Dept. Stores, Inc., 2002 WL 31409852, *3 (S.D. Ohio, Sept. 4, 2002) (alleged infringer bears burden of tracing title to prove first sale doctrine applies).

### B.    Riverdeep Properly Alleged A Fraudulent Conveyance Claim

"A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." Kirkeby v. Superior Court, 33 Cal.4th 642, 648 (2004). "The creditor may recover judgment for the value of the asset transferred . . . against the . . . first transferee of the asset or the person for whose benefit the transfer was made." CAL. CIVIL CODE § 3439.07.

Here, SDWCA was the first transferee of the assets in a two-part transaction. Amd. Cmplt. ¶¶ 28-30. Indeed, the Amended Complaint alleges that SOMC assigned all of its assets to SDWCA for one dollar, the same day SDWCA sold those same assets for a fraction of their worth to Logetics, a company with the same principals as SOMC. Id. ¶¶ 31-36. As a result, SOMC has no assets with which to repay its debts. Id. ¶¶ 72-75. That squarely alleges fraudulent conveyance. Kirkeby, 33 Cal.4th at 648.

SDWCA's contention that this highly suspicious transaction was immunized under the guise of an assignment for the benefit of the creditors does not overcome these allegations. SDWCA cites no case law on point in California or elsewhere immunizing its transaction because the debtor and its assignee agreed that the fraudulent transaction was to be part of a claimed assignment for the benefit of the creditors.[10]  The "assignment for the benefit of

---

[10]    SDWCA's reliance on CAL. CIVIL CODE § 3940.1 is misplaced. That chapter deals exclusively with voiding transfers in which personal property is conveyed without delivery. Historically, other jurisdictions recognize that an assignment for the benefit of creditors can be the basis of a fraudulent conveyance claim. See e.g. Loos v. Wilkinson, 18 N.E. 99, 101 (N.Y. 1888) ("When there is fraud in an assignment it may be assailed by

creditors" label does not shield from judicial scrutiny whatever injustice two parties agree to
impose of creditors for one of them.

Nor can SDWCA successfully argue on a motion to dismiss (relying on Lacy v. Gunn,
144 Cal. 511, 516 (1904)) that Riverdeep is estopped from alleging a fraudulent conveyance
claim because Riverdeep submitted a non-judicial claim with SDWCA. (Memo at 22-23). In
the First Circuit, district courts will only adjudicate such an affirmative defense on a motion to
dismiss where: (1) the facts establishing the defense are found in the allegations of the
complaint, matters of public record, or matters of which the court can take judicial notice; and
(2) the facts conclusively establish the affirmative defense. Greene v. Rhode Island, 398 F.3d
45, 49 (1st Cir. 2005).[11]

Here, SDWCA's argument relies on unsupported facts outside the Amended Complaint.
See Addendum A, No. 8. O'Brien v. DiGrazia, 544 F.2d 543, 545 (1st Cir. 1976) (improper to
consider facts outside complaint in motion to dismiss, but upholding dismissal on other
grounds). Indeed, there are no allegations in the Amended Complaint that Riverdeep submitted
a claim in the assignment proceedings and thus there is nothing upon which SDWCA can base
its Lacy argument.[12]

---

creditors and set aside as fraudulent."); Isaacson v. Davis, 143 A. 788, 791 (Me. 1928) (evidence of fraud before or
after assignment considered when determining if the assignment itself was fraudulent).
[11]     Likewise, SDWCA disingenuously argues that Riverdeep failed to allege it sustained any damages. (Memo
at 23). See Addendum A, Nos. 9-15. But Riverdeep properly alleges damages from the fraudulent conveyance in
Amended Complaint paragraph 80 and in subparagraphs (c) and (d) of the prayer for damages. Further, Riverdeep
alleges injunctive relief pursuant to CAL. CIVIL CODE § 3439.07. Amd. Cmplt. subparagraph (c) of the prayer for
damages.
[12]     SDWCA's laches argument is equally improper. Laches is an affirmative defense, for which SDWCA
carries the burden of proof to show that Riverdeep's delay in bringing the suit was unreasonable and resulted in
prejudice. Cobb v. Prokop, 557 F. Supp. 391, 397 (D. Mass. 1983) ("a finding of laches depends on careful
attention to the particular facts and historical nuances of each case"). What constitutes laches, therefore, is a fact
intensive inquiry. Id. As such, laches should not be decided on a motion to dismiss. Conlon v. Sawin, 651 N.E.2d
1234, 1235 (Mass. 1995) (overruling dismissal granted on the basis of laches).

**C.    Riverdeep Properly Alleged Breach Of Fiduciary Duty**

A claim for breach of fiduciary duty requires allegations of (1) the existence of a fiduciary relationship, (2) a breach, and (3) damage proximately caused by that breach. <u>Pierce v. Lyman</u>, 1 Cal.App.4th 1093, 1101 (1991) (explaining that beneficiaries of trust may sue trustee to recover profits or recoup losses resulting from trustee's breach); <u>see also</u> <u>In re Consol. Pioneer Mortgage Entities v. United States Trustee</u>, 264 F.3d 803, 808 (9th Cir. 2001) (liquidating corporation "had a fiduciary duty to investors, for whose benefit [it] was created "because a liquidating company " is like an assignee for the benefit of creditors.").

Here, Riverdeep alleged that SDWCA is a fiduciary of SOMC's creditors, including Riverdeep. Amd. Cmplt. ¶ 104. Riverdeep further alleged that SDWCA breached its fiduciary obligations to Riverdeep when it, among other things:  (1) knew or should have known that the assignment for the benefit of creditors was a fraudulent insider transaction; (2) transferred Riverdeep software in violation of the 2002 Agreement; (3) sold SOMC's assets including the 425,000 CDs and associated marketing and packaging materials for a fraction of their worth; (4) failed to maximize the SOMC estate by not opening the sale of SOMC's assets to the public or otherwise exposing them to the market; (5) violated Riverdeep's copyright by selling Riverdeep software to Logetics without a valid license; and (6) failed to give Riverdeep notice of the assignment in a timely manner. <u>Id.</u> ¶ 105. Finally, Riverdeep alleges damages resulting from SDWCA's breaches. <u>Id.</u> ¶ 106 and prayer for damages subparagraph (c).

Nevertheless, without citation to legal authority and based on facts outside the Amended Complaint SDWCA claims that it has not breached its fiduciary duties. Memo at 25-30; <u>see</u> Addendum A, No. 8. For instance, SDWCA argues that its fiduciary duties did not arise until

13

after the fraudulent transaction and that Riverdeep is estopped from this claim by Riverdeep's submission of a proof of claim.[13]   First, it is nonsensical to suggest that an assignee for the benefit of creditors does not breach its fiduciary duty when it acts as a middleman in the transfer of a debtor's assets to a debtor affiliate to permit the debtor to avoid its obligations to a major creditor.   Second, as explained above, SDWCA's estoppel argument improperly relies on facts outside the Amended Complaint.   Nor does SDWCA's red herring argument as to the validity of its pre-arranged sale carry the day.   While pre-arranged sales may not be invalid per se, Riverdeep alleges not only that SDWCA failed to hold a public auction, but that it also failed to expose those assets to the market, that the assets were sold for a fraction of their worth, and were sold to an insider.   Amd. Cmplt. ¶¶ 5, 29-36, 103-106.

    In short, Riverdeep has properly alleged the elements for breach of fiduciary duty against SDWCA and SDWCA has cited no law to the contrary.

### D.    Riverdeep Has Properly Asserted A Claim For Declaratory Judgment

    To meet the standards of the Declaratory Judgment Act there must be a live and acute controversy.   Maryland Cas.Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (finding an actual controversy).   "Basically, the question in each case is whether there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."   Id.   SDWCA argues there is no controversy because the 2002 Agreement expired five days after the assignment. (Memo at 30-31).   This argument is meritless because:  (1) at the time of the 2002 Agreement's assignment it

---

[13]     SDWCA regurgitates other arguments in support of dismissing Riverdeep's fiduciary duty claims, many of which Riverdeep has already addressed.

14

was in full effect (Amd. Cmplt. ¶¶ 27-28); and (2) the 2002 Agreement's prohibition against assignments survives the expiration. Schwartz Aff. ¶ 4, Tab 1, Exh. B, ¶¶ 6.4 and 10.[14]

## III.    MASSACHUSETTS IS THE APPROPRIATE FORUM FOR THIS ACTION

Venue in copyright actions is properly set in the district in which the defendant resides or may be found.  28 U.S.C. § 1400(a).  "A defendant may be found in any jurisdiction in which personal jurisdiction may be asserted over them."  Crosfield Hastech, Inc. v. Harris Corp., 672 F. Supp. 580, 588 (D.N.H. 1987) (quotations omitted).  SDWCA argues, however, that Riverdeep cannot establish venue for every claim.  (Memo at 10).  As explained by Judge Devine in Crosfield, it does not matter that venue is proper against SDWCA for every claim because, if there is venue for a copyright claim, there is venue for all claims asserted.  672 F. Supp. at 588 n.4 ("If venue is proper under section 1400(a) with respect to copyright claims, then in the interest of conserving judicial resources all claims may be tried in this district, even those claims as to which venue would have been improper if unaccompanied by a copyright infringement claim").

Nor does SDWCA provide this Court with proper grounds under 28 U.S.C. § 1404(a) to transfer the case to San Diego.  "The factors listed in § 1404(a), the convenience to parties, witnesses, and the interest of justice, must also be considered in determining the appropriate venue."  Home Products, 201 F.R.D. at 45; see also McEvily v. Sunbeam-Oster Co., 878 F.Supp. 337, 344 (D.R.I. 1994) ("Parties must state with particularity, by way of proof or affidavit, what witnesses are to be called and what the nature of their testimony and the extent of their

---

[14]    SDWCA's suggestion that this Court should not grant declaratory relief because there is an exception to the consent before assignment requirement in the 2002 Agreement in the event of a merger or sale of business is equally farfetched.  There are absolutely no allegations of a merger or sale of business in Riverdeep's Amended Complaint to support such an argument.

15

inconvenience will be."). While not dispositive, a forum selection clause is a "significant factor that figures centrally in the district court's calculus" for change of venue applications. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (Justice Kennedy concurring, "§ 1404(a) should be exercised so that a valid forum selection clause is given controlling weight in all but the most exceptional cases").

SDWCA does not submit any affidavits or other evidence in support of its bare arguments as to the convenience of the parties, the convenience of the witnesses, or the interests of justice. As a result, this Court should reject SDWCA's unsupported attempt to transfer this case.

## CONCLUSION

For the foregoing reasons, Riverdeep respectfully requests that the Court deny SDWCA's motion in all respects.

Dated: June 17, 2005.                              Respectfully submitted,

Irwin B. Schwartz BBO#548763
Sarah Block Wallace (Pro Hac Vice)
PETRIE SCHWARTZ LLP
500 Boylston Street, Suite 1860
Boston, Massachusetts 02116
(617) 421-1800

Counsel for Plaintiff
Riverdeep, Inc., LLC

Certificate of Service

I, Irwin B. Schwartz, attorney for Plaintiff, Riverdeep, Inc., LLC, hereby certify that on this 17th day of June 2005, I filed the foregoing document and the Affidavit of Irwin B. Schwartz In Support Of Opposition To Motion To Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to: Matthew Walko, Smith & Dugan LLP, Two Center Plaza, Suite 620, Boston, MA 02108-1906, counsel for Defendant Logetics, Inc.; Daniel B. Winslow, Esquire, Duane Morris, 470 Atlantic Avenue, Suite 500, Boston, MA 02210, counsel for Defendant San Diego Wholesale Credit Association and served the same by United States mail, postage prepaid, upon Thomas E. Holland, SOMC Group, Inc., 1945 Palomar Oaks Way, Suite 200, Carlsbad, CA 92009.

Irwin B. Schwartz

ADDENDUM A

| No. | IMPROPERLY ASSERTED FACTS | MTD PAGE NO. | RIVERDEEP NOTES |
|---|---|---|---|
| 1. | "Pursuant to its duties as assignee, SDCA sent notice to all SOMC's creditors of the assignment for the benefit of creditors, including Riverdeep." | 2 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 2. | "On March 28, 2004, Riverdeep, with the full knowledge of the outstanding indebtedness owed jointly by SOMC and Logetics under the 2002 Agreement, **and with full knowledge that SOMC had ceased doing business**, entered into a second licensing agreement (the "2004 Agreement") . . . " | 2 | Bold text not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 3. | "It would be a burden to litigate in Massachusetts." | 9 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 4. | "The assignment estate has very limited resources to defend an action cross-country." | 10 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 5. | "Riverdeep seeks to assert a contract provision which SDCA was not a party to, **SDCA did not assume any obligations under, and by its own terms, expired upon the Assignment for the Benefit of Creditors.**" | 13 | Contrary to bold text, Riverdeep alleged "SDCA accepted assignment of the 2002 Agreement and of Riverdeep software subject to that agreement's Massachusetts forum selection clause." Amd. Cmplt. ¶ 17.<br><br>Contrary to the bold type, the forum selection clause survives the expiration of contract, which was in effect at the time of the Assignment for the Benefit of Creditors, February 24, 2005. Schwartz Aff. ¶ 4, Tab, 1, Exh. B, ¶¶ 6.4 and 10.7. |
| 6. | "[A]llof the assets that are subject of the action are situated in San Diego, California." | 14 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 7. | "As pleaded, SDCA took possession of | 16 | Contrary to the SDWCA |

| No. | IMPROPERLY ASSERTED FACTS | MTD PAGE NO. | RIVERDEEP NOTES |
|---|---|---|---|
|  | assets, i.e., the material object CDs that included CDs legitimately manufactured under a license between Riverdeep and SOMC and various marketing and packaging materials." |  | statement, Riverdeep alleged "SOMC kept the CDs in its possession and Logetics who shared a business address with SOMC simply began selling SOMC's inventory."  Amd. Cmplt. ¶¶ 34, 78. |
| 8. | "Riverdeep acknowledged the Assignment for Benefit of Creditors and filed a Proof of Claim with SDCA." | 22 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 9. | "Riverdeep has sustained no damages." | 23 | Riverdeep alleged damages in multiple paragraphs and in the prayer for damages. Amd. Cmplt. ¶¶ 50, 60, 64, 69, 80, 102, 106, 116. |
| 10. | "Riverdeep acknowledges that SOMC and Logetics were jointly and severally liable for the minimum royalty obligations" | 23-24 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 11. | "Riverdeep acknowledges that the master discs were delivered to Logetics and SOMC, collectively." | 24 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 12. | "Notwithstanding its knowledge that SOMC had gone out of business . . ." | 24 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 13. | "All of the assets that were available to satisfy Riverdeep's claim remained available for execution by Riverdeep both before and after the Assignment for Benefit of Creditors and subsequent sale to Logetics." | 24 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 14. | "The alleged transfer to SDCA and subsequent sale to Logetics failed to result in any changed position for Riverdeep as to assets available to satisfy its claim." | 24-25 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 15. | "[A]ll of the assets transferred through the assignment remained available to execute upon by Riverdeep as the assets were sold to the co-licensee, co-obligor, Logetics." | 25 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 16. | "[T]he CDs had only nominal, scrap value . . ." | 27 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |

| No. | IMPROPERLY ASSERTED FACTS | MTD PAGE NO. | RIVERDEEP NOTES |
|---|---|---|---|
| 17. | "[A]bsent a license there was no market for the CDs and related marketing material other than salvage value which is exactly the value sold to Logetics with admonition that Logetics obtain a valid license with Riverdeep." | 28 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 18. | "Riverdeep asserts that absent a license agreement the CDs have de minimus value other than as scrap . . ." | 28 | Not alleged in Amd. Cmplt. and no basis for judicial notice.  In addition, Riverdeep alleged minimum royalties in the amount of $67,000 a month and damages that exceed $1.3 million.  Amd. Cmplt. ¶ 69, and prayer for damages. |
| 19. | "Riverdeep admits that . . . the address provided was its lockbox address **and therefore a valid address**." | 29-30 | Bold text not alleged in Amd. Cmplt. and no basis for judicial notice. In addition, Riverdeep alleged "SDCA's March 18, 2004 letter, purporting to inform Riverdeep that SOMC executed a "General Assignment for the Benefit of Creditors," was sent to Riverdeep's lock box bank account address rather than Riverdeep's proper address set forth in the 2002 Agreement." Amd. Cmplt. ¶ 37. |
| 20. | "[N]one of the assets were taken out of the reach of Riverdeep for execution in connection with the indebtedness owed by SOMC and Logetics under the 2002 Agreement." | 30 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 21. | "[Riverdeep] cannot deny that it filed a claim with SDCA." | 32 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 22. | "The 2002 Agreement provided Riverdeep with a remedy against the proper parties and it chose not to exercise it in a timely fashion." | 32 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |

| No. | IMPROPERLY ASSERTED FACTS | MTD PAGE NO. | RIVERDEEP NOTES |
|---|---|---|---|
| 23. | "[Riverdeep] filed a claim with SDCA . . . " | 32 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 24. | "[Riverdeep] never asserted any claims against SDCA that it improperly sold assets to Logetics . . ." | 32 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 25. | "[Riverdeep] waited until the eve of a distribution to creditors in the assignment case to file its Complaint." | 32 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |
| 26. | "Riverdeep's allegations are untimely and operate to unduly prejudice SDCA and the other creditors of SOMC that relied on the assignment and filed claims." | 32 | Not alleged in Amd. Cmplt. and no basis for judicial notice. |