UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIVERDEEP INC., A LIMITED LIABILITY COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> SOMC GROUP, INC.; LOGETICS, INC.; SAN DIEGO WHOLESALE CREDIT ASSOCIATION d/b/a SAN DIEGO CREDIT ASSOCIATION; READY, SET, GROW!; JELLY BEAN ISLANDS; LEAP AHEAD, and THOMAS E. HOLLAND, <br><br> Defendants. | Civil Action No. 05-10816 REK <br><br> MEMORANDUM IN OPPOSITION TO HOLLAND'S AND LOGETICS' <u>MOTIONS TO DISMISS</u> |

## **INTRODUCTION**

The two software license agreements at issue were signed by defendant Thomas E. Holland ("Holland") on behalf of defendant Logetics, Inc. ("Logetics") and contain the following identical Massachusetts choice of law and venue selection clauses:

> This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the Commonwealth of Massachusetts and all claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction within Massachusetts.[1]

In addition, there is no dispute that Holland sent emails, made telephone calls, and faxed a signature page into Massachusetts in negotiating the Agreements on Logetics' behalf and their interpretation is at the heart of the claims here.

---

[1]    OEM License Agreement dated as of March 28, 2002 (the "2002 Agreement") Exhibit B ¶ 10.7; OEM License Agreement dated as of March 28, 2004 (the "2004 Agreement") Exhibit B ¶ 10.7. Copies of the 2002 Agreement and the 2004 Agreement (collectively, "Agreements") are attached respectively at Tab 1 and Tab 2 to the Affidavit of Irwin B. Schwartz In Opposition To Motions to Dismiss ("Schwartz Aff.") submitted herewith.

Nevertheless, by their Motions to Dismiss Logetics and Holland ask this Court to ignore the plain forum selection terms of the Agreements and to dismiss this action based on jurisdictional defects. Nonsense. As set forth below, by explicitly agreeing to Massachusetts jurisdiction, Logetics and Holland waived their rights to object to this Court's scrutiny of their multiple violations of United States copyright law and breaches of the Agreements. Moreover, neither Logetics nor Holland demonstrated any prejudice in appearing before this Court. The balance of their motions make even more remote arguments, seeking to avoid scrutiny of a precisely alleged fraudulent conveyance engineered by Holland for the benefit of Logetics and fraudulent inducement of Riverdeep into signing the 2004 Agreement. At this early stage of the proceedings, however, the Court should reject these motions and order that the parties proceed with the litigation.

## BACKGROUND

This case arises from two software license agreements. The 2002 Agreement between Broderbund, LLC, Riverdeep's predecessor-in-interest, on the one hand and defendant SOMC Group, Inc. ("SOMC") and Logetics on the other hand, permitted SOMC and Logetics to manufacture and distribute many of Riverdeep's popular software titles as club products. Amd. Cmplt. ¶¶ 1, 18. During the 2002 Agreement's negotiations, Broderbund was represented by Massachusetts-based John Bartlett ("Bartlett") and SOMC and Logetics were represented by Holland as president of both companies. Id. ¶¶ 19, 96; Bartlett Aff. ¶¶ 5. Holland understood that Bartlett lived and works in Massachusetts. Bartlett Aff. ¶¶ 11-12; see also Schwartz Aff. ¶ 7, Tab 4 (Jurisdictional Deposition of Thomas Holland ("Holland Depo") at 11:10-14). Bartlett signed the 2002 Agreement in Massachusetts. Bartlett Aff. ¶ 5. The 2002 Agreement provided

that all "claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction in Massachusetts." Amd. Cmplt. ¶ 17; Schwartz Aff. ¶ 4, Tab 1, Exh. B, ¶ 10.7.  Sell off rights under the 2002 Agreement expired on August 27, 2004.  Amd. Cmplt. ¶ 3; Schwartz Aff. ¶ 4, Tab 1, Exh. A, ¶ 10, Exh. B, ¶ 6.3.

On February 24, 2004, in an attempt to avoid its obligations to Riverdeep and other creditors, SOMC assigned all of its assets, including physical Riverdeep software CDs and the 2002 Agreement, to defendant San Diego Wholesale Credit Association ("SDWCA") for one dollar. Amd. Cmplt. ¶¶ 5, 28-32. On the very same day, SDWCA sold those same assets back to SOMC's affiliate, Logetics, for a fraction of their worth. Id. Holland signed the assignment papers as SOMC's president and signed the purchase and sale documents as Logetics' president and he was also a SOMC director and the sole Logetics director. Id. ¶¶ 1, 28-32, 114; Schwartz Aff. ¶ 6, Tab 3. At the time, SOMC and Logetics owed Riverdeep in excess of $1.1 million. Amd. Cmplt. ¶ 74.

Also at the same time, Holland on Logetics' behalf was negotiating the 2004 Agreement with Bartlett, who was in Massachusetts to Holland's understanding.  Id. ¶¶ 39, 96; Bartlett Aff. ¶¶ 8, 11-12.  During these negotiations, Holland never disclosed Logetics' participation in the purported SOMC to SDWCA to Logetics transfer of SOMC's inventory despite knowing that it would be material to Riverdeep.  Amd. Cmplt. ¶¶ 37-38, 97-100.  Without knowing that Holland was behind the fraudulent conveyance, Riverdeep entered into 2004 Agreement.  Id. ¶ 39.  Tony Bordon ("Bordon"), Bartlett's supervisor also located in Massachusetts to Holland's understanding, signed the 2004 Agreement.  Bartlett Aff. ¶ 8; Schwartz Aff. ¶ 7, Tab 4 (Holland Depo at 11:19-24).  Indeed, Holland faxed his signature page to Riverdeep's Massachusetts'

3

office. Amd. Cmplt. ¶¶ 8, 13; Schwartz Aff. ¶ 7, Tab 4 (Holland Depo at 28:19-23, 29:2-5, 29:22-30:11). The 2004 Agreement provides that all "claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction in Massachusetts." Amd. Cmplt. ¶ 17; Schwartz Aff. ¶ 5, Tab 2, Exh. B, ¶ 10.7.

The 2004 Agreement expired on September 30, 2004. Amd. Cmplt. ¶ 53; Schwartz Aff. ¶ 5, Tab 2, Exh. A, ¶ 10. Sell off rights expired on October 30, 2005. Schwartz Aff. ¶ 5, Tab 2, Exh. B, ¶ 6.3. Nevertheless, in disregard of their contractual commitments and Riverdeep's copyrights and trademarks, SOMC and Logetics continued to engage in unlicensed distribution of Riverdeep's software under the same trade names and the same business models. Amd. Cmplt. ¶ 4. Logetics also continued to distribute Riverdeep's copyrighted software through its wholly owned subsidiaries, defendants Ready, Set, Grow!, Leap Ahead, and Jellybean Islands and other affiliated websites and distribution channels, like www.familysavingsoutlets.com and www.smart-estore.com. Id.

## ARGUMENT

### I.   THIS COURT HAS PERSONAL JURISDICTION OVER LOGETICS AND HOLLAND

This court can exercise jurisdiction over a defendant on the basis of either specific or general jurisdiction. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 143 (1st Cir. 1995). Specific jurisdiction requires weighing the legal sufficiency of a specific set of interactions as the basis for personal jurisdiction. Id. These interactions are otherwise known as minimum contacts. Id. In determining whether minimum contacts exist this Court must "accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining

the adequacy of the prima facie jurisdictional showing. Id.[2] As set forth below, there is more

than ample basis for this Court to exercise jurisdiction over Logetics and Holland.

### A.    Logetics and Holland Explicitly Consented to This Court's Jurisdiction

A party contractually waives its right to challenge personal jurisdiction by consenting to a

forum selection clause. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972) (forum

selection clause valid and will be enforced absent compelling and countervailing reasons making

enforcement unreasonable). Evidence establishing that the parties agreed in advance to consent

to personal jurisdiction of a given court through a forum selection clause is sufficient to meet

plaintiff's burden to establish personal jurisdiction. Nat'l Equip. Rental, Ltd. v. Szukhent, 375

U.S. 311, 315-316 (1964)("it is settled . . . that parties to a contract may agree in advance to

submit to the jurisdiction of a given court"); Home Prods. Int'l - N.A., Inc. v. PeopleSoft USA,

Inc., 201 F.R.D. 42, 46 (D. Mass. 2001)(a forum selection clause is "an affirmative conferral of

personal jurisdiction by consent"); Inso Corp. v. Dekotek Handelsges, 999 F.Supp. 165, 167 (D.

Mass. 1998)("a waiver of objection to venue would be meaningless if it did not also contemplate

a concomitant waiver of objection to personal jurisdiction")(quoted authority omitted).

Moreover, a valid forum selection clause also satisfies due process. Dominium Austin Partners,

---

[2]      A district court considering a motion to dismiss for lack of personal jurisdiction may choose from among several methods in determining whether personal jurisdiction exists. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (reversing dismissal). Under the conventional or prima facie method, the court considers only whether the plaintiff has proffered enough facts to support a finding of personal jurisdiction. Id. Nevertheless, Logetics argues with no analysis that this Court should use the "intermediate test" because in "this case . . . the assertion of jurisdiction is bound up with the claim on the merits." (Logetics Memo at 9). Rubbish. Jurisdiction in this case rests on a forum selection clause and does not require this Court to hold an evidentiary hearing. Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d at 149 (vacating dismissal and warning that "while the [intermediate] standard has value, the latent risks associated with its use are not insignificant"); see also Moldflow Corp. v. Simcon, Inc., 296 F.Supp.2d 34, 38 (D. Mass. 2003)(proper to employ method other than prima facie "when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are patently incredible.").

L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001)(forum selection clause may waive right to

object to venue)(citing Burger King v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985)); Inso, 999 F.

Supp. at 167.

### 1.    Logetics Cannot Avoid Its Agreement To Massachusetts' Jurisdiction

Here, Logetics is a party to the 2002 Agreement and 2004 Agreement, both of which

contain a Massachusetts forum selection clause.  Schwartz Aff. ¶ 4, Tab 1, Exh. B, ¶ 10.7; Id. ¶

5, Tab 2, Exh. B, ¶ 10.7.  Both provide that they will be governed by the laws of Massachusetts

and mandate that "all claims and/or lawsuits in connection with this Agreement must be brought

in a court of competent jurisdiction within Massachusetts."  Id. (emphasis added).  A forum

selection clause using the word "must" is mandatory and expresses the parties' intention to make

the courts of the forum state the exclusive forum for disputes arising under the contract.  Silva v.

Encyclopedia Britannica, Inc., 239 F.3d 385, 388-389 (1st Cir. 2001)(upholding dismissal of

complaint filed in derogation of forum selection clause).

Nevertheless, Logetics argues that it should not be bound by its own agreements to

Massachusetts' jurisdiction because 2002 Agreement amendments provide for application of

California law and because of some ill-defined failure of Riverdeep to perform under the 2004

Agreement.  (Logetics Memoranda in Support of Its Motion to Dismiss or Transfer ("Logetics

Memo") at 10-12).  Nonsense.  First, the 2002 Agreement's first and second amendments

California law language expressly applies only to those amendments:

> This Amendment constitutes the entire agreement of the parties and supersedes any and
> all prior and contemporaneous oral and/or written agreements concerning the subject
> matter hereof.  **Except as specifically modified herein, all terms and provisions of the
> Agreement remain in full force and effect.**  This Amendment shall be governed as a
> sealed instrument under California law.

Schwartz Aff. ¶ 4, Tab 1, Amendment 1 and Amendment 2 (emphasis added).[3] The Court

should not read the amendments to be inconsistent with the 2002 Agreement. F.D.I.C. v. Singh,

977 F.2d 18, 24 (1st Cir. 1992) ("the law of Massachusetts demands that [the court] harmonize

the clauses rather than strain to create an imaginary conflict" between two clauses).[4] Similarly,

nothing in Logetics' motion establishes any basis to modify the 2004 Agreement's forum

selection clause.

Second, Logetics argues that because it asserts Riverdeep breached the 2004 Agreement,

Logetics is allowed to pick and choose which terms of the contract survived that breach.

(Logetics Memo at 11-12).[5] As a matter of law, however, the termination of a contract, for

whatever reason including breach, does not terminate "an agreed procedure for the resolution of

disputes" under the contract. De Grandis v. Silva, 2004 WL 503999, *1 (Mass. Super. Ct. Jan.

29, 2004) ("A repudiation or material breach would merely allow the plaintiffs to refrain from

---

[3]    The word "supersedes" is of no help to Logetics given that both amendments specifically state that all terms and provisions of the Agreement remain in full force and effect unless specifically modified. Indeed, Holland as president and CEO of Logetics, admitted that other terms in the 2002 Agreement were still in effect after the Amendment No. 1 was executed thereby confirming that the Massachusetts forum selection clause remained effective. Schwartz Aff. ¶ 7, Tab 4 (Holland Depo at 19:11-20).

[4]    Unlike Klinghoffer v. Mama Fu's Noodle House, 2004 US Dist. Lexis 22984 (N.D. Tex.)(enforcing valid forum selection clause)(Logetics Memo. at 11), where the original agreement and the amendment had conflicting forum selection provisions, there is no such conflict here. Indeed, nothing about the sentence "This Amendment shall be governed as a sealed instrument under California law" reflects intent to modify a valid choice of forum provision in the 2002 Agreement. Nor is Holland's self serving statement that he understood that this language "meant that 'California's laws and courts would resolve any disputes'" since he admitted he had no discussions regarding the language with Riverdeep. Schwartz Aff. ¶ 7, Tab 4 (Holland Depo. at 18:10-19 (Holland does not believe he had any discussions regarding paragraph 5 of Amendment No. 1 with Riverdeep) 21:2-8 (no recollection of discussing with Riverdeep his purported understanding) and 22:7-24:20 (no discussion regarding the same language in Amendment No 2). See Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 792 (1996) ("the parties' rights and obligations are to be determined from contract language itself, not from extrinsic evidence regarding its meaning or from the parties' unexpressed intent.").

[5]    Riverdeep alleged that it was not in breach of the 2004 Agreement. Amd. Cmplt. ¶ 83 ("Riverdeep performed all obligations required of it under the 2004 Agreement or was excused from doing so"). Accordingly, if the Court applies the prima facie jurisdictional standard, it need not consider Logetics' proffers with respect to Riverdeep's purported breach. Daynard, 290 F.3d at 51. See also Fed. R. Civ. P. 9(c)("it is sufficient to aver generally that all conditions precedent have been performed or have occurred.").

performing under the contract, rather than allowing them to avoid the arbitration provision in the agreement"); Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, Le Transformation, et La Commercialisation des Hydrocarbures v. Distrigas Corp., 80 B.R. 606, 609 (Bankr. D. Mass. 1987) (noting well-established line of Massachusetts' cases holding termination of contract does not terminate dispute resolution procedures).    Moreover, Logetics' claimed preexisting breach is belied by the fact that Logetics never gave notice and opportunity to cure and, in fact, Holland admits that Logetics continued to manufacture and distribute Riverdeep software under the 2004 Agreement.  Schwartz. Aff. ¶¶ 5, Tab 2, Exh. B, ¶ 6.1(a); 7, Tab 4 (Holland Depo at 37:10-25).[6]

## 2.    Holland Is Also Bound By The Forum Selection Clauses

Court's routinely hold that directors and officers are subject to forum selection agreements that their companies enter into.  Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988)(holding three individual directors bound by forum selection clause); Marano Enter. v. Z-Teca Rests., LP, 254 F.3d 753, 757 (8th Cir. 2001)(as shareholder, officer and director of company that was party to agreements, defendant "is, without question, closely related to the disputes arising out of the agreements and properly bound by the forum-selection provisions"); Cinema Laser Tech., Inc. v. Hampson, 1991 WL 90913, * 3 (D.N.J.)("directors could foresee that [when] the company entered into a contract with a non-Florida corporation, [they] might be compelled to litigate in a forum outside Florida");

---

[6]    Logetics' cases on this point are unavailing.  Wiz Tech., Inc. v. Coopers & Lybrand, 106 Cal.App.4th 1, 12 (2003) (cited in Logetics Memo at 12) does not speak to whether a forum selection clause survives a breach of contract, but rather holds that a prior material breach excuses further performance under a contract.  Even more off point, Superior Motels, Inc. v. Rinn Motor Hotels, Inc., 195 Cal.App.3d 1032, 1051-52 (1987) (cited in Logetics Memo at 12) holds that only a material breach (as opposed to minor breaches) can effectively terminate a contract and specifically provides that whether a breach is cause for termination is a question for the trier of fact.  Id.

<u>Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC</u>, 2003 WL 22882137, * 5

(S.D.N.Y.)(holding it was foreseeable that CFO would be bound by a forum selection clause in

contract her company entered into).[7]

      Here, Holland is a defendant because, as alleged, he authorized and directed the copyright

violations, he personally failed to advise Riverdeep of the artifice by which his company SOMC

transferred its assets to his other company Logetics in order to avoid SOMC's creditors, and

because in doing so he breached his fiduciary duty to Riverdeep as one of SOMC's creditors.

Amd. Cmplt. ¶¶ 51-60, 91-102, 112-116.  Holland is bound by the Agreements' Massachusetts

forum selection clauses due to his close relationship with Logetics, SOMC, and the Agreements.

As an officer and director of both SOMC and Logetics, and the person who signed both the

Agreements, Holland is closely related to both SOMC and Logetics and the Agreements such

that it was foreseeable that he would be subject to jurisdiction in Massachusetts.  (Amd. Cmplt.

¶¶ 13, 114; Schwartz Aff. ¶ 6, Tab 3).

      Nevertheless, Holland cites, <u>InterGen, N.V. v. Grina</u>, 344 F.3d 134 (1st Cir.

2003)(refusing to uphold arbitration agreement where not a single party to the litigation was a

party to the arbitration agreement) and <u>Guidant Sales Corp. v. Niebur</u>, 2002 WL 205575 (D.

Minn.) (refusing to impute a forum selection found in one employees contract to another

employee) to argue that he is not bound by the forum selection clauses in the Agreements he

executed.  (Holland Memorandum in Support of Motion To Dismiss ("Holland Memo") at 10).

---

[7]    See also <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1360 (2nd Cir. 1993)(employees subject to forum
selection clause); <u>Hugel v. Corp. of Lloyd's</u>, 999 F.2d 206, 210 (7th Cir. 1993)(corporations owned and controlled
by individual who signed agreement subject to forum selection clause); <u>Lipicon v. Underwriters at Lloyd's London</u>,
148 F.3d 1285, 1299 (11th Cir. 1998)(spouses to signatories of contract subject to forum selection clause); <u>Smith v.
Professional Claims, Inc.</u>, 19 F.Supp.2d 1276, 1282 (M.D. Ala. 1998)(joint venturer subject to forum selection
clause).

Neither so holds. In <u>InterGen</u>, plaintiff unsuccessfully attempted to enforce an arbitration clause against non-signatories. <u>Intergen</u>, 344 F.3d at 140. Similarly, in <u>Guidant</u> the court refused to find jurisdiction against one employee based on a forum selection clause in another unrelated employee's contract. Guidant, 2002 WL 205575, *7.

Here, Riverdeep, Logetics, and SOMC are all parties to the forum selection clauses and Holland signed the Agreements on SOMC's and Logetics' behalf. Schwartz Aff. ¶¶ 4, 5 and Tabs 1 & 2.[8] Moreover, Holland is not separate and unrelated to the Agreements, but rather is the officer and director who negotiated and signed them. Amd. Cmplt. ¶¶ 13, 19, 96, 114. As a result, it was foreseeable that Holland would be required to defend a lawsuit in Massachusetts and this Court should so hold. <u>Manetti-Farrow,</u> 858 F.2d at 514, n.5; <u>Marano</u>, 254 F.3d at 757; <u>Cinema</u>, 1991 WL 90913 at * 3; <u>Nanopierce</u>, 2003 WL 22882137 at * 5; <u>Smith</u>, 19 F.Supp.2d at 1282.

**B.    Logetics and Holland Also Have Minimum Contacts With Massachusetts**

While the Court need not undertake the minimum contacts analysis due to Logetics' and Holland's agreement to Massachusetts forum selection clauses, should the Court wish to engage in a further due process analysis, Riverdeep has proffered more than enough to establish that jurisdiction over both Logetics and Holland is constitutional. For due process, a defendant must have sufficient minimum contacts with Massachusetts so the suit does not offend "traditional notions of fair play and substantial justice." <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 51-52 (1st Cir. 2002)(reversing dismissal for lack of personal

---

[8]    Likewise, SDWCA is an assignee of the 2002 Agreement, Amd. Cmplt. ¶ 28, and is therefore bound by the forum selection clause. <u>See</u> Riverdeep's Opposition to SDWCA's Motion to Dismiss.

jurisdiction)(quotation omitted).[9]  For specific jurisdiction, the First Circuit divides the

constitutional analysis into three categories: relatedness, purposeful availment, and

reasonableness.  Id. at 60.[10]  As set forth below, the Amended Complaint's allegations and

Holland's admissions more than adequately establish minimum contacts under all three factors.[11]

**1.    Logetics' Agreement to Massachusetts Jurisdiction and Holland's Negotiation With Massachusetts Parties Establishes Relatedness and Purposeful Availment**

Under the relatedness factor, "the claim underlying the litigation must directly arise out

of, or relate to, the defendant's forum state activities."  Daynard, 290 F.3d at 61 (quotation

omitted).  For contract-based cases, courts look to whether defendant's contacts with forum were

instrumental in formation of the agreement.  Champion Exposition Servs., Inc. v. Hi-Tech Elec.,

LLC, 273 F. Supp. 2d 172, 177 (D. Mass. 2003) (denying motion to dismiss for lack of personal

jurisdiction).  Lack of physical presence within the forum is not dispositive.  Munis, Inc. v. East

---

[9]    Holland argues that this Court cannot exercise jurisdiction over him because Massachusetts' long arm statute does not authorize it.  The First Circuit case law establishes that because "Massachusetts has interpreted the state's long arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States" this Court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis," Daynard, 290 F.3d at 52; see also Levin v. Harned, 304 F.Supp.2d 136, 146 (D. Mass. 2003)("the jurisdictional inquiry is largely a federal constitutional one because the Massachusetts courts construe [Mass. Gen. Laws ch. 223A] section 3(a)'s 'transacting business' requisite as extending jurisdiction to the horizons of the Due Process Clause of the Fourteenth Amendment."); Moldflow, 296 F.Supp.2d at 38 ("the scope of Massachusetts's long -arm statute is coextensive with federal due process requirements")  While the inquiry is redundant, this Court has personal jurisdiction over Holland pursuant to Mass. Gen. Laws. Ch. 223A, § 3(a) and (d).  Yankee Group, Inc. v. Yamashita, 678 F.Supp. 20, 23 (D. Mass. 1988)(finding defendants' activities as corporate officer as basis for personal jurisdiction under Massachusetts' long arm statute).  See also Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986)(holding foreign corporation subject to 223(A), §§ 3(a) and (c)-(d) where corporation directed fraudulent misrepresentations into Massachusetts).

[10]    Holland's analysis also erroneously focuses on the Eighth Circuit's minimum contact analysis.  (Holland Memo at 8-9) (applying a five-part test outlined in two Eighth Circuit cases).

[11]    Because this Court can consider Holland's contacts on behalf of Logetics and SOMC as the basis for asserting personal jurisdiction over Holland, the facts supporting such jurisdiction over Holland are identical to those serving as the basis of Logetics' submission to the jurisdiction of this Court.  Yankee Group, Inc. v. Yamashita, 678 F. Supp. 2d 20, 22-23 (D. Mass. 1988) (disingenuously cited by Holland (Holland Memo at 6) for the proposition that "to establish jurisdiction over a nonresident corporate officer, there must be an independent basis for requiring the officer to defend in a foreign court.")

Orange Bd. of Water Comm'rs, 2002 WL 1162811, *5 (D. Me.) (applying federal due process

standard and denying motion to dismiss for lack of personal jurisdiction). Indeed, the

negotiations and transmission of information aimed at the forum state, by way of telephone or

mail, are unquestionably contacts related to the forum state. Id. (finding relatedness to forum

state when there were negotiations, during which defendant communicated with plaintiff in

forum state via fax, e-mail, telephone and U.S. mail); Trade Wings, LLC v. Technetics, Inc.,

2002 WL 31268389, *3 (D.N.H.)(applying federal due process standard and finding negotiations

through phone calls, faxes, and e-mails directed to forum state instrumental in formation of

contract and related to forum state).

   "The cornerstone upon which the concept of purposeful availment rest[s] are

voluntariness and foreseeability." Daynard, 290 F.3d at 61 (quotations omitted). A factor

supporting purposeful availment is the act of mailing, phoning, faxing and emailing. Burger

King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)("it is an inescapable fact of modern

commercial life that a substantial amount of business is transacted solely by mail and wire

communications across state lines."). "So long as a commercial actor's efforts are 'purposefully

directed' toward residents of another State, [Courts] have consistently rejected the notion that an

absence of physical contacts can defeat personal jurisdiction there." Id.

   Riverdeep's claims against Holland for copyright violation, breach of fiduciary duty and

fraudulent inducement relate to the Agreements as do the claims against Logetics for copyright

violation, breaches of the 2002 Agreement and the 2004 Agreement, fraudulent conveyance,

specific performance, and fraudulent inducement.[12] These are the very documents that represent

---

[12]    Riverdeep's copyright claim based on Logetics' manufacturing and selling of Riverdeep software in
violation of the Agreements is connected with the agreements. Direct Mail Prod. Servs. Ltd. v. MBNA Corp., 2000

Holland and Logetics' forum related activities and are the cause and object of this suit. Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) (documents comprised source and substance of suit and, thus, related to claims).

Moreover, in negotiating both agreements and in the parties' course of dealing, Holland made phone calls to Massachusetts, sent emails to Massachusetts, sent facsimiles to Massachusetts, and offered to travel to Massachusetts to meet with Riverdeep. Bartlett Aff. ¶¶ 5, 9 -13; Holland Aff. ¶ 5, Exhs. 5, 8, 9, 12, 13, 15-24; Schwartz Aff. ¶ 7, Tab 4 (Holland Depo at 10:19-11:5, 11:10-24, 12:3-15, 30:4-11). Logetics negotiated with Bartlett and Bordon, both of whom were located in Massachusetts at the time. Bartlett Aff. ¶¶ 5, 9, 11-13. Bartlett and Bordon were signatories to the 2002 Agreement and 2004 Agreement, respectively. Id. ¶¶ 5, 8, 10. Holland knew both were located in Massachusetts. Id. ¶ 12. In fact, Holland faxed the 2004 Agreement signature page to Riverdeep's Boston office. Id. ¶ 13.[13]

Finally, Holland's agreement on behalf of Logetics and SOMC to Massachusetts' choice of law provisions and forum selection clauses conclusively establishes notice that they might one

WL 1277597, *6-7 (S.D.N.Y.)(dismissing case on basis that forum selection clause applies to copyright claims). Similarly, Riverdeep's breach of fiduciary duty claim is based in part on a transaction whereby SOMC transferred to Logetics (using SDWCA as the conduit) Riverdeep software for a fraction of its worth, in violation of the 2002 Agreement, so that Logetics could sell that software in violation of Riverdeep's copyrights and SOMC could avoid its payment obligations under the 2002 Agreement. Because this claim involves the same operative facts it is also subject to the forum selection clause. Doe v. Seacamp Ass'n., Inc., 276 F.Supp.2d 222, 227-28 (D. Mass. 2003)(holding forum selection clause covered fiduciary duty claim). Likewise, Riverdeep's fraud claim is based on Logetics' and Holland's failure to disclose material information to Riverdeep when negotiating the 2004 Agreement. Home Prods. Int'l - N.A. v. Peoplesoft USA, Inc., 201 F.R.D. 42, 45-46 (D. Mass. 2001)(transferring case on basis that forum selection clause in license agreement applies to fraud claim) Finally, Riverdeep's fraudulent transfer claim is based on a transaction whereby SOMC transferred to Logetics (using SDWCA as the conduit) Riverdeep software for a fraction of its worth, in violation of the 2002 Agreement, so that Logetics could sell that software in violation of Riverdeep's copyrights and SOMC could avoid its payment obligations under the 2002 Agreement.
[13] Holland admitted that Bartlett and Bordon were two of his three primary Riverdeep contacts. Schwartz Aff. ¶ 7, Tab 4 (Holland Depo at 10:19-11:5). He explicitly understood that both Bartlett and Bordon lived and worked out of Boston, Massachusetts. Id. at 11:10-24. He frequently communicated with them via phone at 617 area code telephone numbers that he knew to be in Boston and by email and offered to come to Boston for meetings. Id. 12:3-15; Holland Aff. ¶ 5, Exhs. 5, 8, 9, 12, 13, 15-24; Schwartz Aff, ¶ 7, Tab 4 (Holland Depo at 30:4-11).

day be called to defend themselves in a Massachusetts court. Burger King, 471 U.S. at 482. ("a

choice of law provision should [not] be ignored in considering whether a defendant has

purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes");

Ganis Corp. v. Jackson, 635 F.Supp. 311, 315 (D. Mass. 1986)("A choice of law provision in a

contract . . . is evidence that a party has purposefully availed himself of the benefits and

protections of the state whose law governs"); Advideo, Inc. v. Kimel Broadcast Group, Inc., 727

F.Supp. 1337, 1340 (N.D. Cal. 1989)(finding jurisdiction on contacts with California limited to

negotiation and signing of contract with a California choice of law provision).

### 2.    Personal jurisdiction over Holland and Logetics is reasonable

"The hallmark of reasonableness in the context of personal jurisdiction is fair play and

substantial justice." Foster-Miller, 46 F.3d at 150. In order to determine reasonableness, this

Court is guided by the following factors: (1) the defendant's burden of appearing; (2) the forum

state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and

effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the

controversy; and (5) the common interests of all sovereigns in promoting substantive social

policies. Id. But, it is not enough to defeat personal jurisdiction that a party will be forced to

defend a case in a distant state. Pritzker, 42 F.3d at 64 (New York to Puerto Rico not

significantly burdensome); Hasbro, Inc. v. Clue Computing Inc., 994 F.Supp. 34, 45 (D. Mass.

1997) (Colorado to Massachusetts not significantly burdensome).

Holland and Logetics failed to demonstrate that exercise of jurisdiction over them here is

significantly burdensome. Even if there is some burden on Holland and Logetics to appear in

Massachusetts, that burden is accorded little weight since they agreed to it. Zapata, 407 U.S. 1 at

17-18 ("whatever inconvenience Zapata would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting."); Home Prods., 201 F.R.D. at 48 (parties to forum selection clause have ample opportunity to reflect on any inconvenience prior to signing license agreement).

Moreover, Massachusetts has an interest in adjudicating this matter since the dispute revolves around contracts negotiated with Massachusetts personnel, containing Massachusetts choice of law provisions and forum selection clauses. Indeed, Riverdeep's interest in obtaining relief through Massachusetts courts is demonstrated in its requirement that the agreements designate Massachusetts law and venue as well as Riverdeep's decision to bring this action here. Foster-Miller, 46 F.3d at 151 (plaintiff's choice of forum should be given degree of deference). Finally, efficient administration of justice favors jurisdiction in Massachusetts to avoid the risk of multiple actions between the parties in other jurisdictions. Pritzker, 42 F.3d at 64 (litigating in multiple forums would "contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes").[14]   In contrast, Logetics and Holland present no compelling reason why it would be unreasonable for this Court to exercise jurisdiction over them. Holland Memo at 9-10 (no discussion of burden to appear in Massachusetts); Logetics Memo at 11-12 (same).

## II.    MASSACHUSETTS VENUE IS PROPER

If there is venue for a copyright claim, there is venue for all claims asserted. Crosfield Hastech, Inc. v. Harris Corp, 672 F. Supp. 580, 588 n..4 (D.N.H. 1987) ("If venue is proper under section 1400(a) with respect to copyright claims, then in the interest of conserving judicial

---

[14]    To the extent that this case touches on common interests of sovereigns, those interests weigh in favor of jurisdiction in Massachusetts. See Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)("Here, the most salient such policy is . . . the discouragement of speculation in litigation.").

resources all claims may be tried in this district, even those claims as to which venue would have

been improper if unaccompanied by a copyright infringement claim").  Venue in copyright

actions is properly set in the district in which the defendant resides or may be found.  28 U.S.C. §

1400(a). [15]  "A defendant may be found in any jurisdiction in which personal jurisdiction may be

asserted over them."  Crosfield, 672 F. Supp. at 588 (quotations omitted).  Courts routinely hold

that copyright claims are subject to forum selection clauses and, therefore, may be found in the

chosen forum.  Advideo, 727 F.Supp. at 1341 (venue is proper for copyright claim where choice

of law in software agreement); Rockwell Int'l Corp. v. Gos Graphic Sys., Inc., 2001 WL 293818,

*2 (S.D.N.Y.)(denying motion to dismiss and enforcing forum selection clause because

copyright claim encompasses same rights under parties' license agreement). [16]

    "The factors listed in § 1404(a), the convenience to parties, witnesses, and the interest of

justice, must also be considered in determining the appropriate venue."  Home Prods., 201

F.R.D. at 45; see also McEvily v. Sunbeam-Oster Co., 878 F.Supp. 337, 345 (D.R.I. 1994)

("Parties must state with particularity, by way of proof or affidavit, what witnesses are to be

called and what the nature of their testimony and the extent of their inconvenience will be.").

While not dispositive, a forum selection clause is a "significant factor that figures centrally in the

district court's calculus" for change of venue applications.  Stewart Org., Inc. v. Ricoh Corp., 487

U.S. 22, 33 (1988)(Kennedy, J. concurring, "§ 1404(a) should be exercised so that a valid forum

selection clause is given controlling weight in all but the most exceptional cases"); Home Prods.,

---

[15]     Neither Holland nor Logetics moved to dismiss Riverdeep's copyright claims on the merits.
[16]     Courts in the First Circuit follow the general rule that "regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action[.]"  In re N. Parent, 221 B.R. 609, 623 (Bankr. D. Mass. 1998)(Boroff, J.)(granting motion to transfer because debtor's claims arise directly from contractual relationship and are therefore subject to forum selection clause); Lambert v. Kysar, 983 F.2d 1110, 1121 (1st Cir. 1993)(contract related claims covered by forum selection clause); cf. Home Prods., 201 F.R.D. at 46 (party cannot avoid forum selection clause by artful pleading).

201 F.R.D. at 48 (although convenience of witness is important factor, plaintiff's showing is not enough to overcome valid forum selection clause).

The Agreements designate Massachusetts courts for venue and governed Logetics' use, sale, and assignment of Riverdeep's software and are, therefore, the basis the copyright infringement claim. Amd. Cmplt. ¶¶ 51-60. Holland is personally liable for Logetics' copyright violation if he was an active conscious force behind the corporation's infringement regardless of whether he was aware that his acts would result in infringement. Novell, Inc. v. Unicom Sales, Inc., 2004 WL 1839117, **17-18 (N.D. Cal. Aug. 17, 2004) (granting summary judgment against director on copyright claim where president oversaw acquisition, advertisement, and distribution of copyrighted products); MCA, Inc. v. First Dev. Corp., 1984 WL 8146, *2 (D. Mass. June 19, 1984)(denying officer's motion to dismiss for lack of personal jurisdiction where the copyright claim is against the officer for having personally made the decisions resulting in the infringement).

Moreover, Logetics submitted no affidavits or other evidence in support of its bare arguments that this case be transferred as to the convenience of the parties, the convenience of the witnesses, or the interests of justice. As a result, this Court should reject Logetics' unsupported attempt to transfer this case. McEvily, 878 F.Supp. at 345 (§ 1404(a) motions must be supported with affidavits).

## III.    THE PENDENT CLAIMS AGAINST ARE PROPERLY ALLEGED

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, this Court assumes the truth of all of Riverdeep's well-pleaded facts and indulges all reasonable inferences therefrom. Rossiter v. Potter, 357 F.3d 26, 27 (1st Cir. 2004)(reversing dismissal). As such, this Court may

dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)(reversing dismissal). Accordingly, as set forth below, Logetics and Holland have failed to meet their burden to prevail on a motion to dismiss.

### A.    Riverdeep Properly Alleged Fraudulent Transfer Against Logetics

"A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." Kirkeby v. Superior Court, 33 Cal.4th 642, 648 (2004). Under California law, the elements for fraudulent conveyance are: (a) a transfer by the debtor; (b) made with the actual intent to hinder, delay, or defraud any creditor of the debtor. CAL. CIVIL CODE § 3439.04. The creditor may recover judgment for the value of the asset transferred . . . against the . . . first transferee of the asset or the person for whose benefit the transfer was made." CAL. CIVIL CODE § 3439.08 (emphasis added). As set forth below, Rule 9(b) does not apply to fraudulent conveyance claims and Riverdeep adequately alleged these elements. [17]

### 1.    Fraudulent Conveyance Does Not Require Rule 9(b) Particularity

The particularity requirements of Rule 9(b) should not apply to fraudulent transfers. In re Cohen, 199 B.R. 709, 716 (B.A.P. 9th Cir. 1996)("[f]raud, in the sense of morally culpable conduct," is not necessary for fraudulent transfer). Indeed, courts elsewhere have squarely held that Rule 9(b) does not apply to claims under the Uniform Fraudulent Transfer Act. See e.g., China Resource Prods. Ltd. v. Fayda Int'l, Inc., 788 F.Supp. 815, 819 (D. Del. 1992)(because

---

[17]    Logetics' lead case, Zahn v. Yucaipa Capital Fund (cited in Logetics Memo at 14), is not to the contrary. 218 B.R. 656, 674 (D.R.I. 1998) (plaintiff "need only set forth allegations of fact sufficient to place defendants on notice of the claims against them, allow them to prepare a defense, and allay any concerns about reckless allegations of fraud").

plaintiff need not prove actual or constructive fraud under UFTA, Rule 8(a) rather than Rule 9(b) applies); River Road Develop. Corp. v. Carlson Corp., 1990 WL 69085, *11 (E.D. Pa.)(allegations made under UFTA not subject to Rule 9(b)); see also In re Healthco Int'l, Inc., 195 B.R. 971, 981 (D. Mass. 1996)(dismissing fraudulent transfer claim but requiring only that Trustee amend complaint to include all requisite statutory language); Nielson v. Union Bank, 290 F.Supp.2d 1101, 1148 (C.D. Cal. 2003)(applying Fed. R. Civ. P. 8(a) to UFTA and dismissing claim because claim did not allege identity of secured creditor). [18]

As alleged in its Amended Complaint, Logetics was the beneficial recipient of SOMC's assets in a two-part transaction designed to frustrate Riverdeep's right to collect over $1 million from SOMC. Amd. Cmplt. ¶¶ 28-31. Indeed, the Amended Complaint alleges that SOMC assigned all of its assets to SDWCA for one dollar on February 24, 2005, the same day SDWCA sold those same assets for a fraction of their worth to Logetics, a company with the same principals as SOMC. Id. As a result, SOMC was left with no assets with which to repay its debts. Id. ¶¶ 72-75. Riverdeep alleged that SOMC entered into this transaction with the actual intent to hinder, delay, or defraud Riverdeep. Id. ¶ 75. Riverdeep further alleged that assignment for the benefit of creditors was an attempt on the part of both SOMC and Logetics to avoid their obligations to pay monies due to Riverdeep under the 2002 Agreement because "the SOMC-to-SDCA-to-Logetics transaction was nothing but a sham designed to defraud Riverdeep and other creditors." Id. ¶ 5. These facts squarely allege fraudulent conveyance and are more

---

[18]     Regardless of Rule 9(b)'s application,"[d]etailed facts are not required where allegations of fraud in the complaint set forth the specific basis for the claim." Kuney Int'l v. DiIanni, 746 F.Supp. 234, 237 (D. Mass. 1990)(denying motion to dismiss). The purpose of a the particularity requirement is: (1) to place defendants on notice and enable them to prepare meaningful responses to charges of fraud brought against them; (2) to provide defendants with adequate notice of the basis of the claims brought against them, thereby protecting them from

than sufficient to give Logetics notice of the basis for the fraudulent transfer claim against it. Kirkeby, 33 Cal.4th at 648.

### 2. Riverdeep Properly Alleged Fraudulent Transfer Under Cal. Civ. Code § 3439.04(a)

Nevertheless, Logetics argues that Riverdeep failed to state a fraudulent transfer claim because: (1) Cal. Civ. Code § 3440.1 exempts assignments for the benefit of creditors; and (2) because Riverdeep cannot be defrauded since the assignment was made in trust for creditors such as Riverdeep and, therefore, did not deplete the estate.[19] But Logetics cites no case law on point in California or elsewhere immunizing its transaction because the debtor, its assignee, and the transferee agreed that the fraudulent transaction was to be part of a claimed assignment for the benefit of the creditors. The "assignment for the benefit of creditors" label does not and should not shield from judicial scrutiny the injustice that Logetics imposed on Riverdeep by conspiracy with SOMC and SDWCA.[20]

### B. Riverdeep Alleged Fraudulent Inducement With Sufficient Particularity

The elements of fraudulent inducement are: (1) defendant concealed or suppressed a material fact; (2) as to which it was under a duty to disclose to the plaintiff; (3) which

---

unfair surprise; (3) to provide some ground for believing that the suit is not simply a "strike suit;" and (4) to protect defendants from groundless charges which might damage their reputations. Id. at 236.

[19] Logetics reliance on CAL. CIVIL CODE § 3440.1 is misplaced. That chapter deals exclusively with voiding transfers in which personal property is conveyed without delivery. Further, In re Consol. Pioneer Mortgage Entities, 211 B.R. 704, 717 (S.D. Cal. 1997)(reversed in part on other grounds In re Consol. Pioneer Mortgage Entities, 166 F.3d 342 (9th Cir. 1999)(cited in Logetics Memo at 16) is inapposite because, in that case, the supposed fraudulent transfer was a UCC security interest in deposited checks that arose in favor of the bank when the debtor withdrew provisionally credited funds. As a result, the allegedly fraudulent transfer did not result in a depletion of the estate because the debtor always had access to the funds.

[20] Historically, other jurisdictions recognize that an assignment for the benefit of creditors can be the basis of a fraudulent conveyance claim. See e.g. Loos v. Wilkinson, 18 N.E. 99, 101 (N.Y. 1888)("When there is fraud in an assignment it may be assailed by creditors and set aside as fraudulent."); Isaacson v. Davis, 143 A. 788, 791 (Me. 1928)(evidence of fraud before or after assignment considered when determining if assignment itself was fraudulent).

concealment or suppression was made with the intent to defraud the plaintiff; (4) plaintiff was unaware of the fact and would not have acted as it did had it known of the concealed or suppressed fact; and (5) the concealment or suppression caused damages. Cal. Jury Instr.-- Civ. 12.35 (2005).

There is a duty to disclose for the purposes of a fraudulent inducement claim when a fiduciary or confidential relationship exists or when: (1) the defendant makes misleading representations; (2) the facts are known and only or accessible only to defendant; (3) the defendant actively conceals discovery from the plaintiff. Warner Constr. Corp. v. City of Los Angeles, 2 Cal.3d 285, 294 (1970)(finding all three types of non-disclosure present).

Riverdeep's allegations are plead with sufficient particularity and give Logetics and Holland ample notice of the claim that they failed to disclose facts relating to the SOMC to SDWCA to Logetics transaction that were known and only accessible to them and that Holland actively concealed those facts from Riverdeep. Indeed, Riverdeep alleged that Logetics and Holland had a duty to provide Riverdeep with material facts within their knowledge. Amd. Cmplt. ¶ 92. To that end, the Amended Complaint alleges that Holland was responsible for winding down SOMC and protecting SOMC's creditors during that process, yet also arranged for the assignment of SOMC's assets to SDWCA and, indeed, signed the Asset Purchase Agreement for the benefit of Logetics. Id. ¶¶ 28-29, 94-96. Moreover, at the same time Holland was negotiating the 2004 Agreement with Riverdeep on Logetics' behalf, Holland as president of SOMC directed SDWCA to send Riverdeep written notice of the assignment to the wrong address to prevent Riverdeep from obtaining actual notice. Id. ¶ 95. Logetics and Holland obviously knew at the time that SOMC had fraudulently transferred its assets, including

21

Riverdeep software and license, to Logetics. Id. ¶ 101.  Nevertheless, Logetics through Holland

negotiated the 2004 Agreement, but purposefully failed to disclose to Riverdeep that Logetics

had received the SOMC-owned Riverdeep software through SDWCA even though they knew or

should have known that the assignment and the subsequent sale would be material to Riverdeep.

Id. ¶¶ 96-106.  Riverdeep reasonably relied on that failure to disclose that Logetics had illegally

obtained over a hundred thousand copies of Riverdeep software CDs and Riverdeep would not

have entered into the 2004 Agreement had it known the truth of Logetics' and Holland's role in

the fraudulent conveyance.  Id. ¶¶ 99-100.  As a result of the failure to disclose, Riverdeep was

damaged. Id. ¶ 102.[21]

Nevertheless, Holland argues, without citation, that he had no duty to disclose to

Riverdeep the fraudulent conveyance as part of his negotiations of the 2004 Agreement despite

the fact that, as president of both Logetics and SOMC, he had authorized a fraudulent transfer

from SOMC to Logetics of Riverdeep software SOMC acquired pursuant to the 2002

Agreement. (Holland Memo at 11-12).  But Holland knew that Riverdeep could not know of the

transaction and the duty to disclose runs to Holland personally because Holland participated in

(and directed) the fraudulent acts. PMC, Inc. v. Kadisha, 93 Cal.Rptr.2d 663, 671

(2000)("Directors are liable to third persons injured by their own tortuous conduct regardless of

whether they acted on behalf of the corporation and regardless of whether the corporation is also

---

[21]    Logetics' argument that Riverdeep must rescind the 2004 Agreement in order to allege fraudulent inducement is wrong. Under California law, a fraudulent inducement does not render the underlying contract void, but merely voidable and allows the plaintiff to recover damages. Persson v. Smart Inventions, Inc., 125 Cal.App.4th 1141, 1153 (2005)("It is settled law that if a defrauded party is induced by false representations to execute a contract, the party has the option of rescinding the contract or affirming it and recovering damages for the fraud"); City of Oakland v. Cal. Constr. Co., 15 Cal.2d 573 (1940)(Where a plaintiff does not seek to rescind or void the agreement, it may affirm the contract and seeks damages for which California law provides); Lazar v. Superior Court, 12 Cal.4th 631, 646 (1996)(holding plaintiff "may recover 'out-of-pocket' damages in addition to benefit-of-the-bargain damages" for fraudulent inducement claim).

liable. This liability does not depend on the same grounds as piercing the corporate veil . . . but rather on the officer or director's personal participation or specific authorization of the tortious act.")(citation omitted); Warner, 2 Cal.3d at 294..

Accordingly, Riverdeep's fraudulent inducement claim is properly alleged against Holland and Logetics.[22]

### C.    Riverdeep Properly Alleged Breach Of Fiduciary Duty Against Holland

A claim for breach of fiduciary duty requires allegations of: (1) the existence of a fiduciary relationship; (2) a breach; and (3) damage proximately caused by that breach. Pierce v. Lyman, 1 Cal.App.4th 1093, 1101 (1991). Directors of a debtor California corporation owe a fiduciary duty to their creditors when the company becomes insolvent. In re Jacks, 266 B.R. 728, 736-738 (B.A.P. 9th Cir. 2001)(holding "[b]ecause a director's fiduciary duties to creditors do not arise until the corporation is insolvent, the timing of the insolvency is critical"). The "California's Corporation Code provides a remedy for an insolvent corporation's director's violation of fiduciary duties to creditors." Id. at 736-37. ("If [the debtor] was insolvent, [the director's] action breached his fiduciary duty to [the creditor]").[23]

Here, Riverdeep alleged that SOMC was insolvent. Amd. Cmplt. ¶ 113. Holland as director of SOMC was a fiduciary of SOMC's creditors, including Riverdeep. Id. ¶ 114.

---

[22]    If the Court finds any pleading deficiencies, Riverdeep respectfully requests leave to file a Second Amended Complaint. Foman v. Davis, 371 U.S. 178, 182 (1962)("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits . . . [and therefore] . . . the leave sought should, as the rules require, be 'freely given.'").

[23]    Holland cites In re Jacks, 266 B.R. 728, 736-738 (B.A.P. 9th Cir. 2001) for the proposition that there is no director fiduciary duty for creditors in California. (Holland Memo at 12). This, however, does not comport with the Court's finding that if the debtor corporation was insolvent then the director breached his fiduciary duty, id. at 740, nor does it comport with the subsequent decisions relying on In re Jacks. See In re Cantrell, 284 B.R. 711, 724 (Bankr. N.D. Cal. 2001)(noting exception exists to general rule that directors are not fiduciaries to corporation when debtor corporation is insolvent)(citing In re Jacks, 266 B.R. at 736); Mobius Mgmt. Sys., Inc. v. Technologic

Holland breached that duty when he: (1) orchestrated an assignment for the benefit of creditors, which was a fraudulent conveyance to benefit Holland's other company, Logetics; (2) orchestrated (and signed on both sides) an assignment whereby SOMC transferred to Logetics Riverdeep software in violation of the 2002 Agreement; and (3) failed to give Riverdeep notice of the assignment in a timely manner. Id. ¶ 115. Finally, Riverdeep alleged that as a result of Holland's breaches of fiduciary duty, Riverdeep suffered damages of at least $1,119,722.12 to be proven at trial. Id. ¶ 116.[24]

## CONCLUSION

For the reasons set forth above, Riverdeep respectfully requests that this Court deny Logetics' motion to dismiss or transfer and Holland's motion to dismiss in their entirety.

Dated: August 2, 2005.

Respectfully submitted,

Irwin B. Schwartz (BBO#548765)
Sarah Block Wallace (Pro Hac Vice)
PETRIE SCHWARTZ LLP
500 Boylston Street, Suite 1860
Boston, Massachusetts 02116

Counsel for Plaintiff, Riverdeep, Inc., LLC

---

Software Concepts, Inc., 2002 WL 31106409, *3 (S.D.N.Y.)(Under California law, . . . directors of insolvent company owe fiduciary duties to creditors)(citing In re Jacks, 266 B.R. at 736).
[24] Holland argues that Riverdeep suffered no legally cognizable damages but cites no law to support his contention that damages are dependent on Riverdeep having "rights superior to that of SD[W]CA." (Holland Memo at 12-13). The Amended Complaint contains no allegations that SDWCA was an SOMC creditor.

<u>Certificate of Service</u>

     I, Irwin B. Schwartz, attorney for Plaintiff, Riverdeep, Inc., LLC, hereby certify that on this 1st day of August 2005, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to: Matthew Walko, Smith & Dugan LLP, Two Center Plaza, Suite 620, Boston, MA 02108-1906, counsel for Defendant Logetics, Inc.; Daniel B. Winslow, Esquire, Duane Morris, 470 Atlantic Avenue, Suite 500, Boston, MA 02210, counsel for Defendant San Diego Wholesale Credit Association and Evan Slavitt, Esq., Bodoff & Slavitt LLP, 225 Friend Street, Boston, MA 02114, Counsel for Defendant Thomas E. Holland; and served the same by United States mail, postage prepaid upon Mr. Thomas E. Holland, SOMC Group, Inc., 1945 Palomar Oaks Way, Suite 200, Carlsbad, CA 92009

Irwin B. Schwartz