UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RIVERDEEP INC., A LIMITED LIABILITY COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 05-10816 REK |
| vs. | ) ) | |
| SOMC GROUP, INC., a California corporation; LOGETICS, INC., a California corporation; SAN DIEGO CREDIT ASSOCIATION, a California corporation; READY, SET, GROW!, a California corporation; JELLY BEAN ISLANDS, a California corporation; and LEAP AHEAD, a California corporation, | ) ) ) ) ) ) ) | AFFIDAVIT OF IRWIN B. SCHWARTZ IN OPPOSITION TO MOTIONS TO DISMISS |
| Defendants. | ) ) ) ) | |

I, Irwin B. Schwartz, state as follows:

1.     I am an attorney duly admitted in the Commonwealth of Massachusetts and this Court and a member of the law firm Petrie Schwartz LLP.  My firm is counsel to Plaintiff Riverdeep, Inc., LLC ("Riverdeep").  I respectfully submit this affidavit in support of Riverdeep's Combined Opposition to Logetics, Inc.'s ("Logetics") Motion to Dismiss or Transfer and Thomas E. Holland's ("Holland") Motion to Dismiss.

2.     On May 17, 2005, Riverdeep filed a First Amended Complaint ("Amended Complaint").

3.     The Amended Complaint references two agreements that Logetics and/or Holland rely on in their Motions.

4.      Amended Complaint ¶ 1 references the OEM License Agreement between Riverdeep on the one hand and SOMC Group, Inc. ("SOMC") and Logetics, Inc. ("Logetics") on the other hand entered into in March 2002 (the "2002 Agreement").  A true and correct copy of excerpts from the 2002 Agreement is attached at Tab 1.

5.      Amended Complaint ¶ 1 also references the OEM License Agreement between Riverdeep on the one hand and Logetics on the other hand entered into in March 2004 (the "2004 Agreement").  A true and correct copy of excerpts from the 2002 Agreement is attached at Tab 2.

6.      A true and correct copy of the Minutes of the February 23, 2004 Logetics' Board of Directors Meeting is attached at Tab 3, which was produced as part of defendant San Diego Wholesale Credit Association's Rule 26 Disclosures.

7.      Attached at Tab 4 are excerpts from the deposition of Thomas E. Holland.

8.      SWORN AND SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 1st DAY OF August 2005.

Irwin B. Schwartz

# Tab 1

## OEM LICENSE AGREEMENT
### (Manufacturing Rights)

This OEM License Agreement (this "**Agreement**") is entered into as of March 28, 2002 (the "**Effective Date**") by and between Broderbund LLC, a Minnesota company ("**Broderbund**") and the companies identified below (collectively, "**OEM**").

WHEREAS, Broderbund publishes, markets and distributes the one or more computer software products listed on Exhibit A (the "Products"); and

WHEREAS, OEM desires to obtain a license to manufacture, market and distribute the Products to its customers subject to the restrictions identified on Exhibit A.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Broderbund and OEM do hereby agree to the terms and conditions set forth herein and in the attached Exhibit A, Exhibit B and Exhibit C, the provisions of which are incorporated herein by this reference

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed under seal as of the Effective Date

| Broderbund LLC | SOMC Group, Inc ("SOMC") |
|---|---|
| By: _____ | By: _____ |
| John Bartlett | Thomas E Holland |
| Vice President, OEM Sales | President |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund   It is submitted to OEM for discussion purposes only.*

| Broderbund LLC<br>500 Redwood Blvd<br>Novato, CA 94947<br>Attn: Chief Financial Officer<br>Tel: (415) 382-4400<br>Fax: (415) 382-4411<br><br>With a copy to:<br><br>Broderbund LLC<br>500 Redwood Blvd<br>Novato, CA 94947<br>Attn: General Counsel<br>Tel: (415) 382-4400<br>Fax: (415) 382-4411 | SOMC Group, Inc.<br>1935 Camino Vida Roble<br>Carlsbad, CA 92008<br>Tel: (760) 827-7378<br>Fax: (760) 827-4202<br><br>Logetics, Inc ("Logetics")<br><br><br>By: _____<br>    Thomas E Holland,<br>    President<br><br>Logetics, Inc.<br>1935 Camino Vida Roble<br>Carlsbad, CA 92008<br>Tel (760) 942-7000<br>Fax: (760) _____ |

(Agreement continues on following page)

//
//
//

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund It is submitted to OEM for discussion purposes only*

**EXHIBIT A**

## THE PRODUCTS

1. Products

   (a)    SOMC/LOGETICS CLUB PRODUCTS. Products that may be distributed as part of the SOMC and/or Logetics branded club described in Section 2(b) below ("SOMC/Logetics Club Products")

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|
| Amazon Trail 3rd Ed: Rainforest Adventures | AMA3744AE | $0.65 |
| Bob Vila's Home Design | BVH3844AE | $0.85 |
| Carmen Sandiego Junior Detective | 51406 | $0.65 |
| Carmen Sandiego Math Detective | 25701 | $0.65 |
| Carmen Sandiego Word Detective | 45820 | $0.65 |
| Carmen Sandiego's Great Chase Through Time, CD1 | CST3744AE | $0.85 |
| Carmen Sandiego's ThinkQuick Challenge | CSQ3744AE | $0.85 |
| Children's Bible Stories | CBS3544AE | $0.65 |
| Compton's 3D World Atlas | CWA844AE-CD1 | $0.65 |
| Compton's Home Library Battles of the World | BTF3744AE | $0.65 |
| Compton's Interactive Bible – NIV | 113069 | $0.65 |
| Daniel in the Lion's Den | 48501 | $0.85 |
| Explorers of the New World | EXP2544AE | $0.65 |
| French to Go | PFR3844AE | $0.85 |
| Just Grandma and Me | 48462 | $0.85 |
| Kid Pix Studio Deluxe | 28537 | $0.85 |
| Knowledge Munchers Deluxe | KMC2744AE-D&D | $0.85 |
| Leap Ahead! 1st Grade | | $0.85 |
| Leap Ahead! 2nd Grade | | $0.85 |
| Leap Ahead! 3rd Grade | | $0.85 |
| Leap Ahead! Kindergarten | | $0.85 |
| Leap Ahead! Math 6-9 | | $0.85 |
| Leap Ahead! Phonics | | $0.85 |
| Leap Ahead! Preschool | | $0.85 |
| Leap Ahead! Reading 6-11 | | $0.85 |
| Learn to Speak English 8.0 | LTSE3544DE | $0.85 |
| Learn to Speak English from Spanish (Hablemos Ingles) 7.0 | LISH6544CE | $0.85 |
| Learn to Speak French 8.0 | LSF3744DE | $0.85 |
| Learn to Speak German 8.0 | LTSG3544DE | $0.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only*

| | | |
|---|---|---|
| Little Bear Preschool Thinking Adventures | 379655 | $0.75 |
| Little Bear Toddler Discovery Adventures | 379737 | $0.75 |
| Oregon Trail II | OTT3744AE | $0.65 |
| Practice Makes Perfect French | PMPF3544AE | $0.75 |
| Practice Makes Perfect Spanish | PMPS3544AE | $0.75 |
| Reader Rabbit Toddler | RRT3744CE | $0.65 |
| Reader Rabbit Reading Ages 4-6 | 378474 | $0.65 |
| Schoolhouse Rock Grammar Rock | SGR3744ae | $0.85 |
| Schoolhouse Rock Math Rock | 21010-D&D | $0.85 |
| Schoolhouse Rock Thinking Games | BBT3844AE | $0.85 |
| Ultimate Children's Encyclopedia | ZCE3544AE | $0.85 |
| Ultimate Writing & Creativity Center | UWC54EE-CD | $0.85 |
| Where in the USA in Carmen Sandiego | CSU3744AE | $0.85 |
| Reader Rabbit Toddler | RRT3744CE | $0.65 |
| Reader Rabbit Preschool | RRP3477BE | $0.65 |
| SchoolHouse Rock Thinking Games | BBT3844AE | $0.85 |
| SchoolHouse Rock Grammar Rock | SGR3744AE | $0.85 |
| SchoolHouse Rock Math Rock | 21010-D&D | $0.85 |
| Theme Weavers: Animals | | $0.75 |
| Thinkin Things All Around Fripple Town | | $0.75 |
| Thinkin Things Collection 1 | | $0.75 |
| Thinkin Things Galactic Brain Benders | | $0.75 |
| Stanley's Sticker Stories | | $0.75 |
| Let's Go Read! 1: An Island Adventure | | $0.75 |
| Mighty Math Carnival Countdown | | $0.75 |
| Mighty Math Astro Algebra | | $0.75 |
| Talking Walls | | $0.75 |

(b)    BRODERBUND/TLC CLUB PRODUCTS    Products that may be distributed through the Broderbund/TLC co-branded club described in Section 2(b) below ("Broderbund/TLC Club Products")

Same as 1(a) above

Products that may be distributed as "lead generators" to acquire potential customers for the Broderbund/TLC co-branded club described in Section 2(b) below but do not require membership by the potential customer.

Same 1(b) above

2    **Authorized Channels** are defined as

(a)    Authorized Product and Bundle Configurations    OEM may only distribute the Products in the following designated manner (please check appropriate boxes):

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

☐ Hardware bundle  The Products will always be bundled with a computer-related hardware product of OEM with a suggested retail price of $50 or more, as part of a single contemporaneous sale

☐ Aftermarket hardware sale  The Products may only be sold to a registered customer that has recently purchased, within ninety (90) days, one of OEM's hardware products with a suggested retail price of $250 or more

☐ Soft bundle

☐ Magazine cover mount

☐ Packaging restrictions  Products may only be sold in:

    ☐ Paper wrap

    ☐ Jewel case

    ☐ Mini box/DVD packaging (not to exceed 5"x7"x1.5")

☒ Other:  The Products shall only be distributed by OEM either as (1) a lead generator as a single unit or bundled with other software products, or (2) as part of a club as a SOMC/Logetics or TLC/Broderbund branded club offering

    (b)    <u>Authorized Channels</u>  In addition to the foregoing restrictions, OEM may only distribute the Products in the following channels (please check appropriate boxes):

☐ Gift Shops

☐ Drug Store

☐ Direct to Consumer (catalog sales only)

☐ Direct to Consumer (outbound emails only)

☐ Direct to Consumer (outbound telemarketing only)

☐ Department Store (including, for example: Macy's, Bloomingdale's, etc )

☐ Mid-Tier Store (including, for example: JCPenny, Sears, Montgomery Ward's, etc )

☐ Superstore (including, for example: CompUSA, Best Buy, Circuit City, Fry's, etc )

☐ Office Outlet (including, for example: Staples, Office Depot, Office Max, etc.)

☐ Specialty Mall (including, for example: Electronics Boutique, Babbages, Musicland, etc )

☐ Toy (including, for example: Toys r' Us, Kaybee, etc )

☐ Mass Market (including, for example: Target, Wal-mart, KMart, etc )

☐ Supermarket

☐ Book Club

☐ Warehouse Club (including, for example: BJ's, Costco, Sam's, etc.)

☐ E-commerce Sales (orders taken from website, www._____ com  No such right exists if the foregoing blank is not filled )

☒ Other:  OEM may distribute the SOMC/Logetics Club Products to end user customers as part of its SOMC/Logetics or TLC/Broderbund branded club membership only in which SOMC/Logetics club members pay the established membership fee (to be approved by Broderbund, not to be unreasonably withheld) and, in exchange, receive one title per month until they decide to unsubscribe (or two titles per month if the club members pay the established membership fee to be approved by Broderbund, not to be unreasonably withheld)

    SOMC and/or Logetics may distribute to end user customers the SOMC/Logetics Club Products and TLC/Broderbund branded Club Products identified in Section 1(b) as part of

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

outbound telemarketing, FSI ("Free Standing Inserts"), emails and direct mails in which the Products are offered on a promotional basis such as for free to customers (customer pays shipping and handling), discounted price (with no charge for shipping and handling), discounted price plus customer pays shipping and handling, or any combination thereof, as a means of generating potential SOMC/Logetics Club customers SOMC and/or Logetics will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to the SOMC/Logetics Club or TLC/Broderbund Club for approval prior to its use Broderbund may withhold approval of any materials, not to be unreasonably withheld.

(c)    Agreements with Third Parties  Subject to Broderbund's prior written consent, to be granted at its sole discretion, SOMC and Logetics may each enter into agreements with third parties to create private label software clubs similar to the SOMC/Logetics club under which third parties would distribute the SOMC/Logetics Club Products and/or the Broderbund/TLC Club Products. SOMC and/or Logetics will ensure that any third party that distributes the SOMC/Logetics or Broderbund/TLC Products will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to Broderbund for approval prior to its use, not to be unreasonably withheld . SOMC and Logetics shall remaining solely liable for any failure of the third party to provide such materials for review prior to use

3    Licensed Media:  CD-ROM only

4.    License Fees, Reports and Payment:

(a)    Guaranteed License Fee.  Notwithstanding any other provisions in this Agreement, OEM shall pay to Broderbund the following non-refundable, irrevocable, non-transferable license fees, totaling U.S. $$1,500,000 dollars which shall be paid on the following dates

| June 30, 2002 | $300,000 |
|---|---|
| September 30, 2002 | $300,000 |
| December 30, 2002 | $300,000 |
| March 30, 2003 | $600,000 |
| | |
| | |
| Total: | $1,500,000 |

(b)    Per Unit License Fees.  The per unit license fees identified in the above Section 1, and the Club Royalty identified in Section 4(c) below, as well any royalties earned and due to Broderbund, after March 31, 2002, under the Software License and Reproduction Agreement dated May 5, 1998 between SOMC Group, Inc and Broderbund LLC, shall be applied against the applicable Guaranteed License Fee with respect to each unit of Product manufactured by OEM during the quarter ending on such date  If there is no Guaranteed License Fee, or once the Guaranteed License Fee has been earned down and recouped by OEM, then OEM shall pay directly to Broderbund the Per Unit License Fees listed in the above Section 1 for every unit it manufactures and any Club Royalty earned by Broderbund

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

**EXHIBIT B**
**TERMS AND CONDITIONS**

1.    DEFINITIONS

1 1    **"Authorized Channels"** shall mean the specific authorized product and bundle configurations and the specific authorized channels identified in Section 2 of Exhibit A

1 2    **"Confidential Information"** shall mean that information that is identified in Section 9 1 of this Exhibit B

1.3    **"Cost of Goods"** shall mean all direct costs and expenses associated with the manufacture and delivery of the Products, including, without limitation, CD-ROMs, external and internal packaging, documentation, inserts, assembly, warehousing and manufacturing and licensing fees due to third parties relating to the Broderbund/TLC Club. This shall not include any allocation for employees, overhead or other indirect costs associate with the manufacture and delivery of the Products.

1 4    **"Expiration Date"** shall mean that specific date that is identified in Section 10 of Exhibit A

1 5    **"Guaranteed License Fees"** shall mean the license fees payable to Broderbund in Section 4(a) of Exhibit A

1 6    **"Licensed Media"** shall mean the specific licensed media identified in Section 3 of Exhibit A

1.7    **"Net Receipts"** shall mean the gross revenues actually received by OEM less actual out of pocket costs directly related to the gross revenues from Cost of Goods, the Per Unit License Fees paid to Broderbund under this Agreement, licensing fees paid to third parties related to the Broderbund/TLC Club, sales taxes collected and refunds, actual direct third party marketing expenses directly relating to the Broderbund/TLC Branded Clubs, and all fees paid to Broderbund under the Letter Agreement dated March 29, 2002 between the parties and administrative costs directly related to the Broderbund/TLC Club (such administrative costs can include commercially reasonable allocations of salaries and overhead, in the aggregate such administrative costs shall not to exceed 28% of gross revenues).

1.8    **"Per Unit License Fees"** shall mean the individual Product license fees of the respective Products identified in Section 1 of Exhibit A

1 9    **"Product"** or **"Products"** shall mean those specific computer software products of TLC identified in Section 1 of Exhibit A. Where the term "SOMC Club Products" or "Broderbund Club Products" is used, the term shall have the specific meaning attributed in Exhibit A. All other use of the term Product shall include "SOMC Club Products" or "Broderbund Club Products."

1 10    **"Term"** shall mean that period of time that is identified in Section 5 of this Exhibit B

1.11    **"Territory"** shall mean the specific geographic areas described in Section 5 of Exhibit A

2    GRANT OF LICENSE, RESTRICTIONS, DOCUMENTATION AND SUPPORT

2 1    Rights Granted to OEM

(a)    Subject to this Agreement, Broderbund grants to OEM a non-transferable and non-exclusive license to manufacture, market and distribute the Products in the Licensed Media throughout the Territory for the Term of this Agreement, in the Authorized Channels

(b)    OEM UNDERSTANDS AND AGREES THAT UNDER NO CIRCUMSTANCES WILL OEM DISTRIBUTE ANY PRODUCT OUTSIDE THE AUTHORIZED CHANNELS  SUCH AN ACT ON THE PART OF OEM SHALL

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT.

2.2    End-User License Agreement OEM will not distribute any Product unless the Product is accompanied by Broderbund's standard form of end-user license agreement (as provided by Broderbund) as the same may be revised from time to time upon notice to OEM.

3.    COPYRIGHT AND TRADEMARK NOTICES AND TITLE

3.1    Copyrights and Trademark Broderbund hereby grants to OEM a non-exclusive, non-transferable right to use the names of the Products listed on Exhibit A when used in connection with the name **"Broderbund," and "The Learning Company,"** on copies of the Products licensed to OEM pursuant to and for the Term of this Agreement. Any sale of a Product or documentation (or any portion thereof) shall include the copyright, trademark and other proprietary rights notices as are currently contained on each such Product (or documentation) or may be specified from time to time by Broderbund. OEM will not challenge any intellectual property rights claimed by Broderbund in such trademarks.

3.2    Title to Products Title to the Products shall not pass from Broderbund to OEM or its end-users, and the Products and all master copies thereof shall at all times remain the sole and exclusive property of Broderbund.

4.    LICENSE FEES

OEM shall pay Broderbund the license fee(s) set forth on Exhibit A of this Agreement according to the terms set forth on Exhibit A.

5.    TERM OF AGREEMENT

Unless otherwise terminated earlier in accordance with the terms of this Agreement, the term of this Agreement shall continue from the Effective Date until the Expiration Date (the "Term"). This Agreement may thereafter only be renewed for successive one-year periods upon the written amendment to this Agreement.

6.    TERMINATION AND BREACH.

6.1    Termination Either party may terminate this Agreement, effective immediately upon written notice, under the following circumstances:

(a)    Except as provided for in Section 6.2, below, if either party materially breaches any provision of this Agreement and such breach has not been cured within thirty (30) days after the other party has given written notice of such breach, the non-breaching party may terminate this Agreement.

(b)    If, at any time, the Guaranteed License Fees or any other amounts due under this Agreement are not paid when due, at Broderbund's option, it may at any time during the Term of this Agreement upon not less than ten (10) days' prior written notice and failure to cure. Should the Agreement terminate pursuant to this provision, all Guaranteed License Fees shall be accelerated and due immediately.

(c)    If OEM should: (1) admit in writing its inability to pay its debts generally as they become due; (2) make a general assignment for the benefit of creditors; (3) institute proceedings to be adjudicated a voluntary bankrupt or consent to the filing of a petition of bankruptcy against it; (4) be adjudicated by a court of competent jurisdiction as being bankrupt or insolvent; (5) seek reorganization under any bankruptcy act, or consent to the filing of a petition seeking such reorganization; or (6) have a decree entered against it by a court of competent jurisdiction appointing a receiver, liquidator, trustee or assignee in bankruptcy or insolvency covering all or substantially all of such party's property or providing for the liquidation of such party's property or business affairs, and fail to cause the same to be removed within sixty (60) days, Broderbund may terminate this Agreement.

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

6.2    Termination for Violation of Authorized Channels  In the event that OEM or its customers (including resellers) violate Section 2 of Exhibit A, or otherwise make any improper use, transfer, duplication or disclosure of any of the Product(s), this Agreement and all of OEM's rights hereunder shall terminate immediately

6.3    Effect of Termination  Upon the expiration or termination of this Agreement, the license granted hereunder shall terminate, and OEM shall immediately discontinue the manufacture of any Products; provided however, OEM shall have the right to sell off any remaining inventory in existence for a period of one hundred eighty (180) days, unless the Agreement has been terminated under Section 6.1 or Section 6.2, above  In the final thirty days of the Term, OEM shall not manufacture Product in excess of the average number of units of Product manufactured during the Term. All proprietary and confidential information shall be promptly returned to Broderbund.  Termination or expiration of this Agreement shall not relieve OEM of any of its payment obligations

6.4    Survival of Certain Conditions  Notwithstanding anything to the contrary contained in this Agreement, Sections 2.1(b), 2.2-2.5, 3.2, 4, 6.4, 7, 9 and 10 shall in all cases survive any expiration or termination of this Agreement.

6.5    Injunctive Relief  OEM understands and agrees that Broderbund will suffer irreparable harm in the event that OEM fails to comply with the any of its obligations under Section 2.1(b) above, and that monetary damages in such event would be substantial and inadequate to compensate Broderbund  Consequently, in such event Broderbund will be entitled, in addition to such monetary relief as may be recoverable by law, to such temporary, preliminary and/or permanent injunctive relief as may be necessary to restrain any continuing or further breach by OEM, without showing or proving any actual damages sustained by Broderbund

7    REPRESENTATIONS, WARRANTIES AND INDEMNIFICATION

7.1    Broderbund's Representations and Warranties  Broderbund represents and warrants to OEM the following:

(a)    Broderbund either owns all right, title and interest in the Products or possesses the necessary rights to grant OEM the rights and license granted hereunder.

(b)    Broderbund has the full power and authority to enter into this Agreement and to fulfill its obligations hereunder.

(c)    The Products do not infringe upon any intellectual property rights or other proprietary rights of any third party.

7.2    OEM's Representations and Warranties:  OEM represents and warrants to Broderbund the following:

(a)    OEM possesses full power and authority to enter into this Agreement and to fulfill its obligations hereunder; and

(b)    OEM's performance of the terms of this Agreement and of OEM's obligations hereunder shall not breach any separate agreement by which OEM is bound.

7.3    Broderbund Indemnities  Broderbund agrees to indemnify, hold harmless and defend OEM from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement.

7.4    OEM Indemnities.  OEM agrees to indemnify, hold harmless and defend Broderbund from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only.*

(ii) is lawfully received from third parties subject to no restriction of confidentiality, (iii) can be shown by the receiving party to have been independently developed by it, (iv) is disclosed by the disclosing party to third parties without restriction on subsequent disclosure, or (v) is required to be disclosed in the context of an administrative or judicial proceeding, except that in such case the receiving party agrees to provide the disclosing party with prompt notice of such requirement in order to allow the disclosing party to seek an appropriate protective order.

9.3    Term of Confidentiality  Each party's obligations under this Section 9 shall survive the termination or expiration of this Agreement for a period of two (2) years

10    MISCELLANEOUS PROVISIONS.

10.1    Entire Agreement  This Agreement, including all Exhibits, contains the entire understanding of the parties hereto relating to the Products, supersedes any prior written or oral agreement or understandings between the parties with respect to the Products, and cannot be changed or terminated orally This Agreement may be amended only by a writing signed by the parties hereto

10.2    Enforceability  The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement

10.3    Assignment.  Neither this Agreement nor the rights or obligations hereunder may be assigned by OEM without the prior written consent of Broderbund, which consent shall not be unreasonably withheld; provided however, that OEM may assign this Agreement upon the merger of OEM or the sale of OEM's business, all without the consent of Broderbund, if OEM gives notice to Broderbund of such assignment  In the event of such an assignment, this Agreement shall be binding upon such successors and assignees

In the event that Broderbund sells substantially all of the assets of any of its business units by sale, merger, or otherwise, then, Broderbund may elect to assign the duties and obligations arising under this Agreement with respect to such transferred business or assets to the purchaser of such business or assets to the extent such sale relates to the Products.  In such event, Broderbund may elect to require OEM to enter into a substantially identical agreement to this Agreement for the transferred Products

10.4    Independent Contractors  OEM and Broderbund shall perform their duties pursuant to this Agreement as independent contractors  Nothing in this Agreement shall be construed to create a joint venture, partnership or other joint relationship between OEM and Broderbund  Neither party shall have the ability to incur any obligation on behalf of the other party

10.5    Successors.  Subject to Section 10.3 above, all rights and obligations arising out of this Agreement shall inure to the benefit of, and be binding on and enforceable by the parties and their respective successors and permitted assigns

10.6    Currency  All dollar amounts herein are expressed in United States funds

10.7    Governing Law  This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the Commonwealth of Massachusetts and all claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction within Massachusetts.

10.8    Notices  All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made if hand delivered, mailed first class mail, postage prepaid, sent by prepaid telegram (or telex or other facsimile transmission) or sent by express overnight courier service to the address listed above or to such other address as any such party may have

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

## AMENDMENT NO. 1 TO
## OEM LICENSE AGREEMENT

This Amendment No. 1 (this "**Amendment**") shall serve to amend as of December 30, 2002, that certain OEM License Agreement dated March 28, 2002 by and between Broderbund LLC ("**Broderbund**"), and SOMC Group, INC ("**OEM**"), (the "**Agreement**")

The parties hereby agree as follows:

1.      The program(s) listed on Schedule A-1 attached hereto are hereby added to Sections 1 (a) and 1 (b) <u>Schedule A</u> of the Agreement and shall be subject to all of the terms and conditions set forth in the Agreement and each such program shall be deemed to be a "**Product**" for the purposes of the Agreement.

2

<u>Guaranteed License Fee.</u>  Notwithstanding any other provisions in the Agreement, OEM shall pay to Broderbund the following additional, non-refundable, irrevocable, non-transferable license fees, totaling U.S. **$800,0000** dollars (collectively, the "**Guaranteed License Fees**", and, individually, each a "**Guaranteed License Fee**").  Any payments made shall be applied against the guarantee license fee. Payments will be made by April 30, July 15, October 15, and December 30. Such amounts will be not be less than $200,000 and in no event will the cumulative amount paid by December 30, 2003 be less than the total Guaranteed License Fees under this Agreement

3       <u>Per Unit License Fees</u>. Distributor shall pay the Per Unit License Fees for the Products sold, but no event less than the Guaranteed License Fees described above, under this Amendment as described.

4       <u>Assignment</u>  By way of this Amendment, Broderbund LLC hereby assigns to Riverdeep, Inc., all of its rights and obligations under the Agreement, and SOMC Group, Inc. consents to and Riverdeep, Inc. hereby accepts such an assignment.

5       This Amendment constitutes the entire agreement of the parties and supersedes any and all prior and contemporaneous oral and/or written agreements concerning the subject matter hereof  Except as specifically modified herein, all terms and provisions of the Agreement remain in full force and effect This Amendment shall be governed as a sealed instrument under California law.  Capitalized terms used in this Amendment and not defined herein shall have the same meaning as set forth in the Agreement

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed under seal as of the date first set forth above.

BRODERBUND LLC                          SOMC GROUP, INC.


By:_____                    By: _____
    Name:                                   Name: _Thomas E. Holland_
    Title:                                  Title: _President & CEO_

RIVERDEEP, INC                          LOGETICS, INC.


By:_____                    By: _____
    Name:                                   Name: _Thomas E. Holland_
    Title:                                  Title: _President & CEO_

1

## AMENDMENT NO. 2 TO OEM LICENSE AGREEMENT

This Amendment No. 2 (this "Amendment") shall serve to amend as of September 29, 2003 that certain OEM License Agreement dated March 28, 2002 by and between Riverdeep, Inc. ("Riverdeep"), SOMC Group Inc. and Logetics, Inc. ("OEM"), (the "Agreement").

The parties hereby agree as follows:

1. Term of agreement. The parties mutually agree to extend the term of the agreement to September 30, 2004.

2. The following Products are deleted from Exhibit A and may no longer be distributed by SOMC under this Agreement:

   Zondervan NIV Bible Deluxe
   Print Shop Photo Workshop
   NTI CD Maker Essentials
   Talking Walls

3. Quarterly Payments and Guaranteed License Fee. Progress payments will be made on January 15, April 15, July 15, and October 15 based on Net Units Sold and Per Unit License Fees for the preceding quarter. Any payments made shall be applied against the Guaranteed License Fee. The balance due at September 30, 2003 shall be paid in accordance with the following schedule:

   - $20,000 upon execution of this Amendment,

   - $30,000 payable October 15, 2003,

   - $50,000 payable November 15, 2003,

   - $50,000 payable December 15, 2003,

   - $50,000 payable January 15, 2004,

   - $50,000 payable February 15, 2004,

   - Balance payable March 15, 2004.

4. This Amendment constitutes the entire agreement of the parties and supercedes any and all prior and contemporaneous oral and/or written agreements concerning the subject matter hereof. Except as specifically modified herein, all terms and provisions of the Agreement remain in full force and effect. This Amendment shall be governed as a sealed instrument under California law. Capitalized terms

used in this Amendment and not defined herein shall have the same meaning as set forth in the Agreement.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed under seal as of the date first set forth above.

RIVERDEEP, INC.

By: _____
Name:   JOHN BARRETT
Title:   VP OEM SALES

SOMC GROUP INC.

By: _____
Name: Thomas E. HOLLAND
Title: PresidenT & CEO

LOGETICS, INC.

By: _____
Name: Thomas E. HOLLAND
Title: PresidenT & CEO

# Tab 2

13 04 03:24p    From the Desk of Maggie H  617 778-7631        P.2
Sent By: LOGETICS INC.;                7604482941;        Apr-13    10:48AM;    Page 2            000094

*Logetics*

# OEM LICENSE AGREEMENT
## (Manufacturing Rights)

This OEM License Agreement (this "**Agreement**") is entered into as of March 28, 2004 (the "**Effective Date**") by and between Riverdeep Inc. LLC, a Delaware limited liability company ("**Riverdeep**") and the company identified below ("**OEM**").

WHEREAS, Riverdeep publishes, markets and distributes the one or more computer software products listed on <u>Exhibit A</u> (the "Products"); and

WHEREAS, OEM desires to obtain a license to manufacture, market and distribute the Products to its customers subject to the restrictions identified on <u>Exhibit A</u>.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Riverdeep and OEM do hereby agree to the terms and conditions set forth herein and in the attached <u>Exhibit A</u>, <u>Exhibit B</u> and <u>Exhibit C</u>, the provisions of which are incorporated herein by this reference.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed under seal as of the Effective Date

| Riverdeep LLC | Logetics, Inc. ("Logetics") |
|---|---|
| By: _____ | By: _____ |
| Tony Bordon | Thomas E. Holland |
| Chief Revenue Officer | President |
| | |
| Riverdeep LLC | Logetics, Inc. |
| 500 Redwood Blvd. | 1945 Palomar Oaks Way |
| Novato, CA 94947 | Tel: (760) 448-2900    x 2905 |
| Attn: Chief Financial Officer | Fax: (760) 448-2941 |
| Tel: (415) 382-4400 | |
| Fax: (415) 382-4411 | |
| | |
| With a copy to: | |
| | |
| Riverdeep LLC | |
| 500 Redwood Blvd. | |
| Novato, CA 94947 | |
| Attn: General Counsel | |
| Tel: (415) 382-4400 | |
| Fax: (415) 382-4411 | AR Cust # 317393 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

EXHIBIT A

THE PRODUCTS

1.     Products

(a)     <u>LOGETICS CLUB PRODUCTS</u>   Products that may be distributed as part of the
Logetics branded club described in Section 2(b) below ("Logetics Club Products")

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|
| 3D Home Architect 5 SE | 382067 | $.85 |
| 3D Home Design Kit - 2 CD | | $.85 |
| 3D Home Interiors #381158-CD (one CD only) | 381158-CD | $0.75 |
| 3D Home Landscape Designer SE 4.0 | | $0.85 |
| 3D Landscape 5 | 382068 | $.85 |
| A Guide to Vitamins, Minerals & Supplements | 556120 | $.85 |
| AfricaTrail | PAF3744AE | $.85 |
| Amazon Trail 3rd Ed: Rainforest Adventures | AMA3744AE | $0.65 |
| Arthur Math Games | 381029 | $.85 |
| Arthur Reading Games | 381028 | $.85 |
| Arthur's Thinking Games | 381027 | $.85 |
| Arthur First Grade | 380903 | $1.00 |
| Arthur Second Grade | 380904 | $1.00 |
| Arthur Kindergarten | 380902 | $1.00 |
| Arthur Preschool | 380901 | $1.00 |
| Arthur Adventure with DW | 379273 | $.85 |
| Arthur's Birthday | 378759 | $.85 |
| Arthur's Camping Adventure | 380324 | $.85 |
| Arthur's Computer Adventure | 379274 | $.85 |
| Arthur Pet Panic | 382420 | $1.00 |
| Arthur Reading Race | 51291SD | $.85 |
| Arthurs Sand Castle Caper | 382422 | $1.00 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by
Broderbund  It is submitted to OEM for discussion purposes only*

- 2 -

| | | |
|---|---|---|
| Arthurs Teacher Trouble | 378691 | $.85 |
| Arthurs Wilderness Games | 381788 | $1.00 |
| Baileys Book House | | $0.75 |
| Black & Decker Home Repairs | BDH3844AE | $0.75 |
| Bob Vila's Home Design | BVH3844AE | $0.85 |
| Body Works 6 | BWK3844CE | $0.75 |
| Calendar Creator 10 Standard | 382382 | $.85 |
| Calendar Creator 9 Standard | 385346 | $.85 |
| Carmen Sandiego Junior Detective | 51406 | $0.65 |
| Carmen Sandiego Math Detective | 25701 | $0.65 |
| Carmen Sandiego Word Detective | 45820 | $0.65 |
| Carmen Sandiego's Great Chase Through Time, CD1 | CST3744AE | $0.85 |
| Carmen Sandiego's ThinkQuick Challenge | CSQ3744AE | $0.85 |
| Children's Bible Stories | CBS3544AE | $0.65 |
| Click Art 10K | CLT3844AE | $0.75 |
| Click Art 2 FONTS | 385341 | $.85 |
| Click Art 50K | 382309 | $.85 |
| Click Art Fonts 3 Deluxe | 382249 | $.85 |
| Click Art Presentation Graphics | 385342 | $.85 |
| Clickart Celebrations & Holidays II | 381107 | $0.75 |
| Clifford Learning Activities | 334397 | $.85 |
| Clifford Musical Memory Games | 344342 | $.85 |
| Clifford Phonics | 356508 | $.85 |
| Clifford Reading | | $.85 |
| Clifford Thinking Adventures | | $.85 |
| ClueFinders Personalized Math 9-12 | 378472 | $.85 |
| ClueFinders 3rd Grade Adventures | 379539 | $0.85 |
| ClueFinders 4th Grade Adventures | 379536 | $0.85 |
| ClueFinders 5th Grade Adventures | 379535 | $0.85 |
| ClueFinders 6th Grade Adventures | 381576 | $.85 |
| ClueFinders Incredible Toy Store Adventure | 381573 | $.85 |
| ClueFinders Math Adventures 9-12 | 381575 | $.85 |
| Cluefinders Personalized Reading 9-12 | 378171 | $.85 |
| Compton's 3D World Atlas | CWA844AE-CD1 | $0.65 |
| Compton's Home Library Battles of the World | BTF3744AE | $0.65 |
| Compton's Learning Mathematics | MTC3844AE | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund   It is submitted to OEM for discussion purposes only*

| | | |
|---|---|---|
| Compton's Interactive Cookbook | CKS3544AE | $0.75 |
| Daniel in the Lion's Den | | $.85 |
| Family Lawyer 2004 | | $.85 |
| Family Lawyer Wills & Estates | 385445 | $.85 |
| French to Go | PFR3844AE | $0.85 |
| Groliers Encyclopedia | TBD | $0.75 |
| I SPY Fantasy | 356519 | $.85 |
| I SPY Junior | | $.85 |
| I SPY Puppet Playhouse | | $.85 |
| I SPY School Days | | $.85 |
| I SPY Spooky Mansion | | $.85 |
| I SPY Treasure Hunt | 334394 | $.85 |
| Identity Theft Protector SE V1 01 | 282691 | $.85 |
| Imagination Express Destination Oceans | 104-1085 | $.85 |
| Imagination Express Destination Pyramids | 104-1606 | $.85 |
| Imagination Express Destination Rainforest | 104-1608 | $.85 |
| Imagination Express Destination Time Trip USA | 104-1634 | $.85 |
| Just Grandma and Me | 48462 | $0.85 |
| Kasparov Chessmate | 382318 | $.85 |
| Kid Pix Deluxe 3 | 378180 | $0.75 |
| Kid Pix Studio Deluxe | 28537 | $0.85 |
| Knowledge Munchers Deluxe | KMC2744AE-D&D | $0.85 |
| Leap Ahead! 1st Grade | | $0.85 |
| Leap Ahead! 2nd Grade | | $0.85 |
| Leap Ahead! 3rd Grade | | $0.85 |
| Leap Ahead! Kindergarten | | $0.85 |
| Leap Ahead! Math 6-9 | | $0.85 |
| Leap Ahead! Phonics | | $0.85 |
| Leap Ahead! Preschool | | $0.85 |
| Leap Ahead! Reading 6-11 | | $0.85 |
| Learn to Speak English 8.0 | LTSE3544DE | $0.85 |
| Learn to Speak English from Spanish (Hablemos Ingles) 7.0 | LTSH6544CE | $0.85 |
| Learn to Speak French 8.0 | LSF3744DE | $0.85 |
| Learn to Speak German 8.0 | LTSG3544DE | $0.85 |
| Learn to Speak Spanish 8.0 | LTSS3544DE | $0.85 |
| Lemonade Tycoon (Hexacto) | 381921 | $.85 |
| Let's Go Read: An Island Adventure | | $.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

| | | |
|---|---|---|
| Little Bear Kindergarten Thinking Adventures | | $.85 |
| Little Bear Preschool Thinking Adventures | 379655 | $0.75 |
| Little Bear Rainy Day Activities | | $.85 |
| Little Bear Toddler Discovery Adventures | 379737 | $0.75 |
| Little Bill Thinks Big | 356515 | $.85 |
| Living Books Harry and the Haunted House | FBL1077F | $.85 |
| Living Books Little Monster | FBL1056A | $.85 |
| Living Books Stellaluna | 50201 | $.85 |
| Living Books Tortoise and the Hare | 49106 | $.85 |
| Logical Journey of the Zoombinis | 278469 | $0.75 |
| LTS.ENGLISH V8.1 | 381415 | $0.75 |
| LTS.FRENCH V8.1 | 381416 | $0.75 |
| LTS.GERMAN V8.1 | 381417 | $0.75 |
| LTS.SPANISH V8.1 | 381418 | $0.75 |
| Math Workshop Deluxe | 50122 | $0.65 |
| Mavis Beacon Teaches Typing 12 Standard | 380858 | $0.75 |
| Mavis Beacon Teaches Typing 15 Standard | 381500 | $.85 |
| Mavis Beacon Teaches Typing 9.0 | MBT2844AE | $0.65 |
| Mavis Beacon Teaches Typing 9.0 Mac | 112915 | $0.65 |
| MEDIASHOP OEM | 285384 | $.85 |
| Mighty Math Astro Algebra | | $0.75 |
| Mighty Math Carnival Countdown | | $0.75 |
| Millies Math House | | $0.75 |
| Mind Power Math: High School | 381667 | $.85 |
| Mind Power Math: Middle School | 381668 | $.85 |
| Mind Power Science Grades 7-12 | 381803 | $.85 |
| Mind Twister Math | 104-0745 | $.85 |
| Mosby's Medical Encyclopedia | MDE2344BE-D&D | $0.85 |
| MOVIESHOP Select | 285323 | $.85 |
| Ocean Aquarium | 383209 | $.85 |
| Oregon Trail II | OTT3744AE | $0.65 |
| Oregon Trail III | OTA3744AE | $0.65 |
| Oregon Trail IV | OTF3744AE | $0.75 |
| Oregon Trail V | 380859 | $.85 |
| Orly's Draw-A-Story | 53605 | $0.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

| | | |
|---|---|---|
| Paddington The World Mystery Tour | 381917 | $.85 |
| Passport to 31 Languages | THL3744AE | $0.85 |
| Practice Makes Perfect French | PMPF3544AE | $0.75 |
| Practice Makes Perfect Spanish | PMPS3544AE | $0.75 |
| Princeton Review: Sat/Act 2003 | | $.85 |
| Print Shop 20 Essentials | 382221 | $.85 |
| Print Shop Brochures, Newsletters & More | 385012 | $0.75 |
| Print Shop Business Card Creator | 385013 | $0.75 |
| Print Shop CD Label Creator | 381244 | $1.00 |
| Print Shop Deluxe For Broadband 15 | | $.85 |
| Print Shop Essentials 12 | 380869 | $1.00 |
| Print Shop Newsletters Brochures | | $.85 |
| PrintMaster 15 Express | 785306 | $.85 |
| PrintMaster 15 Silver | 385499 | $.85 |
| PrintMaster Greeting Cards Deluxe (4 CD) | 385505 | $.85 |
| Printmaster Homework Helper | 385015 | $0.75 |
| Printmaster Party & Crafts Creator | 385014 | $0.75 |
| Printmaster Select 15 | | $.85 |
| Printmaster Silver 11 | 379863 | $0.75 |
| Reader Rabbit Preschool 2002 V1.12 | 381493 | $.85 |
| Reader Rabbit Dreamship Tales (Parents Premium) | | $.85 |
| Reader Rabbit I Can Read with Phonics | 380267 | $.85 |
| Reader Rabbit Let's Start Learning! | LST3544AE | $.85 |
| Reader Rabbit Personalized 1st Grade | RRF3744BE | $.85 |
| Reader Rabbit Personalized 2nd Grade | RSG3744AE | $.85 |
| Reader Rabbit Personalized Preschool | RRP3744BE | $.85 |
| Reader Rabbit Presents Math Grades 1-3 | | $.85 |
| Reader Rabbit Toddler | RRT3744CE | $0.65 |
| Reader Rabbit Toddler 2002 V2 (2 CD version) | 381491 | $.85 |
| Reader Rabbit's 1st Grade | RRF3744BE | $0.85 |
| Reader Rabbit's 2nd Grade | RSG3744BE | $0.85 |
| Reader Rabbit's Kindergarten | RRK3744BE | $0.65 |
| Reader Rabbit's Kindergarten (2 CD version) | 379541 | $.85 |
| Reader Rabbit's Math Ages 4-6 | 378475 | $0.65 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only*

| | | |
|---|---|---|
| Reader Rabbit's Math Ages 6-9 | 378476 | $0.65 |
| Reader Rabbit's Math Journey (Gr 1-3) | MJF2744AE-D&D | $0.65 |
| Reader Rabbit's Personalized Math 1st & 2nd Grade | 378476 | $0.65 |
| Reader Rabbit's Playtime for Baby | BRR3744AE | $0.65 |
| Reader Rabbit's Preschool | RRP3744BE | $0 65 |
| Reader Rabbit's Reading 1 | RRA2744BE-D&D | $0.65 |
| Reader Rabbit's Reading Ages 4-6 | 378474 | $0.65 |
| Reader Rabbit's Reading Ages 6-9 | 378473 | $0.65 |
| Reader Rabbit's Thinking Adventures 4-6 | RTG3744AE | $0.65 |
| Reader Rabbit's Learn to Read with Phonics Preschool Kindergarten | 381516 | $0.85 |
| Resume Pro 3.0 | RES2844AE | $0.75 |
| Road Adventures USA | TRA3744AE | $0.65 |
| Sammy's Science House | | $0.75 |
| Schoolhouse Rock 1st & 2nd Grade Essentials | SGE3744AE | $0.85 |
| Schoolhouse Rock 3rd & 4th Grade Essentials | SGD3744AE | $0.85 |
| Schoolhouse Rock Grammar Rock | SGR3744AE | $0.85 |
| Schoolhouse Rock Math Rock | 21010-D&D | $0.85 |
| Schoolhouse Rock Thinking Games | BBT3844AE | $0.85 |
| Schoolhouse Rock Thinking Games Deluxe | SRT3744BE | $0.85 |
| Spanish to Go | 381327 | $0.85 |
| Spelling Master | SMP3744AE | $0.65 |
| Stanley's Sticker Stories | | $0.75 |
| Starflyers Alien Space Chase | 380853 | $.85 |
| Starflyers Royal Jewel Rescue V1 | 381547 | $.85 |
| Storybook Weaver Deluxe | SBW374AE | $.85 |
| Super Solver Spellbound | SBO3544AE | $ 85 |
| Super Solvers Gizmos & Gadjets | GAG3544AE | $.85 |
| Super Solvers Midnight Rescue | MNR3544AE | $.85 |
| Super Solvers Mission Think | MEM3744AE | $0.85 |
| Super Solvers Operation Neptune | ONT3544AE | $.85 |
| Super Solvers Outnumbered | ONB3544AE | $.85 |
| Super Solvers Reading 9-12 | SSR3744AE | $0.85 |
| The Art Lesson | HCD772 | $0.85 |
| The Bible: A Multimedia Experience | HYB3344AE | $.85 |
| Theme Weavers: Animals | | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only.*

| Product | Version/SKU | Per Unit License Fee |
|---|---|---|
| Thinkin Things All Around Fripple Town | | $0.75 |
| Thinkin Things Collection 1 | | $0.75 |
| Thinkin Things Galactic Brain Benders | | $0.75 |
| Treasure Cove | TSC3544AE | $0.75 |
| Treasure Galaxy | TSG3544AE | $0.75 |
| Treasure Mathstorm | TMS3544BE | $0.75 |
| Treasure Mountain | PTS3744AE | $0.75 |
| Trivia Munchers | TVM2744AE-D&D | $0.75 |
| Troggle Trouble Math | PTT3544AE | $0.75 |
| Ultimate Children's Encylcopedia | ZCE3544AE | $0.85 |
| Ultimate Writing & Creativity Center | UWC54EE-CD | $0.85 |
| Where in the USA is Carmen Sandiego | CSU3744AE | $0.85 |
| Where in the World is Carmen Sandiego | CSD3744AE | $0.85 |
| Where in Time is Carmen Sandiego | 44303 | $0.85 |
| Will Writer 2004 V3 | 282675 | $.85 |
| Williams and Sonoma Guide To Good Cooking | 379505 | $0.75 |
| Yukon Trail | HCD663 | $.85 |
| Zoombinis Island Odyssey | 381664 | $.85 |
| ZOOMBINIS MTN RESCUE V1.0 | 380860 | $.85 |

Products that may be distributed as "lead generators" to acquire potential customers for the Logetics Club branded club described in Section 2(b) below but do not require membership by the potential customer   No Reader Rabbit branded titles below may be used as lead generators in free standing insert ("FSI") offers

| Product(s) | Version/SKU | Per Unit License Fee |
|---|---|---|
| 3D Home Interiors #381158-CD (one CD only) | 381158-CD | $0.75 |
| 3D Home Landscape Designer SE 4.0 | | $ 85 |
| A Guide to Vitamins, Minerals & Supplements | 556120 | $ 85 |
| Africa Trail | PAF3744AE | $.85 |
| Amazon Trail 3rd Ed  Rainforest Adventures | AMA3744AE | $0.65 |
| Black & Decker Home Repairs | BDH3844AE | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

| | | |
|---|---|---|
| Bob Vila's Home Design | BVH3844AE | $0.85 |
| Body Works 6 | BWK3844CE | $0 75 |
| Carmen Sandiego Junior Detective | 51406 | $0.65 |
| Carmen Sandiego Math Detective | 25701 | $0.65 |
| Carmen Sandiego Word Detective | 45820 | $0.65 |
| Carmen Sandiego's Great Chase Through Time, CD1' | CST3744AE | $0.85 |
| Children's Bible Stories | CBS3544AE | $0 65 |
| Click Art 10K | CLT3844AE | $0.75 |
| Click Art 2 FONTS | 385341 | $.85 |
| Click Art Fonts 3 Deluxe | 382249 | $.85 |
| Click Art Presentation Graphics | 385342 | $.85 |
| Clickart Celebrations & Holidays II | 381107 | $0 75 |
| Clifford Reading | | $0.85 |
| Clifford Thinking Adventures | | $0.85 |
| Clue Finders Personalized Math 9-12 | 378472 | $.85 |
| ClueFinders Incredible Toy Store Adventure | 381573 | $ 85 |
| ClueFinders Math Adventures 9-12 | 381575 | $ 85 |
| Cluefinders Personalized Reading 9-12 | 378171 | $ 85 |
| Compton's Home Library Battles of the World | BTF3744AE | $0.65 |
| Compton's Interactive Cookbook | CKS3544AE | $0.75 |
| I SPY Junior | | $.85 |
| I SPY School Days | | $.85 |
| I SPY Spooky Mansion | | $.85 |
| Identity Theft Protector SE V1 01 | 282691 | $.85 |
| Imagination Express Destination Oceans | 104-1085 | $ 85 |
| Imagination Express Destination Pyramids | 104-1606 | $.85 |
| Imagination Express Destination Rainforest | 104-1608 | $ 85 |
| Imagination Express Destination Time Trip USA | 104-1634 | $ 85 |
| Just Grandma and Me | 48462 | $0.85 |
| Kid Pix Studio Deluxe | 28537 | $0.85 |
| Knowledge Munchers Deluxe | KMC2744AE-D&D | $0.85 |
| Labels Unlimited | LUN3844AE | $0.75 |
| Leap Ahead! 1st Grade | | $0.85 |
| Leap Ahead! 2nd Grade | | $0 85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

000103

| | | |
|---|---|---|
| Leap Ahead! 3rd Grade | | $0.85 |
| Leap Ahead! Kindergarten | | $0.85 |
| Leap Ahead! Math 6-9 | | $0.85 |
| Leap Ahead! Phonics | | $0.85 |
| Leap Ahead! Preschool | | $0.85 |
| Leap Ahead! Reading 6-11 | | $0.85 |
| Lemonade Tycoon (Hexacto) | 381921 | $.85 |
| Let's Go Read: An Island Adventure | | $.85 |
| Little Bear Kindergarten Thinking Adventures | | $.85 |
| Little Bear Preschool Thinking Adventures | 379655 | $0.75 |
| Little Bear Rainy Day Activities | | $.85 |
| Little Bear Toddler Discovery Adventures | 379737 | $0.75 |
| Living Books Harry and the Haunted House | FBL1077F | $.85 |
| Living Books Little Monster | FBL1056A | $.85 |
| Living Books Stellaluna | 50201 | $.85 |
| Living Books Tortoise and the Hare | 49106 | $.85 |
| Logical Journey of the Zoombinis | 278469 | $0.75 |
| MEDIASHOP OEM | 285384 | $.85 |
| Mighty Math Astro Algebra | | $0.75 |
| Mighty Math Carnival Countdown | | $0.75 |
| Mind Power Math: High School | 381667 | $.85 |
| Mind Power Math: Middle School | 381668 | $.85 |
| Mind Power Science Grades 7 12 | 381803 | $.85 |
| Mosby's Medical Encyclopedia | MDE2344BE-D&D | $0.85 |
| MOVIESHOP Select | 285323 | $.85 |
| Oregon Trail II | OTT3744AE | $0.65 |
| Orly's Draw-A-Story | 53605 | $0.85 |
| Passport to 31 Languages | THL3744AE | $0.85 |
| Practice Makes Perfect French | PMPF3544AE | $0.75 |
| Practice Makes Perfect Spanish | PMPS3544AE | $0.75 |
| Print Shop Brochures, Newsletters & More | 385012 | $0.75 |
| PrintMaster Greeting Cards Deluxe (4 CD) | 385505 | $.85 |
| Printmaster Homework Helper | 385015 | $0.75 |
| Printmaster Party & Crafts Creator | 385014 | $0.75 |
| Printmaster Silver 11 | 379863 | $0.75 |
| Reader Rabbit I Can Read with | 380267 | $.85 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only*

| Phonics | | |
|---|---|---|
| Reader Rabbit Let's Start Learning! | LST3544AE | $.85 |
| Reader Rabbit Presents Math Grades 1-3 | | $.85 |
| Reader Rabbit Toddler | RRT3744CE | $.85 |
| Reader Rabbit's Math Ages 4-6 | 378475 | $0.65 |
| Reader Rabbit's Math Ages 6-9 | 378476 | $0.65 |
| Reader Rabbit's Math Journey (Gr 1-3) | MJF2744AE-D&D | $0.65 |
| Reader Rabbit Personalized Math 1st & 2nd Grade | 378476 | $.65 |
| Reader Rabbit Playtime for Baby | BRR3744AE | $.65 |
| Reader Rabbit Preschool | RRP3744BE | $.85 |
| Reader Rabbits Reading 1 | RRA2744BE-D&D | $.65 |
| Reader Rabbit Reading Ages 4-6 | 378474 | $.65 |
| Reader Rabbit Reading Ages 6-9 | 378473 | $.65 |
| Reader Rabbit Thinking Adventures 406 | RTG3744AE | $.65 |
| Resume Pro 3.0 | RES2844AE | $0.75 |
| Road Adventures USA | TRA3744AE | $0.65 |
| Schoolhouse Rock 1st & 2nd Grade Essentials | SGE3744AE | $0.85 |
| Schoolhouse Rock 3rd & 4th Grade Essentials | SGD3744AE | $0.85 |
| Schoolhouse Rock Grammar Rock | SGR3744AE | $0.85 |
| Schoolhouse Rock Math Rock | 21010 D&D | $0.85 |
| Schoolhouse Rock Thinking Games | BBT3844AE | $0.85 |
| Schoolhouse Rock Thinking Games Deluxe | SRT3744BE | $0.85 |
| Spanish to Go | 381327 | $0.85 |
| Spelling Master | SMP3744AE | $0.65 |
| Stanley's Sticker Stories | | $0.75 |
| Storybook Weaver Deluxe | SBW374AE | $.85 |
| Super Solver Spellbound | SBO3544AE | $.85 |
| Super Solvers Gizmos & Gadjets | GAG3544AE | $.85 |
| Super Solvers Midnight Rescue | MNR3544AE | $.85 |
| Super Solvers Mission Think | MEM3744AE | $0.85 |
| Super Solvers Operation Neptune | ONT3544AE | $.85 |
| Super Solvers Outnumbered | ONB3544AE | $.85 |
| Super Solvers Reading 9-12 | SSR3744AE | $0.85 |
| The Art Lesson | HCD772 | $0.85 |
| Theme Weavers. Animals | | $0.75 |

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund It is submitted to OEM for discussion purposes only*

| | | |
|---|---|---|
| Thinkin Things All Around Fripple Town | | $0.75 |
| Thinkin Things Collection 1 | | $0.75 |
| Thinkin Things Galactic Brain Benders | | $0.75 |
| Treasure Cove | TSC3544AE | $0.75 |
| Treasure Galaxy | TSG3544AE | $0.75 |
| Treasure Mathstorm | TMS3544BE | $0.75 |
| Treasure Mountain | PTS3744AE | $0.75 |
| Trivia Munchers | TVM2744AE-D&D | $0.75 |
| Troggle Trouble Math | PTT3544AE | $0 75 |
| Ultimate Children's Encylcopedia | ZCE3544AE | $0.85 |
| Ultimate Writing & Creativity Center | UWC54EE-CD | $0.85 |
| Where in Time is Carmen Sandiego | 44303 | $0 85 |
| Will Writer 2004 V3 | 282675 | $.85 |
| Williams and Sonoma Guide To Good Cooking | 379505 | $0.75 |
| Yukon Trail | HCD663 | $.85 |
| Zoombinis Island Odyssey | 381664 | $.85 |
| ZOOMBINIS MTN RESCUE V1 0 | 380860 | $ 85 |

(b)    RIVERDEEP/TLC CLUB PRODUCTS    Products that may be distributed through the Riverdeep/TLC co-branded club described in Section 2(b) below ("Riverdeep/TLC Club Products")

Same as 1(a) above

Products that may be distributed as "lead generators" to acquire potential customers for the Riverdeep/TLC co-branded club described in Section 2(b) below but do not require membership by the potential customer

Same 1(b) above

2.    **Authorized Channels** are defined as

(a)    Authorized Product and Bundle Configurations.    OEM may only distribute the Products in the following designated manner (please check appropriate boxes)

☐ Hardware bundle  The Products will always be bundled with a computer-related hardware product of OEM with a suggested retail price of $50 or more. as part of a single contemporaneous sale

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

☐ Aftermarket hardware sale. The Products may only be sold to a registered customer that has recently purchased, within ninety (90) days, one of OEM's hardware products with a suggested retail price of $250 or more.

☐ Soft bundle.

☐ Magazine cover mount.

☐ Packaging restrictions: Products may only be sold in:

　　☐ Paper wrap

　　☐ Jewel case

　　☐ Mini box/DVD packaging (not to exceed 5"x7"x1.5")

☒ Other: The Products (as restricted above) shall only be distributed by OEM either as (1) a lead generator as a single unit or bundled with other software products, or (2) as part of a club as a Logetics or TLC/Riverdeep branded club offering. [1]

　　(b)　　Authorized Channels. In addition to the foregoing restrictions, OEM may only distribute the Products in the following channels (please check appropriate boxes).

☐ Gift Shops

☐ Drug Store

☐ Direct to Consumer (catalog sales only)

☐ Direct to Consumer (outbound emails only)

☐ Direct to Consumer (outbound telemarketing only)

☐ Department Store (including, for example: Macy's, Bloomingdale's, etc.)

☐ Mid-Tier Store (including, for example: JCPenny, Sears, Montgomery Ward's, etc.)

☐ Superstore (including, for example: CompUSA, Best Buy, Circuit City, Fry's, etc.)

☐ Office Outlet (including, for example: Staples, Office Depot, Office Max, etc.)

☐ Specialty Mall (including, for example: Electronics Boutique, Babbages, Musicland, etc.)

☐ Toy (including, for example: Toys r' Us, Kaybee, etc.)

☐ Mass Market (including, for example: Target, Wal-mart, KMart, etc.)

☐ Supermarket

☐ Book Club

☐ Warehouse Club (including, for example: BJ's, Costco, Sam's, etc.)

☐ E-commerce Sales (orders taken from website, www _____ com  No such right exists if the foregoing blank is not filled.)

☒ Other: OEM may distribute the Logetics Club Products to end user customers as part of its Logetics or TLC/Riverdeep branded club membership only in which Logetics club members pay the established membership fee (to be approved by Riverdeep, not to be unreasonably withheld) and, in exchange, receive one title per month until they decide to unsubscribe (or two titles per month if the club members pay the established membership fee to be approved by Riverdeep, not to be unreasonably withheld).

Logetics may distribute to end user customers the Logetics Club Products and TLC/Riverdeep branded Club Products identified in Section 1(b) as part of outbound telemarketing, FSI ("Free Standing Inserts"), emails and direct mails in which the Products are offered on a promotional basis such as for free to customers (customer pays shipping and handling), discounted price (with no charge for shipping and handling), discounted price plus customer pays shipping and handling, or any combination thereof, as a means of generating

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

potential Logetics Club customers. Logetics will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to the Logetics Club or TLC/Riverdeep Club for approval prior to its use. Riverdeep may withhold approval of any materials, not to be unreasonably withheld.

(c) Agreements with Third Parties. Subject to Riverdeep's prior written consent, to be granted at its sole discretion, OEM may each enter into agreements with third parties to create private label software clubs similar to the Logetics club under which third parties would distribute the Logetics Club Products and/or the Riverdeep/TLC Club Products. Logetics will ensure that any third party that distributes the Logetics or Riverdeep/TLC Products will provide all promotional materials, telemarketing scripts, inserts, emails, direct mails and any other marketing collateral relating to Riverdeep for approval prior to its use, not to be unreasonably withheld. Logetics shall remaining solely liable for any failure of the third party to provide such materials for review prior to use.

3. Licensed Media: CD ROM only.

4. License Fees, Reports and Payment:

(a) Guaranteed License Fee. Notwithstanding any other provisions in this Agreement, OEM shall pay to Riverdeep the following non-refundable, irrevocable, non-transferable license fees, totaling U.S. **$375,000 dollars** which shall be paid on the following dates:

| May 15, 2004 | $18,750 |
| June 15, 2004 | $18,750 |
| July 15, 2004 | $18,750 |
| August 15, 2004 | $43,750 |
| September 15, 2004 | $43,750 |
| October 15, 2004 | $43,750 |
| November 15, 2004 | $62,500 |
| December 15, 2004 | $125,000 |
| Total. | $375,000 |

(b) Per Unit License Fees. The per unit license fees identified in the above Section 1, and the Club Royalty identified in Section 4(c) below shall be applied against the applicable Guaranteed License Fee with respect to each unit of Product manufactured by OEM during the quarter ending on such date. If there is no Guaranteed License Fee, or once the Guaranteed License Fee has been earned down and recouped by OEM, then OEM shall pay directly to Riverdeep the Per Unit License Fees listed in the above Section 1 for every unit it manufactures and any Club Royalty earned by Riverdeep.

(c) Royalty on Riverdeep/TLC Club. OEM will pay Riverdeep a royalty of fifty percent (50%) of the Net Receipts derived from sales through the Riverdeep/TLC Branded Club ("Club Royalty")

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only*

- 14 -

(d)    Quarterly Reconciliation   To the extent that the cumulative Per Unit License Fees with respect to the number of units of Products manufactured by OEM during a particular quarter and the Club Royalties earned exceed the applicable Guaranteed License Fee for such quarter, OEM shall reconcile and pay to Riverdeep the difference (if any) within thirty days of each quarter end

(e)    Payment of Per Unit License Fees and Club Royalties.  Per Unit License Fees and Club Royalties shall be paid directly to Riverdeep within 30 days of the end of the quarter in which each Product is Net Units Sold   "Net Units Sold" shall mean the number of units distributed by OEM less units returned by OEM's customer, units used as samples to prospective clients (not to exceed 200 units total) and units for employee training purposes (not to exceed 200 units total).  Each Product shall be accounted for separately in OEMs reports to Riverdeep

(f)    Reports.  Each month OEM shall provide Riverdeep with a reasonably detailed report showing sales, the number of copies of each Product manufactured by OEM and the calculation of the Per Unit License Fees and Club Royalties for the preceding month

5.    Territory.  North America.

6    Production Unit Delivery.  OEM shall provide Riverdeep with two (2) copies of the finished manufactured product as soon as such product is available

7    Support:  Riverdeep will provide technical support for the Products to its end-users at the same level that Riverdeep currently provides to its customers that have purchased the Products in the retail channel  OEM will provide customer support for the Logetics Club Products and TLC/Riverdeep branded Club offerings  OEM will provide Riverdeep with a contact to forward all customer service inquiries received by Riverdeep   OEM will make best efforts to resolve all customer support issues within forty-eight (48) hours of receipt from Riverdeep

8    Expenses:  OEM will bear all costs and expenses of manufacturing, marketing and distributing the Products.

9    Acknowledgement of Delivery:  On the Effective Date, OEM shall execute a copy of the Acknowledgement of Delivery of all deliverables in the form attached hereto as Exhibit C

10    Term of the Agreement:  This Agreement shall expire on September 30, 2004 (the "Expiration Date")

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

**EXHIBIT B**
**TERMS AND CONDITIONS**

1    DEFINITIONS.

1.1    "**Authorized Channels**" shall mean the specific authorized product and bundle configurations and the specific authorized channels identified in Section 2 of Exhibit A

1.2    "**Confidential Information**" shall mean that information that is identified in Section 9.1 of this Exhibit B.

1.3    "**Cost of Goods**" shall mean all direct costs and expenses associated with the manufacture and delivery of the Products, including, without limitation, CD-ROMs, external and internal packaging, documentation, inserts, assembly, warehousing and manufacturing and licensing fees due to third parties relating to the Riverdeep/TLC Club. This shall not include any allocation for employees, overhead or other indirect costs associate with the manufacture and delivery of the Products.

1.4    "**Expiration Date**" shall mean that specific date that is identified in Section 10 of Exhibit A

1.5    "**Guaranteed License Fees**" shall mean the license fees payable to Riverdeep in Section 4(a) of Exhibit A.

1.6    "**Licensed Media**" shall mean the specific licensed media identified in Section 3 of Exhibit A

1.7    "**Net Receipts**" shall mean the gross revenues actually received by OEM less actual out of pocket costs directly related to the gross revenues from Cost of Goods, the Per Unit License Fees paid to Riverdeep under this Agreement, licensing fees paid to third parties related to the Riverdeep/TLC Club, sales taxes collected and refunds, actual direct third party marketing expenses directly relating to the Riverdeep/TLC Branded Clubs (such administrative costs can include commercially reasonable allocations of salaries and overhead, in the aggregate such administrative costs shall not to exceed 28% of gross revenues).

1.8    "**Per Unit License Fees**" shall mean the individual Product license fees of the respective Products identified in Section 1 of Exhibit A

1.9    "**Product**" or "**Products**" shall mean those specific computer software products of TLC identified in Section 1 of Exhibit A. Where the term "Logetics Club Products" or "Riverdeep Club Products" is used, the term shall have the specific meaning attributed in Exhibit A. All other use of the term Product shall include "Logetics Club Products" or "Riverdeep Club Products."

1.10    "**Term**" shall mean that period of time that is identified in Section 5 of this Exhibit B

1.11    "**Territory**" shall mean the specific geographic areas described in Section 5 of Exhibit A

2.    GRANT OF LICENSE, RESTRICTIONS, DOCUMENTATION AND SUPPORT.

2.1    Rights Granted to OEM

(a)    Subject to this Agreement, Riverdeep grants to OEM a non-transferable and non-exclusive license to manufacture, market and distribute the Products in the Licensed Media throughout the Territory for the Term of this Agreement, in the Authorized Channels.

(b)    OEM UNDERSTANDS AND AGREES THAT UNDER NO CIRCUMSTANCES WILL OEM DISTRIBUTE ANY PRODUCT OUTSIDE THE AUTHORIZED CHANNELS. SUCH AN ACT ON THE PART OF OEM SHALL CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only*

2.2    End-User License Agreement
OEM will not distribute any Product unless the
Product is accompanied by Riverdeep's standard
form of end-user license agreement (as provided
by Riverdeep) as the same may be revised from
time to time upon notice to OEM.

## 3    COPYRIGHT AND TRADEMARK NOTICES AND TITLE

3.1    Copyrights and Trademark.
Riverdeep hereby grants to OEM a non-
exclusive, non-transferable right to use the
names of the Products listed on Exhibit A when
used in connection with the name
**"Broderbund,"** and **"The Learning
Company,"** on copies of the Products licensed
to OEM pursuant to and for the Term of this
Agreement  Any sale of a Product or
documentation (or any portion thereof) shall
include the copyright, trademark and other
proprietary rights notices as are currently
contained on each such Product (or
documentation) or may be specified from time to
time by Riverdeep  OEM will not challenge any
intellectual property rights claimed by Riverdeep
in such trademarks

3.2    Title to Products.  Title to
the Products shall not pass from Riverdeep
to OEM or its end-users, and the Products
and all master copies thereof shall at all
times remain the sole and exclusive
property of Riverdeep.

## 4.    LICENSE FEES

OEM shall pay Riverdeep the license
fee(s) set forth on Exhibit A of this Agreement
according to the terms set forth on Exhibit A.

## 5.    TERM OF AGREEMENT.

Unless otherwise terminated earlier in
accordance with the terms of this Agreement, the
term of this Agreement shall continue from the
Effective Date until the Expiration Date (the
**"Term"**)  This Agreement may thereafter only be
renewed for successive one-year periods upon the
written amendment to this Agreement

## 6    TERMINATION AND BREACH

6.1    Termination  Either party may
terminate this Agreement, effective immediately
upon written notice, under the following
circumstances:

(a)    Except as provided for in
Section 6.2, below, if either party materially
breaches any provision of this Agreement and
such breach has not been cured within thirty (30)
days after the other party has given written notice
of such breach, the non-breaching party may
terminate this Agreement.

(b)    If, at any time, the
Guaranteed License Fees or any other amounts
due under this Agreement are not paid when
due, at Riverdeep's option, it may at any time
during the Term of this Agreement upon not less
than ten (10) days' prior written notice and
failure to cure.  Should the Agreement terminate
pursuant to this provision, all Guaranteed
License Fees shall be accelerated and due
immediately

(c)    If OEM should: (1)
admit in writing its inability to pay its debts
generally as they become due; (2) make a
general assignment for the benefit of creditors;
(3) institute proceedings to be adjudicated a
voluntary bankrupt or consent to the filing of a
petition of bankruptcy against it; (4) be
adjudicated by a court of competent jurisdiction
as being bankrupt or insolvent; (5) seek
reorganization under any bankruptcy act, or
consent to the filing of a petition seeking such
reorganization; or (6) have a decree entered
against it by a court of competent jurisdiction
appointing a receiver, liquidator, trustee or
assignee in bankruptcy or insolvency covering
all or substantially all of such party's property or
providing for the liquidation of such party's
property or business affairs, and fail to cause the
same to be removed within sixty (60) days,
Riverdeep may terminate this Agreement

6.2    Termination for Violation of
Authorized Channels  In the event that OEM or
its customers (including resellers) violate
Section 2 of Exhibit A, or otherwise make any

*This document does not constitute an offer or any form of an agreement until it is approved and signed by
Broderbund  It is submitted to OEM for discussion purposes only*

improper use. transfer, duplication or disclosure of any of the Product(s), this Agreement and all of OEM's rights hereunder shall terminate immediately

6 3    Effect of Termination  Upon the expiration or termination of this Agreement, the license granted hereunder shall terminate, and OEM shall immediately discontinue the manufacture of any Products; provided however, OEM shall have the right to sell off any remaining inventory in existence for a period of thirty (30) days, unless the Agreement has been terminated under Section 6 1 or Section 6 2, above.  In the final thirty days of the Term, OEM shall not manufacture Product in excess of the average number of units of Product manufactured during the Term.  All proprietary and confidential information shall be promptly returned to Riverdeep  Termination or expiration of this Agreement shall not relieve OEM of any of its payment obligations

6 4    Survival of Certain Conditions. Notwithstanding anything to the contrary contained in this Agreement, Sections 2 1(b), 2 2-2.5, 3.2, 4, 6 4, 7, 9 and 10 shall in all cases survive any expiration or termination of this Agreement.

6.5    Injunctive Relief.  OEM understands and agrees that Riverdeep will suffer irreparable harm in the event that OEM fails to comply with the any of its obligations under Section 2.1(b) above, and that monetary damages in such event would be substantial and inadequate to compensate Riverdeep Consequently, in such event Riverdeep will be entitled, in addition to such monetary relief as may be recoverable by law, to such temporary, preliminary and/or permanent injunctive relief as may be necessary to restrain any continuing or further breach by OEM, without showing or proving any actual damages sustained by Riverdeep

7    REPRESENTATIONS, WARRANTIES AND INDEMNIFICATION

7 1    Riverdeep's Representations and Warranties  Riverdeep represents and warrants to OEM the following:

(a)    Riverdeep either owns all right, title and interest in the Products or possesses the necessary rights to grant OEM the rights and license granted hereunder

(b)    Riverdeep has the full power and authority to enter into this Agreement and to fulfill its obligations hereunder

(c)    The Products do not infringe upon any intellectual property rights or other proprietary rights of any third party

7 2    OEM's Representations and Warranties:  OEM represents and warrants to Riverdeep the following:

(a)    OEM possesses full power and authority to enter into this Agreement and to fulfill its obligations hereunder; and

(b)    OEM's performance of the terms of this Agreement and of OEM's obligations hereunder shall not breach any separate agreement by which OEM is bound.

7 3    Riverdeep Indemnities. Riverdeep agrees to indemnify, hold harmless and defend OEM from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement

7 4    OEM Indemnities.  OEM agrees to indemnify, hold harmless and defend Riverdeep from all claims, liabilities, damages, defense costs (including reasonable attorneys' fees), judgments and other expenses arising out of or on account of the breach of any of its covenants, representations or warranties set forth in this Agreement.

7 5    Riverdeep Indemnification Option  In the case of any infringement claim, at Riverdeep's option, Riverdeep may at its

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

expense: (i) procure a license from any claimants with respect to the challenged Product (or component thereof) that will enable Riverdeep to continue marketing and using the Product, (ii) modify the challenged Product so as to make it non-infringing, or (iii) take appropriate action or seek available legal remedies to enable the continued manufacturing, use and distribution of the challenged Product

7 6    THE WARRANTY STATED HEREIN IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND SUCH WARRANTY CONSTITUTES THE ONLY WARRANTY MADE BY RIVERDEEP WITH RESPECT TO THIS AGREEMENT OR THE PRODUCTS, ARTICLES, MATERIALS, REPLACEMENT PARTS OR SERVICES TO BE SUPPLIED HEREBY. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR LOST PROFITS, LOSS OF DATA OR ANY COLLATERAL, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND RIVERDEEP'S AGGREGATE LIABILITY TO OEM UNDER THIS SECTION 7 IS LIMITED TO THE AMOUNT THAT OEM ACTUALLY PAYS TO RIVERDEEP UNDER THIS AGREEMENT

7.7    Claims. With respect to any claims falling within the scope of the foregoing indemnifications: (a) each party agrees to notify the other promptly of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating; (b) Riverdeep shall have the right to assume, at its expense, the defense of a claim or suit made or filed against OEM; and (c) if Riverdeep does not represent OEM in any claim or suit, Riverdeep shall pay OEM's legal costs and expenses in defense of such a claim OEM shall not settle such claim or suit without the prior written approval of Riverdeep, which approval will not be unreasonably withheld or delayed.

8    BOOKKEEPING OBLIGATIONS AND INSPECTION RIGHTS.

OEM shall maintain true and complete books of account containing an accurate record of all data necessary for the proper computation of payments hereunder, and Riverdeep shall have the right, by a certified public accountant appointed by it, to examine such books at all reasonable times (but not more than twice in each calendar year) for the purpose of verifying the accuracy of the reports and computation rendered by OEM. Upon reasonable advance notice, such examination shall be made during normal business hours at the principal place of business of OEM If such examination reveals that reports furnished by OEM were inaccurate by more than ten percent (10%) and that amounts in excess of those paid to Riverdeep are due, the cost of such examination shall be borne by OEM and OEM shall pay the amount of any discrepancy to Riverdeep, plus interest at the rate of eighteen percent (18%) per year or part thereof on any deficiencies

9    CONFIDENTIAL INFORMATION.

9 1    Confidential Information  Each party (the "receiving party") shall keep in strictest confidence the terms of this Agreement and all material and information, in whatever form provided, identified by the other party (the "disclosing party") to be confidential or proprietary in nature relating to the disclosing party's trade secrets (including pricing policies, business strategies, software designs and specifications), as well as any materials and information which from the circumstances in which they are made available to the receiving party in good faith and good conscience ought to be treated as confidential or proprietary ("Confidential Information").

9 2    Exceptions  Information shall not be considered to be Confidential Information if it (i) is already or otherwise becomes publicly known through no act of the receiving party, (ii) is lawfully received from third parties subject to no restriction of confidentiality, (iii) can be shown by the receiving party to have been independently developed by it, (iv) is disclosed by the disclosing party to third parties

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

without restriction on subsequent disclosure or (v) is required to be disclosed in the context of an administrative or judicial proceeding, except that in such case the receiving party agrees to provide the disclosing party with prompt notice of such requirement in order to allow the disclosing party to seek an appropriate protective order

9.3    Term of Confidentiality  Each party's obligations under this Section 9 shall survive the termination or expiration of this Agreement for a period of two (2) years

## 10.    MISCELLANEOUS PROVISIONS

10.1    Entire Agreement.  This Agreement, including all Exhibits, contains the entire understanding of the parties hereto relating to the Products, supersedes any prior written or oral agreement or understandings between the parties with respect to the Products, and cannot be changed or terminated orally. This Agreement may be amended only by a writing signed by the parties hereto

10.2    Enforceability.  The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement

10 3    Assignment.  Neither this Agreement nor the rights or obligations hereunder may be assigned by OEM without the prior written consent of Riverdeep, which consent shall not be unreasonably withheld; provided however, that OEM may assign this Agreement upon the merger of OEM or the sale of OEM's business, all without the consent of Riverdeep, if OEM gives notice to Riverdeep of such assignment  In the event of such an assignment, this Agreement shall be binding upon such successors and assignees

In the event that Riverdeep sells substantially all of the assets of any of its business units by sale, merger, or otherwise, then, Riverdeep may elect to assign the duties and obligations arising under this Agreement with respect to such transferred business or

assets to the purchaser of such business or assets to the extent such sale relates to the Products  In such event, Riverdeep may elect to require OEM to enter into a substantially identical agreement to this Agreement for the transferred Products.

10 4    Independent Contractors.  OEM and Riverdeep shall perform their duties pursuant to this Agreement as independent contractors. Nothing in this Agreement shall be construed to create a joint venture, partnership or other joint relationship between OEM and Riverdeep  Neither party shall have the ability to incur any obligation on behalf of the other party

10.5    Successors.  Subject to Section 10 3 above, all rights and obligations arising out of this Agreement shall inure to the benefit of, and be binding on and enforceable by the parties and their respective successors and permitted assigns

10.6    Currency  All dollar amounts herein are expressed in United States funds.

10 7    Governing Law  This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the Commonwealth of Massachusetts and all claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction within Massachusetts

10 8    Notices  All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made if hand delivered, mailed first class mail, postage prepaid, sent by prepaid telegram (or telex or other facsimile transmission) or sent by express overnight courier service to the address listed above or to such other address as any such party may have designated by like notice forwarded to the other party hereto

10 9    Loss of Rights.  In the event that Riverdeep's rights to any Products expire or are terminated at any time, any rights granted to OEM under this Agreement with respect to such

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only*

000114

Products shall be terminated as of such date and Riverdeep shall not be liable to OEM for any loss or liability in connection with said termination of rights.

      10.10  <u>Press Releases</u>  OEM shall not make any public announcement or issue any press release relating to this Agreement or the services to be provided in connection therewith without the prior written consent of Riverdeep

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund  It is submitted to OEM for discussion purposes only.*

**EXHIBIT C**
**To OEM Agreement Dated March 28, 2002.**
**Acknowledgement of Delivery**

OEM: LOGETICS, INC.

Agreement/Amendment Effective Date:

Agreement/Amendment Number:

OEM hereby acknowledges having received, on or before the Effective Date, (1) a reproducible master copy for each Product listed below and, (2) all other materials Riverdeep is obligated to deliver under the above-referenced Agreement/Amendment.

Product(s):

LOGETICS, INC (OEM)

By: _____

Title: _____

Date: _____

*This document does not constitute an offer or any form of an agreement until it is approved and signed by Broderbund. It is submitted to OEM for discussion purposes only.*

# Tab 3

**LOGETICS INC.**
**1935 CAMINO VIDA ROBLE**
**CARLSBAD, CA 92008**

**MINUTES**
**BOARD OF DIRECTORS MEETING**
**FEBRUARY 23, 2004**

A waiver to the 48-hour notice for a Board of Directors meeting was agreed upon by a quorum of the Directors. The Board of Directors of Logetics Inc (the Company) met at 5:07 PM. Present at the meeting was Thomas E. Holland, the sole director, who is authorized by the By-laws of the Company to act regarding any resolutions or decisions.

A. The following Resolutions were passed by unanimous vote of the Board:

1. The Company will purchase certain assets as described in the attached purchase proposal from San Diego Wholesale Credit Association.

2. Thomas E. Holland is authorized to sign all documents related to the purchase described in 1.

There being no further business, the Board of Directors of SOMC Group Inc. adjourned the meeting at approximately 5:10 PM.

This fairly represents the Minutes of the February 23, 2004, Board of Directors meeting for Logetics Inc.

By: _____
    Thomas E Holland, Secretary

<u>Tab 4</u>

Thomas E. Holland    7-27-2005

Page 10

1  you are intimately familiar with all aspects of
2  Logetics' business, including its relationship, course
3  of dealing and history with Riverdeep; is that correct?
4      A.  Yes.
5      Q.  And I want to ask you a little bit about your
6  history in the course of dealing with Riverdeep.  Who
7  are your primary contacts at Riverdeep?
8      A.  There are many.
9      Q.  Okay.  Many depending on what the type of
10  transaction or --
11      A.  Yes.
12      MR. SLAVITT:  Well, objection.
13      MS. WALLACE:  Okay.
14      MR. SLAVITT:  You can answer.
15  BY MS. WALLACE:
16      Q.  You can answer.
17      A.  Yes, there are many, based on the transaction
18  or protocol or procedure.
19      Q.  Okay.  If it is having to do with OEM sales,
20  who are your primary contacts?
21      A.  It varied, again based on the procedure or
22  process that needed to be completed.
23      Q.  Okay.  In the very next paragraph, Paragraph 4,
24  you list five people.  Are those five people the sum of
25  your primary contacts at Riverdeep?

Page 11

1      A.  Some were.
2      Q.  Okay.  Who of those five would you consider a
3  primary contact of Riverdeep, or a person with whom you
4  had a lot of contact?
5      A.  Mr. Bartlett, Mr. Calver, Mr. Bordon.
6      Q.  Okay.  And Mr. Bartlett is located in
7  Massachusetts, correctly -- correct?  That's where he
8  lives and works?
9      A.  That I don't know.
10      Q.  It is your testimony today that you did not
11  know that Mr. Bartlett lives and works in Massachusetts?
12      A.  It is my understanding, but I don't know it as
13  a fact.  It is my understanding he is located in the
14  northeast, in Boston or Massachusetts.
15      Q.  Okay.  And when you say you don't know it is a
16  fact, is that because you have never been to Boston to
17  see him or --
18      A.  That's correct.
19      Q.  Okay.  That's been your working understanding,
20  that he is located in Massachusetts -- in
21  Massachusetts, in the Boston area?
22      A.  Yes.
23      Q.  And is that also true for Mr. Bordon?
24      A.  I believe so.
25      Q.  Is it your understanding that the OEM sales

Page 12

1  division was located in the Boston, Massachusetts area?
2      A.  That I don't know.
3      Q.  Okay.  Now, you said that Mr. Bordon,
4  Mr. Bartlett were two of your primary contacts at
5  Riverdeep.  How did you communicate with them?
6      MR. SLAVITT:  Objection.
7      You can answer.
8  BY MS. WALLACE:
9      Q.  You can answer.  Did you have -- did you
10  communicate with them?
11      A.  Yes.
12      Q.  And in what mode did you communicate?
13      A.  Telephone.
14      Q.  Anything else?
15      A.  E-mail.
16      Q.  Anything else?
17      A.  I believe that is all.
18      Q.  Did you exchange facsimiles?
19      A.  I am not sure -- I am not sure.
20      Q.  Okay.  And your relationship, business
21  relationship, with Mr. Bartlett, dates to what period?
22  How long have you worked with him?
23      MR. SLAVITT:  Objection.  When you use the term
24  "you," do you mean him personally, in his personal
25  capacity, or do you mean him on behalf of Logetics?

Page 13

1  BY MS. WALLACE:
2      Q.  Why don't we assume, for the purposes of this
3  deposition, that the "you" is you as either a
4  representative of Software of the Month Club or Logetics
5  and --
6      MR. SLAVITT:  Okay.  I will object to that,
7  because he is here both as an individual defendant and
8  on behalf of the corporation.  There are two different
9  motions to dismiss.  I think it will be clearer if you
10  meant him, and if you were talking about the company,
11  you use the company name, or you say you on behalf of
12  Logetics or you on behalf of SOMC.
13      MS. WALLACE:  I think what I am going to do is
14  when I say just you, I am assuming that I am talking
15  about you acting on behalf of Logetics or SOMC.  And if
16  I am asking a question about you personally in some
17  other capacity, I will -- I will tell you that.  So the
18  default is going to be as a corporate representative.
19      MR. SLAVITT:  Well, I will object to that every
20  time, because then the record won't be clear, since it
21  won't be obvious in what capacity he was acting.
22      So she gets to control the deposition.  If she
23  wants to have the transcript this way, you can have it.
24  So if you understand those questions, you can answer
25  them.  If you don't, tell her.

4  (Pages 10 to 13)

Thomas E. Holland    7-27-2005

Page 18

1  ago, correct?
2  A.  Correct.
3  Q.  And I want to direct your attention to
4  Paragraph 5 of that amendment.
5  MS. CATHERWOOD:  And you are referring to
6  amendment No. 1?
7  MS. WALLACE:  I am still on amendment No. 1,
8  correct.
9  BY MS. WALLACE:
10  Q.  Do you see Paragraph No. 5?
11  A.  I do.
12  Q.  Did you have any discussions -- why don't you
13  take a few seconds and read it for me, and tell me when
14  you're done.
15  A.  I have read the paragraph.
16  Q.  Okay.  Did you have any discussions with
17  Riverdeep regarding this language before you entered
18  into the agreement?
19  A.  I don't believe so.
20  Q.  Okay.  Did you have any other communications
21  with Riverdeep regarding this language other than verbal
22  discussions?  Did you have any other communications
23  specifically regarding Paragraph 5?
24  A.  I don't remember.
25  Q.  Okay.  Now, this amendment does not supersede

Page 19

1  the OEM license agreement, correct?
2  MR. SLAVITT:  Objection.  Are you asking him
3  for a legal opinion?
4  MS. WALLACE:  No.
5  BY MS. WALLACE:
6  Q.  In your understanding, did the amendment
7  replace, in its entirety, the 2002 license agreement?
8  A.  Did it replace it?
9  Q.  Correct.
10  A.  I am not sure I know the answer.
11  Q.  Did Riverdeep still have obligations under the
12  2002 agreement, after this amendment was entered into?
13  A.  They had -- yes, there were obligations.
14  Q.  For instance, they were still obligated to
15  provide you with the titles listed in Exhibit A of the
16  2002 agreement?
17  A.  Yes.
18  Q.  And Logetics and Software of the Month Club
19  still had the benefit of sell-off rights, for instance?
20  A.  Yes.
21  Q.  Okay.  There it is, in Paragraph 5, a sentence
22  that says, "This amendment shall be governed as a sealed
23  instrument under California law."  Do you see that?
24  A.  I do.
25  Q.  Did you have any communications with Riverdeep

Page 20

1  regarding the meaning of that term?
2  A.  Yes.
3  Q.  What were those communications?
4  A.  It was my understanding that it was a
5  California corporation, and that was the language that
6  was being put in through legal.
7  Q.  I didn't ask you for your understanding.  I
8  asked you if you had any discussions with Riverdeep
9  regarding that language.
10  MR. SLAVITT:  Objection.
11  BY MS. WALLACE:
12  Q.  You can answer.
13  MR. SLAVITT:  That's not a question.
14  MS. WALLACE:  I want him to answer my previous
15  question, what discussions --
16  MR. SLAVITT:  I think he did answer your
17  previous questions.
18  BY MS. WALLACE:
19  Q.  What discussions did you have with Riverdeep
20  regarding that language?
21  A.  It was a question of does this come under
22  California -- the California corporation -- California
23  law.
24  Q.  Okay.  And who did you have that discussion
25  with?

Page 21

1  A.  Mr. Bartlett.
2  Q.  So your discussion with Mr. Bartlett was
3  whether this agreement would be governed by California
4  law?
5  A.  Correct.
6  Q.  Did you have any other discussions regarding
7  that statement?
8  A.  No.
9  Q.  You state in your affidavit, Paragraph 7, which
10  was deposition Exhibit 1, that you understood that that
11  language that we just were referring to, to mean that
12  California laws and courts would resolve any disputes;
13  is that accurate?
14  A.  Would you please restate it, your question.
15  Q.  I am just pointing you to Paragraph 7 and
16  asking you if that is still an accurate statement.
17  A.  Yes.
18  Q.  Did Riverdeep make any representations that it
19  agreed with that statement in Paragraph 7, that the
20  language, "This amendment shall be governed as a sealed
21  instrument under California law," actually meant that
22  California laws and courts would resolve any disputes?
23  MR. SLAVITT:  Objection.
24  You can answer.
25  THE WITNESS:  I don't remember how it was

6  (Pages 18 to 21)

01d96820-2ae3-4644-9bae-8ba1d2aaa831

Thomas E. Holland    7-27-2005

Page 22

1  addressed.
2  BY MS. WALLACE:
3      Q.  Did Mr. Bartlett, or anybody else from
4  Riverdeep, ever tell you that any disputes under this
5  agreement would take place in California?
6      A.  I don't remember.
7      Q.  I am now going to turn your attention to
8  amendment No. 2, which is right behind amendment No.
9  in Exhibit 3. This amendment also amended the 2002
10  agreement. That's all part of the same exhibit,
11  correct?
12          MR. SLAVITT:  Objection.
13          You can answer.
14          THE WITNESS:  I'm sorry, the question?
15  BY MS. WALLACE:
16      Q.  This is also an amendment to the 2002 license
17  agreement?
18      A.  Correct.
19      Q.  And Mr. Bartlett signed this agreement on
20  behalf of Riverdeep, correct?
21      A.  Yes.
22      Q.  And you signed it on behalf of both Software of
23  the Month Club and Logetics?
24      A.  Yes.
25      Q.  This agreement has a -- also has a similar -- a

Page 23

1  practically identical paragraph, which is Paragraph 4,
2  is practically identical to Paragraph 5 of amendment No.
3  1. It is on the first page, Paragraph 4.
4          MR. SLAVITT:  She is looking at this paragraph
5  (indicating) --
6  BY MS. WALLACE:
7      Q.  Paragraph No. 4 --
8      A.  I believe it is similar. I am not sure it is
9  exact -- I don't believe, unless -- if I can take a
10  chance to look at it, that it is exactly the same.
11      Q.  Why don't you just read Paragraph No. 4.
12      A.  To myself?
13      Q.  Yes, to yourself. And let me know when you are
14  done.
15      A.  It looks similar.
16      Q.  And have you read paragraph No. 4?
17      A.  I did.
18      Q.  Of amendment No. 2?
19      A.  I did.
20      Q.  Did you -- did you have any discussions with
21  Riverdeep that the estate -- that the statement in
22  Paragraph No. 4 of amendment No. 2, "This amendment
23  shall be governed as a sealed instrument under
24  California law," actually meant that California law --
25  laws and courts would resolve any disputes under the

Page 24

1  agreement?
2      A.  I apologize. Could you restate your question?
3      Q.  Sure. The statement in Paragraph No. 4 that
4  "this amendment shall be governed as a sealed instrument
5  under California law," did you have any discussions with
6  Riverdeep regarding that statement?
7      A.  I do not believe so, for amendment No. 2.
8      Q.  Okay. Corollarily then, did you have any
9  statement -- did you have any discussions with Riverdeep
10  that it was your understanding that that statement --
11  that that same statement meant that California laws and
12  courts would resolve any disputes under the 2002
13  agreement?
14      A.  That was my understanding.
15      Q.  My question was whether or not you had any
16  discussions with Riverdeep to that effect.
17      A.  For amendment No. 1?
18      Q.  Amendment No. 2 I am talking about, amendment
19  No. 2.
20      A.  I had no discussions with Riverdeep.
21      Q.  Okay. I am going to hand you what's been
22  marked as deposition Exhibit 2, which is Logetics -- a
23  memorandum of Logetics in support of its motion to
24  dismiss.
25          MS. CATHERWOOD:  Is this Exhibit 3?

Page 25

1          MS. WALLACE:  No. The last one was 3 and now
2  we are back to 2. Sorry for the confusion. But now I
3  can't even find it.
4          MS. CATHERWOOD:  I guess I --
5          MS. WALLACE:  I am about to give you Exhibit 2.
6          MR. SLAVITT:  All right. So this is Exhibit 2.
7          MS. WALLACE:  I am handing out, right now,
8  Exhibit 2.
9          MR. SLAVITT:  Thank you.
10          MS. CATHERWOOD:  So just to clarify, what was
11  attached to Mr. Holland's affidavit as Exhibit 1 is
12  actually Exhibit 3 to this deposition?
13          MS. WALLACE:  Yes. Because I didn't want to
14  make all of the -- yes. Exhibit 1 is the affidavit,
15  Exhibit 2 is the Exhibit 1, and Exhibit 3 is the
16  memorandum that I just handed you. Oh, no, I'm sorry.
17          MS. CATHERWOOD:  Wrong.
18          MS. WALLACE:  Yes, wrong.
19          MS. CATHERWOOD:  We were right before. The
20  memorandum is Exhibit 2. What was Exhibit 1 to the
21  Holland affidavit is Exhibit 3, and the Holland
22  affidavit is Exhibit 1; is that correct?
23          MS. WALLACE:  Correct.
24          MS. CATHERWOOD:  Okay.
25          MS. WALLACE:  Is there something wrong with the

7  (Pages 22 to 25)

01d96820-2ae3-4644-9bae-8ba1d2aaa831

Thomas E. Holland          7-27-2005

---

Page 26

1   exhibit?
2       MR. BALLARD:  Mine ends at Page 16.
3       MR. SLAVITT:  So is the one that was marked as
4   an exhibit --
5       MR. BALLARD:  Which isn't a problem.  But I
6   just wanted to note it.
7       MS. WALLACE:  It looks like all of them do, it
8   looks like.  Let me see what page I wanted to reference.
9       MR. BALLARD:  Hopefully not 17.
10      MS. WALLACE:  It could very well be.
11      Let's state for the record that the memorandum
12  that I just handed you is the first 16 pages of the
13  memorandum.  And I want to direct you to Page 4.  And I
14  apologize for that.  I guess I should have made sure
15  that all the exhibits were completed.
16  BY MS. WALLACE:
17      Q.  And I wanted to direct your attention to
18  footnote 3.  And the first sentence of footnote 3
19  says -- it says that the amendment No. 2 to the SOMC
20  license extended license rights to September 30, 2004 --
21  and then I am going to skip to the last clause -- which
22  notably was the same termination date recited in the
23  Logetics license that superseded it.
24      A.  Okay.  I am trying to follow you.
25      Q.  Let me just read the whole footnote.

---

Page 27

1       A.  So, basically, I am going to read the last
2   paragraph on Page 4?
3       Q.  Just read the footnote.
4       A.  The footnote.  No. 3?
5       Q.  Yes.
6       A.  I have read the footnote.
7       Q.  And that footnote references a Logetics license
8   that superseded an SOMC license; is that correct?
9       A.  Correct.
10      Q.  What was -- I am trying to figure out this
11  Logetics license.  Is that Logetics license the same
12  as --
13      MS. CATHERWOOD:  Counsel, this is the
14  memorandum of points and authorities that the Logetics
15  counsel brought, and there is defined terms on Page 1 of
16  that agreement that are used, so that might be helpful.
17      MS. WALLACE:  I understand there are defined
18  terms, but what I am trying to find out from you -- oh,
19  I'm sorry.
20      Well, no.  What I am trying to find out from
21  you is whether what I am going to mark as deposition
22  Exhibit 4 is in fact --
23      MR. SLAVITT:  Actually, I think really the
24  court reporter needs to do that.
25      MS. WALLACE:  Yes, you are right.  This is

---

Page 28

1   deposition Exhibit 4.
2       (Plaintiff's Exhibit No. 4 was marked.)
3   BY MS. WALLACE:
4       Q.  My question for you is --
5       MR. SLAVITT:  Let him take a minute to look at
6   what you have just marked.
7       THE WITNESS:  Yes, ma'am.
8   BY MS. WALLACE:
9       Q.  Is this deposition Exhibit 4 the Logetics
10  license which is referred to in the memorandum of law in
11  support of Logetics' license and also throughout your
12  affidavit?
13      MR. SLAVITT:  Objection; compound question.
14      You can answer.
15  BY MS. WALLACE:
16      Q.  Why don't you answer first towards footnote No.
17  3.  Is that the same Logetics license?
18      A.  To the best of my knowledge, it is.
19      Q.  Okay.  And is that also -- is this document
20  that I just provided you, deposition Exhibit 4, also the
21  Logetics license to which you refer to in your
22  affidavit?  And feel free --
23      A.  I believe it is.
24      Q.  If you need to look at your affidavit, that's
25  fine.

---

Page 29

1       A.  No, I believe it is.
2       Q.  And you signed this document, deposition
3   Exhibit 4, on the front page, you signed that on behalf
4   of Logetics, Inc., correct?
5       A.  Correct.
6       Q.  And Mr. Bordon, he signed that on behalf of
7   Riverdeep?
8       MR. SLAVITT:  Objection.
9       You can answer.
10      THE WITNESS:  It appears he has.
11  BY MS. WALLACE:
12      Q.  At least that's his signature line?
13      A.  (Inaudible response.)
14      Q.  And Mr. Bordon is located in Massachusetts,
15  correct?
16      A.  That I don't know.
17      Q.  It is your understanding, as you testified
18  earlier, that Mr. Bordon lives and works out of the
19  Massachusetts area?
20      A.  It is my understanding he also works out of
21  Novato.
22      Q.  This is a faxed sheet, correct?
23      A.  Correct.
24      Q.  And sent by Logetics, Inc., can you see on
25  the --

8  (Pages 26 to 29)

Thomas E. Holland          7-27-2005

---

Page 30

1    A.  That is correct.
2    Q.  And it is sent to a 617 area code?
3    A.  That is correct.
4    Q.  And is it your understanding that a 617 area
5  code is a Massachusetts area code?
6    A.  Is it my understanding that a 617 -- not being
7  familiar with area codes, I believe this went to the 617
8  area code.
9    Q.  Correct.  And did you understand that to be in
10  Massachusetts?
11    A.  Yes.
12    Q.  Okay.  And who is Maggie H., do you know?
13    A.  I believe an assistant.
14    Q.  At Riverdeep or at Logetics?
15    A.  Riverdeep.
16    Q.  Okay.  And did you or did you have someone send
17  this fax to Riverdeep?
18    A.  Yes.
19    Q.  I want to direct your attention real quickly --
20    MR. SLAVITT:  Well, actually, I am now going to
21  interpose an objection note, which is now that you are
22  focusing on the fax lines, as opposed to the substance
23  of this document, some of these fax lines indicate this
24  is Page 2 of something.  So since you are not focusing
25  on the substance, but on this particular version, I am

---

Page 31

1  going to object that this is an incomplete exhibit,
2  because we don't have Page 1 of what is being faxed.
3    MS. WALLACE:  That's fine.
4  BY MS. WALLACE:
5    Q.  This appears to be a two-page fax, and this is
6  the second page of the fax, correct?
7    A.  It appears to be.  I see a P2.
8    Q.  Right.
9    MS. CATHERWOOD:  Well, I would just ask for
10  clarification.  Are you -- do you know that it was only
11  a two-page?  This appears to be Page 2 of a document.  I
12  have no idea how long the document is.
13  BY MS. WALLACE:
14    Q.  This is -- let's clear it up.  This is faxed --
15  first page is a fax that Logetics, Inc. sent to
16  Riverdeep, correct?
17    A.  Correct.
18    Q.  And this is Page 2 of that fax?
19    A.  Correct.
20    Q.  Now, I am going to direct you again to
21  deposition Exhibit 2, which is the memorandum.
22    THE REPORTER:  Is that 3?
23    MS. WALLACE:  3.  No, I'm right, it is Exhibit
24  2.
25    THE REPORTER:  I'm sorry.

---

Page 32

1  BY MS. WALLACE:
2    Q.  And I will direct you to Page 11.  And I want
3  to direct you to about three-quarters of the way down
4  the page, in the third paragraph, the third sentence
5  starts within "addition."  And it says, "In addition,
6  Riverdeep lost any right to enforce clauses in this
7  documents because time and again it failed to deliver
8  software titles, artwork and program approvals that it
9  had promised, and lost license rights to other prominent
10  software titles on which the calculation of license fees
11  had been predicated."
12    And I understand that there appears to be some
13  typos in that sentence, but will you please tell me
14  whether this is a full listing of the reasons that
15  Riverdeep lost its right to enforce clauses in this
16  document and also -- okay.  I am going to start all
17  over.
18    When -- do you know, when this sentence says
19  that Riverdeep lost any right to enforce clauses in this
20  documents, what document it is referring to?  And you
21  can read the full paragraph, if that will help you.
22    A.  Documents would refer to the agreement.
23    Q.  The 2004 license agreement that we previously
24  marked as deposition Exhibit 4?
25    A.  Yes.

---

Page 33

1    Q.  And is this a full list of the reasons why
2  Riverdeep lost any right to enforce the clauses in the
3  2004 license agreement?
4    A.  I'm sorry, again.
5    Q.  Is this a full list of the reasons why
6  Riverdeep lost its right to enforce, allegedly, the
7  clauses in the 2004 agreement?
8    MR. SLAVITT:  Objection.
9    But you can answer that question.
10    THE WITNESS:  I don't believe this is totally
11  comprehensive.
12  BY MS. WALLACE:
13    Q.  Okay.  Are there any other reasons?
14    MR. SLAVITT:  Objection.
15    But you can answer.
16    THE WITNESS:  The service and support and the
17  fact that we were building a software club, or going to
18  build software clubs and market into the Riverdeep
19  database to generate revenues, which was not fulfilled.
20  BY MS. WALLACE:
21    Q.  You said service issues; is that correct?
22    A.  That is correct.
23    Q.  You said that the parties were going to enter
24  into membership --
25    A.  A joint venture partnership to build Riverdeep

---

9 (Pages 30 to 33)

01d96820-2ae3-4644-9bae-8ba1d2aaa831

Page 34

1  using Riverdeep assets, building clubs, to go into their
2  marketplace and to market into their existing database
3  to generate revenues and market their products.
4    Q.  Okay.  Is your -- the first point you made
5  regarding service, is that -- that you allege that
6  Riverdeep did not service the 2004 agreement adequately?
7    A.  Correct.
8      MR. SLAVITT:  Objection.
9      MS. WALLACE:  Did you get his answer?
10     THE REPORTER:  Yes.
11  BY MS. WALLACE:
12    Q.  Regarding your second point regarding a joint
13  venture, is that an allegation that Riverdeep did not
14  enter into a separate joint venture with Logetics, or
15  does it relate to the terms of the 2004 agreement?
16     MR. SLAVITT:  Objection.
17     You can answer.
18     THE WITNESS:  I can't.  I apologize.  The
19  question again?
20  BY MS. WALLACE:
21    Q.  Regarding the joint venture that you allege
22  Riverdeep didn't enter into with Logetics --
23    A.  It was this contract, the alleged 2004
24  agreement.
25    Q.  Why did you say the alleged 2004 agreement?

Page 35

1    A.  Wrong term.
2    Q.  There is a 2004 agreement.  Deposition Exhibit
3  4 is the agreement between the parties?
4    A.  Correct.
5    Q.  Where in this agreement does it say the parties
6  will enter into a joint venture?
7      MR. SLAVITT:  Hold on a second.  Let's go off
8  the record for a second.
9      (Discussion held off the record.)
10     MS. WALLACE:  Back on.
11  BY MS. WALLACE:
12    Q.  So I think the question -- last question I
13  asked you was, where in the 2004 agreement do the
14  parties agree to a joint venture?
15    A.  Refer to Page 12.
16    Q.  Is that Riverdeep Bates labeled?
17    A.  Riverdeep 00035.
18    Q.  Okay.
19    A.  And under B, Riverdeep/TLC Club products.
20    Q.  Okay.
21    A.  Products that may be distributed.
22    Q.  Okay.
23    A.  Et cetera.
24    Q.  Okay.
25    A.  In addition, I would refer to Page 16.

Page 36

1    Q.  Which is Riverdeep?
2    A.  Riverdeep 00039.
3    Q.  Okay.
4    A.  Under 1.7, of definitions.
5    Q.  The definition of net receipts?
6    A.  Yes, ma'am.
7    Q.  Refers to a joint venture?
8    A.  Riverdeep/TLC Club.
9    Q.  Okay.  And the third -- the third alleged
10  breach is -- that is not listed in the motion to
11  dismiss, is market into existing -- I can't read my own
12  handwriting.
13    A.  It is marketing.
14    Q.  Just joint marketing between the parties?
15    A.  Marketing into the Riverdeep database.
16    Q.  Okay.  And is that agreement contained within
17  the 2004 license agreement?
18    A.  I do not believe it is.
19    Q.  Okay.  I want to point to you -- and I am still
20  looking at deposition Exhibit 4.  I want to point your
21  attention to Exhibit B, Paragraph 6.1A, which is -- can
22  be located at Riverdeep 00040.
23    A.  Yes, ma'am.
24    Q.  And in that provision, it states -- I -- and I
25  am going to read it for you, "Except as provided for in

Page 37

1  section 6.2 below, if either party materially breaches
2  any provision of this agreement and such breach has not
3  been cured within 30 days after the other party has
4  given written notice of such breach, the non-breaching
5  party may terminate this agreement."
6      MR. SLAVITT:  She is just asking you has she
7  read that correctly.
8      THE WITNESS:  I believe so.
9  BY MS. WALLACE:
10    Q.  Has Logetics, Inc. given written notice to
11  Riverdeep of a material breach pursuant to Paragraph
12  6.1A?
13    A.  No.
14    Q.  After these breaches that are described both in
15  the Logetics motion to dismiss and which you just
16  articulated for us earlier, the three, did Logetics,
17  Inc. continue to manufacture Riverdeep software?
18    A.  Yes.
19    Q.  And did you continue -- did Logetics, Inc.
20  continue to sell Riverdeep software?
21    A.  Yes.
22      MS. WALLACE:  Can I take a two-minute break?
23      MR. SLAVITT:  Sure.
24      (Recess.)
25      MS. WALLACE:  Back on the record.

10  (Pages 34 to 37)