UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

RIVERDEEP, INC., Delaware Limited Liability )
Company,                                    )
      Plaintiff                            )
                                            )
    v.                                    )    CIVIL ACTION
                                            )    NO. 05-10816-REK
SOMC GROUP, INC., a California Corporation, )
LOGETICS, INC., a California Corporation,   )
SAN DIEGO WHOLESALE CREDIT                  )
ASSOCIATION, a California Corporation doing )
business as San Diego Credit Association,   )
READY, SET, GROW!, a California Corporation, )
JELLY BEAN ISLANDS, a California Corporation,)
LEAP AHEAD, a California Corporation, and   )
THOMAS E. HOLLAND,                          )
      Defendants                           )
_____ )

**Opinion**
September 13, 2005


**Keeton, <u>Senior District Judge</u>.**


## I.  Pending Matters

    Pending for decision are matters related to the following filings:

    (1) Defendant San Diego Wholesale Credit Association's Motion to Dismiss

Amended Complaint (Docket No. 37, filed June 3, 2005);

    (2) Memorandum in Support of Motion of Defendant San Diego Wholesale Credit

Association's Motion to Dismiss Amended Complaint (Docket No. 39, filed June 3, 2005);

    (3) Motion of Logetics, Inc. to Dismiss or Transfer (Docket No. 40, filed June 16,

2005);

(4) Memorandum of Logetics, Inc. in Support of Its Motion to Dismiss or Transfer (Docket No. 41, filed June 17, 2005);

(5) Declaration of Terri Lorene King (Docket No. 42, filed June 17, 2005);

(6) Affadavit[sic] of Thomas E. Holland (Docket No. 43, filed June 17, 2005);

(7) Opposition to San Diego Whole Credit Association's Motion to Dismiss (Docket No. 45, filed June 17, 2005);

(8) Affidavit of Irwin B. Schwartz in Support of Opposition to Motion to Dismiss (Docket No. 46, filed June 17, 2005);

(9) Assented-to Motion to Extend Time to File Responsive Pleading (Docket No. 50, filed June 29, 2005);

(10) [Proposed] Order on Assented-to Motion to Extend Time to File Responsive Pleading (Docket No. 51, filed June 29, 2005);

(11) Thomas E. Holland's Motion to Dismiss with Affidavit and Memorandum in Support (Docket No. 52, filed July 6, 2005);

(12) Motion for Entry of Default Against Defendant SOMC Group, Inc. (Docket No. 55, filed July 18, 2005);

(13) Affidavit of Irwin B. Schwartz in Support of Motion for Entry of Default Against Defendant SOMC Group, Inc. (Docket No. 56, filed July 18, 2005);

(14) [Proposed] Default By Clerk (Docket No. 57, filed July 18, 2005);

(15) Assented-to Motion to File Single Overlength Opposition Brief to Logetics' and Holland's Motions to Dismiss (Docket No. 59, filed July 22, 2005);

(16) Memorandum in Opposition to Holland's and Logetics' Motions to Dismiss (Docket No. 62, filed August 1, 2005); and

(17) Affidavit of John Bartlett (Docket No. 63, filed August 1, 2005).


## II. Factual and Procedural Background

Plaintiff Riverdeep, Inc. ("Riverdeep"), publishes popular educational software titles such as "Reader Rabbit," "Where in the World is Carmen Sandiego," and "Oregon Trail." Riverdeep has brought suit against seven named defendants. Two defendants, SOMC Group, Inc. ("SOMC") and Logetics, Inc. ("Logetics"), formerly had contractual arrangements with Riverdeep or its predecessor Broderbund LLC ("Broderbund") to manufacture and distribute Riverdeep's software titles. Two contractual arrangements are at issue in this case, a licensing agreement entered into in 2002 (the "2002 Agreement") and a licensing agreement entered into in 2004 (the "2004 Agreement"). SOMC, facing financial difficulties, apparently assigned all of its assets to defendant San Diego Wholesale Credit Association ("SDWCA"), which, in turn, sold some of those assets to Logetics, including some of Riverdeep's software titles. Three other defendants (Ready, Set, Grow!; Jelly Bean Islands; and Leap Ahead) are California corporations that sell Riverdeep software titles over the internet and purport to be affiliated with Logetics in some manner. Finally, Thomas E. Holland is also named as a defendant. Holland is president of both SOMC and Logetics.

Riverdeep filed the original complaint on April 22, 2005 (Docket No. 1). On May 10, 2005, Riverdeep filed a motion seeking a temporary restraining order (Docket No. 2). That motion sought an order from this court to prevent the defendants "from unlicensed copying and

distribution of Riverdeep software and also to . . . [have] the Defendants . . . return or place in escrow Riverdeep's proprietary materials including but not limited to the gold master discs from which the Defendants can make additional copies of Riverdeep's software." (Docket No. 2 at 1.) Riverdeep also sought certain discovery that related to its ability to file a motion for a preliminary injunction and that the defendants maintain certain documents. (Docket No. 2 at 1–3.)

On May 17, 2005, I heard argument on Riverdeep's TRO motion. During the hearing I ordered, among other things, that:

> (1) The Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, are hereby restrained and enjoined from copying or distributing any Riverdeep software.
> (2) Defendants must place in escrow Riverdeep's proprietary information, including but not limited to its gold master disks.
> (3) Defendants must deliver all documents responsive to the document requests identified as Exhibits A and B to Plaintiff's [Proposed] Order (Docket No. 4, filed May 10, 1005) to the office of Plaintiff's counsel no later than 48 hours after the court makes this Order at this hearing today.
> (4) Defendants must preserve and hold inviolate any documents and communications relating to the assignment, manufacturing, sale, distribution, or copying of Riverdeep software.

(Docket No. 10, filed May 17, 2005).

Also on May 17, 2005, Riverdeep filed an amended complaint. (Docket No. 12.) That complaint is the focus of the motions presently pending before the court. The amended complaint alleges the following claims:

> • Copyright Infringement—Against Logetics, SOMC, Ready, Leap Ahead, Jelly Bean, and Holland
> • Copyright—Against SDWCA
> • Breach of Contract—Against Logetics and SOMC
> • Fraudulent Conveyance—Against SOMC, SDWCA, and Logetics

4

- Breach of Contract—Against Logetics
- Specific Performance— Against Logetics and SOMC
- Fraud—Against Logetics and Holland
- Breach of Fiduciary Duty—Against SDWCA
- Declaratory Judgment—Against SDWCA
- Breach of Fiduciary Duty—Against Holland

(Docket No. 12).

On June 3, 2005, SDWCA filed a motion to dismiss the amended complaint (Docket No. 37).  The motion seeks dismissal on three grounds: (1) this court does not have personal jurisdiction over SDWCA, (2) venue is improper, and (3) Riverdeep fails to state a claim against SDWCA.  The motion also seeks, in the alternative, transfer of the case pursuant to 28 U.S.C. § 1404(a).  Riverdeep opposes this motion (Docket No. 45).

On June 16, 2005, Logetics filed its own motion to dismiss or, alternatively, to transfer the case (Docket No. 40).  The motion seeks dismissal of the complaint for a lack of personal jurisdiction and for improper venue.  The motion also seeks dismissal of the fraudulent conveyance claim and the fraud claim against it.  Finally, the motion seeks transfer of the case pursuant to § 1404(a).  Riverdeep opposes this motion, too (Docket No. 62).

Holland filed his own motion to dismiss on July 6, 2005 (Docket No. 52).  Holland also seeks dismissal based on a lack of personal jurisdiction and for lack of venue.  In addition, Holland contends that the fraudulent conveyance and breach of fiduciary duty claims against him must be dismissed for failure to state a claim.  Riverdeep opposes this motion as well (Docket No. 62).

Riverdeep also has pending motions.  On June 29, 2005, Riverdeep filed an assented motion for an extension of time (Docket No. 50).  This motion was mooted by a

subsequent allowance of a motion by Riverdeep to further extend time although the motion is still

listed as pending on the docket.  On July 18, 2005, Riverdeep filed a motion for entry of default

against SOMC based on SOMC's failure to timely respond to the amended complaint (Docket

No. 55).  No opposition has been filed to this motion.

On August 2, 2005, I heard oral argument on the pending motions.

## III. Analysis

### A. Motions to Dismiss/Transfer

#### 1. Introduction

As a preliminary matter, I will allow Riverdeep's motion to extend time to file a

responsive pleading (Docket No.50), as well as its motion to file an over length brief (Docket No.

59).

Turning to the merits, my normal practice is to address pending motions in the

order that they are filed.  SDWCA, Logetics, and Holland (collectively "defendants"), however,

all claim that I lack personal jurisdiction and that the case is brought in the wrong venue; Logetics

and SDWCA contend that, pursuant to § 1404(a), it is in the interests of justice to transfer this

case to the Southern District of California.  Therefore, I will address the issues raised in the

pending motions as follows: first, I will address the contentions by the parties concerning the

court's exercise of personal jurisdiction; second, I will address whether venue properly lies in the

District of Massachusetts; third, I will address whether transfer is appropriate pursuant to §

1404(a); and fourth, I will address the Rule 12(b)(6) arguments of the parties.

Although I find that I have personal jurisdiction over Logetics and Holland and

that this court is a proper venue for the claims against them, I find that the claims against SDWCA must be dismissed because of a lack of personal jurisdiction. Therefore, I will allow SDWCA's motion insofar as I will dismiss without prejudice all of the claims against SDWCA. In light of my finding that I lack jurisdiction over SDWCA, I find that this is one of the rare circumstances where a case should be transferred despite the terms of forum selection clauses. Therefore, I will allow Logetics' motion to transfer the case to the Southern District of California pursuant to § 1404(a). In light of these rulings, I will deny without prejudice the defendants' motions as they pertain to whether substantive claims should be dismissed for failure to state a claim and also Riverdeep's motion for the entry of a default judgment against SOMC.

**2. Personal Jurisdiction**

**i. Introduction**

The defendants contest this court's exercise of personal jurisdiction over them. Riverdeep's amended complaint asserts subject matter jurisdiction based upon 28 U.S.C. § 1338 and 28 U.S.C. § 1367. Since this case arises under the court's original jurisdiction, the question of personal jurisdiction, as a constitutional matter, is governed by the Fifth Amendment. See United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1992); Catrone v. Ogden Suffolk Downs, Inc., 647 F. Supp. 850, 852 (D. Mass. 1986). This constitutional inquiry is based upon sufficient nationwide contacts. United Elec., 960 F.2d at 1085.

Even though little question exists concerning whether haling the defendants into this court violates the Fifth Amendment since all the parties to this case are residents of the United States and were served within the United States, that does not mean that I have jurisdiction over

the defendants.  The *exercise* of this court's jurisdiction is circumscribed by the Federal Rules of

Civil Procedure.  Id. at 1085–86.  Rule 4(k) of the Federal Rules of Civil Procedure notes in

relevant part that:

> (1) Service of a summons or filing a waiver of service is effective to
> establish jurisdiction over the person of a defendant (A) who could
> be subjected to the jurisdiction of a court of general jurisdiction in
> the state in which the district court is located . . . .

Id.  The focus of my inquiry then must be on whether a state court in Massachusetts would be

authorized by the Due Process Clause of the Fourteenth Amendment and by state law to subject

the defendants to its jurisdiction.

### ii. Logetics

#### a. Introduction

Logetics claims that this court lacks personal jurisdiction over it.  Riverdeep

contends that Logetics consented to personal jurisdiction by agreeing to contracts that contained

forum selection clauses and also that Logetics has sufficient minimum contacts with

Massachusetts to support the exercise of personal jurisdiction over it by this court.

#### b. Level of Scrutiny

In order to analyze the jurisdiction issue, I must first determine what level of

scrutiny I will apply.  The inquiry into whether a plaintiff has sufficiently established the existence

of personal jurisdiction is governed by one of three standards.  See Boit v. Gar-Tec Products,

Inc., 967 F.2d 671, 674–78 (1st Cir. 1992).  The first standard is the prima facie test.  This test

"permits the district court to consider only whether the plaintiff has proffered evidence that, if

credited, is enough to support findings of all facts essential to personal jurisdiction. " Foster-

Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (quotation marks omitted). This inquiry is akin to the standard used in the summary judgment setting. See id. The test is "a useful means of screening out cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus." Id. The second method is the traditional preponderance-of-the-evidence standard that requires the taking of evidence and the finding of facts by a preponderance of the evidence. Id. at 145–46. Courts use this method "when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are patently incredible[.]" Id. at 146 (quotation marks omitted). A problem that arises with this method is that the factual findings of the court "ordinarily will have preclusive effect, and, thus, at least in situations in which the facts pertinent to jurisdiction and the facts pertinent to the merits are identical, or nearly so, profligate use of the preponderance method can all too easily verge on a deprivation of the right to trial by jury." Id. When the merits and the jurisdictional questions are closely intertwined but the competing factual claims are sufficiently at odds, a middle course is available. Id. This middle course, the "likelihood standard," involves "engaging in some differential factfinding, limited to probable outcomes as opposed to definitive findings of fact, thereby skirting potential preclusionary problems while at the same time enhancing the courts' ability to weed out unfounded claims of jurisdiction." Id.

On the record before me, the likelihood standard of inquiry is the most appropriate standard for analyzing whether I have personal jurisdiction over Logetics. Riverdeep's contention that I should conduct my inquiry pursuant to the prima facie standard is without merit. Riverdeep's arguments in favor of finding jurisdiction are based, at least in part, on the validity of certain forum selection clauses contained in two contracts, the 2002 Agreement and the 2004

Agreement. Riverdeep concedes in its opposition to Logetics' motion that "Riverdeep's . . . claims against Logetics for copyright violation, breaches of the 2002 Agreement and the 2004 Agreement, fraudulent conveyance, specific performance and fraudulent inducement" relate to the contracts (Mem. in Opp., Docket No. 62, at 12). In addition, Logetics colorably contests the validity of these contracts. Since sufficient question exists concerning whether the forum selection clauses are actually binding on Logetics, I will not proceed based upon the prima facie standard. Moreover, the preponderance-of-the-evidence standard is not appropriate because of possible preclusion issues.

### c. Consent—Forum Selection Clauses

I will now turn my attention to Riverdeep's contention that Logetics consented to jurisdiction based upon its alleged agreement to the forum selection clauses in the 2002 and 2004 Agreements. Riverdeep contends that Logetics was a party to both the 2002 and 2004 Agreements. Logetics does not dispute this claim and Logetics' name appears on both of the contracts. Riverdeep also contends that the 2002 and 2004 Agreements contain forum selection clauses setting Massachusetts as the proper forum for suits related to the two contracts and that these clauses are binding on Logetics. Logetics *does* contest these assertions.

Massachusetts law and the Fourteenth Amendment have substantially identical standards for determining whether a forum selection clause is sufficient to consent to jurisdiction. Under Massachusetts law, a forum selection clause is enforceable if it is "fair and reasonable." Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d 741, 743 (Mass. 1995); Leasecomm Corp. v. Crockett, 1998 Mass. App. Div. 6, 1998 WL 15935, *2 (Mass. App. Div. Jan. 13, 1998). For Fourteenth Amendment purposes, a forum selection clause is sufficient to allow the exercise of

jurisdiction "where such forum-selection provisions have been obtained through 'freely

negotiated' agreements and are not 'unreasonable and unjust.'" Burger King Corp. v. Rudzewicz,

471 U.S. 462, 472 n.14 (1985) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15

(1972)). Because it is possible that California law governs the enforceability of one of the forum

selection clauses at issue in this case, I also find that California law treats the enforceability of

forum selection clauses in substantially the same manner that Massachusetts and federal law do.

See Smith, Valentino & Smith, Inc. v. Superior Court, 131 Cal. Rptr. 374, 377 (Cal. 1976).

        Although, as noted above, the plaintiff has the burden of establishing the existence

of jurisdiction, the analysis is slightly different where a forum selection clause is involved. Once

the plaintiff establishes that a defendant is governed by a forum selection clause under the

appropriate jurisdictional standard:

> The Bremen rule, cited with approval by the Supreme Judicial
> Court, imposes a heavy burden of proof . . . upon the party resisting
> enforcement of a forum selection clause to establish that its
> enforcement under the circumstances of the case is clearly
> unreasonable because of fraud, undue influence, overweening
> bargaining power or such serious inconvenience in litigating in the
> selected forum that the defendant is effectively deprived of his day
> in court.

See Graphics Leasing Corp v. The Y Weekly, 1991 Mass. App. Div. 110, 1991 WL 154794, *3

(Mass. App. Div. Jul. 31, 1991).

        Addressing the 2002 Agreement, Logetics contends that the forum selection clause

contained in the contract is not now binding due to subsequent amendments that contain clauses

that supercede the forum selection clause in the 2002 Agreement. Riverdeep contests Logetics'

construction of the amendments. A brief review of the texts of the 2002 Agreement and

amendments demonstrate why Logetics' argument is not persuasive at this stage of the

proceedings.

> Paragraph 10.7 of the 2002 Agreement states:
>
> <u>Governing Law</u>.  This Agreement and its validity, construction and performance shall be governed in all respects by the laws of the Commonwealth of Massachusetts and all claims and/or lawsuits in connection with this Agreement must be brought in a court of competent jurisdiction within Massachusetts.

Paragraph 5 of Amendment No. 1 to the 2002 Agreement provides that:

> This Amendment constitutes the entire agreement of the parties and supersedes any and all prior and contemporaneous oral and/or written agreements concerning the subject matter hereof.  Except as specifically modified herein, all terms and provisions of the Agreement remain in full force and effect.  This Amendment shall be governed as a sealed instrument under California law. Capitalized terms used in this Amendment and not defined herein shall have the same meaning as set forth in the Agreement.

Paragraph 4 of Amendment No. 2 to the 2002 Agreement contains identical language except that

"supersedes" is spelled "supercedes."

The amendments contain a choice of law provision, not a forum selection

provision.  Even crediting Logetics' argument that the provisions in the amendments cover the

whole 2002 Agreement and are not, as Riverdeep contends, simply limited to the provisions of the

Amendments, Massachusetts courts would still have jurisdiction over the case.  At most, Logetics

might contend that the enforceability of the forum selection clause should be governed by

California law.  <u>See</u> <u>New England Technical Sales Corp.</u> v. <u>SEEQ Technology, Inc.</u>, 1996 Mass.

App. Div. 191, 1996 WL 671454, *3 (Nov. 8, 1996).

12

I now turn my attention to the 2004 Agreement.  Paragraph 10.7 of the 2004

Agreement contains a forum selection clause that provides:

> Governing Law.  This Agreement and its validity, construction and
> performance shall be governed in all respects by the laws of the
> Commonwealth of Massachusetts and all claims and/or lawsuits in
> connection with this Agreement must be brought in a court of
> competent jurisdiction within Massachusetts.

Logetics seeks to avoid the forum selection clause by contending that, although it appears that

Holland executed the 2004 Agreement on behalf of Logetics, the contract was never executed

because a condition precedent to the formation of the contract never occurred.  In addition,

Logetics contends that, even if the contract was formed, Riverdeep never fulfilled its obligations

under the contract and as a result cannot enforce the forum selection clause in the contract.

Riverdeep assumes the validity of the 2004 Agreement and only focuses on whether its alleged

failure to fulfill its contractual obligations precludes it from enforcing the forum selection clause.

Logetics' second argument, concerning whether Riverdeep can enforce the forum

selection clause, is without merit.  As explained above, Massachusetts and the Due Process

Clause of the Fourteenth Amendment allow the finding of jurisdiction based upon a party's

consent to a forum selection clause.  Another party's breach of a contract ordinarily does not

amount to the type of situation that will lead a court to ignore an otherwise valid forum selection

clause.  See Graphics Leasing Corp, 1991 WL 154794 at *3 (noting that a court will not enforce

a forum selection clause when it would be unreasonable to do so because of "fraud, undue

influence, overweening bargaining power or such serious inconvenience in litigating in the

selected forum that the defendant is effectively deprived of his day in court").

13

Thus, the enforceability of the forum selection clause in the 2004 Agreement turns upon whether the 2004 Agreement was ever formed by the parties. This question turns on whether the failure to complete Exhibit C amounts to the failure to complete a condition precedent to the formation of the contract. See Tilo Roofing Co. v. Pellerin, 122 N.E.2d 460, 462 (Mass. 1954) (noting that if a condition precedent to the formation of the contract "is not shown to have been performed, the writing does not become a binding obligation"); see also City of Haverhill v. George Brox, Inc., 716 N.E.2d 138, 141 (Mass. App. Ct. 1999). Although the 2004 Agreement purports to be an integrated agreement (Aff. of Schwartz, Docket No. 43, Exh. 2, Exh. B at ¶10.1), parol evidence is admissible to determine whether a condition precedent to the formation of the contract exists. Tilo, 122 N.E.2d at 462. Such "[e]xtrinsic evidence of a condition precedent must indicate a clear intent which is expressly stated." Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 577 N.E.2d 283, 289 n.5 (Mass. 1991) Therefore, in order to determine whether Exhibit C is a condition precedent to formation, I look to the intent of the parties and consider "the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances." Massachusetts Mun. Wholesale Elec. Co., 577 N.E.2d at 288.

Looking at the record, for the purposes of this jurisdictional inquiry, I find that Exhibit C was not a condition precedent to the formation of the 2004 Agreement. Logetics does not contest that Holland signed the first page of the 2004 Agreement. Instead, Logetics' argument appears to be that, although Holland signed the first page of the 2004 Agreement, it was understood by the parties that the 2004 Agreement would not be binding until Exhibit C to the contract was executed. The evidence proffered by Logetics is not persuasive.

14

First, nothing in the structure of the 2004 Agreement indicates that the parties intended Exhibit C to be a condition precedent to the formation of the contract.  See Massachusetts Mun. Wholesale Elec. Co., 577 N.E.2d at 289 (relying in part on the fact that the court could not find "any clear intention by the parties to create the alleged condition precedent" in the relevant agreements to hold that no condition precedent had been proven to exist).  The relevant part of the 2004 Agreement states:

> NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Riverdeep and OEM do hereby agree to the terms and conditions set forth herein and in the attached Exhibit A, Exhibit B and Exhibit C, the provisions of which are incorporated herein by this reference.

Although this section incorporates Exhibit C, the plain words of the contract do not condition the contract on the existence of Exhibit C.  This finding goes a long way towards establishing no condition precedent exists.  See id. at 48 & n.5 (relying primarily on the finding that the clear terms of the agreements did not manifest an intent by the parties to create a condition precedent in finding that no condition precedent existed, although also noting that the extrinsic evidence of such a condition did not show "a clear intent which is expressly stated").

Second, the extrinsic evidence supports finding that the execution of Exhibit C was not a condition precedent.  Logetics attempts to establish that the formation of the 2004 Agreement was conditioned on the execution of Exhibit C.  In order to establish this point, Logetics proffers e-mails sent in May and August 2004 as well as supporting affidavits from Holland and King to show that Holland refused to execute the 2004 Agreement because of problems Logetics had in the past with Riverdeep making deliveries and entered into a different agreement around August 2004.

15

The record as a whole, however, supports finding that the execution of Exhibit C was not a condition precedent to the formation of the 2004 Agreement and that the 2004 Agreement was formed.  The fact that Holland never avers in his affidavit that he believed that the execution of Exhibit C was a condition precedent to formation of the contract does not help Logetics' case.  Holland's own statements, moreover, support finding that Exhibit C was not a condition precedent.  Holland avers that in a telephone conversation following the August 2004 e-mails he told Bartlett that "because Riverdeep had not delivered on its promises since many titles provided on the title list could not be distributed by Logetics . . ., Logetics would be willing to pay royalties to Riverdeep on a title sold or a "runrate" basis only."  This reference to promises on the part of Riverdeep implies that Holland believed that the 2004 Agreement was a binding contract.  This inference is buttressed by the declaration of King, the Executive Vice President of Marketing for Logetics.  She states that "Riverdeep . . . failed to deliver a reproducible master copy of all the computer software titles that Riverdeep *promised* it would provide to Logetics in a certain OEM License Agreement between Logetics and Riverdeep dated on or about March 28, 2004 . . ." and that "[a]s late as February 18, 2005, John Bartlett . . . acted as though the Logetics License *was still in effect*[.]"  These statements indicate that King, believed that Logetics executed the 2004 Agreement.

Logetics' contention that the first page of a two-page fax is missing is not sufficient to undermine this inference.  Most likely, the first page was simply a cover page.  Moreover, Logetics does not contend that anything material in fact appeared on the first page *it sent*, only that it exists.

Given the language of the contract and the lack of extrinsic evidence supporting Logetics' contention that the execution of Exhibit C was a condition precedent to formation of the 2004 Agreement, I find that, for the purposes of this jurisdictional inquiry, the execution of Exhibit C was not a condition precedent to the formation of the contract.  See id. at 48 n.5.

Because I find the forum selection clauses in the 2002 and 2004 Agreements to be valid for purposes of this jurisdictional inquiry, I do not find it necessary to conduct a traditional minimum contacts inquiry.  I find that Riverdeep has sufficiently shown jurisdiction exists based upon the forum selection clauses, and that Logetics has not provided sufficient reason not to enforce those forum selection clauses.

### iii. SDWCA

SDWCA also contends that this court lacks the ability to exercise personal jurisdiction over it.  Riverdeep contends that this court can exercise personal jurisdiction over SDWCA because SDWCA is bound by the terms of the 2002 Agreement and its forum selection clause.  As noted above, for the purposes of these motions I have found that the 2002 Agreement contains a valid forum selection clause.

Riverdeep's contention that SDWCA is bound by the forum selection clause is premised upon the assertion that SOMC assigned all of its assets to SDWCA and that SDWCA is bound by the forum selection clause in the 2002 Agreement as an assignee of the rights under that contract.  SDWCA's defense is predicated upon the contention that there is an anti-assignment provision in the 2002 Agreement that prohibited the transfer of any obligations arising from the 2002 Agreement and also that the assignment did not actually include any of the obligations under the 2002 Agreement.

The parties' arguments miss a central issue that precludes the exercise of personal jurisdiction over SDWCA by this court.  Since the 2002 Agreement is a copyright licensing agreement that provided SOMC with a non-exclusive license, SOMC could not transfer the license to SDWCA as a matter of law.  See In re Patient Educ Media, Inc., 210 B.R. 237, 240 (Bkrtcy. S.D.N.Y. 1997); see also Ray Nimmer, A Modern Template for Discussion, 2 DePaul Bus. & Com. L.J. 623, 644 (2004) (noting "that, as a matter of federal common law, non-exclusive licensees cannot transfer their rights under a license without the consent of the licensor"); cf. Institut Pasteur v. Cambridge Biotech Corp., 104 F.3d 489 (1st Cir. 1997) (accepting implicitly that a non-exclusive patent license could not be assigned); In re CFLC, Inc., 89 F.3d 673, 678–80 (9th Cir. 1996) (holding that assignability of patent licenses is a question of federal law and that non-exclusive patent licenses are personal to the licensee and not transferable).  But see Superbrace, Inc. v. Tidwell, 21 Cal.Rptr.3d 404, 393–414 (Cal. App. Dist. 4 2004) (citing Farmland Irr. Co. v. Dopplemaier, 308 P.2d 732 (Cal. 1957) for the proposition that state law governs the assignability of patent licenses and holding that non-exclusive licenses can be transferrable under California law).  Consequently, SDWCA did not accede to the forum selection clause contained in the licensing agreement that created SOMC's nonexclusive license.

Since the only ground Riverdeep asserts for the exercise of jurisdiction over SDWCA is the assignment from SOMC and the record makes it abundantly clear that SDWCA does not otherwise have sufficient contacts with Massachusetts to authorize jurisdiction either under Massachusetts law or the Fourteenth Amendment, the claims against SDWCA must be dismissed for lack of personal jurisdiction.

### iv. Holland

The final party to contest this court's exercise of personal jurisdiction is Holland. Holland contends that he lacks sufficient contacts with Massachusetts to justify the exercise of personal jurisdiction. Riverdeep contends that this court can exercise personal jurisdiction because (1) the forum selection clauses are applicable to Holland even though he signed the contracts in his corporate capacity and (2) Holland purposefully availed himself of this forum by negotiating contracts with individuals in Massachusetts. In addressing these issues, I am cognizant of the fact that Riverdeep has not asserted that I should pierce either Logetics' or SOMC's corporate veil or find that Logetics or SOMC are alter egos of Holland. Therefore, I will not examine whether those principles are applicable in this case at this time. See Debreceni v. Bru-Jell Leasing Corp., 710 F. Supp. 15, 22 (D. Mass. 1989).

Although Riverdeep places primary emphasis on its argument that Holland can be personally bound by the forum selection clauses in the 2002 and 2004 Agreements, I will first address whether I have the power to exercise personal jurisdiction over Holland due to his contacts with Massachusetts. I do so for three reasons. First, it is not clear whether Massachusetts law would hold a corporate officer bound by a forum selection clause he or she signed in his or her corporate capacity. See Leasecomm Corp. v. Crockett, 1998 WL 15935, *4 (Mass. App. Div. Jan. 13, 1998) (finding that corporate officer can be held to forum selection clause in lease contract because of the nexus between that contract and agreement by the corporate officer to serve as guarantor of the lease without even addressing the fact that the officer signed the lease contract in his corporate capacity). Second, to the extent that California law might govern the enforceability of the 2002 Agreement, I would have to resolve a sticky conflict of law/contractual interpretation issue that has not been well briefed, and I find that I

19

should avoid these issues at this stage of the proceedings if possible.  Third, since the party

seeking to avoid the forum selection clause in this case is the defendant, it is possible that the

"closely related" theory of consent to a court's jurisdiction that holds in some circumstances a

party closely related to a contract can be held to a forum selection clause in the contract and  that

Riverdeep relies upon to bind Holland to the forum selection clauses is not applicable.  See

Slaihem v. Sea Tow Bahamas Ltd., 148 F. Supp. 2d 1343, 1348 (S.D.Fla. 2001).

 Since the validity of the 2002 and 2004 Agreements are not at issue in the

minimum contacts analysis and the parties do not dispute the essential factual issues concerning

Holland's contacts with Massachusetts, I will analyze whether I have personal jurisdiction over

Holland pursuant to the prima facie standard.  See Foster-Miller, Inc., 46 F.3d at 145–46.

 The Massachusetts long-arm statute authorizes the exercise of jurisdiction in this

case.  Massachusetts authorizes the exercise of personal jurisdiction in cases where "a cause of

action in law or equity" arises from a person's "transacting any business in this commonwealth."

Mass. Gen. Laws ch. 223A, § 3(a).  This provision is generously construed in favor of authorizing

the exercise of jurisdiction.  United Elec., Radio and Mach. Workers of America v. 163 Pleasant

Street Corp., 960 F.2d 1080, 1087 (1st Cir. 1992).  "The test focuses . . . upon whether the

defendant attempted to participate in the commonwealth's economic life."  Id.  Acts such as

mailing application information and an acceptance letter can be sufficient.  Id. citing Hahn v.

Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983).  Holland made phone calls and sent e-

mails and faxes to individuals in Massachusetts in order to negotiate the 2002 and 2004

Agreements with knowledge that the individuals were in Massachusetts.  The claims against

Holland, particularly the one for fraud, arise from these contacts.

I now turn my attention to the due process inquiry.  Under the Due Process Clause of the Fourteenth Amendment, a court may exercise personal jurisdiction over a non-resident defendant only where the defendant has sufficient minimum contacts with the forum state such that maintenance of the suit does not "offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Under First Circuit precedent, three prongs are relevant with respect to this inquiry: (1) the claim must arise out of or relate to the defendant's activities in the forum state; the defendant's contacts in the forum state must represent a purposeful availment of the privilege of conducting activities in that state, invoking the benefits and protections of the state's laws, making it foreseeable that the defendant would be haled into the state's courts; and (3) the exercise of jurisdiction must be reasonable.  Pritzker v Yari, 42 F.3d 53, 60 (1st Cir. 1994).  After applying these prongs, I rule that exercising personal jurisdiction over Holland comports with due process requirements.

With respect to the first prong, the plaintiff's claims against Holland do relate to Holland's activities in the forum state.  Holland points out that, for the purposes of this case, Riverdeep does not even claim that Holland stepped foot in Massachusetts (Holland's Mem. in Supp. of Mot. to Dismiss, Docket No. 52, at 6–7).  "When physical presence is lacking, the [c]ourt looks for some other indication that the defendant reached into the forum, such as mail or telephone contacts."  Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 113 (D. Mass. 2003) citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).  Holland is accused of fraudulently withholding information from Riverdeep during negotiations over the 2004 Agreement, and Holland contacted individuals in Massachusetts as part of the negotiations over this contract.  In addition, Holland is accused of conducting a fraudulent

21

transfer of Riverdeep software. Holland's company SOMC was licensed to sell the software

pursuant to a license Holland negotiated with people in Massachusetts.

Under the second prong, I must decide whether Holland purposefully availed

himself of the privilege of conducting activities in Massachusetts. Holland's contacts must be

voluntary; they may not be imposed by another party. Burger King, 471 U.S. at 475. The

contacts must be such that Holland could reasonably foresee the possibility of being haled into

Massachusetts' courts. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Holland entered into the 2002 Agreement with Broderbund and transacted negotiations with

Broderbund officials who were located in Massachusetts. Holland signed the 2002 Agreement on

behalf of SOMC and Logetics knowing that it contained a forum selection clause. Holland admits

that he worked with John Bartlett and Tony Bordon via e-mails and phone conversations (Aff. of

Holland, Docket No. 43, at ¶¶4, 14–16, 18, 19, 21, 22, 30, 34, 35, 39–41, 43–50 and referenced

exhibits). Barlett avers that:

> 10. At all times from 2002 forward, I have been physically located
> in the Boston, Massachusetts metropolitan area. Both Riverdeep
> and Broderbund at all times retained offices in Massachusetts.
> Tony Bordon, who was Riverdeep's former Executive Vice
> President in charge of the consumer division, also worked at all
> times out of the Boston area offices.
> 11. I talked and/or emailed with Tom Holland who was President
> of both SOMC and Logetics on a regular basis. Both my office
> number and my cell phone number have the Massachusetts area
> code "617."
> 12. I know Tom Holland was aware that the OEM Sales team was
> located in Cambridge, Massachusetts because on multiple occasions
> he referenced my location and on at least one occasion offered to
> travel to Boston to meet with me.
> 13. On April 13, 2004[,] Tom Holland faxed me the signature page
> of the 2004 Agreement at my former office in Boston. The fax
> number there was 617-778-7631.

(Aff. of John Bartlett, Docket No. 63).  This evidence is sufficient evidence that Holland's

contacts with Massachusetts were voluntary and that he could reasonably foresee being haled into

a Massachusetts court.

When determining whether the exercise of jurisdiction is reasonable under the third

prong, courts look to five additional factors: (1) the defendant's burden of appearing; (2) the

forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient

and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of

the controversy; and (5) the common interests in promoting substantive social policies.  United

Electrical, etc. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  The application of

these factors does not preclude the exercise of jurisdiction.

Although there is a burden on Holland to defend this case in Massachusetts, that

burden does not make the exercise of jurisdiction constitutionally unreasonable.  Holland claims

that "[i]t would be a substantial burden on me both in terms of time and expense to travel to and

from Massachusetts for the purposes of this litigation" (Aff. of Thomas Holland, Docket No. 52,

at ¶7).  His filings with the court indicate that the real issue is the time and money involved in

cross-country travel.  Courts have ample tools to alleviate burdens placed on parties by litigation.

For example, if requests for discovery are too burdensome on Holland, the court can entertain a

motion compelling that depositions of Holland be conducted in California.  The simple fact that

litigation in this forum will entail cross-country travel, without more, will not make the exercise of

jurisdiction constitutionally unreasonable.  See Pritzker v. Yari, 42 F. 3d 53, 64 (1st Cir. 1994)

("In the modern era, the need to travel between New York and Puerto Rico creates no especially

ponderous burden for business travelers.  Thus, [the defendant has not adequately demonstrated

that an exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way."); <u>Brookfield Mach., Inc.</u> v. <u>Calbrit Design</u>, 929 F. Supp. 491, 500 (D. Mass. 1996) (finding that the prospect of a California company would have to shut down while employees attended proceedings in Massachusetts was not enough to find the exercise of personal jurisdiction over a California company unreasonable).

Massachusetts also has an interest in this case, though its interest is likely not as strong as California's. The contracts in this case were negotiated with parties, Riverdeep and Broderbund, that had offices in Massachusetts. Holland voluntarily reached into Massachusetts through the phone and the Internet such that Massachusetts has an interest in the content of those negotiations. It is true that the parties in interest are all presently based in California, that much of the fraudulent activity is alleged to have taken place in California, and Holland's allegedly fraudulent admissions were made while Holland was in California, but while this might be an argument for transferring the case, it does not eliminate Massachusetts' interest in the negotiations over contracts that occur within its jurisdiction.

As for Riverdeep's interest in obtaining convenient and effective relief, Riverdeep seeks to have its claims all tried in Massachusetts. A "plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." <u>Sawtelle</u> v. <u>Farrell</u>, 70 F.3d 1381, 1395 (1st Cir. 1995). In addition, Logetics and SOMC are bound by the forum selection clause in the 2002 Agreement, and Riverdeep has substantial reasons for seeking to try the case within the confines of the First Circuit. If the court does not have jurisdiction over Holland, Riverdeep may have to conduct parallel litigation involving closely related parties concerning closely related issues.

24

The judicial system's interest in obtaining the most effective resolution of the controversy is at least a neutral factor. Parallel litigation is singularly inefficient and this favors the exercise of jurisdiction. A countervailing consideration is that some of the issues in this case, such as the legal affect of an assignment for the benefit of creditors, will require looking to California law.

Finally, the fifth factor, the common interests in promoting substantive social policies, is neutral. No evidence in the record supports a finding that any particular substantive social policy will be affected or impaired by trying the claims against Holland in Massachusetts. If I had found it necessary to determine whether Holland was governed by the forum selection clauses, and if I had determined he was governed by said clauses, then the substantive policy in favor of enforcement of such clauses would favor the exercise of jurisdiction. See Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J. concurring).

Having conducted an analysis of Holland's contacts with Massachusetts and the reasonableness of exercising personal jurisdiction over Holland, I find that, on balance, the exercise of personal jurisdiction comports with due process.

The strongest argument Holland makes against the exercise of jurisdiction under both the Massachusetts long-arm statute and the Due Process Clause is that his contacts with Massachusetts were made in his corporate capacity and that some independent basis must be shown for exercising jurisdiction over Holland other than the fact that the court can exercise jurisdiction over the company. In support of his argument, Holland cites to Interface Group-Massachusetts, LLC v. Rosen, 256 F. Supp. 2d 103, 105 (D. Mass. 2003) and Yankee Group, Inc. v. Yamashita, 678 F. Supp. 2d 20, 22 (D. Mass. 1988). These cases, in fact, undermine

25

Holland's argument.  <u>Interface Group</u> cites to <u>Yankee Group</u> for the proposition that the requirement "for an independent jurisdictional basis may be satisfied when a corporate officer transacts in-forum business *either* in his personal capacity *or* solely on behalf of the corporation." <u>Interface Group</u>, 256 F. Supp. 2d at 105 (citing <u>Yankee Group, Inc.</u>, 678 F. Supp. at 22–23 for the proposition that "an individual defendant's *corporate* contacts with Massachusetts, even in absence of any *personal* contacts, are sufficient to satisfy both the long-arm statute and the Constitution") (italics in original).

### 3. Venue

The defendants also contend that this court is not the proper venue for Riverdeep's claims.  Since I have found that I do not have personal jurisdiction over SDWCA, this aspect of SDWCA's motion is moot.  Therefore, I will focus on Logetics' and Holland's contentions that this court is not the proper venue.  Riverdeep contends that venue is proper over the copyright claims in this case under 28 U.S.C. § 1400(a) and that venue is therefore proper over all of the claims in this case.  In addition and as noted above, Riverdeep contends that the forum selection clauses are binding on the defendants such that they have waived any venue defense.

### i. Logetics

Logetics contends that venue is not proper in Massachusetts because none of the defendants reside in Massachusetts and none of the unlawful conduct alleged by Riverdeep to have occurred is claimed to have occurred in Massachusetts.  Because I find that venue lies as to

the copyright claim and that Logetics is bound by forum selection clauses to litigate claims related to the 2002 and 2004 Agreements in Massachusetts, I find Logetics' contentions unpersuasive.

### a. Analysis

Although some courts hold that the burden is on the objecting defendant to demonstrate that venue is improper, the "better view" is that the plaintiff bears the burden of establishing that venue is proper after a defendant objects.  See 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3826 (1986 & Supp. 2005).  This is also the view of the Court of Appeals for the First Circuit.  See Cordis Corp. v. Cardiac Pacemakers, Inc., 599 F.2d 1085, 1086 (1st Cir. 1979).

This court is a proper venue for Riverdeep's copyright infringement claim.  Section 1400(a) of Chapter 28 of the United States Code provides that venue will lie for copyright actions in any district where the defendant resides or may be found.  "A defendant may be found in any jurisdiction in which personal jurisdiction may be asserted over them."  Crosfield Hastech, Inc. v. Harrsi Corp., 672 F. Supp. 580, 588 (D.N.H. 1987).  As noted above, I have personal jurisdiction over Logetics, so this court is a proper venue for the copyright claim.

In addition, the forum selection clauses in the 2002 and 2004 Agreements amount to a waiver by Logetics of the venue defense for any claim "related to" the two contracts.  See United States on Behalf of Pittsburgh Tank & Tower, Inc. v. G & C Enterprises, Inc., 62 F.3d 35, 36 (1st Cir. 1995) ("Under conventional venue statutes, venue provisions have long been subject to contractual waiver through a valid forum selection agreement.").

Finally, since this is a proper venue for the copyright claims, and to the extent that any of the claims may be read not to relate to the 2002 and 2004 Agreements, I will exercise my

discretion to hear those claims.  See Crosfield, 672 F. Supp. at 588 ("If venue is proper under §

1400(a) with respect to copyright claims, then in the interest of conserving judicial resources all

claims may be tried in this district, even those claims as to which venue would have been improper

if unaccompanied by a copyright infringement claim.").

### ii. Holland

Holland claims that this court is not the proper venue for the claims brought

against him in his personal capacity.  As noted above, § 1400(a) establishes that venue is proper in

copyright cases wherever the defendant may be found.  I have found that I have personal

jurisdiction over Holland such that he may be found in this court.  Therefore this court is a proper

venue for the copyright infringement claim.  To the extent that there are other claims pending

against Holland, I will exercise my discretion to hear them in this venue.  See Crosfield, 672 F.

Supp. at 588.

### 4. Requests to Transfer

Logetics and SDWCA have requested a transfer of the case pursuant to 28 U.S.C.

§ 1404(a).  Riverdeep opposes transferring the case.  To the extent that SDWCA moves to

transfer the case, its motion is mooted by my finding that I lack personal jurisdiction over it.   The

record makes it clear that the only reason not to transfer the case to the Southern District of

Florida is the forum selection clauses contained in the 2002 and 2004 Agreements.  Although

forum selection clauses should be enforced in all but the rarest of circumstances, this is such a

circumstance.  Therefore, I will order this case transferred to the Southern District of California

pursuant to § 1404(a).

I have previously declined to rule on whether Holland is governed by the forum selection clauses in the 2002 and 2004 Agreements. I will presume for the sake of this aspect of Logetics' motion that Holland is bound by the forum selection clause because he is "closely related" to the contracts. But see Slaihem v. Sea Tow Bahamas Limited, 148 F. Supp. 2d 1343, 1348 (S.D.Fla. 2001) (refusing to "bind a non-signing defendant to a contract that in turn will serve as the sole basis for exercising personal jurisdiction over the defendant"); see also InterGen, N.V. v. Grina, 344 F.3d 134 (1st Cir. 2003) (discussing the applicability of arbitration clauses to third-party beneficiaries). Even so, the fact that Holland did not actually sign the contract containing the forum selection clause in his personal capacity is a factor that I must consider in deciding whether to transfer this case.

"Upon a motion for transfer to an alternative forum, the plaintiff's choice of forum is entitled to great weight, and therefore, the burden is on the defendants to show that a transfer is warranted." R.W. Granger & Sons, Inc. v. Rojac Co., Inc., 885 F. Supp. 319, 323 (D. Mass. 1995); see also Home Products International-North America, Inc. v. PeopleSoft USA, Inc., 201 F.R.D. 42, 48 (D. Mass. 2001). "Bald assertions" that relevant witnesses and evidence are located in another forum will not be countenanced. R.W. Granger & Sons, Inc., 885 F. Supp. at 323.

I find the following factors are relevant to my determination of Logetics' motion to transfer: (1) one of the remaining parties expressly assented to two forum selection clauses; (2) one of the remaining parties is bound by two forum selection clauses, but not due to his express agreement to the forum selection clause; (3) I do not have personal jurisdiction over a key party to this case, so if Riverdeep proceeds with its litigation against SDWCA, parallel litigation will be

29

proceeding on opposite coasts; (4) all of the parties remaining in the case are from California; (5) Riverdeep asserts that its interest in having the case tried in this district is that the Court of Appeals for the First Circuit's interpretation of copyright law is more favorable to it than the Court of Appeals for the Ninth Circuit's; (6) the 2004 Agreement and at least parts of the 2002 Agreement are likely to be governed by Massachusetts law; (7) the "assignment for the benefit of creditors" and the amendments to the 2002 Agreement are likely governed by California law; and (8) the vast majority of witnesses appear to reside in California (Initial Disclosures of Thomas Holland, Docket No. 54, filed July 15, 2005).

The effect of a forum selection clause on a court's § 1404(a) analysis is a question of federal law.  See Stewart, 487 U.S. at 31–32.  The Court in Stewart outlined the factors that a district court should consider in evaluating whether to transfer a case in which a forum selection clause is involved.  Id. at 29–30.  In light of Stewart, I must consider "1) the convenience of the chosen forum, 2) the fairness of a transfer in light of the forum selection clause and the relative bargaining power of the parties, 3) convenience of the witnesses, and 4) public interest factors of systemic integrity and fairness."  R.W. Granger, 885 F. Supp. at 323.  I must also be mindful that the forum selection clause "will be a significant factor that figures centrally in" my analysis. Stewart, 487 U.S. at 29.

Before continuing, I must address the situation of Holland as it relates to Logetics' motion to transfer.  I have assumed that Holland is sufficiently closely related to the 2002 and 2004 Agreements such that he is bound by the forum selection clauses in those contracts. However, the context of his relationship to this case cannot be ignored.  First, Holland only signed the 2002 and 2004 Agreements in his corporate capacity.  Second, Holland is not bringing any

claims against Riverdeep. The policies that support the enforcement of forum selection clauses are less directly implicated when a party is not suing on the basis of the contract and the party is not actually a party to the contract. That is not to say that the forum selection clauses are not "a significant factor," but their significance vis-à-vis Holland is less than their significance in my analysis of Logetics' situation because Logetics freely and expressly assented to the forum selection clauses in the 2002 and 2004 Agreements.

Analysis of the first of the four factors weighs against transfer, but only because of the existence of the forum selection clauses. Objectively speaking, parties who agree to a forum selection clause are held to have agreed that the selected forum is convenient. See Home Products, 201 F.R.D. at 48. Therefore, Logetics cannot contend, except in the most extreme circumstances, that suit in this forum is inconvenient. Holland might have more of an argument that this forum is inconvenient, however, Holland likely would have to appear in this forum regardless of whether he was sued here because of Logetics' status as a party. Even so, I am cognizant that this litigation is being conducted far from the home state of both the plaintiff and the defendants. Massachusetts is about as far as one can get from where the parties and the bulk of the witnesses reside in this case. The resources that the parties will have to expend to conduct this litigation in this forum will be much higher than they likely would be if this litigation were conducted in California. Although Riverdeep has expressed its interest in litigating in this forum and its desire should be accorded great weight, see R.W. Granger & Sons, Inc., 885 F. Supp. at 323, I am mindful of the fact that, when pressed about why this case was brought in this forum, Riverdeep did not assert its convenience as a reason.

The second factor also weighs against transfer. Logetics is a corporation and Holland runs a software company. They are not unsophisticated parties. Holland might have some argument that he is being tried in a distant forum due to a contract he did not sign in his personal capacity, but the existence of the forum selection clause as well as his contacts with this forum put him on notice of the chance he would have to litigate in this forum such that it is not unfair to make him do so.

The third factor weighs strongly in favor of transfer. The identified witnesses are predominantly from California, and every reason exists to believe that those who have yet to be identified will also be predominantly from California. Although I have the power to compel the parties to produce witness-employees, the parties may well be deprived of having live testimony of some of the witnesses because of the limits of the ability of this court to compel attendance of individuals residing in other states. See Fed. R. Civ. P. 45.

The fourth factor weighs in favor of transfer as well. Although "[t]he federal judicial system has a strong interest" in "announc[ing] and encourag[ing] rules that support private parties who negotiate [forum selection] clauses," Stewart, 487 U.S. at 33, that policy is more attenuated when applied to Holland. In addition, I find that the risk of inconsistent results from parallel litigation outweighs this interest in this case. Parallel litigation presents a great risk of inconsistent rulings, and parallel litigation is almost a foregone conclusion unless Riverdeep drops its claims against SDWCA. The result of this parallel litigation could put a significant strain on the systemic integrity of the justice system since differing results are a real possibility. Each court will have a particular expertise in the application of the state law of its forum, and, as Riverdeep has acknowledged, the respective Circuit copyright law is different enough that a

32

relatively high chance of inconsistent results exists. Normally the doctrines of claim and issue preclusion would mitigate such risk, but that may not be so here, where the defendants in each litigation are different.

My consideration of this factor is influenced by the federal policy in favor of maintaining the integrity of causes of action by not unnecessarily severing parties from cases. See e.g., Sunbelt Corp v. Noble, Denton & Associates, Inc., 5 F.3d 28, 33–34 (3rd Cir. 1993); Fed. R. Civ. P. 19. I am also mindful that SDWCA may well be a necessary party to this action pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. The "Asset Purchase Agreement" entered into by Logetics, by the hand of Holland, and SDWCA contains an indemnity clause in which Logetics purports to indemnify SDWCA from liability for:

> (a) any liability of [Logetics] arising on or after the Closing Date, whether or not related to the ownership or use of the Assets; (b) breach of any representation, warranty covenant or agreement of Buyer contained herein or in any agreement executed in connection herewith; and (c) the ownership, sale, disposition or use of the Assets prior to the Closing Date and from and after the Closing Date.

(Asset Purchase Agreement, Docket No. 46, Tab 3, ¶ 3.3). Thus, if SDWCA is found liable for a copyright violation, it may well bring a claim against Logetics to indemnify it. This could result in "double, multiple, or otherwise inconsistent obligations[.]" Fed. R. Civ. P. 19(a). Similar issues might arise between SDWCA and SOMC as a result of the alleged "assignment for the benefit of creditors" (General Assignment, Docket No. 46, Tab 2).

Having weighed the four factors, I find that the only reason to retain this case is the existence of the forum selection clauses. Should the existence of a forum selection clause outweigh all other concerns? In a concurring opinion in Stewart, 487 U.S. at 33, Justice Kennedy

espoused a view strongly in favor of enforcing forum selection clauses, but even he realized that in some "exceptional circumstances" a court would be justified in transferring a case despite the existence of a forum selection clause.  Id.  For the reasons discussed above, this is such a case.

### 5. Substantive Issues

The defendants have raised a series of substantive objections to the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Since I lack personal jurisdiction over SDWCA, this aspect of SDWCA's motion is moot.  In addition, due to my decision to transfer this case, I will deny this aspect of Holland and Logetics' claims without prejudice.

### B. Motion for Entry of Default

Riverdeep moves for the entry of default against SOMC.  Although SOMC has completely failed to respond to this case, I find it inappropriate to try to bind another court by ordering default before the case is transferred.  Therefore, I will deny this motion without prejudice.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendant San Diego Wholesale Credit Association's Motion to Dismiss Amended Complaint (Docket No. 37) is ALLOWED as explained in Part III.A of the above Memorandum;

(2) Motion of Logetics, Inc. to Dismiss or Transfer (Docket No. 40) is ALLOWED IN PART and DENIED IN PART as explained in Part III.A of the above Memorandum;

(3) Assented-to Motion to Extend Time to File Responsive Pleading (Docket No. 50) is ALLOWED;

(4) Thomas E. Holland's Motion to Dismiss with Affidavit and Memorandum in Support (Docket No. 52) is DENIED IN PART and DENIED WITHOUT PREJUDICE IN PART as explained in Part III.A of the above Memorandum;

(5) Riverdeep's Motion for Entry of Default Against Defendant SOMC Group, Inc. (Docket No. 55) is DENIED WITHOUT PREJUDICE as explained in Part III.B of the above Memorandum;

(6) Assented-to Motion to File Single Overlength Opposition Brief to Logetics' and Holland's Motions to Dismiss (Docket No. 59) is ALLOWED; and

(7) The Clerk shall enter forthwith a separate final judgment stating:

For the reasons stated in the Opinion of September 13, 2005, it is hereby ADJUDGED:

All claims against defendant SAN DIEGO WHOLESALE CREDIT ASSOCIATION are DISMISSED WITHOUT PREJUDICE, each party to bear its own costs.

(6) The Clerk will enter forthwith a separate order stating

For the reasons stated in the Opinion of September 13, 2005, it is hereby ORDERED:

This court forthwith transfers this case to the Federal District Court for the Southern District of California.


                                          <u>/s/Robert E. Keeton</u>
                                            Robert E. Keeton
                                    Senior United States District Judge